1                 UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF NEW JERSEY

2
_____

3 CITY SELECT AUTO SALES, INC.,
  a New Jersey corporation,

4 Individually and as the
  Representative of a class of

5 similarly situated persons,

6          Plaintiffs,

7   vs.                 CIVIL ACTION
                      NO. 11-2658 (JBS)

8
                      MOTION

9 DAVID RANDALL ASSOCIATES, INC.
  and RAYMOND MILEY, III,

10

11         Defendants.

12
_____

13                 UNITED STATES COURTHOUSE
                 ONE JOHN F. GERRY PLAZA

14                 4TH AND COOPER STREETS
                 CAMDEN, NEW JERSEY 08101

15                 FRIDAY, DECEMBER 14, 2012

16 B E F O R E:     THE HONORABLE JEROME B. SIMANDLE
                    CHIEF JUDGE

17               UNITED STATES DISTRICT JUDGE

18

19 A P P E A R A N C E S:

20

    SHERMAN, SLIVERSTEIN, KOHL, ROSE & PODOLSKY, PC

21   BY:  ALAN C. MILSTEIN, ESQUIRE
    Eastgate Corporate Center

22   308 Harper Drive
    Suite 200

23   Moorestown, NJ  08057
    ATTORNEYS FOR PLAINTIFFS

24

25                 LISA MARCUS, C.S.R.
                 CERTIFICATE # 1492
                 OFFICIAL U.S. REPORTER

1    A P P E A R A N C E S:

2

3        BOCK & HATCH, LLC
         BY:  TOD A. LEWIS, ESQUIRE
4        134 N. La Salle Street
         Suite 1000
         Chicago, IL  60602
5        ATTORNEYS FOR PLAINTIFFS

6

7        FLAMM, BOROFF & BACINE, PC
         BY:  F. EMMETT FITZPATRICK, III, ESQUIRE
8        794 Penllyn Pike
         Blue Bell, PA  19422
         ATTORNEYS FOR DEFENDANTS

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1        DEPUTY CLERK:  All rise.

2        THE COURT:  Be seated, please.

3    This is the matter of City Select Auto Sales

4  Incorporated vs. David Randall Associates, Inc., Civil No.

5  11-2658.  Today's the return date for oral argument on a

6  number of motions.  There's a plaintiff's motion for class

7  certification, there's a defendant's motion for default

8  against the third-party defendants.  Technically there's three

9  motions from the plaintiff to cite additional authorities.

10  The additional authorities are before the Court, they're being

11  considered, and Mr. Fitzpatrick will have the opportunity to

12  argue against them today or undermine the authorities.

13        And so let's begin with the motion for class

14  certification.  Mr. Lewis.

15        MR. LEWIS:  Thank you, your Honor.

16        My name is the Tod Lewis and I'm here on behalf of Bock

17  & Hatch on behalf of the plaintiff and the class, putative

18  class in this case.  I'm joined by Alan Milstein of the

19  Sherman, Silverstein firm.

20        Your Honor, we seek certification of a class of 29,113

21  persons who received essentially the same document by fax,

22  over 44,000 faxes, over -- on six separate days over about a

23  six-week period in the period late March through about the

24  middle of May 2006.  This faxed document was an advertisement

25  that was sent to plaintiff and other class members without

1  prior express invitation or permission.  The defendant has not

2  produced any contrary evidence in this case.

3       A class should be certified here because it meets all

4  the requirements of Rule 23(a) and Rule 23(b)(3).  We've also

5  provided the Court with citations to numerous federal cases

6  certifying TCPA classes involving primarily purchased lists of

7  fax numbers and those involving Business To Business Solutions

8  who defendant hired in this case.  In this case the purchase

9  list was procured from an outfit called Info U.S.A.  Your

10 Honor, numerosity is satisfied because there are 29,113 class

11 members, a joinder is impractical.

12      Commonality is also satisfied because the same

13 advertisement was sent on six days occurring over a six-week

14 period to anonymous third party lists that was purchased from

15 Info U.S.A., as I said before, which the defendant never even

16 reviewed.

17      Typicality, your Honor, is met because the plaintiff's

18 claims arise over the same course of conduct and the same

19 advertisement.

20      Adequacy is met because there are no conflicting

21 interests between the plaintiff and the class members.  Also,

22 the Third Circuit requires, as to counsel, that counsel be

23 qualified, experienced, and generally able to conduct the

24 case.  Also, here again, the plaintiff has no antagonistic

25 interest with the class.  We are qualified, experienced, and

 1    able to do this litigation as we've proved across the nation.

 2         I'd like to take a little bit of time on the adequacy

 3    section because the defendants have spent the majority of

 4    their time in this case taking issue with our adequacy.

 5         Defendants --

 6         THE COURT:  Well, before you do, a lot of the

 7    criticism seems to be directed at Anderson & Wanca.  What role

 8    would they play in this case if the class were certified and

 9    your firm were the class counsel?

10         MR. LEWIS:  Well, they would serve as co-counsel in

11    the case, they would serve whatever role the Court desired.

12         THE COURT:  What makes them co-counsel?  They're not

13    members of the Bar of this Court nor have they been admitted

14    *pro hac vice*.

15         MR. LEWIS:  We could have them admitted *pro hac vice*

16    if the Court desires.

17         THE COURT:  Well, it's a little late for that.  But

18    would your firm be able to carry the ball together with

19    Mr. Milstein's firm as class counsel?

20         MR. LEWIS:  Absolutely, your Honor.  Absolutely.

21    We've shown that in case after case across the country.

22         THE COURT:  Are there ethically troubling aspects of

23    Anderson & Wanca's behavior in the past?  Or let me ask a

24    different question.  If their role is not to be as class

25    counsel and if their attorneys are not to be admitted

1    *pro hac vice* going forward, is there any reason to examine

2    Anderson & Wanca's ethics in other cases?

3         MR. LEWIS:  I don't believe so, your Honor.  But we

4    firmly believe that neither Ryan Kelly nor anyone with the law

5    firm of Anderson & Wanca has done anything wrong or engaged in

6    any misconduct, and I can get into the reasons with regard to

7    that.

8         THE COURT:  Well, it may not be necessary or it may.

9         Let's switch subjects, and we may return to this in a

10   moment after Mr. Fitzpatrick's argument.  But what about the

11   B2B hard drive?  In a motion for class certification, it's not

12   a mini trial, it's not the compression of the trial, but it's

13   also not blind to the merits of the case.  I think that the

14   Supreme Court and the Third Circuit have been pretty clear in

15   saying that the trial judge has a duty to peek at the merits

16   to make sure that one is not certifying a class that just

17   isn't going to go anywhere.  On the other hand, this is not a

18   motion for summary judgment, it's not time for plaintiffs to,

19   quote, unquote, put up or shut up, that day could come later

20   in the case, but a class certification motion shouldn't be

21   confused with summary judgment either.  But we're somewhere in

22   between, mere reliance on the pleadings, on the one hand, and

23   introducing sufficient admissible evidence to withstand

24   summary judgment on the other.  And this in between place

25   probably requires me to look at the admissibility to the most

1  important piece of evidence, at least I think it is, in the

2  case.

3        Would you agree with what I said so far?

4          MR. LEWIS:  Absolutely, your Honor.

5          THE COURT:  Is it admissible?  Is it likely that it

6  will be admissible?

7          MR. LEWIS:  Absolutely, your Honor.  And the

8  defendant's cited the *In re: Hydrogen Peroxide* case, the

9  plaintiffs in that case, their expert lacked any economic

10  model or analysis to support a finding of commonality in that

11  case.  Here the situation is the exact opposite.  The

12  plaintiffs have produced an extremely detailed and exhaustive

13  report of Robert Biggerstaff and the defendant has not offered

14  the Court any rebuttal expert.

15       The defendant has also quoted the case of *Dreyer vs.*

16  *Altchem*, well, in that case the plaintiffs produced three

17  affidavits that were procedurally deficient and, quote, bereft

18  of detail, unquote.  That is not the case here.  In this case

19  we have produced the December 28, 2010, declaration of

20  Caroline Abraham, which fully supports admissibility of all of

21  the B2B computer data.  Federal Rules of Evidence 901(a) only

22  requires some evidence showing that the computer data is what

23  the proponent claims.  There's no evidence in the record that

24  it's anything but what the proponent claims.  The business

25  records exception rule also comes into play, and Ms. Abraham's

1  declaration supports the view that it is admissible under the

2  business records exception rule.

3        THE COURT:  Now, you've made mention of computer

4  data, are you talking about the printout that comes from a

5  computer or are you talking about the hard drive that's been

6  referenced?

7        MR. LEWIS:  Well, the hard drive and the backup DVD's

8  were analyzed by our expert Robert Biggerstaff, so it's really

9  both, your Honor.

10        Also, Federal Rules Of Evidence 902(11) and (12), the

11  Abraham declaration supports admissibility not just in the

12  context of class certification, but also admissibility at

13  trial.  Abraham was the custodian of the records.  Now, the

14  defendant has taken issue with the chain of custody and argues

15  that we haven't established chain of custody.  But chain of

16  custody only goes to the weight, not the admissibility of the

17  B2B computer evidence.  And the Court can consider basically

18  anything it wishes here at the procedural class certification

19  stage because the, as one of the cases that we quoted in our

20  brief, the gatekeeper is keeping gate only for itself.  So

21  that's another.

22        But at any rate, the B2B business records are fully

23  admissible, your Honor.  They are authentic.  There is nothing

24  in this record to establish they've ever been tampered with or

25  anything has ever been changed.  They're contemporaneous

1   business records of Business To Business Solutions.

2          THE COURT:  Would you have B2B witnesses available to

3   you to lay the foundation for their admissibility at trial?

4          MR. LEWIS:  We believe under Federal Rule of Evidence

5   902(11) and (12) that the declaration itself would serve as

6   the basis for their admission at trial.  But we could still

7   take Ms. Abraham's deposition as well during the merits phase

8   of the case post-certification.

9          THE COURT:  Is she an available witness if you needed

10  her?  Or if the other side needed her, if the defendants

11  wanted to take her dep?

12         MR. LEWIS:  I would --

13         THE COURT:  And I know you don't pay for her.

14         MR. LEWIS:  -- constitute her as -- well, she has

15  been third-partied in this case and she hasn't appeared.  She

16  is, quite frankly, toward us, your Honor, a hostile witness.

17  So --

18         THE COURT:  But is she within the subpoena power of

19  the Court?

20         MR. LEWIS:  I don't know.  I don't know.  She lives

21  in Brooklyn, I don't know if that's close enough, we've never

22  looked into that.

23         THE COURT:  Or you could go to Brooklyn, if need be,

24  and serve her out of the Eastern District of New York.

25         MR. LEWIS:  Well, that's how all the allegations of

1   misconduct started, your Honor, was when we got a rule to

2   show cause order in front of Judge Matsumoto who ordered

3   Ms. Abraham to turn over all the B2B data, but that's kind of

4   an aside right now.  But, yes, we are familiar with taking her

5   to court in the Eastern District of New York, we have before

6   and she shows for depositions and she shows -- if she's within

7   the Court's jurisdiction, we will do whatever means necessary,

8   we will do to get her to comply with the rule of law on behalf

9   of the class.

10          THE COURT:  All right.  And, of course, those

11  problems can be thrashed out later, but she's not

12  institutionalized or deceased?

13          MR. LEWIS:  No, that is true, your Honor.

14          THE COURT:  Okay.  Is there anything else that you

15  want to add?

16          MR. LEWIS:  A couple things.

17          The defendant has taken issue and said commonality is

18  not established because of the established business

19  relationships exception to the TCPA and the invitation or

20  permission, what's commonly known as the consent rule.  The

21  defendant's arguments with that regard are completely purely

22  hypothetical, they provided no evidence to the Court.  They've

23  argued that one may have given implied consent by publishing

24  one's fax number, that that might somehow be at issue here.

25  That's incorrect, according to the FCC, there's no such thing

1    as implied consent by publishing one's fax number.  It's not a

2    green light to receive everybody's junk faxes that are being

3    advertised and faxed across the nation.  These faxes are sent

4    anonymously to strangers to purchase third-party lists, as I

5    said before.  We've produced 500 pages, the names and

6    addresses and phone numbers of all 29,113 businesses.  The

7    defendant hasn't come up with even a single name of an

8    established business relationship.

9         The defendant has also --

10        THE COURT:  Well, let's stay with that subject.  If

11   someone has an established business relationship or a prior

12   business relationship with David Randall Associates, then they

13   would not be members of this case, would they?

14        MR. LEWIS:  They can be carved out.  But there's

15   also --

16        THE COURT:  Shouldn't we fix the class definition

17   then so that it does carve them out?  Do you have a copy of

18   the class definition?

19        MR. LEWIS:  Yes, your Honor.  We could, we could do

20   that.

21        THE COURT:  And also wouldn't it apply to only

22   unsolicited faxes?  And the word unsolicited doesn't appear in

23   the definition.

24        MR. LEWIS:  We could do that, your Honor.

25        THE COURT:  No, but could the plaintiff live with the

1  definition that would start out reading "All persons with whom

2  David Randall Associates did not have a prior business

3  relationship who were successfully sent one or more

4  unsolicited faxes during the period," et cetera?

5        MR. LEWIS:  Yes, we can live with that.  Many courts

6  have gone in that direction.

7        THE COURT:  Okay.

8        MR. LEWIS:  Does your Honor wish to hear anything

9  about this issue of Ryan Kelly being a material witness?

10        THE COURT:  Well, doesn't that issue drop out if he's

11  not an attorney in the case?

12        MR. LEWIS:  Yes, it would.

13        THE COURT:  If he is an attorney, then he could still

14  be required to testify and be excluded as an attorney if need

15  be.

16        MR. LEWIS:  But our argument would be that anything

17  that he would have any testimony regarding would relate to

18  procedural class action matters and not to the actual merits

19  of the case.  If it relates to misconduct in some -- or

20  alleged misconduct in some form or fashion that defendants and

21  Ms. Abraham have alleged, then that now essentially would be

22  the time for that, but at trial there's no substantive purpose

23  for Mr. Kelly's testimony.

24        THE COURT:  Well, there's going to be a period, even

25  if this class is certified, for discovery.  And in the

1   discovery the defendant would have the opportunity to explore

2   whether this computer data is tainted in some way or whether

3   there's some reason to argue against its admissibility.  And

4   if they believe that the evidence was corrupted in some way,

5   they would have the opportunity to explore that in discovery

6   and explore it with Mr. Miley if they deem it appropriate.

7   What would prevent that?

8           MR. LEWIS:  To date there has been no allegation of

9   any corruption or tainting or certainly no evidence of

10  corruption or tainting or anything of the sort.  But, yeah, I

11  see what you're saying.

12          THE COURT:  Okay.  I don't have any other questions

13  at this time.

14          MR. LEWIS:  Thank you, your Honor.

15          THE COURT:  Thank you, Mr. Lewis.

16      Mr. Fitzpatrick?

17          MR. FITZPATRICK:  Thank you, sir.

18      As I indicated in our response, we believe that there

19  are very serious deficiencies in this application for class

20  action certification and very serious record improprieties

21  that indicate in particular that the proposed class counsel

22  are unsuitable under the federal rules.

23      I'll start from what we now know is the beginning as a

24  result of the reply memorandum that plaintiff's counsel filed

25  to this motion to dismiss -- I'm sorry, motion for class

1    certification.

2         As I indicated in my opposition to this motion, we

3    believe that the genesis of this case was the same genesis as

4    the prior iteration of this case, the *David Winter's* state

5    court complaint that was also nominated a putative class

6    action but was never prosecuted as such.  In that case we

7    learned through discovery that the named plaintiff had not

8    actually been the source of the fax, the alleged fax that was

9    attached to the complaint in that case or the claim of receipt

10   of the alleged fax that the named plaintiff made in that

11   complaint.  It was actually an attorney named Ryan Kelly of

12   the Anderson & Wanca firm who not only unethically solicited

13   that named plaintiff, because Mr. Kelly was not a member of

14   the Bar of New Jersey and had no right to solicit a non-client

15   with the letter that he sent anyway, and the solicitation

16   letter contained a misleading inference that there already was

17   the existence of a class.

18        In this case we now know that the same thing occurred.

19   Mr. Wanca, this is Exhibit F to the plaintiff's reply

20   memorandum in this -- to this motion for class certification,

21   that contains a letter dated December 5, 2009, from

22   Brian J. Wanca of the Anderson & Wanca Illinois law firm to

23   City Select Auto Sales.

24        Would your Honor like a copy?  I can give you mine to

25   reference if it's easier.

```
 1              (Hands up document)

 2         THE COURT:  Thank you.

 3         MR. FITZPATRICK:  I know what it says, it says the

 4    exact same thing, that Ryan Kelly of his law firm formerly

 5    said to the David Winter's named plaintiff in order to get the

 6    Winter's plaintiff to sign up for the prior iteration of this

 7    a lawsuit.  In that letter Mr. Wanca -- again, on the face of

 8    that letter, that's an unethical solicitation under New Jersey

 9    Rules of Professional Conduct.  Mr. Wanca is not licensed to

10    practice in New Jersey, but he sent a solicitation letter to a

11    New Jersey corporation.  In that solicitation letter he made

12    the same misleading claim that Mr. Kelly previously made to

13    the David Winter's entity in order to get them to sign up

14    implying that there was an existing class and implying --

15    telling City Select that it had received a, quote, unquote,

16    junk fax and that they may not even remember having received

17    it but they could still be a plaintiff in this case and be

18    entitled to receive money.  Those are two definitively clearly

19    misleading statements that have already been found to violate

20    the ethical rules in other states.

21         In the Creative Montessori case that I cited in our

22    brief, the court -- the Seventh Circuit remanded the district

23    court's initial finding of suitability of class counsel and

24    that finding was based on two points.  The first point, the

25    district court found that the means by which Anderson & Wanca
```

1   obtained the subject hard drive were illegitimate in that they

2   had promised Caroline Abraham something that they would not

3   further disclose to third parties and they did so.  And,

4   secondly, that the statement -- the misleading statement in an

5   identical solicitation letter that there was an existing class

6   constituted a *prima facie* ethical violation.  The district

7   court so found, but nonetheless said the class representative,

8   the attorneys, it would not preclude them from representing

9   the class.  But the district court made that finding and

10  referred them for disciplinary action to the Bar.  That's the

11  same factual circumstance that applies here.  Now, ultimately

12  that case on remand, the district court found that Caroline

13  Abraham had not been sufficiently duped on the first point but

14  never reversed the second point.

15        And in this case I'm just pointing out initially that

16  this Court is starting out with *prima facie* evidence of three

17  ethical violations on the part of an attorney who's not even

18  in this case now but whom Mr. Lewis stood here and told your

19  Honor that he's co-counsel.  He is in fact, as I told -- as I

20  indicated in my brief, this firm has in fact been behind this

21  litigation to date, is still behind the litigation, is

22  inevitably intertwined with it and cannot, in our view, this

23  case can't proceed with counsel having any involvement

24  whatsoever with Anderson & Wanca as they have and as they have

25  indicated in their -- at every phase of the way.

1      I pointed out in my brief that there's quite untoward

2  and unexplained representations that have been made by all of

3  these attorneys in filings that they've made.  In particular,

4  the fact that Mr. Bock's name appears on this complaint,

5  Mr. Wanca's name appears on this complaint.  Mr. Milstein has

6  previously represented that they were of counsel to his firm

7  in the prior case.  No of counsel relationship is shown in any

8  letterhead or anything else, and we know they're not counsel

9  in New Jersey.

10      A, number one --

11      THE COURT:  Well, if Anderson & Wanca were kept out

12  of this case, does that cure the issues that you're raising,

13  including the issue of the availability of one of their

14  attorneys as a witness?

15      MR. FITZPATRICK:  I don't think so.  And I think

16  both -- I think Wanca and Kelly are both material witnesses in

17  this case because there's going to be a threshold inquiry as

18  to how did this case start.  We know -- we now know that

19  Mr. Wanca in an unethical solicitation started this case.  We

20  know something else --

21      THE COURT:  Let's assume that that's true, and let's

22  assume that the issue should be pursued about whether the case

23  had an unethical solicitation at its start, why would that be

24  laid at the feet of the attorneys who would be in the case if

25  Anderson & Wanca are not going to be attorneys in the case?

1    Anderson & Wanca want to be attorneys in the case, I can say

2    yes or no to that.  If I say no because of all of these issues

3    that would seem to involve their firm, why should I not permit

4    someone else to be counsel of record if it's, you know, a

5    certifiable class?

6         MR. FITZPATRICK:  Because I think, as you said, let

7    them be counsel of record, would not reflect the reality that

8    Mr. Lewis just indicated to your Honor.  They're co-counsel,

9    they have been involved in this case and the prior case in

10   particular in all of the tainted, what we contend are tainted

11   aspects of the case.  They have been involved in this

12   litigation without disclosure to this Court up to this point

13   and there's no real -- you can't build a Chinese firewall in

14   this case, these firms obviously work together all throughout

15   the country.  The Court can take judicial notice of the many

16   citations that were made in particular by the Seventh Circuit

17   in the *Creative Montessori* case.

18        I believe that there's actually impropriety that

19   Mr. Milstein knew or should have known about, that Mr. Lewis

20   knew or should have had known about.  And I believe that going

21   beyond that, the appearance of impropriety, as I indicated in

22   my brief, is such in this case that the Court cannot properly

23   allow them to go forward and say, well, you'll just be -- you

24   will just be, quote, counsel of record and Anderson & Wanca

25   will not remain in this case.

1    And I underline that by pointing out an extraordinary

2    facet of this motion for certification.  Mr. Milstein filed a

3    motion for certification, he was the only, quote, unquote,

4    counsel of record.  He filed the motion for certification in

5    which he asserted not that he was competent counsel to handle

6    this case but that Mr. Wanca and Mr. Bock were competent

7    counsel.  He went to the extraordinary lengths of submitting

8    their CV's, and he said that the Court should be assured that

9    they will properly represent the plaintiffs in this case when

10   they were not in this case and when he knew or should have

11   known by his own document, Exhibit F, that Brian Wanca could

12   never be in this case.

13   We think it's not just -- it's record impropriety and

14   it's rampant appearance of impropriety so strong that it could

15   not be overcome by any order stating that just Mr. Bock's firm

16   and Mr. Milstein's firm should be counsel of record.  And

17   again, in responding to your Honor, your Honor's question,

18   Mr. Lewis said we have done these cases all over the country,

19   we are appropriate counsel, we're good counsel, he's talking

20   about not Mr. Milstein and not himself, because, and this is

21   no slur to Mr. Lewis, but, as I indicated in my opposition to

22   his *pro hac vice* motion, there's not one indication that he

23   has had class action experience sufficient to carry this case.

24   The case is clearly going to be carried by people in the

25   background that we know are subject to be deposed in the case

1   and that we already know have serious ethical problems.

2   There's no doubt now, it's record evidence before the Court.

3           THE COURT:  Well, how much experience should be

4   required to go forward with a class action of this type where

5   the stakes to any individual member of the class are fairly

6   low and where the liability is shown fairly easily if it's to

7   be shown at all?  But it's not something like medical

8   malpractice or antitrust or something more sophisticated.

9   It's kind of a light switch case in terms of liability, isn't

10  it?  It's either on or off depending on whether someone

11  received an unsolicited fax.

12          MR. FITZPATRICK:  I think the minimum is more than

13  none and we do not have that in this case.  We have none on

14  the part of Mr. Lewis and we have a demonstrably deficient

15  showing on Mr. Milstein's part in the prior iteration of this

16  case.  And while it may indeed be the case that it's a light

17  switch case, as your Honor puts it --

18          THE COURT:  Well, and I don't use those words --

19          MR. FITZPATRICK:  I know.  I know what you're saying,

20  I'm not --

21          THE COURT:  -- I was being rhetorical.

22          MR. FITZPATRICK:  I totally understand that.  And, be

23  that as it may, there are still significant legal issues and

24  legal problems that the experience that the federal rule

25  requires, that rule is put in there so that counsel can handle

1  things that may come up that they're not experienced about.

2  And we already know that Mr. Milstein in the underlying case,

3  he did not identify a single class member, he never filed for

4  class certification, and he ultimately let the case go for an

5  agreed statutory payment of $1,500 for the only named

6  plaintiff.

7      Now, all the other alleged victims, recipients of these

8  alleged unwanted faxes in that case are the same as the ones

9  in this case.  That case -- that litigation lasted three

10  years.  And, during the course of that litigation, the statute

11  of limitations ran on all of their claims.  Now, as your

12  Honor's found in this case, the statute was tolled by virtue

13  of the *American Pipe Holding*, the statute was tolled as to

14  those people who were not identified.  So they didn't lose any

15  legal rights as a result of Mr. Milstein's, whatever you want

16  to call it, oversight, tactical maneuver, whatever you want to

17  call it, handling of the case, but they could have.  So there

18  are significant legal matters that require some experience.

19  And we do know, as a matter of record, the only counsel who

20  are counsel of record in this case do not have any

21  demonstrable class action experience, or in the case of

22  Mr. Milstein demonstrably -- in our view have not represented

23  the putative members of that class as an experienced class

24  attorney would have done.

25      So my answer to that question is more experience than

1  the record experience before your Honor indicates.

2          THE COURT:  All right.  If we turn away from adequacy

3  of counsel -- or do you have anything further to say about

4  adequacy?

5          MR. FITZPATRICK:  Can I just see my notes for a

6  second?

7          THE COURT:  Sure.

8          MR. FITZPATRICK:  Just one other thing about that,

9  about the appearance of impropriety, which I briefed and I

10 think is significant.

11         But there's one other thing that we know from this

12 record.  As I have argued, this case must have come about the

13 same way the last case came about.  No one from City Select

14 has made one word of attestation in support of anything that

15 your Honor has heard to date or anything of record in this

16 case, nobody from City Select.  Everything you're hearing

17 comes from counsel.  All the factual assertions have been made

18 by counsel.  In fact, counsel are the real parties in interest

19 here.  And I have argued, and I will argue again, that we

20 already have record evidence to show that these attorneys were

21 people acting in concert with them and on their behalf.

22 Actually manufactured the fax that's attached to the complaint

23 in this case just as it was learned that they manufactured it

24 in the last case, that Mr. Kelly manufactured it.

25         If your Honor references the subject fax in the

1    plaintiff's class action complaint, it facially indicates a

2    very suspect deficiency, there's no fax header at the top of

3    this fax.  All fax machines print fax headers.  There's no

4    sent.  There's no received.  There's no anything.  They all

5    print fax headers by default.  Whether the sender's

6    information is accurate or not, they all print fax headers.

7    This was created the same way the other was created, I

8    guarantee it's going to turn out that, and I submit the record

9    evidence shows at this point very clearly that this was made

10   the same way.  This was printed by somebody -- this was not

11   the fax that City Select ever received.  This was printed by

12   someone unknown, unidentified, from information that has never

13   been specified in this case.  And, quote, unquote, if there is

14   really evidence of that, the Court doesn't have it in this

15   case.  And that's what I would like to address in my next --

16           THE COURT:  Well, the complaint didn't specify that

17   that was the fax received by City Select in so many words, did

18   it?  I thought it specified this is a copy of the fax that was

19   sent in these mass faxings.

20           MR. FITZPATRICK:  And that assertion has to be made

21   by the named plaintiff.

22           THE COURT:  Well, the plaintiff wouldn't know what

23   was sent.

24           MR. FITZPATRICK:  Sure he would.  It's the plaintiff

25   that has the complaint.  It's the plaintiff that says I

1    received this and I didn't want it, it was unwanted,

2    unsolicited and I had no prior business relationship, that's

3    what the statute requires.  In fact, this is entirely

4    concocted by attorneys with no possibility of the plaintiff

5    ever attesting that it received this fax.

6          THE COURT:  But receipt doesn't seem to be a

7    necessary element to the statute, does it?  I thought that the

8    statute addressed those that were sent unsolicited to ones

9    that didn't have a prior relationship.  It's the sending, in

10   other words, that completes the picture, it is not receipt.

11         MR. FITZPATRICK:  No, it's not, that is a

12   misconstruction that the plaintiffs acidulously argue

13   everywhere they can, but the courts have not accepted that.

14   Because it's sending -- it is manifestly not unlawful to send

15   a fax, it's only unlawful to send a fax if there's no prior

16   business relationship, it's unwanted, and it doesn't contain

17   the statutory disclosure.  So the fact that --

18         Plaintiff's counsel also like to mistakenly argue that

19   this is a strict liability statute and meaning there's no

20   defense.  Sure there's defense, there's those three defenses

21   that I just specified.  Those defenses require the plaintiff

22   to make a showing that it actually received the faxes because

23   he's going to have to say it was unwanted, there was no prior

24   business relationship.  Those are the elements of the cause of

25   action and they necessarily require a showing that the fax was

 1    received.

 2         And my argument is that the complaint is very artfully

 3    drawn in order to avoid the consequences of this very issue.

 4    But my argument is that there is no legitimate complaint if

 5    the plaintiff cannot make the showing required by the statute.

 6    And that if even the named plaintiff cannot attest that it

 7    received this and is not aware if it received it, then it's

 8    complete perversion of the statute to permit this class

 9    complaint to go forward.  Necessarily the plaintiff's

10    complaint, City Select's complaint that it allowed its name to

11    become attached to and the fax that it allowed in there and

12    the claims in there necessarily constitute an attestation that

13    it received this fax.  And if that's not the case, then my

14    view is it's an unconstitutional application of this statute

15    under these circumstances.

16         THE COURT:  Has the deposition of the proposed class

17    representative been taken yet?

18         MR. FITZPATRICK:  No, sir.

19         THE COURT:  Wouldn't that have resolved this issue

20    about whether they received it or how they were solicited and

21    all that?

22         MR. FITZPATRICK:  It will resolve the issue,

23    certainly.

24         THE COURT:  But if it hasn't been done by now, am I

25    to speculate there's going to be some problem in the future?

1         MR. FITZPATRICK:  This is the first thing that we --

2    the first element of discovery that we did in the underlying

3    case when we were able to do it.  And, as soon as we did that,

4    as soon as it was revealed that they didn't create this, they

5    just received the solicitation, they said, yeah, it's free

6    money, they're being promised free money.

7         THE COURT:  But what if the class representative says

8    I remember receiving this, I didn't save a copy, it went in

9    the trash, isn't that quite feasible?

10        MR. FITZPATRICK:  It's quite feasible, especially if

11   that's -- six years later, he knows what to say.  It's quite

12   feasible and that would resolve it.  But I --

13        THE COURT:  But your client seems to have no

14   suggestion that a fax like this wasn't sent or this list was

15   bogus and that this City Select couldn't have gotten it.

16        MR. FITZPATRICK:  I'm sorry, I didn't get that.

17        THE COURT:  Your client -- City Select says that it

18   should be the plaintiff, that it should be the class

19   representation and that it has a good cause of action.  If it

20   were doubtful that this fax were sent to City Select or if it

21   were doubtful that a fax of this type were sent to anybody,

22   you said it's doctored or it's manufactured, isn't your client

23   in a great position to tell me that today and say we have a

24   record of what was sent on behalf of our clients and this

25   isn't there, no such thing was sent, or this list is totally

1    bogus, there's not 29,000 recipients?

2          MR. FITZPATRICK:  The factual background of this case

3    is my client has no idea.  My client, from the record

4    evidence, hired what it believed to be a legitimate

5    advertising company to make a legitimate advertising campaign

6    with what they had every reason and expectation to believe was

7    lawful information.  And we still don't know that that wasn't

8    true, there's not one shred of evidence in this case that

9    indicates that wasn't true.

10          THE COURT:  Well, for instance, was there billing?

11   Did your client pay bills to B2B saying you're being billed

12   for X thousands of faxes?  I think I saw that in the record.

13          MR. FITZPATRICK:  Yes, they did hire B2B, but they

14   did not know that B2B was allegedly carrying out the campaign

15   that it solicited in an unlawful manner.

16          THE COURT:  That may speak to the third-party claim

17   that your client has against it.  But in terms of the

18   integrity of this fax, you used very strong language, you said

19   it was manufactured by the attorneys --

20          MR. FITZPATRICK:  It was.

21          THE COURT:  -- because it lacked a header.

22          MR. FITZPATRICK:  It didn't come from City Select, I

23   can assure you of that.  This did not come from City Select.

24   This came from somebody using something, whether it was the

25   hard drive, whether it was in DVD's that they've talked about,

1    something.  This came wholesale from somebody other than City

2    Select.  They were told, just as Brian Kelly told the prior

3    named plaintiff, they were told you received these faxes.

4    Kelly sent them to faxes and I'm certain that's what we're

5    going to find happened in this case.

6          THE COURT:  If we do, wouldn't the case not be

7    subject to a good summary judgment motion?

8          MR. FITZPATRICK:  Yes.

9          THE COURT:  I mean, if your interpretation of the

10   statute is correct and they're not able to prove that they

11   received it?

12         MR. FITZPATRICK:  But at this point it's the

13   plaintiff's burden to show by a preponderance of admissible

14   evidence that the Court has a good faith basis for certifying

15   the class.  This is not an inconsequential order that would

16   result especially based upon the allegations of the number of

17   faxes involved in this.

18         So I don't mean to beat any point that your Honor has

19   already thought about, but if I could just address my other

20   points I'd like to strongly bring to your attention --

21         THE COURT:  Sure.

22         MR. FITZPATRICK:  -- before I get off the appearance

23   of impropriety.

24         Mr. Wanca also, as I pointed out to the Court, as a

25   matter of record, sent Caroline Abraham a $5,000 check to her

1  attorney, which her attorney himself viewed as an attempted

2  payoff involving the subject declaration, which she

3  subsequently gave, which counsel for the plaintiff has

4  contended is the evidence that will permit your Honor to grant

5  this motion for class certification.  It's a huge appearance

6  of impropriety.  It can't be glossed over.  It can't be

7  minimized.  The very recipient sent it back and said he

8  resented it and he said he considered it to be a payoff.  And

9  as I pointed out, no experienced attorney could reasonably

10  believe that sending $5,000 to that woman under these

11  circumstances, which was not for -- not accompanied by a

12  subpoena and she was a fact witness, no experienced attorney

13  could believe that that was not improper.  All of these acts

14  occurred and are known to Mr. Milstein and Mr. Lewis and we

15  submit that they create, aside from the direct impropriety,

16  the appearance of impropriety that's so strong that it

17  prohibits the Court from making the finding that it must make

18  as to that aspect of Rule 23.

19      There's one other, as to adequacy of counsel, one other

20  point that I wanted to raise is that in the *Winter's*

21  litigation Mr. Milstein moved for *pro hac vice* admission of

22  Ryan Kelly when he clearly knew that Ryan Kelly was now

23  subject to be deposed as a material witness in that case.

24      THE COURT:  Your argument, though, assumes that that

25  would put Mr. Kelly automatically off limits as a witness.

```
 1          MR. FITZPATRICK:  No, what I'm arguing now is to
 2    adequacy of counsel, Mr. Milstein is now only counsel of
 3    record.
 4          THE COURT:  No, but you're accusing Mr. Milstein of
 5    having the tactic in mind that if he would just sign up
 6    Mr. Kelly as co-counsel, that no one would have to worry about
 7    Mr. Kelly giving a deposition, is that right?
 8          MR. FITZPATRICK:  Yes, sir.  Even if it wasn't a
 9    tactic, he knew at that point, he must have known that Ryan
10    Kelly could never be admitted in this case because he was
11    subject to be deposed, he was a material witness.  So if he
12    didn't understand Rule 3.7, he should have.  He's not adequate
13    counsel if he did not understand.  And I really -- I don't
14    need to go into his motives or explore his motives, but I'm
15    just saying that it's an appearance of impropriety, it's an
16    appearance of inadequate understanding at a minimum by the
17    attorney who proposes to be class counsel in this case.  I
18    think there's, to go back to your Honor's question of
19    Mr. Lewis, I just think the interconnections, the record
20    interconnections among these attorneys are so close and so
21    admittedly close that it creates a fatal appearance of
22    impropriety.
23          There's an additional problem with the proposed
24    representation by the class attorneys, which I've noted in my
25    brief.  They previously assisted Caroline Abraham against the
```

1    interests of the putative class members, their putative

2    clients in defeating a motion to add her as a third-party

3    defendant in a class case.  They made the same motion on this

4    record in this case.  We served Caroline Abraham and her son

5    as third-party defendants and Mr. Milstein, who does not

6    represent them and could not possibly represent them, filed a

7    motion opposing it.  Under no circumstances can that be

8    considered a legitimate motion.  They are acting against the

9    interests of their own putative class.  This woman has -- by

10   all accounts was responsible for masterminding this whole fax

11   advertising solicitation and everything that resulted from it,

12   the only reason they're trying to keep her out is because for

13   the same record reasons that we showed, the communications

14   between her and Mr. Kelly, the promises, the promises of

15   keeping them out of the case if she would comply with their

16   wishes and say what they wanted, that's an appearance of

17   impropriety.  And that leads to the next argument.

18          THE COURT:  But would it be good to get to the bottom

19   of that before there is class certification?

20          MR. FITZPATRICK:  Yes.

21          THE COURT:  And there was a period of class

22   certification discovery in this case, wasn't there?

23          MR. FITZPATRICK:  No, sir.

24          THE COURT:  So the motion was filed and -- let me

25   check the docket.

```
 1            MR. FITZPATRICK:  We just have --

 2            THE COURT:  I'm just wondering, I'm not holding this,

 3  but is this motion premature?  Should Caroline Abraham be

 4  deposed to get to the bottom of this?  Should the class

 5  representative be deposed to get to the bottom of the

 6  solicitation and whether he's going to be able to say that he

 7  actually received this fax?  And then we could start over or

 8  it might at that point, if everything is hunky-dory, even be a

 9  consent or stipulation to class certification.  But if not,

10  then it could be litigated based on a fuller record.

11            MR. FITZPATRICK:  Yes, sir.  I believe that is

12  required in the event that your Honor does not find that what

13  the plaintiff's counsel has presented to you is deficient as a

14  matter of law.  If your Honor -- in our view if your Honor is

15  inclined to do anything other than the deny the motion for

16  class certification, discovery has to be taken, and so it

17  should be suspended and discovery should be taken on these

18  issues.  We just feel that -- they've presented you with a

19  motion, we've responded, and we don't think on their motion,

20  on the record of it it can ever go forward.  We don't think

21  this further discovery is required to determine that.  But if

22  your Honor feels otherwise, certainly discovery is absolutely

23  required.

24            But they came forward to you and said there's a

25  preponderance of evidence in this case, record evidence that
```

1   requires you to grant class certification.  And what do they

2   say it is?  Not any affidavit from anybody, because there's

3   none before you.  A certification by Caroline Abraham that is

4   facially deficient, utterly suspect, and under no one's

5   wildest dreams could that declaration be admissible evidence

6   at trial.  That is not a B2B business record.  The record

7   evidence shows that it is a litigation prop that was drafted

8   by Anderson & Wanca attorneys, sent to her and she was told to

9   sign it.  She then, as I detailed in my brief, she asked for a

10  payment of $1,250 for her services.  Then she asked Mr. Kelly,

11  well, which one of those devices contains the information that

12  you're asking me about in this certification?  And Kelly wrote

13  her back and told her that's not a B2B business record.  Never

14  would be admissible.  It was concocted clearly by Mr. Kelly

15  and Anderson & Wanca attorneys.  So on its face that can't

16  constitute admissible evidence for your Honor.

17        The only other piece that they say constitutes

18  admissible evidence is the, quote, unquote, expert report of

19  Mr. Biggerstaff.  Mr. Biggerstaff's report on its face says

20  that it was derived from information given to him by Ryan

21  Kelly.  Not from any examination of the subject hard drive,

22  information from Ryan Kelly.  No one knows what that

23  information is.  It's not a matter of record in this case.

24  There's no chain of custody information.  It's deficient as a

25  matter of law.  The two pillars on which they rest this motion

1    cannot possibly constitute the preponderance of evidence

2    required to make a Rule 23 decision.

3         And I want to point out something else about

4    Mr. Biggerstaff's report.  In their reply memo they attached

5    another letter from Mr. Biggerstaff in which he says that he

6    has gone beyond his 2009 report and identified actual

7    recipients of these alleged faxes, and he says that that's

8    attached to his report as an exhibit and counsel has so

9    represented in their motion and in their arguments.  In fact

10   no such attachment is contained in Mr. Biggerstaff's

11   supplemental letter and no such attachment was filed with the

12   Court.  His report is admittedly not based on any examination

13   or review of the subject hard drive.  It gives the Court no

14   certainty or even idea where the information came from because

15   Ryan Kelly is not before this Court.  And, as you heard

16   Mr. Lewis state in response to your Honor's questions, they're

17   trying to keep him out of the case, anyway, but he's a

18   material witness.  He clearly was in possession of the subject

19   hard drive at the time that Caroline Abraham was asked to sign

20   the declaration that he and/or other Anderson & Wanca

21   attorneys gave her.  This case can't go forward without an

22   elemental chain of custody proof especially because, as your

23   Honor knows, the subject fax in this case and the earlier case

24   didn't come from the alleged recipient.

25        I made other arguments as to -- I just want to point

1    out that under any circumstances as well what has been called

2    the expert report by Mr. Biggerstaff could never qualify as

3    such under the rules of civil procedure.  There's not one

4    statement made in that report to a reasonable degree of

5    scientific certainty, not one.

6         THE COURT:  Well, I didn't think it was propounded as

7    an expert report for purposes of trial, again that opportunity

8    will come later if the case survives, but that it suggests

9    that the plaintiffs will be able to prove the contents of the

10   computer data when the time comes.  So that if there's any

11   question about the plaintiff's sources of information or

12   ability to prove what was sent out that, during the course of

13   the litigation, the plaintiffs will be able to prove it even

14   if they can't prove it based upon the four corners of that

15   report.  I don't think that it's furnished as an expert

16   report, it's furnished as information that supports or tries

17   to support the motion, the class certification motion.  Again,

18   it's not a summary judgment motion in which they'd be required

19   to come forward with admissible evidence.

20        MR. FITZPATRICK:  Well, they're required to come

21   forward with evidence, reliable evidence upon which this Court

22   could make a factual determination that this putative class

23   actually exists, and I merely point out in response there's no

24   factual foundation for that.  And, as well, this is their

25   expert report, this was propounded as their expert report in

1    the prior case and it is not based on anything other than,

2    here's the foundation, here's the foundation for that report.

3    Ryan Kelly.  Here's the foundation for Caroline Abraham's

4    affidavit.  Ryan Kelly.  Where's the hard drive?  Where's the

5    underlying facts?  Where's the affidavit?  Why don't we have

6    an affidavit of Ryan Kelly, he's clearly the party in

7    interest.  You're missing -- there's a complete absence of

8    even a veneer of factual evidence sufficient to go forward.

9    By plaintiff's counsel, through dressing that up as an expert

10   report and saying we believe that we'll be able to show that,

11   yes, that's a legal argument made by plaintiff's counsel who

12   have every interest in making that legal argument, but it's

13   not a factual attestation, it's not an affidavit.

14          THE COURT:  Well, is there something in Rule 23 that

15   required them to submit an affidavit?  There are plenty of

16   cases that make reference to affidavits being received, but

17   I'm not aware of any that rejected a class certification

18   motion simply for lack of an affidavit.

19          MR. FITZPATRICK:  No, I'm not saying that as a

20   general rule.  I'm just saying that under these circumstances,

21   which are very unique, we don't have a real plaintiff here, we

22   don't have a real complaining witness.  In the ordinary course

23   if someone brings any motion in front of your Honor that

24   represents facts not of record, it has to be accompanied by

25   some type of verification, an attorney affidavit, a party

1    affidavit.  There are factual representations that have been

2    made very, very, very loosely by counsel for the plaintiffs in

3    the motions that have been filed -- in all the matters that

4    have been filed of record in this case so far that aren't

5    supported and in many cases can't be supported by anyone who

6    actually knows the facts.  So all I'm suggesting is that not

7    that Rule 23 requires that, but Rule 23 requires the Court to

8    make specific findings as to each of the elements based upon

9    reliable admissible evidence, and what you've been presented

10   is on its face not reliable, highly suspect, and not

11   admissible.

12        So our argument is there's a complete deficiency of the

13   required showing in order to obtain the requested motion for

14   class action certification and the proper response is

15   therefore to deny it, not to try to give them every next

16   chance they can but to deny it.  They had not only the year

17   that this case has been going on but three years prior to do

18   this and this is what they decided to present to your Honor

19   today and they contend that it's sufficient.  We contend that

20   it's not and that it should be dismissed on that basis.

21        The other thing I want to point out is, your Honor

22   yourself raised this in questions to Mr. Lewis, and that is

23   the definition, the proposed definition of the class.  That's

24   not a proper definition of the class as my brief indicates.

25   It does require the additional elements that your Honor

1   suggested.  And it requires one more, it requires the concept

2   of -- the language, the proposed language is to any person who

3   was sent, the proper language is to any person who received

4   that fax.  It is not a proper statement of the proposed class

5   to state was sent, received is proper, and the *Local Baking*

6   case that's cited in my brief indicates that.  And in that

7   case -- I also note that that was -- Mr. Bock was counsel of

8   record for the plaintiff, putative class in that case and made

9   quite a different requested class action definition.  So, as

10  written, it doesn't comport with the statutory elements, it

11  would necessarily put the cart before the horse and preclude

12  statutory defenses.

13       Lastly, I need to point out to the Court that the Third

14  Circuit has an additional required review as to this

15  particular statute, the TCPA, which was indicated in a recent

16  holding in the case of *Landsman & Funk vs. Skinder-Strauss*

17  *Associates* last April 2012 U.S. App. LEXIS 11946, in that case

18  the court -- and I have copies for the Court, as well.

19       May I?

20            THE COURT:  Yes.  Thank you.

21                (Hands up document)

22            MR. FITZPATRICK:  In that Third Circuit case the

23  court remanded to the district court, it was a TCPA case, and

24  said -- well, the first issue is *Mims* -- the Supreme Court

25  case of *Mims vs. Arrow Financial* decided the jurisdictional

1    question of whether federal courts have jurisdiction over

2    these putative cases in the first place by saying federal and

3    state court have concurrent jurisdiction.  But the Third

4    Circuit said there's another required element of the analysis

5    and remanded in that case for the court to do it.  It said

6    "These consolidated cases are hereby remanded to the district

7    court for resolution of the effect of Section 227(b)(3) if

8    otherwise permitted by laws or rules of court of a state.

9    Language has on such federal TCPA actions, i.e., whether it

10   subjects such actions to state law limitations that would

11   apply to similar suites filed in state court and, if so, which

12   ones.  The district court should reconsider the issue in light

13   of *Mims* and *Shady Grove Orthopedic Associates*."  And I'll

14   eliminate the cite.

15         That Third Circuit is there saying that in these TCPA

16   cases, as to the question of, that we're now presented with

17   here today, is it appropriate for class action, you have to

18   look to the underlying state law.  That analysis requires the

19   Court to deny the motion for class action certification

20   because New Jersey has directly held that class action

21   treatment of TCPA cases is not warranted and not permitted

22   under New Jersey law.  So under the required analysis that the

23   Third Circuit, as specified in that case, this case could

24   never pass muster for class action treatment, anyway.

25         Denial of the motion for class action will not work any

1   substantive harm on any putative plaintiff.  I made that point

2   in my brief and made the citations.  This Court has already

3   ruled that the statute of limitations is tolled as to any of

4   those putative plaintiffs cases.  And, as the New Jersey court

5   in *Local Baking* specifically held, the TCPA is not a superior

6   vehicle for the resolution of these claims.  In fact, the

7   putative plaintiffs would all end up in a much better position

8   by going to small claims court and filing their claims on

9   their own than they would by allowing them to be handled on a

10  class certification basis.  So denial of the motion would not

11  work any substantive harm to any member of this putative

12  class.

13          THE COURT:  How would it be superior to 29,000

14  superior court cases rather than one class action?

15          MR. FITZPATRICK:  Because as the courts pointed out

16  in that case and others cited in my brief, the determination

17  of the membership in this putative class necessarily involves

18  an individualized inquiry that is exactly the same inquiry

19  that would be required on the merits.  Did you receive a fax?

20  Was it unwanted?  Did you have a prior business relationship

21  with the sender?  Did you voluntarily make your information

22  publicly available on the Internet, through a directory

23  through which this number was obtained?  The courts have

24  reiterated that that individualized analysis is required at

25  the class certification stage, and there's no superiority

```
 1   whatsoever in doing that in a class action setting than in an
 2   individualized setting.
 3        THE COURT:  But couldn't class members in a certified
 4   class return a questionnaire that would make them either
 5   eligible or ineligible to participate in any recovery?
 6        MR. FITZPATRICK:  Could they respond by means of a
 7   certified rather than under oath?  I don't --
 8        THE COURT:  No, there are some questions that someone
 9   would have to answer in order to actually be a member of this
10   class, they would have to have had no prior business
11   relationship, they would have to have had an unsolicited
12   exchange here, and they could be asked those questions as part
13   of the class action.  That there may be distinctions between
14   individuals that turn on the answers to a couple simple
15   questions, I'm not sure that defeats the superiority when the
16   numbers are so large otherwise.  The prospect that people are
17   actually going to go into municipal court is nil, isn't it?
18        MR. FITZPATRICK:  Not according to what the
19   legislature thought when they created this statute.  As many
20   of the courts -- and many of the courts and the New Jersey
21   courts in particular have held that it was created to be a
22   superior remedy with a relatively low legal threshold, i.e.,
23   small claims, and relatively high statutory penalty for what
24   the courts have found is a very slight nuisance.  So for a
25   slight nuisance you can get $500 by walking in on your own,
```

1    you can walk out with the judgment on the same day.  And they

2    have found it -- I wouldn't exclude the possibility of

3    something like, your Honor, a device in a class action case,

4    many such devices are used in various cases and, you know, I'm

5    certain something could be fashioned in this case, but I agree

6    with the courts that have stated and concluded that this is

7    not a superior mechanism for adjudication of these claims.

8          We really appreciate your Honor's attention.

9          THE COURT:  Well, a couple more questions.

10         MR. FITZPATRICK:  Sure.

11         THE COURT:  Is it not necessary to the parties then

12   to brief New Jersey law?  Is that something that the Third

13   Circuit *en* banc has, you know, required in the *Landsman & Funk*

14   case?

15         MR. FITZPATRICK:  I think I briefed enough of it,

16   that's what's out there, that's the requirement.  It's our

17   circuit.  It's a one paragraph statement, it's not subject

18   to -- it's not ambivalent.  I don't know that there would be

19   anything else.  They just said that in light of *Mims*, under

20   this TCPA, you're required to look to state law.  And state

21   law, that's a definitive statement of state law in our view.

22   But if your Honor wishes to get supplemental briefs, we'll be

23   happy to do it.

24         THE COURT:  Well, what is a state court case that

25   says a class action can be maintained under the TCPA?

```
 1          MR. FITZPATRICK:  Local Baking, it's in my brief.
 2          THE COURT:  Okay.  What's the name of it again?
 3          MR. FITZPATRICK:  I'll give it to you.  Local Baking
 4  Products, Inc. vs. Kosher Bagel Munch, Inc., 2011 New Jersey
 5  Super. LEXIS 143.
 6          THE COURT:  I'm familiar with that.  That's an
 7  unpublished case, isn't it, or non-precedential case?
 8          MR. FITZPATRICK:  No, sir, I don't think so.  They
 9  cited non-precedential cases that were therein.  I may be
10  wrong but I don't think so.  This was the case that -- but
11  again, we'll be happy to brief that issue if your Honor
12  wishes.
13          THE COURT:  All right.  We'll get back to that then
14  in a minute.
15      Okay.  Let me turn back to Mr. Lewis.
16      Thank you, Mr. Fitzpatrick.
17          MR. FITZPATRICK:  Thank you.
18          MR. LEWIS:  I'll start right there, your Honor.  Mims
19  couldn't be more clear that federal law controls the federal
20  TCPA.  And the Landsman vs. Funk [sic] case, 640 F.3d 72,
21  specifically says that "although individual actions under TCPA
22  may be easier to bring in small claims court than other types
23  of cases, that does not necessarily undermine the greater
24  efficiency of adjudicating disputes involving 10,000 faxes in
25  a single class action.  Indeed, as plaintiffs point out, we
```

1  have little reason to believe that individual actions are

2  automatically sufficient, plaintiffs can still face protected

3  litigation when they sue individually."  That was the Third

4  Circuit's statement on the issue of superiority.

5       I've got quite a few points in rebuttal, your Honor.

6  The very -- when defense counsel started out, he pointed to

7  Exhibit F to the reply brief.  It was not Exhibit F to the

8  reply brief, the marketing letter that Anderson & Wanca used,

9  it was actually Exhibit F to Professor Richard Painter's

10  opinion that we have submitted in this case.  And it is

11  Professor Painter's opinion that the marketing letter that was

12  sent by Anderson & Wanca was not -- did not violate the

13  professional Rules of Professional Conduct.

14       Mr. Fitzpatrick said that all these courts have found

15  that the marketing letter is deceptive, that's completely

16  untrue.  Judge Gettleman didn't like the letter that was

17  submitted in *Creative vs. Ashford*, but the letter in this case

18  is significantly different than the letter than the letter in

19  the *Creative vs. Ashford* case.  In this case the letter states

20  that "During our investigation, we have determined that you

21  are likely to be a class member in one or more of the cases we

22  are pursuing."  It specifically uses the words "solicitation

23  letter" on the bottom.  The *Creative Montessori* letter said

24  "During our investigation, we have determined that you are

25  likely to be a member of the class."  That language is much

1    different.  There's no evidence in this case that any of the

2    29,113 persons that are in the putative class were deceived in

3    any possible way by any marketing letter.

4         Mr. Fitzpatrick said that the attorneys were referred

5    to the Bar as a consequence of the letter.  That is absolutely

6    100 percent false.  I can produce a transcript from Judge

7    Gettleman at the end of the very first class certification

8    hearing when he certified the class, where he specifically

9    said, well, this is great, I'm glad you cleared everything up.

10   I didn't want anybody to have any trouble with the Bar.  Those

11   are almost exact quotes, your Honor.  So, Mr. Fitzpatrick,

12   you're playing a little too fast and loose there.

13        Mr. Fitzpatrick says that I have no class action

14   experience.  The CV that was submitted did not have a lot of

15   my background.  The fact of the matter is that I have 15 years

16   of class action experience.  I also have less hair than any of

17   the attorneys in the room.  I have lots of class action

18   experience, your Honor.  Mr. Milstein, he is one of the most

19   experienced counsel in the whole area.  We are absolutely

20   adequate and equipped to take these cases to trial.  We have

21   tried the *CE vs. Cy's Crabhouse* case.  After two days of

22   trial, that class -- that case was settled in favor of the

23   class.  We have won summary judgments, your Honor.

24        Mr. Fitzpatrick -- this is a light switch case, your

25   Honor.  And that is the reason why we have been attacked by

1   the defendant so vigorously in this case is because if we go

2   away, then the case goes away and it's pretty much that

3   simple.

4        In the model Rules of Professional Conduct, your Honor,

5   if you go to the ABA, the Preamble, Section 20, it's very

6   instructive.  It states --

7          THE COURT:  Section 20?

8          MR. LEWIS:  Yes, of the Preamble of the ABA Rules of

9   Professional Conduct, the model rules.  It states, "Violation

10  of a rule should not itself give rise to a cause of action

11  against a lawyer nor should it create any presumption in such

12  a case that a legal duty has been breached."  It goes on, "The

13  rules are designed to provide guidance to lawyers and to

14  provide a structure for regulating conduct through

15  disciplinary agencies, they are not designed to be a basis for

16  civil liability.  Furthermore, the purpose of the rules can be

17  subverted when they are invoked by opposing parties as

18  procedural weapons.  The fact that a rule is a just basis for

19  a lawyer's self-assessment or for sanctioning a lawyer under

20  the administration of a disciplinary authority does not imply

21  that an antagonist in a collateral proceeding or transaction

22  has standing to seek enforcement of the rule."

23        You've heard a lot today about what the defendant

24  believes was misconduct by Mr. Kelly and the Anderson & Wanca

25  firm, but we have submitted at least eight cases now, your

1    Honor, where all of these issues have come up after the

2    Seventh Circuit decision came down last November and every

3    single court has found that there was no misconduct.  The

4    misconduct that Ms. Abraham has cited and defense cites in

5    this case, Judge Gettleman in the *Creative vs. Ashford* case on

6    remand termed those allegations as "pure sophistry."

7         The computer data that is at issue in this case was

8    produced by the Abrahams' attorney, it was produced by Joel

9    Abraham after he was under force of subpoena under a records

10   and deposition subpoena.

11        The defendant has made much here about the use of the

12   term "receipt," the defendant claims that the TCPA itself

13   requires proof of receipt.  That's just not true.  The TCPA

14   itself -- the language of the TCPA uses the word "send," it

15   does not use the term "receipt."  The Georgia Supreme Court

16   just a couple weeks ago came down in an opinion, that we can

17   provide to the Court, that couldn't make it more clear that

18   the issue is whether a fax was sent, not received.

19        The advertisement in this case did come from the hard

20   drive, your Honor, it was attached to the Biggerstaff opinion,

21   it was attached to the complaint.  We're not -- we have never

22   said that the advertisement that defense counsel was showing

23   your Honor just earlier was the actual original fax.

24   Everybody throws away these faxes, that's why it's termed the

25   Junk Fax Protection Act, that's why everybody calls them junk

1    faxes, that's why Congress made the law that is the reason why
2    we're here today, so any misconduct that is trying to be
3    attributed to us with regard to that is just wrong.
4         The fact that there isn't a fax header, I can't tell
5    you right off the top of my head because the experts or at
6    least our expert is able to determine this.  But there was a
7    time when Ms. Abraham actually had her computers programmed so
8    that no fax header would appear.  So Mr. Fitzpatrick's
9    assertion that there is always a fax header is not true, junk
10   faxers are wily, they're crafty, and they can make computers
11   do things to fax machines.  But it really doesn't matter
12   because the advertisement, again, from this case on behalf of
13   City Select did come from the hard drive.
14        THE COURT:  Well, is that fax, the fax that's in the
15   record, a replica what's on the hard drive?
16        MR. LEWIS:  Exact replica, your Honor.
17        THE COURT:  So what's on the hard drive, I guess you
18   wouldn't expect would have a fax header, would it?
19        MR. LEWIS:  Exactly, your Honor, it would not.
20        THE COURT:  So if I were to take a copy of one of my
21   opinions and decide to fax it to somebody, what I retain
22   doesn't have a fax header on it, I retain my opinion whether
23   it's in our computer or whatever.
24        MR. LEWIS:  That's exactly right.
25        THE COURT:  I didn't have doubt about it before, but

1   you're now making it crystal clear that that fax that's

2   attached to the complaint and that's referred to throughout

3   the matter is not a copy of what the plaintiff is saying he

4   received, it's a copy of what the plaintiff is saying or that

5   you're saying on behalf of the plaintiff that the defendant

6   through its agent sent.

7         MR. LEWIS:  Absolutely, your Honor.  And the

8   plaintiff, vis-a-vis that proof, can prove the entire case for

9   everyone else.  There may not be a soul on earth that still

10  has one of those 44,000 plus junk faxes that were sent in this

11  case, that's how these cases work.  Congress did not use the

12  term receipt possibly for that reason.

13        THE COURT:  Well, have you met with or someone in

14  your firm met with City Select?

15        MR. LEWIS:  I have not, your Honor.

16        THE COURT:  Do you know what City Select would say

17  through their 30(b)(6) witness about whether they, you know,

18  received this fax, whether they had a business relationship,

19  and all that sort of thing?

20        MR. LEWIS:  I personally do not, your Honor.

21        THE COURT:  So how can plaintiff prove this?

22        MR. LEWIS:  It is possible that City Select has the

23  fax because we have had other cases where they have had the

24  fax.  *Chapman vs. Wagner*, Mr. Chapman was a pack rat, he kept

25  everything, we had the fax.  There have been some cases where

1    the actual received fax has been produced.  But most of the

2    B2B cases, that's not the case, all of the proof is straight

3    through.  *CE vs. Cy's Crabhouse*.

4         THE COURT:  Fax machines, in my experience, keep a

5    record of how many pages came in and what transmission on what

6    date and that can go back for that months, if not years.  Have

7    you inquired of your client whether they have a record of this

8    sort of transaction being received?

9         MR. LEWIS:  Most fax machines do not retain that data

10   unless they have a computer chip, as I understand the

11   technology.  We have experts who are far more well versed in

12   these matters than I, but most fax machines you just get the

13   fax and that's it.  But you don't need any of that evidence.

14   We have certified over, I think, 10, 11, 12 of these B2B cases

15   in federal courts.  We've certified another 13 or so,

16   somewhere between 20 and 25 of these B2B have been certified,

17   almost all of them have been certified based on the evidence

18   that we have brought to your Honor.  The other -- these

19   opinions are very persuasive.  Mr. Fitzpatrick makes it sound

20   like it would be this great unjust thing that nobody's ever

21   seen before, that this is a clear outlier, but all these cases

22   have been certified basically on this exact type evidence that

23   we've produced to you.

24        Mr. Fitzpatrick never --

25        THE COURT:  Well, I'm I think what that

1   Mr. Fitzpatrick is fundamentally arguing is that there's a

2   plaintiff who's indifferent to this cause of action, who

3   didn't come to you, didn't know whether he was actually harmed

4   by this, whether he actually received anything, and was

5   solicited in a questionable manner by an out-of-state

6   attorney, and there's a dispute about whether this was mere

7   advertising material or whether it was a pitch, it says on the

8   bottom of the letter "advertising material."  So maybe there

9   are issues presented here that ought to be looked into.

10          MR. LEWIS:  Your Honor, it's actually very common in

11  the class action context, and I will give you a couple of

12  examples.

13          THE COURT:  I've been doing them for almost 30 years

14  so I have an idea what's out there.  And I don't remember this

15  kind of an issue being raised in any case where there was a

16  real concern that there was an improper solicitation and

17  there's not a real plaintiff.  I did have one fairly recently

18  where the plaintiff seems to have signed up a lawyer to bring

19  up a class action case before the plaintiff made the purchase

20  which was the subject of the class action and then claimed to

21  be defrauded in the making of the purchase, I have seen that.

22  But --

23          MR. LEWIS:  Professor Newberg has noted that attacks

24  on counsel are becoming more and more prevalent in the class

25  action context, and maybe you're seeing that as well.

```
 1            THE COURT:  Well, certainly I see a lot of things.
 2            MR. LEWIS:  I've got a couple more things I have to
 3    address, your Honor.
 4            THE COURT:  What I'm wondering is this, I would
 5    rather not certify a class if the plaintiff couldn't survive a
 6    summary judgment motion one day, and I'm wondering if this is
 7    a case where the class certification should be dismissed
 8    without prejudice and that the case would go forward with the
 9    discovery of what happened with City Select and how suitable
10    they are to be a class representative, and also some of these
11    other unanswered questions about the admissibility of the
12    evidence that something was sent to City Select.  If those
13    questions, and they may just be hobgoblins, you may be right,
14    but if they're clarified, then I think you have a very easy
15    path to victory.  If they're not clarified, then we're going
16    to go through this whole class certification, I'll sign a
17    class certification order, let's say, notice goes out to
18    everybody, a lot of expense and everything, and then it turns
19    out that the case implodes on City Select.
20            MR. LEWIS:  So are you suggesting --
21            THE COURT:  I'm asking the question, I haven't made
22    up my mind, but I'm wondering if this is premature and issues
23    like the deposition of City Select, the deposition of Ryan
24    Kelly, the deposition of Mr. Abraham and his mother
25    Mrs. Abraham, that would be necessary, it seems, to prepare
```

1   for trial, whether those ought to be done now as preparation

2   for the renewed class certification motion.

3        Any thoughts?

4        MR. LEWIS:  We believe that the papers we have

5   submitted are sufficient, but we are fully capable and willing

6   to do whatever your Honor requests.

7        THE COURT:  Are you also familiar with cases where

8   class cert have been deferred until some sort of underlying

9   discovery has been taken?

10       MR. LEWIS:  That happens on occasion.

11       THE COURT:  And this case, I'm sorry it's so old, the

12  last six months are on my watch, it's taken a while to get

13  this case to oral argument.  But I am surprised that there

14  hasn't been more exchange outside of the class certification

15  motion, in other words, the taking at least of some sort of

16  class certification discovery by the defendant of the

17  plaintiff.  That's one thing that makes me reluctant to stop

18  the clock and give the defendant, you know, some more months

19  on top of the six or nine months that have already existed to

20  gather the evidence.

21       MR. LEWIS:  I have a couple more points I need to

22  address.

23       THE COURT:  Please.

24       MR. LEWIS:  The allegations about the $5,000 check,

25  again, we have the opinion of Professor Painter who literally

 1   wrote the book on legal ethics, they have not come up with any

 2   countervailing rebuttal opinion.  Numerous courts have studied

 3   this issue, have looked over the facts and circumstances

 4   regarding the $5,000 check, and nobody has come to the

 5   conclusion, no court has come to the conclusion that we did

 6   anything wrong.

 7          THE COURT:  Do you know what the --

 8          MR. LEWIS:  Judge Kennelly reviewed it in the *CE vs.*

 9   *Cy's Crabhouse* case initially.  I'm sorry, your Honor.

10          THE COURT:  What was the intention behind the $5,000

11   check?

12          MR. LEWIS:  Well, the words on the bottom of the

13   check in the memo section were "document retrieval."  We had

14   been going through this process with Caroline Abraham in

15   numerous cases and both Mr. Wanca and Mr. Kelly submitted

16   affidavits, for example, to the court in the *CE vs. Cy's*

17   *Crabhouse* case in front of Judge Kennelly, which we can supply

18   to your Honor, but it was about document retrieval.  The

19   ethical rules, when you're dealing with third parties, require

20   that attorneys deal with them fairly and honestly and don't

21   make their lives so burdensome or overly tax them, that they

22   have a right to their reasonable expenses and the costs and

23   time incurred in retrieving documents.  Ms. Abraham, in

24   addition to, aside from all of the computer hard drive issues

25   that we talked about today, she also has another set of

1  documents that she, and computer records that she still has at

2  her house, so it takes time for her to retrieve all those

3  records and submit them, sometimes defendants, sometimes us,

4  but in that context -- both her and Joel for a period of time

5  were receiving checks somewhere between 50 and $100 apiece,

6  and in that context and in the context of there being many

7  more subpoenas coming down the pike and many more cases that

8  were going to be litigated, Mr. Wanca sent a check to

9  Ms. Abraham's attorney Mr. Rubin.  Mr. Rubin, of course, was

10  also Ms. Abraham's attorney when she was battling the FTC when

11  she had been accused and ultimately settled, she was the

12  mastermind along with her husband of the largest illegal

13  diploma selling scheme in the history of the world and illegal

14  driver's license scheme.  And after the FTC shut her down for

15  those matters, she immediately started junk fax broadcasting,

16  violating our nation's laws doing that.  So Mr. Rubin was her

17  attorney during those matters.  And now -- well, up to that

18  point Mr. Rubin became her representative with regard to some

19  of the goings on with regard to the junk fax litigation.  So

20  that's the general context of the $5,000 check.  Judge

21  Kennelly has reviewed it.  Judge Callahan in *Reliable vs.*

22  *McKnight* has reviewed it.  We've given you citations to all

23  these cases, court, after court, after court, after court.

24          THE COURT:  But if Mr. Rubin himself was offended by

25  it, doesn't that say something?

 1          MR. LEWIS:  Well, yeah, in the context of Mr. Rubin

 2   was her criminal defense attorney, and Mr. Rubin had quite a

 3   few different axes to grind himself.  In fact our Professor

 4   Painter, our expert, specifically said that for, I'm quoting

 5   from Document 36-1, Page 11 of Professor Painter's opinion,

 6   "For an attorney receiving such a payment to accuse the

 7   sending attorney of offering a bribe or other improper payment

 8   is an unprofessional delay tactic to avoid complying with

 9   discovery requests."  Professor Painter issues -- states many

10   other things that explains why this was perfectly appropriate,

11   there was nothing improper about it.

12          Earlier the defendant's counsel stated that there was

13   some sort of connection between the $5,000 check and the

14   December 28, 2010, declaration, that's absolutely false.

15   There's no -- this check was in June of 2009, the declaration

16   was a year and a half later after we had innumerable disputes

17   in federal courts and state courts around the nation with

18   Ms. Abraham.  There has been an adversarial relationship

19   throughout.  She's stated over and over again she's on the

20   side of the defendants.  She's a hostile witness.  I mean, she

21   doesn't like to be brought in as a third party in these cases.

22          THE COURT:  Well, was there -- did Mr. Milstein file

23   opposition to a motion to default the third-party defendants?

24          MR. LEWIS:  There's a perfectly reasonable

25   explanation for that.  We did it in *Cy's Crabhouse*, we've done

1    it in other cases, we're trying to protect the class, to move

2    things along.  These third-party cases against Ms. Abraham,

3    according to Ms. Abraham, she's penniless.  Nobody has ever

4    produced any evidence that she has even more than a 2004 Ford

5    Taurus.  Now, the government had some very -- were very

6    skeptical about that and in the context of their agreement to

7    settle the illegal driver's license case and the illegal

8    diploma scheme that she was perpetrating, they put in, I

9    think, a five or $10 million avalanche clause into the case so

10   if the government ever learns that she has any money and has

11   any assets, then they can come and get it, vis-a-vis that

12   avalanche clause.

13         THE COURT:  Why not let her default so it doesn't

14   clutter the pleadings?

15         MR. LEWIS:  I don't have any problem with defaulting.

16         THE COURT:  But you're opposed.

17         MR. LEWIS:  We opposed it before because it was

18   slowing the case down.  But if she defaults now, there's no

19   slowing the case down.  What's done is done, she's defaulted.

20   It doesn't hurt the class, it's done, I have no objection to

21   it.

22         THE COURT:  Okay.

23         MR. LEWIS:  One final thing about the *Landsman vs.*

24   *Funk* case and defense counsel's wanting this Court to follow

25   New Jersey state law and throw the federal rules out the

1   window.  There were also tens of thousands, I don't know the

2   exact number, but thousands and thousands of class members in

3   Pennsylvania, so the people in Pennsylvania are supposed to be

4   subject to New Jersey law in federal court?  The argument

5   makes no sense.

6          THE COURT:  Well, would the Court apply New Jersey's

7   choice of law as law and determine who's covered by what?

8          MR. LEWIS:  No, our opinion -- our view, and the case

9   law supports this, is that the Federal Telephone Consumer

10  Protection Act in federal court, the federal procedural rules

11  and the federal substantive rules are applied in federal

12  court.

13         THE COURT:  But what do you make of the section of

14  the TCPA, Section 227(b)(3) that the Third Circuit was dealing

15  with, that there's a condition placed upon the TCPA that it

16  be, if otherwise permitted by laws or rules of court of a

17  state, that language is in the federal statute, so how is that

18  to be applied in our case?

19         MR. LEWIS:  It's to be applied in the same way the

20  statute of limitations, the four year statute of limitations

21  is applied, the federal four-year statute is applied, not any

22  type of state statute of limitations.  We can brief this as

23  Mr. Fitzpatrick requested.

24         THE COURT:  Okay.  You can review your notes for a

25  minute and I need to just confer.

1          MR. LEWIS:  Yes, your Honor.

2          THE COURT:  We need to take about a ten or 15-minute

3  break.  Before I ask for supplemental briefing, I want to see

4  if I can track down this *Landsman & Funk* issue.  We're aware

5  of the case but not aware of the interpretation that is being

6  placed on it.  Is Mr. Fitzpatrick arguing that the case

7  requires compliance with state classification precedents?

8          MR. FITZPATRICK:  Yes, sir, I believe that's the only

9  possible reading of the court's remand with specific

10 instructions to the district court to examine whether it

11 subjects such actions to state law limitations that would

12 apply to similar suits filed in state court, I believe that's

13 why that did it.  And New Jersey is different from all the

14 states that plaintiff's counsel cited.  New Jersey has

15 specifically held that this -- the TCPA does not permit class

16 action treatment under New Jersey law.  And that's why I think

17 the district court made this clear, because the statute itself

18 has this "if otherwise permitted by laws or rules of a court

19 of a state," and that analysis necessarily leads this Court, I

20 believe, to conclude, well, this case was brought in New

21 Jersey and, under the TCPA, and the Third Circuit requires us

22 to make this analysis, we look to state law.  State law is

23 specific on this, it has addressed the issue, it says these

24 cases are not appropriate, therefore, we don't have a basis

25 for applying for permitting it to be handled as a class action

1     matter in this court.  I think it emits of no other reading.

2            THE COURT:  And, Mr. Lewis, anything else before we

3     take a short break?

4            MR. LEWIS:  No, your Honor.

5            THE COURT:  Let's take a break until about 3:20 and

6     then we'll resume.

7            MR. FITZPATRICK:  Thank you, sir.

8             (Brief Recess.)

9            DEPUTY CLERK:  All rise.

10           THE COURT:  Okay.  Be seated, please.

11          Thanks for your patience.  I wanted to take that time

12    to revisit the Third Circuit's decision in its remand of

13    *Landsman & Funk*, and this is a development that occurred while

14    the briefing of this motion was underway but hasn't been

15    addressed by the plaintiff.  The issue in *Landsman & Funk*,

16    which was remanded to Judge Hayden and which she, to my

17    knowledge, has not yet addressed other than in a motion that

18    denied consolidation of similar cases, is the issue raised by

19    the private right of action statute that gives rise to

20    jurisdiction as interpreted by the *Mims* decision of the

21    Supreme Court, and that section is 47, United States Code,

22    Section 227(b)(3)(B), and that reads:  "Private Right of Cause

23    of Action.  A person or entity may, if otherwise permitted by

24    the laws or rules of court of a state, bring in an appropriate

25    court of that State," dropping down to B, "an action to

1    recover for actual monetary loss from such a violation or to

2    receive $500 in damages for each such violation, whichever is

3    greater."

4        And the question remanded, as identified by the Third

5    Circuit, is whether the TCPA subjects class actions that are

6    filed in federal court to the laws and court rules of the

7    state in which they're filed and, if so, which ones.  And that

8    apparently is due to the gloss that the federal court,

9    including the Supreme Court, have placed on the jurisdictional

10   statute which permits the bringing of a TCPA case in state

11   court but is silent as being able to bring it in federal

12   court.

13       I'm uncomfortable going ahead with this class

14   certification motion at the present time.  I'm going to

15   dismiss it without prejudice to its renewal.  I want to give

16   the parties time to do two things; first, to complete

17   discovery that would shed light upon the class action or the

18   class certification issues that have arisen during this

19   briefing, especially the adequacy of the named plaintiff, the

20   class representative and, secondly, as to the admissibility of

21   what should be the key piece of evidence in the case, which is

22   the computer data, but, most importantly, to determine whether

23   this Court has to apply state class action law in determining

24   whether this case should be certified.

25       This may be a unique issue in light of all the federal

 1   courts that have certified such classes, but it does come

 2   after the Third Circuit's remand in a case that appears to be

 3   on point in raising these questions.  And New Jersey law has

 4   only three decisions that I've been able to find so far that

 5   address whether a class action can be maintained or at least

 6   whether this particular class action in those cases could be

 7   maintained for the violation of this type under the TCPA.

 8   And, of course, the one which is quite persuasive is Judge

 9   Carchman's case on behalf of the Appellate Division in *Local*

10   *Baking Products, Inc., vs. Kosher Bagel Munch, Inc.*, 421 N.J.

11   Super. 268, decided by the App. Div. on July 19, 2011, Cert.

12   was denied by the New Jersey Supreme Court in September of

13   2011.  And Judge Carchman cites to unreported decisions that

14   had reached similar conclusions about the non-certifiability

15   of a TCPA class of this sort because of the issues of

16   superiority and I think it was predominance, and that had to

17   do with the need to determine, in his view, or rather in the

18   panel's view, the consent or lack of consent of each

19   recipient.

20           If I'm bound by that, it may be dispositive of the

21   ability ever to certify a class in this case.  If I'm not

22   bound by it but I'm to apply Rule 23 and federal procedural

23   law, then I think that the plaintiffs have presented a fair

24   question that requires my adjudication just like any other

25   class certification motion does.  And, frankly, until the

1  importance of the *Landsman & Funk* case was brought to my

2  attention this afternoon, I was probably leaning more toward

3  granting certification but now I can't.  And I think that the

4  better thing is to start over, to have a short period of

5  discovery, which I'm capping at 60 days, and it will be up to

6  the parties to work out a plan for reasonable discovery in aid

7  of class certification.  I'm really interested in getting at

8  what this plaintiff did, what they knew, what records they

9  have, what their purpose is in seeking to be the class

10 representative, in other words, typical class representative

11 discovery because ultimately I need to determine if the

12 plaintiff is a suitable class representative whether it's

13 under federal law or state law.

14      So I'm, frankly, a little disappointed, an awful lot of

15 work has gone into this already.  I know you're disappointed,

16 you've waited a long time for today for a decision, but I'd

17 rather make the right decision than the wrong one.  But you're

18 not going to have to necessarily refile everything that you've

19 filed already, you can make reference to it in your future

20 briefing.  I'm not trying to make your work more difficult but

21 it gives you a chance, and the plaintiff has the burden, to

22 establish what the law is to be applied and to apply it in a

23 way that persuades the Court to certify the class.  And if

24 that can be done, we'll have a certified class; if it can't,

25 then we won't.

1          Are there any questions about what I've said so far?

2              MR. LEWIS:  Yes, your Honor.

3              THE COURT:  Okay.

4              MR. LEWIS:  Would you like the *Landsman* briefing, I

5     guess what I will call the *Landsman* briefing to begin

6     immediately?

7              THE COURT:  Would that be helpful to the parties or

8     would you rather wait until you see how your discovery pans

9     out?

10             MR. LEWIS:  We think the law is pretty clear, you may

11    file it in state court but that doesn't preclude filing it in

12    federal court.  And we believe that the TCPA, federal TCPA

13    applies not state law procedure rules, we don't.

14             THE COURT:  Why would the Third Circuit then have

15    remanded on that issue?  I mean, it's clear that a TCPA can be

16    filed in federal court.  If I'm reading the *en banc* remand

17    properly, the Third Circuit wasn't prepared to decide what

18    rules apply or what law even applies beyond the TCPA.  So

19    there might be two hurdles to jump through statutorily, one is

20    what's in the TCPA and the other is whatever is in state law,

21    including the court rules that would color the right to

22    maintain such an action.  And perhaps if one gets through both

23    hoops, then you have a successful federal court suit.  But

24    it's something that I want to give the parties an opportunity

25    to brief.

1      If state law were more permissive of this sort of class

2  action, then this would be an interesting question but not a

3  show stopper.  But what I'm seeing under New Jersey state

4  court decisions is that this sort of class action is either

5  strongly disfavored because of the problems identified in

6  Judge Carchman's opinion or even prohibited.

7          MR. LEWIS:  I don't know if *Landsman*, your Honor,

8  applied to persons in one state or in multiple states.  In

9  this case we've got persons in, at a minimum in Philadelphia,

10  in Pennsylvania and New Jersey, at least two states are

11  implicated, maybe more, so that might be a differentiating

12  factor.

13      But putting that aside, it's plaintiff's position that

14  we should start the briefing -- we would like to start the

15  briefing, your Honor, now and we could do an opening class

16  brief on this issue -- an opening brief rather on this issue

17  and he could have time to respond and we could have time to

18  reply.

19          THE COURT:  I think that makes sense.

20      Mr. Fitzpatrick, what I'm considering is this, that the

21  pending motion be dismissed without prejudice, that plaintiffs

22  would have whatever time they need, maybe 30 days to file an

23  opening brief for class certification accompanied by their

24  views of the *Landsman* issue and how it should play out.  You

25  would then have additional time, more than the normal time

1  before your opposition is due, maybe another 60 days from

2  then, and that would give you the time to take whatever

3  discovery is reasonable and relate it to the class

4  certification issues and brief the new issues, at least to me

5  they're new issues, plus anything else that comes up along the

6  way at class certification, then the reply could be due

7  15 days after that or something.  And we could schedule for

8  another argument, and it would probably be around April we

9  would be ready for that argument, and I can put that in the

10  Order that results from today's hearing.

11      Does that make sense?

12      MR. FITZPATRICK:  Yes, I think that's reasonable,

13  your Honor, and I'm in agreement with that.

14      MR. MILSTEIN:  Do we know what the judge is going to

15  do on remand, is there something pending?

16      THE COURT:  Yes, it was remanded to Judge Hayden and

17  the first issue that she confronted is whether seven different

18  cases should be consolidated, and she wrote an opinion that

19  denied consolidation.  I could give you the cite, I think, if

20  I can find it.

21      MR. LEWIS:  We can get to it.

22      MR. MILSTEIN:  I can get it.  I was wondering if

23  there was a motion pending right now that we're waiting on.

24      THE COURT:  I don't know, you can check the PACER

25  docket.

```
 1          MR. MILSTEIN:  Okay.

 2          THE COURT:  It had been briefed, it does mention

 3   that.  This opinion that I'm looking at after the remand came

 4   out on June 22nd and that opinion says that the parties were

 5   briefing the issue at that time.  So I'm sure briefing is

 6   concluded, there could even be a decision.  Her decision

 7   wouldn't -- it would be persuasive but it wouldn't be binding

 8   here on a fellow judge in any event.  But I think that,

 9   coupled with my need to know more to assure the adequacy of

10   the plaintiff itself would be helpful.

11          Anything else before we adjourn?

12          MR. LEWIS:  With regard to the admissibility of the

13   computer data issues, what are the parameters there?  We

14   certainly don't want a situation where counsel decides that he

15   wants to take 15 depositions.  I mean, are you talking about

16   deposition of Caroline Abraham only?

17          MR. FITZPATRICK:  No way.  I want to take the

18   deposition of Brian Wanca, Ryan Kelly, and Caroline Abraham

19   and Joel Abraham, who he represented to you this afternoon is

20   the actual source of the data, and others, I may have others

21   as well.  But I don't see this as limiting me in what I'm

22   required to do at this point and I don't see the basis for any

23   preliminary limitation.

24          THE COURT:  I think that's reasonable, the four that

25   you mentioned.  Maybe you don't need them all but maybe you do
```

1   and maybe you need others, but I'll leave that to you.   And

2   I'll ask counsel to cooperate so that it becomes easier to

3   serve the deponents and get their depositions done.   Hopefully

4   there won't be problems in getting that done.   And it's not an

5   idle exercise, if the class is certified, then I think that

6   sort of discovery goes a long toward the merits itself and it

7   would be useful.   And by the same token the defendant would be

8   permitted to convene the deposition of the designated class

9   representative if you choose to, I'm not requiring these

10   things but I'm giving you an opportunity.

11          MR. FITZPATRICK:   I forgot to mention him, but that's

12   obvious, I certainly want City Select.

13          THE COURT:   I'll enter an Order.   The reasons for the

14   Order I've explained just now on the record as best I can,

15   there won't be a written Opinion, but I will track through in

16   my Order the steps that I'm asking counsel to take and the

17   time line for doing it.

18          MR. LEWIS:   Okay.

19          THE COURT:   And you should see that on the docket on

20   Monday morning.   Okay?   So thank you, everybody.

21          MR. FITZPATRICK:   Thank you, your Honor.

22          MR. LEWIS:   Thank you.

23                  (Proceedings Concluded)

24

25

C E R T I F I C A T E

        I, LISA MARCUS, Official Court Reporter for the
United States District Court for the District of New Jersey,
Certified Shorthand Reporter and Notary Public of the State of
New Jersey, do hereby certify that the foregoing is a true and
accurate transcription of my original stenographic notes to
the best of my ability of the matter hereinbefore set forth.


                        S/Lisa Marcus, CSR
                        LISA MARCUS
                        Official U. S. Reporter
                        N.J. Certificate No. XIO1492

DATE:  January 14, 2013

## $

**$1,250** [1] - 33:10
**$1,500** [1] - 21:5
**$10** [1] - 57:9
**$100** [1] - 55:5
**$5,000** [7] - 28:25, 29:10, 53:24, 54:4, 54:10, 55:20, 56:13
**$500** [2] - 41:25, 61:2

## 0

**08057** [1] - 1:23
**08101** [1] - 1:14

## 1

**10** [1] - 50:14
**10,000** [1] - 43:24
**100** [1] - 45:6
**1000** [1] - 2:4
**11** [2] - 50:14, 56:5
**11-2658** [2] - 1:7, 3:5
**11946** [1] - 38:17
**12** [3] - 8:10, 9:5, 50:14
**13** [1] - 50:15
**134** [1] - 2:3
**14** [2] - 1:14, 69:17
**143** [1] - 43:5
**1492** [1] - 1:25
**15** [3] - 45:15, 66:7, 67:15
**15-minute** [1] - 59:2
**19** [1] - 62:11
**19422** [1] - 2:8

## 2

**20** [3] - 46:5, 46:7, 50:16
**200** [1] - 1:22
**2004** [1] - 57:4
**2006** [1] - 3:24
**2009** [3] - 14:21, 34:6, 56:15
**2010** [2] - 7:19, 56:14
**2011** [3] - 43:4, 62:11, 62:13
**2012** [2] - 1:14, 38:17
**2013** [1] - 69:17
**227(b)(3** [2] - 39:7, 58:14
**227(b)(3)(B** [1] - 60:22
**22nd** [1] - 67:4
**23** [6] - 29:18, 34:2, 36:14, 37:7, 62:22
**23(a** [1] - 4:4
**23(b)(3)** [1] - 4:4
**25** [1] - 50:16
**268** [1] - 62:11
**28** [2] - 7:19, 56:14
**29,000** [2] - 27:1, 40:13
**29,113** [4] - 3:20, 4:10, 11:6, 45:2

## 3

**3.7** [1] - 30:12
**30** [2] - 51:13, 65:22
**30(b)(6** [1] - 49:17
**308** [1] - 1:22
**36-1** [1] - 56:5
**3:20** [1] - 60:5

## 4

**421** [1] - 62:10
**44,000** [2] - 3:22, 49:10
**47** [1] - 60:21
**4TH** [1] - 1:13

## 5

**5** [1] - 14:21
**50** [1] - 55:5
**500** [1] - 11:5

## 6

**60** [2] - 63:5, 66:1
**60602** [1] - 2:4
**640** [1] - 43:20

## 7

**72** [1] - 43:20
**794** [1] - 2:7

## 9

**901(a** [1] - 7:21
**902(11** [2] - 8:10, 9:5

## A

**ABA** [2] - 46:5, 46:8
**ability** [3] - 35:12, 62:21, 69:13
**able** [12] - 4:23, 5:1, 5:18, 26:3, 28:10, 32:6, 35:9, 35:13, 36:10, 48:6, 61:11, 62:4
**Abraham** [26] - 7:20, 8:11, 8:13, 10:3, 12:21, 16:2, 16:13, 28:25, 30:25, 31:4, 32:3, 33:3, 34:19, 47:4, 47:9, 48:7, 52:24, 52:25, 54:14, 54:23, 56:18, 57:2, 57:3, 67:16, 67:18, 67:19
**Abraham's** [5] - 7:25, 9:7, 36:3, 55:9, 55:10
**Abrahams'** [1] - 47:8
**absence** [1] - 36:7
**absolutely** [9] - 5:20, 7:4, 7:7, 32:22,

45:5, 45:19, 49:7, 56:14
**accepted** [1] - 24:13
**accompanied** [3] - 29:11, 36:24, 65:23
**according** [3] - 10:25, 41:18, 57:3
**accounts** [1] - 31:10
**accurate** [2] - 23:6, 69:12
**accuse** [1] - 56:6
**accused** [1] - 55:11
**accusing** [1] - 30:4
**acidulously** [1] - 24:12
**Act** [2] - 47:25, 58:10
**acting** [2] - 22:21, 31:8
**Action** [1] - 60:23
**ACTION** [1] - 1:7
**action** [43] - 12:18, 13:20, 14:6, 16:10, 19:23, 20:4, 21:21, 23:1, 24:25, 26:19, 37:14, 38:9, 39:17, 39:19, 39:20, 39:24, 39:25, 40:14, 41:1, 41:13, 42:3, 42:25, 43:25, 45:13, 45:16, 45:17, 46:10, 51:2, 51:11, 51:19, 51:20, 51:25, 59:16, 59:25, 60:19, 60:25, 61:17, 61:23, 62:5, 62:6, 64:22, 65:2, 65:4
**actions** [6] - 39:9, 39:10, 43:21, 44:1, 59:11, 61:5
**acts** [1] - 29:13
**actual** [6] - 12:18, 34:6, 47:23, 50:1, 61:1, 67:20
**add** [2] - 10:15, 31:2
**addition** [1] - 54:24
**additional** [6] - 3:9, 3:10, 30:23, 37:25, 38:14, 65:25
**address** [5] - 23:15, 28:19, 52:3, 53:22, 62:5
**addressed** [4] - 24:8, 59:23, 60:15, 60:17
**addresses** [1] - 11:6
**adequacy** [9] - 4:20, 5:2, 5:4, 22:2, 22:4, 29:19, 30:2, 61:19, 67:9
**adequate** [2] - 30:12, 45:20
**adjourn** [1] - 67:11
**adjudicating** [1] - 43:24
**adjudication** [2] - 42:7, 62:24
**administration** [1] - 46:20
**admissibility** [10] - 6:25, 7:20, 8:11, 8:12, 8:16, 9:3, 13:3, 52:11, 61:20, 67:12
**admissible** [13] - 6:23, 7:5, 7:6, 8:1, 8:23, 28:13, 33:5, 33:14, 33:16, 33:18, 35:19, 37:9, 37:11
**admission** [2] - 9:6, 29:21
**admitted** [4] - 5:13, 5:15, 5:25, 30:10
**admittedly** [2] - 30:21, 34:12
**adversarial** [1] - 56:18
**advertised** [1] - 11:3
**advertisement** [6] - 3:24, 4:13, 4:19, 47:19, 47:22, 48:12
**advertising** [5] - 27:5, 31:11, 51:7, 51:8
**affidavit** [9] - 33:2, 36:4, 36:5, 36:6, 36:13, 36:15, 36:18, 36:25, 37:1

**affidavits** [3] - 7:17, 36:16, 54:16
**afternoon** [2] - 63:2, 67:19
**agencies** [1] - 46:15
**agent** [1] - 49:6
**ago** [1] - 47:16
**agree** [2] - 7:3, 42:5
**agreed** [1] - 21:5
**agreement** [2] - 57:6, 66:13
**ahead** [1] - 61:13
**aid** [1] - 63:6
**Alan** [1] - 3:18
**ALAN** [1] - 1:21
**allegation** [1] - 13:8
**allegations** [4] - 9:25, 28:16, 47:6, 53:24
**alleged** [8] - 12:20, 12:21, 14:8, 14:10, 21:7, 21:8, 34:7, 34:24
**allegedly** [1] - 27:14
**allow** [1] - 18:23
**allowed** [2] - 25:10, 25:11
**allowing** [1] - 40:9
**almost** [3] - 45:11, 50:17, 51:13
**Altchem** [1] - 7:16
**ambivalent** [1] - 42:18
**American** [1] - 21:13
**analysis** [7] - 7:10, 39:4, 39:18, 39:22, 40:24, 59:19, 59:22
**analyzed** [1] - 8:8
**AND** [1] - 1:11
**Anderson** [18] - 5:7, 5:23, 6:2, 6:5, 14:12, 14:22, 15:25, 16:24, 17:11, 17:25, 18:1, 18:24, 33:8, 33:15, 34:20, 44:8, 44:12, 46:24
**anonymous** [1] - 4:14
**anonymously** [1] - 11:4
**answer** [2] - 21:25, 41:9
**answers** [1] - 41:14
**antagonist** [1] - 46:21
**antagonistic** [1] - 4:24
**antitrust** [1] - 20:8
**anyway** [3] - 14:15, 34:17, 39:24
**apiece** [1] - 55:5
**App** [2] - 38:17, 62:11
**appear** [2] - 11:22, 48:8
**appearance** [10] - 18:21, 19:14, 22:9, 28:22, 29:5, 29:16, 30:15, 30:16, 30:21, 31:16
**appeared** [1] - 9:15
**Appellate** [1] - 62:9
**application** [2] - 13:19, 25:14
**applied** [7] - 58:11, 58:18, 58:19, 58:21, 63:22, 65:8
**applies** [3] - 16:11, 64:13, 64:18
**apply** [8] - 11:21, 39:11, 58:6, 59:12, 61:23, 62:22, 63:22, 64:18
**applying** [1] - 59:25
**appreciate** [1] - 42:8
**appropriate** [6] - 13:6, 19:19, 39:17, 56:10, 59:24, 60:24

**April** [2] - 38:17, 66:8
**area** [1] - 45:19
**argue** [5] - 3:12, 13:3, 22:19, 24:12, 24:18
**argued** [3] - 10:23, 22:12, 22:19
**argues** [1] - 8:14
**arguing** [3] - 30:1, 51:1, 59:6
**argument** [14] - 3:5, 6:10, 12:16, 25:2, 25:4, 29:24, 31:17, 36:11, 36:12, 37:12, 53:13, 58:4, 66:8, 66:9
**arguments** [3] - 10:21, 34:9, 34:25
**arise** [1] - 4:18
**arisen** [1] - 61:18
**Arrow** [1] - 38:25
**artfully** [1] - 25:2
**Ashford** [3] - 44:17, 44:19, 47:5
**aside** [4] - 10:4, 29:15, 54:24, 65:13
**aspect** [1] - 29:18
**aspects** [2] - 5:22, 18:11
**asserted** [1] - 19:5
**assertion** [2] - 23:20, 48:9
**assertions** [1] - 22:17
**assessment** [1] - 46:19
**assets** [1] - 57:11
**assisted** [1] - 30:25
**Associates** [5] - 3:4, 11:12, 12:2, 38:17, 39:13
**ASSOCIATES** [1] - 1:9
**assume** [2] - 17:21, 17:22
**assumes** [1] - 29:24
**assure** [2] - 27:23, 67:9
**assured** [1] - 19:8
**attached** [8] - 14:9, 22:22, 25:11, 34:4, 34:8, 47:20, 47:21, 49:2
**attachment** [2] - 34:10, 34:11
**attacked** [1] - 45:25
**attacks** [1] - 51:23
**attempted** [1] - 29:1
**attention** [3] - 28:20, 42:8, 63:2
**attest** [1] - 25:6
**attestation** [3] - 22:14, 25:12, 36:13
**attesting** [1] - 24:5
**attorney** [20] - 12:11, 12:13, 12:14, 14:11, 16:17, 21:24, 29:1, 29:9, 29:12, 30:17, 36:25, 47:8, 51:6, 55:9, 55:10, 55:17, 56:2, 56:6, 56:7
**attorneys** [18] - 5:25, 16:8, 17:3, 17:14, 17:24, 17:25, 18:1, 22:20, 24:4, 27:19, 30:20, 30:24, 33:8, 33:15, 34:21, 45:4, 45:17, 54:20
**ATTORNEYS** [3] - 1:23, 2:5, 2:8
**attributed** [1] - 48:3
**authentic** [1] - 8:23
**authorities** [3] - 3:9, 3:10, 3:12
**authority** [1] - 46:20
**AUTO** [1] - 1:3
**Auto** [2] - 3:3, 14:23
**automatically** [2] - 29:25, 44:2
**availability** [1] - 17:13

**available** [3] - 9:2, 9:9, 40:22
**avalanche** [2] - 57:9, 57:12
**avoid** [2] - 25:3, 56:8
**aware** [4] - 25:7, 36:17, 59:4, 59:5
**awful** [1] - 63:14
**axes** [1] - 56:3

# B

**B2B** [14] - 6:11, 7:21, 8:17, 8:22, 9:2, 10:3, 27:11, 27:13, 27:14, 33:6, 33:13, 50:2, 50:14, 50:16
**BACINE** [1] - 2:6
**background** [3] - 19:25, 27:2, 45:15
**backup** [1] - 8:7
**Bagel** [2] - 43:4, 62:10
**Baking** [5] - 38:5, 40:5, 43:1, 43:3, 62:10
**ball** [1] - 5:18
**banc** [2] - 42:13, 64:16
**Bar** [5] - 5:13, 14:14, 16:10, 45:5, 45:10
**based** [8] - 15:24, 28:16, 32:10, 34:12, 35:14, 36:1, 37:8, 50:17
**basis** [8] - 9:6, 28:14, 37:20, 40:10, 46:15, 46:18, 59:24, 67:22
**battling** [1] - 55:10
**beat** [1] - 28:18
**became** [1] - 55:18
**become** [1] - 25:11
**becomes** [1] - 68:2
**becoming** [1] - 51:24
**begin** [2] - 3:13, 64:5
**beginning** [1] - 13:23
**behalf** [8] - 3:16, 3:17, 10:8, 22:21, 26:24, 48:12, 49:5, 62:9
**behavior** [1] - 5:23
**behind** [3] - 16:20, 16:21, 54:10
**believes** [1] - 46:24
**Bell** [1] - 2:8
**bereft** [1] - 7:17
**best** [2] - 68:14, 69:13
**better** [2] - 40:7, 63:4
**between** [8] - 4:21, 6:22, 6:24, 31:14, 41:13, 50:16, 55:5, 56:13
**beyond** [3] - 18:21, 34:6, 64:18
**Biggerstaff** [6] - 7:13, 8:8, 33:19, 34:5, 35:2, 47:20
**Biggerstaff's** [3] - 33:19, 34:4, 34:10
**billed** [1] - 27:11
**billing** [1] - 27:10
**bills** [1] - 27:11
**binding** [1] - 67:7
**bit** [1] - 5:2
**blind** [1] - 6:13
**Blue** [1] - 2:8
**Bock** [3] - 3:16, 19:6, 38:7
**BOCK** [1] - 2:2
**bock's** [1] - 17:4
**Bock's** [1] - 19:15

**bogus** [2] - 26:15, 27:1
**book** [1] - 54:1
**BOROFF** [1] - 2:6
**bottom** [6] - 31:18, 32:4, 32:5, 44:23, 51:8, 54:12
**bound** [2] - 62:20, 62:22
**breached** [1] - 46:12
**break** [3] - 59:3, 60:3, 60:5
**Brian** [4] - 14:22, 19:11, 28:2, 67:18
**bribe** [1] - 56:7
**brief** [22] - 8:20, 15:22, 16:20, 17:1, 18:22, 30:25, 33:9, 37:24, 38:6, 40:2, 40:16, 42:12, 43:1, 43:11, 44:7, 44:8, 58:22, 64:25, 65:16, 65:23, 66:4
**Brief** [1] - 60:8
**briefed** [3] - 22:9, 42:15, 67:2
**briefing** [10] - 59:3, 60:14, 61:19, 63:20, 64:4, 64:5, 65:14, 65:15, 67:5
**briefs** [1] - 42:22
**bring** [5] - 28:20, 43:22, 51:18, 60:24, 61:11
**bringing** [1] - 61:10
**brings** [1] - 36:23
**broadcasting** [1] - 55:15
**Brooklyn** [2] - 9:21, 9:23
**brought** [4] - 50:18, 56:21, 59:20, 63:1
**build** [1] - 18:13
**burden** [2] - 28:13, 63:21
**burdensome** [1] - 54:21
**business** [17] - 7:24, 8:2, 8:22, 9:1, 10:18, 11:8, 11:11, 11:12, 12:2, 24:2, 24:16, 24:24, 33:6, 33:13, 40:20, 41:10, 49:18
**Business** [4] - 4:7, 9:11
**businesses** [1] - 11:6
**BY** [3] - 1:21, 2:3, 2:7

## C

**C.S.R** [1] - 1:24
**Callahan** [1] - 55:21
**CAMDEN** [1] - 1:14
**campaign** [2] - 27:5, 27:14
**cannot** [5] - 16:22, 18:22, 25:5, 25:6, 34:1
**capable** [1] - 53:5
**capping** [1] - 63:5
**Carchman** [1] - 62:13
**Carchman's** [2] - 62:9, 65:6
**Caroline** [13] - 7:20, 16:2, 16:12, 28:25, 30:25, 31:4, 32:3, 33:3, 34:19, 36:3, 54:14, 67:16, 67:18
**carried** [1] - 19:24
**carry** [2] - 5:18, 19:23
**carrying** [1] - 27:14
**cart** [1] - 38:11
**carve** [1] - 11:17
**carved** [1] - 11:14
**case** [169] - 3:18, 4:2, 4:8, 4:24, 5:4, 5:8,

5:11, 5:21, 6:13, 6:20, 7:2, 7:8, 7:9, 7:11, 7:15, 7:16, 7:18, 9:8, 9:15, 11:13, 12:11, 12:19, 14:3, 14:4, 14:6, 14:9, 14:18, 15:17, 15:21, 16:12, 16:15, 16:18, 16:23, 17:7, 17:12, 17:17, 17:18, 17:19, 17:22, 17:24, 17:25, 18:1, 18:9, 18:11, 18:14, 18:17, 18:22, 18:25, 19:6, 19:9, 19:10, 19:12, 19:23, 19:24, 19:25, 20:9, 20:13, 20:16, 20:17, 21:2, 21:4, 21:8, 21:9, 21:12, 21:17, 21:20, 21:21, 22:12, 22:13, 22:16, 22:23, 22:24, 23:13, 23:15, 25:13, 26:3, 27:2, 27:8, 28:5, 28:6, 29:23, 30:10, 30:17, 31:3, 31:4, 31:15, 31:22, 32:25, 33:23, 34:17, 34:21, 34:23, 35:8, 36:1, 37:4, 37:17, 38:6, 38:7, 38:8, 38:16, 38:17, 38:22, 38:23, 38:25, 39:5, 39:23, 40:16, 42:3, 42:5, 42:14, 42:24, 43:7, 43:10, 43:20, 44:10, 44:17, 44:19, 45:1, 45:21, 45:22, 45:24, 46:1, 46:2, 46:12, 47:5, 47:7, 47:19, 48:12, 49:8, 49:11, 50:2, 51:15, 51:19, 52:7, 52:8, 52:19, 53:11, 53:13, 54:9, 54:17, 57:7, 57:9, 57:18, 57:19, 57:24, 58:8, 58:18, 59:5, 59:6, 59:20, 61:10, 61:21, 61:24, 62:2, 62:9, 62:21, 63:1, 65:9
**cases** [35] - 4:5, 6:2, 8:19, 19:18, 36:16, 37:5, 39:2, 39:6, 39:16, 39:21, 40:4, 40:14, 42:4, 43:9, 43:23, 44:21, 45:20, 46:25, 49:11, 49:23, 49:25, 50:2, 50:14, 50:21, 53:7, 54:15, 55:7, 55:23, 56:21, 57:1, 57:2, 59:24, 60:18, 62:6, 66:18
**CE** [4] - 45:21, 50:3, 54:8, 54:16
**Center** [1] - 1:21
**cert** [1] - 53:8
**Cert** [1] - 62:11
**certain** [2] - 28:4, 42:5
**certainly** [6] - 13:9, 25:23, 32:22, 52:1, 67:14, 68:12
**certainty** [2] - 34:14, 35:5
**certifiability** [1] - 62:14
**certifiable** [1] - 18:5
**Certificate** [1] - 69:16
**CERTIFICATE** [1] - 1:25
**certification** [44] - 3:7, 3:14, 3:20, 6:11, 6:20, 8:12, 8:18, 9:8, 13:20, 14:1, 14:20, 19:2, 19:3, 19:4, 21:4, 29:5, 31:19, 31:22, 32:9, 32:16, 33:1, 33:3, 33:12, 35:17, 36:17, 37:14, 39:19, 40:10, 40:25, 45:7, 52:7, 52:16, 52:17, 53:2, 53:14, 53:16, 61:14, 61:18, 62:25, 63:3, 63:7, 65:23, 66:4, 66:6
**certified** [15] - 4:3, 5:8, 12:25, 41:3, 41:7, 45:8, 50:14, 50:15, 50:16, 50:17, 50:22, 61:24, 62:1, 63:24, 68:5
**Certified** [1] - 69:11
**certify** [4] - 52:5, 62:21, 63:23, 69:12
**certifying** [3] - 4:6, 6:16, 28:14

**cetera** [1] - 12:4
**chain** [5] - 8:14, 8:15, 33:24, 34:22
**chance** [2] - 37:16, 63:21
**changed** [1] - 8:25
**chapman** [2] - 49:24
**check** [11] - 28:25, 31:25, 53:24, 54:4, 54:11, 54:13, 55:8, 55:20, 56:13, 56:15, 66:24
**checks** [1] - 55:5
**Chicago** [1] - 2:4
**CHIEF** [1] - 1:16
**Chinese** [1] - 18:13
**chip** [1] - 50:10
**choice** [1] - 58:7
**choose** [1] - 68:9
**circuit** [1] - 42:17
**Circuit** [16] - 4:22, 6:14, 15:22, 18:16, 38:14, 38:22, 39:4, 39:15, 39:23, 42:13, 47:2, 58:14, 59:21, 61:5, 64:14, 64:17
**Circuit's** [3] - 44:4, 60:12, 62:2
**circumstance** [1] - 16:11
**circumstances** [6] - 25:15, 29:11, 31:7, 35:1, 36:20, 54:3
**citations** [4] - 4:5, 18:16, 40:2, 55:22
**cite** [3] - 3:9, 39:14, 66:19
**cited** [7] - 7:8, 15:21, 38:6, 40:16, 43:9, 47:4, 59:14
**cites** [2] - 47:4, 62:13
**City** [23] - 3:3, 14:23, 15:15, 22:13, 22:16, 23:11, 23:17, 25:10, 26:15, 26:17, 26:20, 27:22, 27:23, 28:1, 48:13, 49:14, 49:16, 49:22, 52:9, 52:12, 52:19, 52:23, 68:12
**CITY** [1] - 1:3
**civil** [2] - 35:3, 46:16
**Civil** [1] - 3:4
**CIVIL** [1] - 1:7
**claim** [3] - 14:9, 15:12, 27:16
**claimed** [1] - 51:20
**claims** [12] - 4:18, 7:23, 7:24, 21:11, 25:12, 40:6, 40:8, 41:23, 42:7, 43:22, 47:12
**clarified** [2] - 52:14, 52:15
**class** [143] - 1:4, 3:6, 3:13, 3:17, 3:18, 3:20, 3:25, 4:3, 4:10, 4:21, 4:25, 5:8, 5:9, 5:19, 5:24, 6:11, 6:16, 6:20, 8:12, 8:18, 10:9, 11:16, 11:18, 12:18, 12:25, 13:19, 13:21, 13:25, 14:5, 14:17, 14:20, 15:14, 15:23, 16:5, 16:7, 16:9, 18:5, 19:23, 20:4, 20:5, 21:3, 21:4, 21:21, 21:23, 23:1, 25:8, 25:16, 26:7, 26:18, 28:15, 29:5, 30:17, 30:24, 31:1, 31:3, 31:9, 31:19, 31:21, 32:4, 32:9, 32:16, 33:1, 35:17, 35:22, 36:17, 37:14, 37:23, 37:24, 38:4, 38:8, 38:9, 39:17, 39:19, 39:20, 39:24, 39:25, 40:10, 40:12, 40:14, 40:17, 40:25, 41:1, 41:3, 41:4, 41:10, 41:13, 42:3, 42:25, 43:25, 44:21, 44:25, 45:2, 45:7,

45:8, 45:13, 45:16, 45:17, 45:22,
45:23, 51:11, 51:19, 51:20, 51:24,
52:5, 52:7, 52:10, 52:16, 52:17, 53:2,
53:8, 53:14, 53:16, 57:1, 57:20, 58:2,
59:15, 59:25, 61:5, 61:13, 61:17,
61:18, 61:20, 61:23, 62:5, 62:6, 62:15,
62:21, 62:25, 63:7, 63:9, 63:10, 63:12,
63:23, 63:24, 65:1, 65:4, 65:15, 65:23,
66:3, 66:6, 68:5, 68:8
**classes** [2] - 4:6, 62:1
**classification** [1] - 59:7
**clause** [2] - 57:9, 57:12
**clear** [8] - 6:14, 43:17, 47:17, 49:1,
50:21, 59:17, 64:10, 64:15
**cleared** [1] - 45:9
**clearly** [7] - 15:18, 19:24, 23:9, 29:22,
33:14, 34:18, 36:6
**CLERK** [2] - 3:1, 60:9
**client** [9] - 14:14, 26:13, 26:17, 26:22,
27:3, 27:11, 27:17, 50:7
**clients** [2] - 26:24, 31:2
**clock** [1] - 53:18
**close** [3] - 9:21, 30:20, 30:21
**clutter** [1] - 57:14
**co** [5] - 5:10, 5:12, 16:19, 18:8, 30:6
**co-counsel** [5] - 5:10, 5:12, 16:19, 18:8,
30:6
**Code** [1] - 60:21
**collateral** [1] - 46:21
**color** [1] - 64:21
**coming** [1] - 55:7
**common** [1] - 51:10
**commonality** [3] - 4:12, 7:10, 10:17
**commonly** [1] - 10:20
**communications** [1] - 31:13
**company** [1] - 27:5
**competent** [2] - 19:5, 19:6
**complaining** [1] - 36:22
**complaint** [16] - 14:5, 14:9, 14:11, 17:4,
17:5, 22:22, 23:1, 23:16, 23:25, 25:2,
25:4, 25:9, 25:10, 47:21, 49:2
**complete** [4] - 25:8, 36:7, 37:12, 61:16
**completely** [2] - 10:21, 44:15
**completes** [1] - 24:10
**compliance** [1] - 59:7
**comply** [2] - 10:8, 31:15
**complying** [1] - 56:8
**comport** [1] - 38:10
**compression** [1] - 6:12
**computer** [14] - 7:21, 7:22, 8:3, 8:5,
8:17, 13:2, 35:10, 47:7, 48:23, 50:10,
54:24, 55:1, 61:22, 67:13
**computers** [2] - 48:7, 48:10
**concept** [1] - 38:1
**concern** [1] - 51:16
**concert** [1] - 22:21
**conclude** [1] - 59:20
**concluded** [2] - 42:6, 67:6
**Concluded** [1] - 68:23

**conclusion** [2] - 54:5
**conclusions** [1] - 62:14
**concocted** [2] - 24:4, 33:14
**concurrent** [1] - 39:3
**condition** [1] - 58:15
**conduct** [3] - 4:18, 4:23, 46:14
**Conduct** [4] - 15:9, 44:13, 46:4, 46:9
**confer** [1] - 58:25
**conflicting** [1] - 4:20
**confronted** [1] - 66:17
**confused** [1] - 6:21
**Congress** [2] - 48:1, 49:11
**connection** [1] - 56:13
**consent** [6] - 10:20, 10:23, 11:1, 32:9,
62:18
**consequence** [1] - 45:5
**consequences** [1] - 25:3
**consider** [1] - 8:17
**considered** [3] - 3:11, 29:8, 31:8
**considering** [1] - 65:20
**consolidated** [2] - 39:6, 66:18
**consolidation** [2] - 60:18, 66:19
**constitute** [4] - 9:14, 25:12, 33:16, 34:1
**constituted** [1] - 16:6
**constitutes** [1] - 33:17
**Consumer** [1] - 58:9
**contain** [1] - 24:16
**contained** [2] - 14:16, 34:10
**contains** [2] - 14:21, 33:11
**contemporaneous** [1] - 8:25
**contend** [3] - 18:10, 37:19
**contended** [1] - 29:4
**contents** [1] - 35:9
**context** [9] - 8:12, 51:11, 51:25, 55:4,
55:6, 55:20, 56:1, 57:6
**contrary** [1] - 4:2
**controls** [1] - 43:19
**convene** [1] - 68:8
**COOPER** [1] - 1:13
**cooperate** [1] - 68:2
**copies** [1] - 38:18
**copy** [7] - 11:17, 14:24, 23:18, 26:8,
48:20, 49:3, 49:4
**corners** [1] - 35:14
**Corporate** [1] - 1:21
**corporation** [2] - 1:3, 15:11
**correct** [1] - 28:10
**corrupted** [1] - 13:4
**corruption** [2] - 13:9, 13:10
**costs** [1] - 54:22
**counsel** [55] - 4:22, 5:9, 5:10, 5:12,
5:19, 5:25, 13:21, 13:24, 15:23, 16:19,
16:23, 17:6, 17:7, 17:8, 18:4, 18:7,
18:8, 18:24, 19:4, 19:5, 19:7, 19:16,
19:19, 20:25, 21:19, 21:20, 22:3,
22:17, 22:18, 24:18, 29:3, 29:19, 30:2,
30:6, 30:13, 30:17, 32:13, 34:8, 36:9,
36:11, 37:2, 38:7, 44:6, 45:19, 47:22,
51:24, 56:12, 59:14, 67:14, 68:2,

68:16
**counsel's** [1] - 57:24
**countervailing** [1] - 54:2
**country** [3] - 5:21, 18:15, 19:18
**couple** [7] - 10:16, 41:14, 42:9, 47:16,
51:11, 52:2, 53:21
**coupled** [1] - 67:9
**course** [7] - 4:18, 10:10, 21:10, 35:12,
36:22, 55:9, 62:8
**court** [51] - 10:5, 14:5, 15:22, 15:25,
16:7, 16:9, 16:12, 38:18, 38:23, 39:3,
39:5, 39:7, 39:8, 39:11, 39:12, 40:4,
40:8, 40:14, 41:17, 42:24, 43:22, 47:3,
54:5, 54:16, 55:23, 58:4, 58:10, 58:12,
58:16, 59:10, 59:12, 59:17, 59:18,
60:1, 60:24, 60:25, 61:6, 61:8, 61:11,
61:12, 64:11, 64:12, 64:16, 64:21,
64:23, 65:4
**Court** [42] - 3:10, 4:5, 5:11, 5:13, 5:16,
6:14, 7:14, 8:17, 9:19, 10:22, 16:16,
18:12, 18:15, 18:22, 19:8, 20:2, 23:14,
28:14, 28:24, 29:17, 34:12, 34:13,
34:15, 35:21, 37:7, 38:13, 38:18,
38:24, 39:19, 40:2, 47:15, 47:17,
57:24, 58:6, 59:19, 60:21, 61:9, 61:23,
62:12, 63:23, 69:10, 69:11
**COURT** [108] - 1:1, 3:2, 5:6, 5:12, 5:17,
5:22, 6:8, 7:5, 8:3, 9:2, 9:9, 9:13, 9:18,
9:23, 10:10, 10:14, 11:10, 11:16,
11:21, 11:25, 12:7, 12:10, 12:13,
12:24, 13:12, 13:15, 15:2, 17:11,
17:21, 20:3, 20:18, 20:21, 22:2, 22:7,
23:16, 23:22, 24:6, 25:16, 25:19,
25:24, 26:7, 26:13, 26:17, 27:10,
27:16, 27:21, 28:6, 28:9, 28:21, 29:24,
30:4, 31:18, 31:21, 31:24, 32:2, 35:6,
36:14, 38:20, 40:13, 41:3, 41:8, 42:9,
42:11, 42:24, 43:2, 43:6, 43:13, 46:7,
48:14, 48:17, 48:20, 48:25, 49:13,
49:16, 49:21, 50:4, 50:25, 51:13, 52:1,
52:4, 52:21, 53:7, 53:11, 53:23, 54:7,
54:10, 55:24, 56:22, 57:13, 57:16,
57:22, 58:6, 58:13, 58:24, 59:2, 60:2,
60:5, 60:10, 64:3, 64:7, 64:14, 65:19,
66:16, 66:24, 67:2, 67:24, 68:13,
68:19
**Court's** [1] - 10:7
**court's** [2] - 15:23, 59:9
**COURTHOUSE** [1] - 1:12
**courts** [9] - 12:5, 24:13, 39:1, 40:15,
40:23, 41:20, 41:21, 41:24, 42:6,
44:14, 50:15, 54:2, 56:17, 62:1
**covered** [1] - 58:7
**Crabhouse** [5] - 45:21, 50:3, 54:9,
54:17, 56:25
**crafty** [1] - 48:10
**create** [3] - 26:4, 29:15, 46:11
**created** [4] - 23:7, 41:19, 41:21
**creates** [1] - 30:21
**Creative** [6] - 15:21, 18:17, 44:17,

44:19, 44:23, 47:5
**criminal** [1] - 56:2
**criticism** [1] - 5:7
**crystal** [1] - 49:1
**CSR** [1] - 69:14
**cure** [1] - 17:12
**custodian** [1] - 8:13
**custody** [5] - 8:14, 8:15, 8:16, 33:24, 34:22
**CV** [1] - 45:14
**CV's** [1] - 19:8
**Cy's** [5] - 45:21, 50:3, 54:9, 54:16, 56:25

# D

**damages** [1] - 61:2
**data** [11] - 7:21, 7:22, 8:4, 10:3, 13:2, 35:10, 47:7, 50:9, 61:22, 67:13, 67:20
**date** [3] - 3:5, 13:8, 16:21, 22:15, 50:6
**DATE** [1] - 69:17
**dated** [1] - 14:21
**David** [6] - 3:4, 11:12, 12:2, 14:4, 15:5, 15:13
**DAVID** [1] - 1:9
**days** [7] - 3:22, 4:13, 45:21, 63:5, 65:22, 66:1, 66:7
**deal** [1] - 54:20
**dealing** [2] - 54:19, 58:14
**deceased** [1] - 10:12
**deceived** [1] - 45:2
**December** [3] - 7:19, 14:21, 56:14
**DECEMBER** [1] - 1:14
**deceptive** [1] - 44:15
**decide** [2] - 48:21, 64:17
**decided** [3] - 37:18, 38:25, 62:11
**decides** [1] - 67:14
**decision** [8] - 34:2, 47:2, 60:12, 60:20, 63:16, 63:17, 67:6
**decisions** [3] - 62:4, 62:13, 65:4
**declaration** [9] - 7:19, 8:1, 8:11, 9:5, 29:2, 33:5, 34:20, 56:14, 56:15
**deem** [1] - 13:6
**default** [4] - 3:7, 23:5, 56:23, 57:13
**defaulted** [1] - 57:19
**defaulting** [1] - 57:15
**defaults** [1] - 57:18
**defeating** [1] - 31:2
**defeats** [1] - 41:15
**defendant** [19] - 4:1, 4:8, 4:15, 7:13, 7:15, 8:14, 10:17, 11:7, 11:9, 13:1, 31:3, 46:1, 46:23, 47:11, 47:12, 49:5, 53:16, 53:18, 68:7
**defendant's** [4] - 3:7, 7:8, 10:21, 56:12
**DEFENDANTS** [1] - 2:8
**Defendants** [1] - 1:11
**defendants** [9] - 3:8, 5:3, 5:5, 9:10, 12:20, 31:5, 55:3, 56:20, 56:23
**defense** [7] - 24:20, 44:6, 47:4, 47:22, 56:2, 57:24

**defenses** [3] - 24:20, 24:21, 38:12
**deferred** [1] - 53:8
**deficiencies** [1] - 13:19
**deficiency** [2] - 23:2, 37:12
**deficient** [5] - 7:17, 20:14, 32:13, 33:4, 33:24
**definition** [8] - 11:16, 11:18, 11:23, 12:1, 37:23, 37:24, 38:9
**definitive** [1] - 42:21
**definitively** [1] - 15:18
**defrauded** [1] - 51:21
**degree** [1] - 35:4
**delay** [1] - 56:8
**demonstrable** [1] - 21:21
**demonstrably** [2] - 20:14, 21:22
**denial** [2] - 39:25, 40:10
**denied** [3] - 60:18, 62:12, 66:19
**deny** [4] - 32:15, 37:15, 37:16, 39:19
**dep** [1] - 9:11
**deponents** [1] - 68:3
**deposed** [5] - 19:25, 29:23, 30:11, 32:4, 32:5
**deposition** [10] - 9:7, 25:16, 30:7, 47:10, 52:23, 52:24, 67:16, 67:18, 68:8
**depositions** [3] - 10:6, 67:15, 68:3
**DEPUTY** [2] - 3:1, 60:9
**derived** [1] - 33:20
**designated** [1] - 68:8
**designed** [2] - 46:13, 46:15
**desired** [1] - 5:11
**desires** [1] - 5:16
**detail** [1] - 7:18
**detailed** [2] - 7:12, 33:9
**determination** [2] - 35:22, 40:16
**determine** [6] - 32:21, 48:6, 58:7, 61:22, 62:17, 63:11
**determined** [2] - 44:20, 44:24
**determining** [1] - 61:23
**development** [1] - 60:13
**device** [1] - 42:3
**devices** [2] - 33:11, 42:4
**different** [7] - 5:24, 38:9, 44:18, 45:1, 56:3, 59:13, 66:17
**differentiating** [1] - 65:11
**difficult** [1] - 63:20
**diploma** [2] - 55:13, 57:8
**direct** [1] - 29:15
**directed** [1] - 5:7
**direction** [1] - 12:6
**directly** [1] - 39:20
**directory** [1] - 40:22
**disappointed** [2] - 63:14, 63:15
**disciplinary** [3] - 16:10, 46:15, 46:20
**disclose** [1] - 16:3
**disclosure** [2] - 18:12, 24:17
**discovery** [12] - 12:25, 13:1, 13:5, 14:7, 26:2, 31:22, 32:16, 32:17, 32:21, 32:22, 52:9, 53:9, 53:16, 56:9, 61:17,

63:5, 63:6, 63:11, 64:8, 66:3, 68:6
**disfavored** [1] - 65:5
**dismiss** [2] - 13:25, 61:15
**dismissed** [3] - 37:20, 52:7, 65:21
**dispositive** [1] - 62:20
**dispute** [1] - 51:6
**disputes** [2] - 43:24, 56:16
**distinctions** [1] - 41:13
**DISTRICT** [3] - 1:1, 1:1, 1:17
**district** [10] - 15:22, 15:25, 16:6, 16:9, 16:12, 38:23, 39:6, 39:12, 59:10, 59:17
**District** [4] - 9:24, 10:5, 69:11
**Div** [1] - 62:11
**Division** [1] - 62:9
**docket** [3] - 31:25, 66:25, 68:19
**doctored** [1] - 26:22
**document** [7] - 3:21, 3:24, 15:1, 19:11, 38:21, 54:13, 54:18
**Document** [1] - 56:5
**documents** [5] - 54:23, 55:1
**done** [12] - 6:5, 19:18, 21:24, 25:24, 53:1, 56:25, 57:19, 57:20, 63:24, 68:3, 68:4
**dory** [1] - 32:8
**doubt** [2] - 20:2, 48:25
**doubtful** [2] - 26:20, 26:21
**down** [8] - 47:2, 47:16, 55:7, 55:14, 57:18, 57:19, 59:4, 60:25
**drafted** [1] - 33:7
**drawn** [1] - 25:3
**dreams** [1] - 33:5
**dressing** [1] - 36:9
**Dreyer** [1] - 7:15
**Drive** [1] - 1:22
**drive** [14] - 6:11, 8:5, 8:7, 16:1, 27:25, 33:21, 34:13, 34:19, 36:4, 47:20, 48:13, 48:15, 48:17, 54:24
**driver's** [2] - 55:14, 57:7
**drop** [1] - 12:10
**dropping** [1] - 60:25
**due** [3] - 61:8, 66:1, 66:6
**duped** [1] - 16:13
**during** [6] - 9:7, 12:4, 21:10, 35:12, 55:17, 61:18
**During** [2] - 44:20, 44:24
**duty** [2] - 6:15, 46:12
**DVD's** [2] - 8:7, 27:25

# E

**earth** [1] - 49:9
**easier** [3] - 14:25, 43:22, 68:2
**easily** [1] - 20:6
**Eastern** [2] - 9:24, 10:5
**Eastgate** [1] - 1:21
**easy** [1] - 52:14
**economic** [1] - 7:9
**effect** [1] - 39:7

efficiency [1] - 43:24
eight [1] - 46:25
either [4] - 6:21, 20:10, 41:4, 65:4
element [3] - 24:7, 26:2, 39:4
elemental [1] - 34:22
elements [4] - 24:24, 37:8, 37:25, 38:10
eligible [1] - 41:5
eliminate [1] - 39:14
emits [1] - 60:1
EMMETT [1] - 2:7
en [2] - 42:13, 64:16
end [2] - 40:7, 45:7
enforcement [1] - 46:22
engaged [1] - 6:5
enter [1] - 68:13
entire [1] - 49:8
entirely [1] - 24:3
entitled [1] - 15:18
entity [2] - 15:13, 60:23
equipped [1] - 45:20
especially [4] - 26:10, 28:16, 34:22, 61:19
ESQUIRE [3] - 1:21, 2:3, 2:7
essentially [2] - 3:21, 12:21
establish [2] - 8:24, 63:22
established [5] - 8:15, 10:18, 11:8, 11:11
et [1] - 12:4
ethical [5] - 15:20, 16:6, 16:17, 20:1, 54:19
ethically [1] - 5:22
ethics [2] - 6:2, 54:1
event [2] - 32:12, 67:8
everywhere [1] - 24:13
evidence [38] - 4:2, 6:23, 7:1, 7:22, 7:23, 8:17, 10:22, 13:4, 13:9, 16:16, 20:2, 22:20, 23:9, 23:14, 27:4, 27:8, 28:14, 29:4, 32:25, 33:5, 33:7, 33:16, 33:18, 34:1, 35:19, 35:21, 36:8, 37:9, 45:1, 50:13, 50:17, 50:22, 52:12, 53:20, 57:4, 61:21
Evidence [3] - 7:21, 8:10, 9:4
exact [6] - 7:11, 15:4, 45:11, 48:16, 50:22, 58:2
exactly [3] - 40:18, 48:19, 48:24
examination [2] - 33:21, 34:12
examine [2] - 6:1, 59:10
example [1] - 54:16
examples [1] - 51:12
exception [3] - 7:25, 8:2, 10:19
exchange [2] - 41:12, 53:14
exclude [1] - 42:2
excluded [1] - 12:14
exercise [1] - 68:5
exhaustive [1] - 7:12
Exhibit [5] - 14:19, 19:11, 44:7, 44:9
exhibit [1] - 34:8
existed [1] - 53:19
existence [1] - 14:17

existing [2] - 15:14, 16:5
exists [1] - 35:23
expect [1] - 48:18
expectation [1] - 27:6
expense [1] - 52:18
expenses [1] - 54:22
experience [11] - 19:23, 20:3, 20:24, 21:18, 21:21, 21:25, 22:1, 45:14, 45:16, 45:18, 50:4
experienced [7] - 4:23, 4:25, 21:1, 21:23, 29:9, 29:12, 45:19
expert [12] - 7:9, 7:14, 8:8, 33:18, 35:2, 35:7, 35:15, 35:25, 36:9, 48:6, 56:4
experts [2] - 48:5, 50:11
explained [1] - 68:14
explains [1] - 56:10
explanation [1] - 56:25
explore [4] - 13:1, 13:5, 13:6, 30:14
express [1] - 4:1
extraordinary [2] - 19:1, 19:7
extremely [1] - 7:12

## F

F.3d [1] - 43:20
face [5] - 15:7, 33:15, 33:19, 37:10, 44:2
facet [1] - 19:2
facially [2] - 23:1, 33:4
facie [2] - 16:6, 16:16
fact [13] - 16:19, 16:20, 17:4, 22:18, 24:3, 24:17, 29:12, 34:9, 40:6, 45:15, 46:18, 48:4, 56:3
factor [1] - 65:12
facts [4] - 36:5, 36:24, 37:6, 54:3
factual [8] - 16:12, 16:17, 27:2, 35:22, 35:24, 36:8, 36:13, 37:1
fair [1] - 62:23
fairly [4] - 20:5, 20:6, 51:17, 54:20
faith [1] - 28:14
false [2] - 45:6, 56:14
familiar [3] - 10:4, 43:6, 53:7
far [5] - 7:3, 37:4, 50:11, 62:4, 64:1
fashion [1] - 12:20
fashioned [1] - 42:5
fast [1] - 45:12
fatal [1] - 30:21
favor [1] - 45:22
Fax [1] - 47:25
fax [58] - 3:21, 4:7, 10:24, 11:1, 14:8, 14:10, 15:16, 20:11, 22:22, 22:25, 23:2, 23:3, 23:5, 23:6, 23:11, 23:17, 23:18, 24:5, 24:15, 24:25, 25:11, 25:13, 26:14, 26:20, 26:21, 27:18, 31:10, 32:7, 34:23, 38:4, 40:19, 47:18, 47:23, 48:4, 48:8, 48:9, 48:11, 48:14, 48:18, 48:21, 48:22, 49:1, 49:18, 49:23, 49:24, 49:25, 50:1, 50:4, 50:9, 50:12, 50:13, 55:15, 55:19
faxed [2] - 3:24, 11:3

faxers [1] - 48:10
faxes [16] - 3:22, 11:2, 11:3, 11:22, 12:4, 21:8, 24:22, 27:12, 28:3, 28:4, 28:17, 34:7, 43:24, 47:24, 48:1, 49:10
faxings [1] - 23:19
FCC [1] - 10:25
feasible [2] - 26:9, 26:10, 26:12
federal [29] - 4:5, 7:21, 13:22, 20:24, 39:1, 39:2, 39:9, 43:19, 50:15, 56:17, 57:25, 58:4, 58:10, 58:11, 58:17, 58:21, 61:6, 61:8, 61:11, 61:25, 62:22, 63:13, 64:12, 64:16, 64:23
Federal [3] - 8:10, 9:4, 58:9
feet [1] - 17:24
fellow [1] - 67:8
few [2] - 44:5, 56:3
file [3] - 56:22, 64:11, 65:22
filed [15] - 13:24, 19:2, 19:4, 21:3, 31:6, 31:24, 34:11, 37:3, 37:4, 39:11, 59:12, 61:6, 61:7, 63:19, 64:16
filing [2] - 40:8, 64:11
filings [1] - 17:3
final [1] - 57:23
Financial [1] - 38:25
findings [1] - 37:8
firewall [1] - 18:13
firm [15] - 3:19, 5:9, 5:18, 5:19, 6:5, 14:12, 14:22, 15:4, 16:20, 17:6, 18:3, 19:15, 19:16, 46:25, 49:14
firmly [1] - 6:4
firms [1] - 18:14
first [9] - 15:24, 16:13, 26:1, 26:2, 38:24, 39:2, 45:7, 61:16, 66:17
Fitzpatrick [14] - 3:11, 13:16, 43:16, 44:14, 45:4, 45:11, 45:13, 45:24, 50:19, 50:24, 51:1, 58:23, 59:6, 65:20
FITZPATRICK [49] - 2:7, 13:17, 15:3, 17:15, 18:6, 20:12, 20:19, 20:22, 22:5, 22:8, 23:20, 23:24, 24:11, 25:18, 25:22, 26:1, 26:10, 26:16, 27:2, 27:13, 27:20, 27:22, 28:8, 28:12, 28:22, 30:1, 30:8, 31:20, 31:23, 32:1, 32:11, 35:20, 36:19, 38:22, 40:15, 41:6, 41:18, 42:10, 42:15, 43:1, 43:3, 43:8, 43:17, 59:8, 60:7, 66:12, 67:17, 68:11, 68:21
Fitzpatrick's [2] - 6:10, 48:8
five [1] - 57:9
fix [1] - 11:16
FLAMM [1] - 2:6
follow [1] - 57:24
FOR [4] - 1:1, 1:23, 2:5, 2:8
force [1] - 47:9
Ford [1] - 57:4
foregoing [1] - 69:12
forgot [1] - 68:11
form [1] - 12:20
formerly [1] - 15:4
forth [1] - 69:13
forward [11] - 6:1, 18:23, 20:4, 25:9, 32:20, 32:24, 34:21, 35:19, 35:21,

36:8, 52:8
**foundation** [5] - 9:3, 35:24, 36:2, 36:3
**four** [4] - 35:14, 58:20, 58:21, 67:24
**four-year** [1] - 58:21
**frankly** [3] - 9:16, 62:25, 63:14
**free** [2] - 26:5, 26:6
**FRIDAY** [1] - 1:14
**front** [3] - 10:2, 36:23, 54:17
**FTC** [2] - 55:10, 55:14
**fuller** [1] - 32:10
**fully** [3] - 7:20, 8:22, 53:5
**fundamentally** [1] - 51:1
**Funk** [8] - 38:16, 42:13, 43:20, 57:24, 59:4, 60:13, 60:15, 63:1
**furnished** [2] - 35:15, 35:16
**furthermore** [1] - 46:16
**future** [2] - 25:25, 63:19

### G

**gate** [1] - 8:20
**gatekeeper** [1] - 8:20
**gather** [1] - 53:20
**general** [2] - 36:20, 55:20
**generally** [1] - 4:23
**genesis** [2] - 14:3
**Georgia** [1] - 47:15
**GERRY** [1] - 1:13
**Gettleman** [3] - 44:16, 45:7, 47:5
**given** [3] - 10:23, 33:20, 55:22
**glad** [1] - 45:9
**gloss** [1] - 61:8
**glossed** [1] - 29:6
**goings** [1] - 55:19
**government** [2] - 57:5, 57:10
**grant** [2] - 29:4, 33:1
**granting** [1] - 63:3
**great** [3] - 26:23, 45:9, 50:20
**greater** [2] - 43:23, 61:3
**green** [1] - 11:2
**grind** [1] - 56:3
**Grove** [1] - 39:13
**guarantee** [1] - 23:8
**guess** [2] - 48:17, 64:5
**guidance** [1] - 46:13

### H

**hac** [5] - 5:14, 5:15, 6:1, 19:22, 29:21
**hair** [1] - 45:16
**half** [1] - 56:16
**hand** [2] - 6:17, 6:22
**handle** [2] - 19:5, 20:25
**handled** [2] - 40:9, 59:25
**handling** [1] - 21:17
**hands** [2] - 15:1, 38:21
**happy** [2] - 42:23, 43:11
**hard** [14] - 6:11, 8:5, 8:7, 16:1, 27:25,

33:21, 34:13, 34:19, 36:4, 47:19, 48:13, 48:15, 48:17, 54:24
**harm** [2] - 40:1, 40:11
**harmed** [1] - 51:3
**Harper** [1] - 1:22
**Hatch** [1] - 3:17
**HATCH** [1] - 2:2
**Hayden** [2] - 60:16, 66:16
**head** [1] - 48:5
**header** [7] - 23:2, 27:21, 48:4, 48:8, 48:9, 48:18, 48:22
**headers** [3] - 23:3, 23:5, 23:6
**hear** [1] - 12:8
**heard** [3] - 22:15, 34:15, 46:23
**hearing** [3] - 22:16, 45:8, 66:10
**held** [4] - 39:20, 40:5, 41:21, 59:15
**helpful** [2] - 64:7, 67:10
**hereby** [2] - 39:6, 69:12
**hereinbefore** [1] - 69:13
**high** [1] - 41:23
**highly** [1] - 37:10
**himself** [4] - 19:20, 29:1, 55:24, 56:3
**hire** [1] - 27:13
**hired** [2] - 4:8, 27:4
**history** [1] - 55:13
**hobgoblins** [1] - 52:13
**holding** [2] - 32:2, 38:16
**Holding** [1] - 21:13
**honestly** [1] - 54:20
**Honor** [68] - 3:15, 3:20, 4:10, 4:17, 5:20, 6:3, 7:4, 7:7, 8:9, 8:23, 9:16, 10:1, 10:13, 11:19, 11:24, 12:8, 13:14, 14:24, 16:19, 18:8, 19:17, 20:17, 22:1, 22:15, 22:25, 28:18, 29:4, 32:12, 32:14, 32:22, 33:16, 34:23, 36:23, 37:18, 37:21, 37:25, 42:3, 42:22, 43:11, 43:18, 44:5, 45:11, 45:18, 45:23, 45:25, 46:4, 47:1, 47:20, 47:23, 48:16, 48:19, 49:7, 49:15, 49:20, 50:18, 51:10, 52:3, 53:6, 54:9, 54:18, 59:1, 60:4, 64:2, 65:7, 65:15, 66:13, 68:21
**Honor's** [5] - 19:17, 21:12, 30:18, 34:16, 42:8
**HONORABLE** [1] - 1:16
**hoops** [1] - 64:23
**hopefully** [1] - 68:3
**horse** [1] - 38:11
**hostile** [2] - 9:16, 56:20
**house** [1] - 55:2
**huge** [1] - 29:5
**hunky** [1] - 32:8
**hunky-dory** [1] - 32:8
**hurdles** [1] - 46:19
**hurt** [1] - 57:20
**husband** [1] - 55:12
**Hydrogen** [1] - 7:8
**hypothetical** [1] - 10:22

### I

**i.e** [2] - 39:9, 41:22
**idea** [3] - 27:3, 34:14, 51:14
**identical** [1] - 16:5
**identified** [4] - 21:14, 34:6, 61:4, 65:5
**identify** [1] - 21:3
**idle** [1] - 68:5
**Ill** [2] - 1:9, 2:7
**IL** [1] - 2:4
**illegal** [4] - 55:12, 55:13, 57:7
**illegitimate** [1] - 16:1
**Illinois** [1] - 14:22
**immediately** [2] - 55:15, 64:6
**implicated** [1] - 65:11
**implied** [2] - 10:23, 11:1
**implodes** [1] - 52:19
**imply** [1] - 46:20
**implying** [2] - 15:14
**importance** [1] - 63:1
**important** [1] - 7:1
**importantly** [1] - 61:22
**impractical** [1] - 4:11
**improper** [4] - 29:13, 51:16, 56:7, 56:11
**improprieties** [1] - 13:20
**impropriety** [12] - 18:18, 18:21, 19:13, 19:14, 22:9, 28:23, 29:6, 29:15, 29:16, 30:15, 30:22, 31:17
**inadequate** [1] - 30:16
**INC** [2] - 1:3, 1:9
**Inc** [5] - 3:4, 43:4, 62:10
**inclined** [1] - 32:15
**including** [3] - 17:13, 61:9, 64:21
**inconsequential** [1] - 28:15
**Incorporated** [1] - 3:4
**incorrect** [1] - 10:25
**incurred** [1] - 54:23
**indeed** [2] - 20:16, 43:25
**indicate** [1] - 13:21
**indicated** [8] - 13:18, 14:2, 16:20, 16:25, 18:8, 18:21, 19:21, 38:15
**indicates** [5] - 22:1, 23:1, 27:9, 37:24, 38:6
**indication** [1] - 19:22
**indifferent** [1] - 51:2
**individual** [3] - 20:5, 43:21, 44:1
**individualized** [3] - 40:18, 40:24, 41:2
**individually** [2] - 1:4, 44:3
**individuals** [1] - 41:14
**ineligible** [1] - 41:5
**inevitably** [1] - 16:22
**inference** [1] - 14:16
**Info** [2] - 4:9, 4:15
**information** [12] - 23:6, 23:12, 27:7, 33:11, 33:20, 33:22, 33:23, 33:24, 34:14, 35:11, 35:16, 40:21
**initial** [1] - 15:23
**innumerable** [1] - 56:16

**inquired** [1] - 50:7
**inquiry** [3] - 17:17, 40:18
**instance** [1] - 27:10
**institutionalized** [1] - 10:12
**instructions** [1] - 59:10
**instructive** [1] - 46:6
**integrity** [1] - 27:18
**intention** [1] - 54:10
**interconnections** [2] - 30:19, 30:20
**interest** [4] - 4:25, 22:18, 36:7, 36:12
**interested** [1] - 63:7
**interesting** [1] - 65:2
**interests** [3] - 4:21, 31:1, 31:9
**Internet** [1] - 40:22
**interpretation** [2] - 28:9, 59:5
**interpreted** [1] - 60:20
**intertwined** [1] - 16:22
**introducing** [1] - 6:23
**investigation** [2] - 44:20, 44:24
**invitation** [2] - 4:1, 10:19
**invoked** [1] - 46:17
**involve** [1] - 18:3
**involved** [3] - 18:9, 18:11, 28:17
**involvement** [1] - 16:23
**involves** [1] - 40:17
**involving** [4] - 4:6, 4:7, 29:2, 43:24
**issue** [30] - 5:4, 8:14, 10:17, 10:24, 12:9, 12:10, 17:13, 17:22, 25:3, 25:19, 25:22, 38:24, 39:12, 43:11, 44:4, 47:7, 47:18, 51:15, 54:3, 59:4, 59:23, 60:15, 60:18, 61:25, 64:15, 65:16, 65:24, 66:17, 67:5
**issues** [15] - 17:12, 18:2, 20:23, 32:18, 47:1, 51:9, 52:22, 54:24, 56:9, 61:18, 62:15, 66:4, 66:5, 67:13
**iteration** [3] - 14:4, 15:6, 20:15
**itself** [8] - 8:20, 9:5, 46:10, 47:12, 47:14, 59:17, 67:10, 68:6

### J

**January** [1] - 69:17
**JBS** [1] - 1:7
**JEROME** [1] - 1:16
**JERSEY** [2] - 1:1, 1:14
**Jersey** [24] - 1:3, 14:14, 15:8, 15:10, 15:11, 17:9, 39:20, 39:22, 40:4, 41:20, 42:12, 43:4, 57:25, 58:4, 59:13, 59:14, 59:16, 59:21, 62:3, 62:12, 65:3, 65:10, 69:11, 69:12
**Jersey's** [1] - 58:6
**Joel** [2] - 47:8, 55:4, 67:19
**JOHN** [1] - 1:13
**joinder** [1] - 4:11
**joined** [1] - 3:18
**Judge** [11] - 10:2, 45:6, 47:5, 54:17, 55:20, 55:21, 60:16, 62:8, 62:13, 65:6, 66:16
**JUDGE** [2] - 1:16, 1:17

**judge** [5] - 6:15, 44:16, 54:8, 66:14, 67:8
**judgment** [7] - 6:18, 6:21, 6:24, 28:7, 35:18, 42:1, 52:6
**judgments** [1] - 45:23
**judicial** [1] - 18:15
**July** [1] - 62:11
**jump** [1] - 64:19
**June** [2] - 56:15, 67:4
**junk** [7] - 11:2, 15:16, 47:25, 48:9, 49:10, 55:15, 55:19
**Junk** [1] - 47:25
**jurisdiction** [4] - 10:7, 39:1, 39:3, 60:20
**jurisdictional** [2] - 38:25, 61:9

### K

**keep** [3] - 31:12, 34:17, 50:4
**keeping** [2] - 8:20, 31:15
**Kelly** [30] - 6:4, 12:9, 14:11, 14:13, 15:4, 15:12, 17:16, 22:24, 28:2, 28:4, 29:22, 29:25, 30:6, 30:7, 30:10, 31:14, 33:10, 33:12, 33:14, 33:21, 33:22, 34:15, 36:3, 36:4, 36:6, 46:24, 52:24, 54:15, 67:18
**Kelly's** [1] - 12:23
**Kennelly** [3] - 54:8, 54:17, 55:21
**kept** [2] - 17:11, 49:24
**key** [1] - 61:21
**kind** [3] - 10:3, 20:9, 51:15
**knowledge** [1] - 60:17
**known** [6] - 10:20, 18:19, 18:20, 19:11, 29:14, 30:9
**knows** [4] - 26:11, 33:22, 34:23, 37:6
**KOHL** [1] - 1:20
**Kosher** [2] - 43:4, 62:10

### L

**lack** [2] - 36:18, 62:18
**lacked** [2] - 7:9, 27:21
**laid** [1] - 17:24
**Landsman** [12] - 38:16, 42:13, 43:20, 57:23, 59:4, 60:13, 60:15, 63:1, 64:4, 64:5, 65:7, 65:24
**language** [8] - 27:18, 38:2, 38:3, 39:9, 44:25, 47:14, 58:17
**large** [1] - 41:16
**largest** [1] - 55:12
**last** [5] - 22:13, 22:24, 38:17, 47:2, 53:12
**lasted** [1] - 21:9
**lastly** [1] - 38:13
**late** [2] - 3:23, 5:17
**law** [35] - 6:4, 10:8, 14:22, 15:4, 32:14, 33:25, 39:10, 39:18, 39:22, 42:12, 42:20, 42:21, 43:19, 48:1, 57:25, 58:4, 58:7, 58:9, 59:11, 59:16, 59:22, 61:23, 62:3, 62:23, 63:13, 63:22, 64:10,

64:13, 64:18, 64:20, 65:1
**lawful** [1] - 27:7
**laws** [6] - 39:8, 55:16, 58:16, 59:18, 60:24, 61:6
**lawsuit** [1] - 15:7
**lawyer** [3] - 46:11, 46:19, 51:18
**lawyer's** [1] - 46:19
**lawyers** [1] - 46:13
**lay** [1] - 9:3
**leads** [2] - 31:17, 59:19
**leaning** [1] - 63:2
**learned** [2] - 14:7, 22:23
**learns** [1] - 57:10
**least** [7] - 7:1, 46:25, 48:6, 53:15, 62:5, 65:10, 66:4
**leave** [1] - 68:1
**legal** [9] - 20:23, 20:24, 21:15, 21:18, 36:11, 36:12, 41:22, 46:12, 54:1
**legislature** [1] - 41:19
**legitimate** [4] - 25:4, 27:4, 27:5, 31:8
**lengths** [1] - 19:7
**less** [1] - 45:16
**letter** [23] - 14:15, 14:16, 14:21, 15:7, 15:8, 15:10, 15:11, 16:5, 34:5, 34:11, 44:8, 44:11, 44:15, 44:16, 44:17, 44:18, 44:19, 44:23, 45:3, 45:5, 51:8
**letterhead** [1] - 17:8
**Lewis** [15] - 3:14, 3:16, 13:15, 16:18, 18:8, 18:19, 19:18, 19:21, 20:14, 29:14, 30:19, 34:16, 37:22, 43:15, 60:2
**LEWIS** [62] - 2:3, 3:15, 5:10, 5:15, 5:20, 6:3, 7:4, 7:7, 8:7, 9:4, 9:12, 9:14, 9:20, 9:25, 10:13, 10:16, 11:14, 11:19, 11:24, 12:5, 12:8, 12:12, 12:16, 13:8, 13:14, 43:18, 46:8, 48:16, 48:19, 48:24, 49:7, 49:15, 49:20, 49:22, 50:9, 51:10, 51:23, 52:2, 52:20, 53:4, 53:10, 53:21, 53:24, 54:8, 54:12, 56:1, 56:24, 57:15, 57:17, 57:23, 58:8, 58:19, 59:1, 60:4, 64:2, 64:4, 64:16, 65:7, 66:21, 67:12, 68:18, 68:22
**LEXIS** [2] - 38:17, 43:5
**liability** [4] - 20:6, 20:9, 24:19, 46:16
**license** [2] - 55:14, 57:7
**licensed** [1] - 15:9
**light** [8] - 11:2, 20:9, 20:16, 39:12, 42:19, 45:24, 61:17, 61:25
**likely** [3] - 7:5, 44:21, 44:25
**limitation** [1] - 67:23
**limitations** [7] - 21:11, 39:10, 40:3, 58:20, 58:22, 59:11
**limiting** [1] - 67:21
**limits** [1] - 29:25
**line** [1] - 68:17
**LISA** [1] - 1:24, 69:10, 69:15
**list** [3] - 4:9, 26:14, 26:25
**lists** [3] - 4:6, 4:14, 11:4
**literally** [1] - 53:25
**litigated** [2] - 32:10, 55:8

**litigation** [11] - 5:1, 16:21, 18:12, 21:9, 21:10, 29:21, 33:7, 35:13, 44:3, 55:19
**live** [2] - 11:25, 12:5
**lives** [2] - 9:20, 54:21
**LLC** [1] - 2:2
**Local** [5] - 38:5, 40:5, 43:1, 43:3, 62:9
**look** [4] - 6:25, 39:18, 42:20, 59:22
**looked** [3] - 9:22, 51:9, 54:3
**looking** [1] - 67:3
**loose** [1] - 45:12
**loosely** [1] - 37:2
**lose** [1] - 21:14
**loss** [1] - 61:1
**low** [2] - 20:6, 41:22

## M

**machines** [5] - 23:3, 48:11, 50:4, 50:9, 50:12
**maintain** [1] - 64:22
**maintained** [3] - 42:25, 62:5, 62:7
**majority** [1] - 5:3
**malpractice** [1] - 20:8
**maneuver** [1] - 21:16
**manifestly** [1] - 24:14
**manner** [2] - 27:15, 51:5
**manufactured** [5] - 22:22, 22:23, 22:24, 26:22, 27:19
**March** [1] - 3:23
**MARCUS** [3] - 1:24, 69:10, 69:15
**Marcus** [1] - 69:14
**marketing** [4] - 44:8, 44:11, 44:15, 45:3
**mass** [1] - 23:19
**mastermind** [1] - 55:12
**masterminding** [1] - 31:10
**material** [7] - 12:9, 17:16, 29:23, 30:11, 34:18, 51:7, 51:8
**Matsumoto** [1] - 10:2
**matter** [11] - 3:3, 21:19, 28:25, 32:14, 33:23, 33:25, 45:15, 48:11, 49:3, 60:1, 69:13
**matters** [6] - 12:18, 21:18, 37:3, 50:12, 55:15, 55:17
**McKnight** [1] - 55:22
**mean** [5] - 28:9, 28:18, 56:20, 64:15, 67:15
**meaning** [1] - 24:19
**means** [3] - 10:7, 15:25, 41:6
**mechanism** [1] - 42:7
**medical** [1] - 20:7
**meets** [1] - 4:3
**member** [7] - 14:13, 20:5, 21:3, 40:11, 41:9, 44:21, 44:25
**members** [9] - 3:25, 4:11, 4:21, 5:13, 11:13, 21:23, 31:1, 41:3, 58:2
**membership** [1] - 40:17
**memo** [2] - 34:4, 54:13
**memorandum** [2] - 13:24, 14:20
**mention** [3] - 8:3, 67:2, 68:11

**mentioned** [1] - 67:25
**mere** [2] - 6:22, 51:6
**merely** [1] - 35:23
**merits** [6] - 6:13, 6:15, 9:7, 12:18, 40:19, 68:6
**met** [4] - 4:17, 4:20, 49:13, 49:14
**middle** [1] - 3:24
**might** [4] - 10:24, 32:8, 64:19, 65:11
**MILEY** [1] - 1:9
**Miley** [1] - 13:6
**million** [1] - 57:9
**MILSTEIN** [4] - 1:21, 66:14, 66:22, 67:1
**Milstein** [14] - 3:18, 17:5, 18:19, 19:2, 19:20, 21:2, 21:22, 29:14, 29:21, 30:2, 30:4, 31:5, 45:18, 56:22
**Milstein's** [4] - 5:19, 19:16, 20:15, 21:15
**Mims** [6] - 38:24, 38:25, 39:13, 42:19, 43:18, 60:20
**mind** [2] - 30:5, 52:22
**mine** [1] - 14:24
**mini** [1] - 6:12
**minimized** [1] - 29:7
**minimum** [3] - 20:12, 30:16, 65:9
**minute** [2] - 43:14, 58:25
**misconduct** [8] - 6:6, 10:1, 12:19, 12:20, 46:24, 47:3, 47:4, 48:2
**misconstruction** [1] - 24:12
**misleading** [4] - 14:16, 15:12, 15:19, 16:4
**missing** [1] - 36:7
**mistakenly** [1] - 24:18
**model** [3] - 7:10, 46:4, 46:9
**moment** [1] - 6:10
**Monday** [1] - 68:20
**monetary** [1] - 61:1
**money** [4] - 15:18, 26:6, 57:10
**Montessori** [3] - 15:21, 18:17, 44:23
**months** [4] - 50:6, 53:12, 53:18, 53:19
**Moorestown** [1] - 1:23
**morning** [1] - 68:20
**most** [6] - 6:25, 45:18, 50:1, 50:9, 50:12, 61:22
**mother** [1] - 52:24
**MOTION** [1] - 1:8
**motion** [46] - 3:6, 3:7, 3:13, 6:11, 6:18, 6:20, 13:25, 14:2, 14:20, 19:2, 19:3, 19:4, 19:22, 28:7, 29:5, 31:2, 31:3, 31:7, 31:8, 31:24, 32:3, 32:15, 32:19, 33:25, 34:9, 35:17, 35:18, 36:18, 36:23, 37:13, 39:19, 39:25, 40:10, 52:6, 53:2, 53:15, 56:23, 60:14, 60:17, 61:14, 62:25, 65:21, 66:23
**motions** [3] - 3:6, 3:9, 37:3
**motives** [2] - 30:14
**move** [1] - 57:1
**moved** [1] - 29:21
**MR** [112] - 3:15, 5:10, 5:15, 5:20, 6:3, 7:4, 7:7, 8:7, 9:4, 9:12, 9:14, 9:20, 9:25, 10:13, 10:16, 11:14, 11:19,

11:24, 12:5, 12:8, 12:12, 12:16, 13:8, 13:14, 13:17, 15:3, 17:15, 18:6, 20:12, 20:19, 20:22, 22:5, 22:8, 23:20, 23:24, 24:11, 25:18, 25:22, 26:1, 26:10, 26:16, 27:2, 27:13, 27:20, 27:22, 28:8, 28:12, 28:22, 30:1, 30:8, 31:20, 31:23, 32:1, 32:11, 35:20, 36:19, 38:22, 40:15, 41:6, 41:18, 42:10, 42:15, 43:1, 43:3, 43:8, 43:17, 43:18, 46:8, 48:16, 48:19, 48:24, 49:7, 49:15, 49:20, 49:22, 50:9, 51:10, 51:23, 52:2, 52:20, 53:4, 53:10, 53:21, 53:24, 54:8, 54:12, 56:1, 56:24, 57:15, 57:17, 57:23, 58:8, 58:19, 59:1, 59:8, 60:4, 60:7, 64:2, 64:4, 64:10, 65:7, 66:12, 66:14, 66:21, 66:22, 67:1, 67:12, 67:17, 68:11, 68:18, 68:21, 68:22
**multiple** [1] - 65:8
**Munch** [2] - 43:4, 62:10
**municipal** [1] - 41:17
**must** [3] - 22:12, 29:17, 30:9
**muster** [1] - 39:24

## N

**N.J** [2] - 62:10, 69:16
**name** [6] - 3:16, 11:7, 17:4, 17:5, 25:10, 43:2
**named** [10] - 14:7, 14:10, 14:11, 14:13, 15:5, 21:5, 23:21, 25:6, 28:3, 61:19
**names** [1] - 11:5
**nation** [3] - 5:1, 11:3, 56:17
**nation's** [1] - 55:16
**necessarily** [8] - 24:25, 25:9, 25:12, 38:11, 40:17, 43:23, 59:19, 63:18
**necessary** [5] - 6:8, 10:7, 24:7, 42:11, 52:25
**need** [14] - 9:23, 12:14, 30:14, 38:13, 50:13, 53:21, 58:25, 59:2, 62:17, 63:11, 65:22, 67:9, 67:25, 68:1
**needed** [2] - 9:9, 9:10
**never** [13] - 4:15, 9:21, 14:6, 16:14, 19:12, 21:3, 23:12, 30:10, 33:13, 35:2, 39:24, 47:21, 50:24
**NEW** [2] - 1:1, 1:14
**new** [2] - 66:4, 66:5
**New** [27] - 1:3, 9:24, 10:5, 14:14, 15:8, 15:10, 15:11, 17:9, 39:20, 39:22, 40:4, 41:20, 42:12, 43:4, 57:25, 58:4, 58:6, 59:13, 59:14, 59:16, 59:20, 62:3, 62:12, 65:3, 65:10, 69:11, 69:12
**Newberg** [1] - 51:23
**next** [3] - 23:15, 31:17, 37:15
**nil** [1] - 41:17
**nine** [1] - 53:19
**NJ** [1] - 1:23
**NO** [1] - 1:7
**nobody** [3] - 22:16, 54:4, 57:3
**nobody's** [1] - 50:20

nominated [1] - 14:5
non [4] - 14:14, 43:7, 43:9, 62:14
non-certifiability [1] - 62:14
non-client [1] - 14:14
non-precedential [2] - 43:7, 43:9
none [3] - 20:13, 33:3
nonetheless [1] - 16:7
normal [1] - 65:25
Notary [1] - 69:11
note [1] - 38:7
noted [2] - 30:24, 51:23
notes [3] - 22:5, 58:24, 69:12
nothing [2] - 8:23, 56:11
notice [2] - 18:15, 52:17
November [1] - 47:2
nuisance [2] - 41:24, 41:25
number [7] - 3:6, 10:24, 11:1, 17:10,
    28:16, 40:23, 58:2
numbers [3] - 4:7, 11:6, 41:16
numerosity [1] - 4:10
numerous [3] - 4:5, 54:2, 54:15

O

oath [1] - 41:7
objection [1] - 57:20
obtain [1] - 37:13
obtained [2] - 16:1, 40:23
obvious [1] - 68:12
obviously [1] - 18:14
occasion [1] - 53:10
occurred [3] - 14:18, 29:14, 60:13
occurring [1] - 4:13
OF [1] - 1:1
offended [1] - 55:24
offered [1] - 7:13
offering [1] - 56:7
Official [2] - 69:10, 69:15
OFFICIAL [1] - 1:25
old [1] - 53:11
ONE [1] - 1:13
one [36] - 6:16, 6:22, 8:19, 10:23, 12:3,
    17:10, 17:13, 19:22, 22:8, 22:11,
    22:13, 22:14, 27:8, 29:19, 30:6, 33:11,
    33:22, 35:3, 35:5, 38:1, 40:14, 42:17,
    44:21, 45:18, 48:20, 49:10, 51:17,
    52:6, 53:17, 57:23, 62:8, 63:17, 64:19,
    64:22, 65:8
one's [3] - 10:24, 11:1, 33:4
ones [4] - 21:8, 24:8, 39:12, 61:7
opening [3] - 65:15, 65:16, 65:23
Opinion [1] - 68:15
opinion [13] - 44:10, 44:11, 47:16,
    47:20, 48:22, 53:25, 54:2, 56:5, 58:8,
    65:6, 66:18, 67:3, 67:4
opinions [2] - 48:21, 50:19
opportunity [3] - 3:11, 13:1, 13:5, 35:7,
    64:24, 68:10
opposed [2] - 57:16, 57:17

opposing [2] - 31:7, 46:17
opposite [1] - 7:11
opposition [4] - 14:2, 19:21, 56:23, 66:1
oral [2] - 3:5, 53:13
order [9] - 10:2, 15:5, 15:13, 19:15,
    25:3, 28:15, 37:13, 41:9, 52:17
Order [4] - 66:10, 68:13, 68:14, 68:16
ordered [1] - 10:2
ordinary [1] - 36:22
original [2] - 47:23, 69:12
Orthopedic [1] - 39:13
otherwise [6] - 32:22, 39:8, 41:16,
    58:16, 59:18, 60:23
ought [2] - 51:9, 53:1
out-of-state [1] - 51:5
outfit [1] - 4:9
outlier [1] - 50:21
outside [1] - 53:14
overcome [1] - 19:15
overly [1] - 54:21
oversight [1] - 21:16
own [4] - 19:11, 31:9, 40:9, 41:25

P

PA [1] - 2:8
PACER [1] - 66:24
pack [1] - 49:24
Page [1] - 56:5
pages [2] - 11:5, 50:5
Painter [3] - 53:25, 56:4, 56:9
Painter's [3] - 44:9, 44:11, 56:5
panel's [1] - 62:18
pans [1] - 64:8
papers [1] - 53:4
paragraph [1] - 42:17
parameters [1] - 67:13
part [4] - 16:17, 20:14, 20:15, 41:12
participate [1] - 41:5
particular [7] - 13:21, 17:3, 18:10,
    18:16, 38:15, 41:21, 62:6
partied [1] - 9:15
parties [10] - 16:3, 22:18, 42:11, 46:17,
    54:19, 61:16, 63:6, 64:7, 64:24, 67:4
party [11] - 3:8, 4:14, 11:4, 27:16, 31:2,
    31:5, 36:6, 36:25, 56:21, 56:21, 57:2
pass [1] - 39:24
past [1] - 5:23
path [1] - 52:15
patience [1] - 60:11
pay [1] - 9:13, 27:11
payment [4] - 21:5, 33:10, 56:6, 56:7
payoff [1] - 29:2, 29:8
PC [2] - 1:20, 2:6
peek [1] - 6:15
penalty [1] - 41:23
pending [3] - 65:21, 66:15, 66:23
Penllyn [1] - 2:7
penniless [1] - 57:3

Pennsylvania [3] - 58:3, 65:10
people [5] - 19:24, 21:14, 22:21, 41:16,
    58:3
percent [1] - 45:6
perfectly [2] - 56:10, 56:24
perhaps [1] - 64:22
period [8] - 3:23, 4:14, 12:4, 12:24,
    31:21, 55:4, 63:4
permission [2] - 4:1, 10:20
permissive [1] - 65:1
permit [4] - 18:3, 25:8, 29:4, 59:15
permits [1] - 61:10
permitted [6] - 39:8, 39:21, 58:16,
    59:18, 60:23, 68:8
permitting [1] - 59:25
Peroxide [1] - 7:8
perpetrating [1] - 57:8
person [3] - 38:2, 38:3, 60:23
personally [1] - 49:20
persons [6] - 1:5, 3:21, 12:1, 45:2, 65:8,
    65:9
persuades [1] - 63:23
persuasive [3] - 50:19, 62:8, 67:7
perversion [1] - 25:8
phase [2] - 9:7, 16:25
Philadelphia [1] - 65:9
phone [1] - 11:6
picture [1] - 24:10
piece [3] - 7:1, 33:17, 61:21
Pike [1] - 2:7
pike [1] - 55:7
pillars [1] - 33:25
Pipe [1] - 21:13
pitch [1] - 51:7
place [2] - 6:24, 39:2
placed [3] - 58:15, 59:6, 61:9
plaintiff [44] - 3:9, 3:17, 3:25, 4:21, 4:24,
    11:25, 14:7, 14:10, 14:13, 15:5, 15:6,
    15:17, 21:6, 23:21, 23:22, 23:24,
    23:25, 24:4, 24:21, 25:5, 25:6, 26:18,
    28:3, 29:3, 36:21, 38:8, 40:1, 49:3,
    49:4, 49:5, 49:8, 49:21, 51:2, 51:17,
    51:18, 51:19, 52:5, 53:17, 60:15,
    61:19, 63:8, 63:12, 63:21, 67:10
plaintiff's [14] - 3:6, 4:17, 13:24, 14:19,
    23:1, 24:18, 25:9, 28:13, 32:13, 35:11,
    36:9, 36:11, 59:14, 65:13
Plaintiffs [1] - 1:6
PLAINTIFFS [2] - 1:23, 2:5
plaintiffs [15] - 6:18, 7:9, 7:12, 7:16,
    19:9, 24:12, 35:9, 35:13, 37:2, 40:4,
    40:7, 43:25, 44:2, 62:23, 65:21
plan [1] - 63:6
play [3] - 5:8, 7:25, 65:24
playing [1] - 45:12
PLAZA [1] - 1:13
pleadings [2] - 6:22, 57:14
plenty [1] - 36:15
plus [2] - 49:10, 66:5

**PODOLSKY** [1] - 1:20
**point** [20] - 15:24, 16:13, 16:14, 18:12, 23:9, 28:12, 28:18, 29:20, 30:9, 32:8, 34:3, 34:25, 35:23, 37:21, 38:13, 40:1, 43:25, 55:18, 62:3, 67:22
**pointed** [5] - 17:1, 28:24, 29:9, 40:15, 44:6
**pointing** [2] - 16:15, 19:1
**points** [4] - 15:24, 28:20, 44:5, 53:21
**position** [3] - 26:23, 40:7, 65:13
**possession** [1] - 34:18
**possibility** [2] - 24:4, 42:2
**possible** [3] - 45:3, 49:22, 59:9
**possibly** [3] - 31:6, 34:1, 49:12
**post** [1] - 9:8
**post-certification** [1] - 9:8
**power** [1] - 9:18
**practice** [1] - 15:10
**Preamble** [2] - 46:5, 46:8
**precedential** [2] - 43:7, 43:9
**precedents** [1] - 59:7
**preclude** [3] - 16:8, 38:11, 64:11
**predominance** [1] - 62:16
**prejudice** [3] - 52:8, 61:15, 65:21
**preliminary** [1] - 67:23
**premature** [2] - 32:3, 52:22
**preparation** [1] - 53:1
**prepare** [1] - 52:25
**prepared** [1] - 64:17
**preponderance** [3] - 28:13, 32:25, 34:1
**present** [2] - 37:18, 61:14
**presented** [6] - 32:13, 32:18, 37:9, 39:16, 51:9, 62:23
**presumption** [1] - 46:11
**pretty** [3] - 6:14, 46:2, 64:10
**prevalent** [1] - 51:24
**prevent** [1] - 13:7
**previously** [3] - 15:12, 17:6, 30:25
**prima** [2] - 16:6, 16:16
**primarily** [1] - 4:6
**print** [3] - 23:3, 23:5, 23:6
**printed** [2] - 23:10, 23:11
**printout** [1] - 8:4
**private** [1] - 60:19
**Private** [1] - 60:22
**pro** [5] - 5:14, 5:15, 6:1, 19:22, 29:21
**problem** [3] - 25:25, 30:23, 57:15
**problems** [5] - 10:11, 20:1, 20:24, 65:5, 68:4
**procedural** [5] - 8:18, 12:18, 46:18, 58:10, 62:22
**procedurally** [1] - 7:17
**procedure** [2] - 35:3, 64:13
**proceed** [1] - 16:23
**proceeding** [1] - 46:21
**proceedings** [1] - 68:23
**process** [1] - 54:14
**procured** [1] - 4:9
**produce** [1] - 45:6

**produced** [10] - 4:2, 7:12, 7:16, 7:19, 11:5, 47:8, 50:1, 50:23, 57:4
**Products** [2] - 43:4, 62:10
**Professional** [4] - 15:9, 44:13, 46:4, 46:9
**professional** [1] - 44:13
**professor** [1] - 56:9
**Professor** [6] - 44:9, 44:11, 51:23, 53:25, 56:3, 56:5
**programmed** [1] - 48:7
**prohibited** [1] - 65:6
**prohibits** [1] - 29:17
**promised** [2] - 16:2, 26:6
**promises** [2] - 31:14
**proof** [4] - 34:22, 47:13, 49:8, 50:2
**prop** [1] - 33:7
**proper** [5] - 37:14, 37:24, 38:3, 38:4, 38:5
**properly** [3] - 18:22, 19:9, 64:17
**proponent** [2] - 7:23, 7:24
**proposed** [6] - 13:21, 25:16, 30:23, 37:23, 38:2, 38:4
**proposes** [1] - 30:17
**propounded** [2] - 35:6, 35:25
**prosecuted** [1] - 14:6
**prospect** [1] - 41:16
**protect** [1] - 57:1
**protected** [1] - 44:2
**Protection** [2] - 47:25, 58:10
**prove** [7] - 28:10, 35:9, 35:12, 35:13, 35:14, 49:8, 49:21
**proved** [1] - 5:1
**provide** [3] - 46:13, 46:14, 47:17
**provided** [2] - 4:5, 10:22
**Public** [1] - 69:11
**publicly** [1] - 40:22
**publishing** [2] - 10:23, 11:1
**purchase** [4] - 4:8, 11:4, 51:19, 51:21
**purchased** [2] - 4:6, 4:14
**pure** [1] - 47:6
**purely** [1] - 10:21
**purpose** [3] - 12:22, 46:16, 63:9
**purposes** [1] - 35:7
**pursued** [1] - 17:22
**pursuing** [1] - 44:22
**put** [6] - 6:19, 20:25, 29:25, 38:11, 57:8, 66:9
**putative** [15] - 3:17, 14:5, 21:23, 31:1, 31:9, 35:22, 38:8, 39:2, 40:1, 40:4, 40:7, 40:11, 40:17, 45:2
**puts** [1] - 20:17
**putting** [1] - 65:13

### Q

**qualified** [2] - 4:23, 4:25
**qualify** [1] - 35:2
**questionable** [1] - 51:5
**questionnaire** [1] - 41:4

**questions** [11] - 13:12, 34:16, 37:22, 41:8, 41:12, 41:15, 42:9, 52:11, 52:13, 62:3, 64:1
**quite** [9] - 9:16, 17:1, 26:9, 26:10, 26:11, 38:9, 44:5, 56:2, 62:8
**quote** [6] - 6:19, 7:17, 15:15, 18:24, 19:3, 23:13, 33:18
**quoted** [2] - 7:15, 8:19
**quotes** [1] - 45:11
**quoting** [1] - 56:4

### R

**raise** [1] - 29:20
**raised** [3] - 37:22, 51:15, 60:18
**raising** [2] - 17:12, 62:3
**rampant** [1] - 19:14
**ran** [1] - 21:11
**RANDALL** [1] - 1:9
**Randall** [3] - 3:4, 11:12, 12:2
**rat** [1] - 49:24
**rate** [1] - 8:22
**rather** [7] - 40:14, 41:7, 52:5, 62:17, 63:17, 64:8, 65:16
**RAYMOND** [1] - 1:9
**re** [1] - 7:8
**reached** [1] - 62:14
**reading** [4] - 12:1, 59:9, 60:1, 64:16
**reads** [1] - 60:22
**ready** [1] - 66:9
**real** [6] - 18:13, 22:18, 36:21, 36:22, 51:16, 51:17
**reality** [1] - 18:7
**really** [6] - 8:8, 23:14, 30:13, 42:8, 48:11, 63:7
**reason** [6] - 6:1, 13:3, 27:6, 31:12, 44:1, 45:25, 48:1, 49:12
**reasonable** [7] - 35:4, 54:22, 56:24, 63:6, 66:3, 66:12, 67:24
**reasonably** [1] - 29:9
**reasons** [3] - 6:6, 31:13, 68:13
**rebuttal** [3] - 7:14, 44:5, 54:2
**receipt** [7] - 14:9, 24:6, 24:10, 47:12, 47:13, 47:15, 49:12
**receive** [4] - 11:2, 15:18, 40:19, 61:2
**received** [28] - 3:21, 15:15, 15:16, 20:11, 23:4, 23:11, 23:17, 24:1, 24:5, 24:22, 25:1, 25:7, 25:13, 25:20, 26:5, 28:3, 28:11, 32:7, 36:16, 38:3, 38:5, 47:18, 49:4, 49:18, 50:1, 50:8, 51:4
**receiving** [3] - 26:8, 55:5, 56:6
**recent** [1] - 38:15
**recently** [1] - 51:17
**Recess** [1] - 60:8
**recipient** [3] - 29:7, 34:24, 62:19
**recipients** [3] - 21:7, 27:1, 34:7
**reconsider** [1] - 39:12
**record** [39] - 7:23, 8:24, 13:20, 18:4, 18:7, 18:24, 19:4, 19:13, 19:16, 20:2,

21:19, 21:20, 22:1, 22:12, 22:15, 22:20, 23:8, 26:24, 27:3, 27:12, 28:25, 30:3, 30:19, 31:4, 31:13, 32:10, 32:20, 32:25, 33:6, 33:13, 33:23, 36:24, 37:4, 38:8, 48:15, 50:5, 50:7, 68:14

**records** [9] - 7:25, 8:2, 8:13, 8:22, 9:1, 47:9, 55:1, 55:3, 63:8

**recover** [1] - 61:1

**recovery** [1] - 41:5

**reference** [3] - 14:25, 36:16, 63:19

**referenced** [1] - 8:6

**references** [1] - 22:25

**referred** [3] - 16:10, 45:4, 49:2

**refile** [1] - 63:18

**reflect** [1] - 18:7

**regard** [6] - 6:6, 10:21, 48:3, 55:18, 55:19, 67:12

**regarding** [2] - 12:17, 54:4

**regulating** [1] - 46:14

**reiterated** [1] - 40:24

**rejected** [1] - 36:17

**relate** [2] - 12:17, 66:3

**relates** [1] - 12:19

**relationship** [13] - 11:8, 11:11, 11:12, 12:3, 17:7, 24:2, 24:9, 24:16, 24:24, 40:20, 41:11, 49:18, 56:18

**relationships** [1] - 10:19

**relatively** [2] - 41:22, 41:23

**Reliable** [1] - 55:21

**reliable** [3] - 35:21, 37:9, 37:10

**reliance** [1] - 6:22

**reluctant** [1] - 53:17

**remain** [1] - 18:25

**remand** [8] - 16:12, 47:6, 59:9, 60:12, 62:2, 64:16, 66:15, 67:3

**remanded** [8] - 15:22, 38:23, 39:5, 39:6, 60:16, 61:4, 64:15, 66:16

**remedy** [1] - 41:22

**remember** [3] - 15:16, 26:8, 51:14

**renewal** [1] - 61:15

**renewed** [1] - 53:2

**replica** [2] - 48:15, 48:16

**reply** [7] - 13:24, 14:19, 34:4, 44:7, 44:8, 65:18, 66:6

**report** [16] - 7:13, 33:18, 33:19, 34:4, 34:6, 34:8, 34:12, 35:2, 35:4, 35:7, 35:15, 35:16, 35:25, 36:2, 36:10

**Reporter** [3] - 69:10, 69:11, 69:15

**REPORTER** [1] - 1:25

**represent** [3] - 19:9, 31:6

**representation** [2] - 26:19, 30:24

**representations** [2] - 17:2, 37:1

**representative** [12] - 1:4, 16:7, 25:17, 26:7, 32:5, 52:10, 55:18, 61:20, 63:10, 63:12, 68:9

**represented** [4] - 17:6, 21:22, 34:9, 67:19

**representing** [1] - 16:8

**represents** [1] - 36:24

**requested** [3] - 37:13, 38:9, 58:23

**requests** [2] - 53:6, 56:9

**require** [5] - 21:18, 24:21, 24:25, 37:25, 54:19

**required** [19] - 12:14, 20:4, 25:5, 32:12, 32:21, 32:23, 34:2, 35:18, 35:20, 36:15, 37:13, 38:14, 39:4, 39:22, 40:19, 40:24, 42:13, 42:20, 67:22

**requirement** [1] - 42:16

**requirements** [1] - 4:4

**requires** [15] - 4:22, 6:25, 7:22, 20:25, 24:3, 33:1, 37:7, 38:1, 39:18, 47:13, 59:7, 59:21, 62:24

**requiring** [1] - 68:9

**resented** [1] - 29:8

**resolution** [2] - 39:7, 40:6

**resolve** [2] - 25:22, 26:12

**resolved** [1] - 25:19

**respond** [2] - 41:6, 65:17

**responded** [1] - 32:19

**responding** [1] - 19:17

**response** [4] - 13:18, 34:16, 35:23, 37:14

**responsible** [1] - 31:10

**rest** [1] - 33:25

**result** [3] - 13:24, 21:15, 28:16

**resulted** [1] - 31:11

**results** [1] - 66:10

**resume** [1] - 60:6

**retain** [3] - 48:21, 48:22, 50:9

**retrieval** [2] - 54:13, 54:18

**retrieve** [1] - 55:2

**retrieving** [1] - 54:23

**return** [3] - 3:5, 6:9, 41:4

**revealed** [1] - 26:4

**reversed** [1] - 16:14

**review** [3] - 34:13, 38:14, 58:24

**reviewed** [4] - 4:16, 54:8, 55:21, 55:22

**revisit** [1] - 60:12

**rhetorical** [1] - 20:21

**Richard** [1] - 44:9

**rights** [1] - 21:15

**rise** [4] - 3:1, 46:10, 60:9, 60:19

**Robert** [2] - 7:13, 8:8

**role** [3] - 5:7, 5:11, 5:24

**room** [1] - 45:17

**ROSE** [1] - 1:20

**Rubin** [7] - 55:9, 55:16, 55:18, 55:24, 56:1, 56:2

**rule** [11] - 7:25, 8:2, 10:1, 10:8, 10:20, 20:24, 20:25, 36:20, 46:10, 46:18, 46:22

**Rule** [10] - 4:4, 9:4, 29:18, 30:12, 34:2, 36:14, 37:7, 62:22

**ruled** [1] - 40:3

**rules** [18] - 13:22, 15:20, 35:3, 39:8, 46:9, 46:13, 46:16, 54:19, 57:25, 58:10, 58:11, 58:16, 59:18, 60:24, 61:6, 64:13, 64:18, 64:21

**Rules** [6] - 7:21, 8:10, 15:9, 44:13, 46:4, 46:8

**Ryan** [15] - 6:4, 12:9, 14:11, 15:4, 29:22, 30:9, 33:20, 33:22, 34:15, 36:3, 36:4, 36:6, 52:23, 67:18

### S

**S/Lisa** [1] - 69:14

**Sales** [2] - 3:3, 14:23

**SALES** [1] - 1:3

**Salle** [1] - 2:3

**sanctioning** [1] - 46:19

**satisfied** [2] - 4:10, 4:12

**save** [1] - 26:8

**saw** [1] - 27:12

**schedule** [1] - 66:7

**scheme** [3] - 55:13, 55:14, 57:8

**scientific** [1] - 35:5

**seated** [2] - 3:2, 60:10

**second** [2] - 16:14, 22:6

**secondly** [2] - 16:4, 61:20

**section** [5] - 5:3, 46:7, 54:13, 58:13, 60:21

**Section** [4] - 39:7, 46:5, 58:14, 60:22

**see** [8] - 13:11, 22:5, 52:1, 59:3, 64:8, 67:21, 67:22, 68:19

**seeing** [2] - 51:25, 65:3

**seek** [2] - 3:20, 46:22

**seeking** [1] - 63:9

**seem** [2] - 18:3, 24:6

**SELECT** [1] - 1:3

**Select** [22] - 3:3, 14:23, 15:15, 22:13, 22:16, 23:11, 23:17, 26:15, 26:17, 26:20, 27:22, 27:23, 28:2, 48:13, 49:14, 49:16, 49:22, 52:9, 52:12, 52:19, 52:23, 68:12

**Select's** [1] - 25:10

**self** [1] - 46:19

**self-assessment** [1] - 46:19

**selling** [1] - 55:13

**send** [3] - 24:14, 24:15, 47:14

**sender** [1] - 40:21

**sender's** [1] - 23:5

**sending** [4] - 24:9, 24:14, 29:10, 56:7

**sense** [3] - 58:5, 65:19, 66:11

**sent** [28] - 3:25, 4:13, 11:3, 12:3, 14:15, 15:10, 23:4, 23:19, 23:23, 24:8, 26:14, 26:20, 26:21, 26:24, 26:25, 28:4, 28:25, 29:7, 33:8, 35:12, 38:3, 38:5, 44:12, 47:18, 49:6, 49:10, 52:12, 55:8

**separate** [1] - 3:22

**September** [1] - 62:12

**serious** [3] - 13:19, 13:20, 20:1

**serve** [5] - 5:10, 5:11, 9:5, 9:24, 68:3

**served** [1] - 31:4

**services** [1] - 33:10

**set** [2] - 54:25, 69:13

**setting** [2] - 41:1, 41:2

**settle** [1] - 57:7
**settled** [2] - 45:22, 55:11
**seven** [1] - 66:17
**Seventh** [3] - 15:22, 18:16, 47:2
**Shady** [1] - 39:13
**shed** [1] - 61:17
**Sherman** [1] - 3:19
**SHERMAN** [1] - 1:20
**short** [2] - 60:3, 63:4
**Shorthand** [1] - 69:11
**show** [5] - 10:2, 22:20, 28:13, 36:10, 65:3
**showed** [1] - 31:13
**showing** [7] - 7:22, 20:15, 24:22, 24:25, 25:5, 37:13, 47:22
**shown** [4] - 5:21, 17:7, 20:6, 20:7
**shows** [4] - 10:6, 23:9, 33:7
**shred** [1] - 27:8
**shut** [2] - 6:19, 55:14
**sic** [1] - 43:20
**side** [2] - 9:10, 56:20
**sign** [6] - 15:6, 15:13, 30:5, 33:9, 34:19, 52:16
**signed** [1] - 51:18
**significant** [3] - 20:23, 21:18, 22:10
**significantly** [1] - 44:18
**silent** [1] - 61:11
**Silverstein** [1] - 3:19
**SIMANDLE** [1] - 1:16
**similar** [4] - 39:11, 59:12, 60:18, 62:14
**similarly** [1] - 1:5
**simple** [2] - 41:14, 46:3
**simply** [1] - 36:18
**single** [4] - 11:7, 21:3, 43:25, 47:3
**situated** [1] - 1:5
**situation** [2] - 7:11, 67:14
**six** [7] - 3:22, 3:23, 4:13, 26:11, 53:12, 53:19
**six-week** [2] - 3:23, 4:13
**skeptical** [1] - 57:6
**Skinder** [1] - 38:16
**Skinder-Strauss** [1] - 38:16
**slight** [2] - 41:24, 41:25
**SLIVERSTEIN** [1] - 1:20
**slowing** [2] - 57:18, 57:19
**slur** [1] - 19:21
**small** [3] - 40:8, 41:23, 43:22
**solicit** [1] - 14:14
**solicitation** [12] - 14:15, 15:8, 15:10, 15:11, 16:5, 17:19, 17:23, 26:5, 31:11, 32:6, 44:22, 51:16
**solicited** [4] - 14:12, 25:20, 27:15, 51:5
**Solutions** [2] - 4:7, 9:1
**someone** [7] - 11:11, 18:4, 20:10, 23:12, 36:23, 41:8, 49:13
**sometimes** [1] - 55:3
**somewhere** [3] - 6:21, 50:16, 55:5
**son** [1] - 31:4
**soon** [2] - 26:3, 26:4

**sophisticated** [1] - 20:8
**sophistry** [1] - 47:6
**sorry** [4] - 13:25, 26:16, 53:11, 54:9
**sort** [10] - 13:10, 49:19, 50:8, 53:8, 53:15, 56:13, 62:15, 65:1, 65:4, 68:6
**soul** [1] - 49:9
**sound** [1] - 50:19
**source** [2] - 14:8, 67:20
**sources** [1] - 35:11
**specific** [3] - 37:8, 59:9, 59:23
**specifically** [6] - 40:5, 43:21, 44:22, 45:8, 56:4, 59:15
**specified** [4] - 23:13, 23:18, 24:21, 39:23
**specify** [1] - 23:16
**speculate** [1] - 25:25
**spent** [1] - 5:3
**stage** [2] - 8:19, 40:25
**stakes** [1] - 20:5
**standing** [1] - 46:22
**start** [9] - 12:1, 13:23, 17:18, 17:23, 32:7, 43:18, 63:4, 65:14
**started** [4] - 10:1, 17:19, 44:6, 55:15
**starting** [1] - 16:16
**State** [2] - 60:25, 69:11
**state** [34] - 14:4, 34:16, 38:5, 39:3, 39:8, 39:10, 39:11, 39:18, 42:20, 42:21, 42:24, 51:5, 56:17, 57:25, 58:17, 58:22, 59:7, 59:11, 59:12, 59:19, 59:22, 60:24, 61:7, 61:10, 61:23, 63:13, 64:11, 64:13, 64:20, 65:1, 65:3, 65:8
**statement** [7] - 16:4, 35:4, 38:4, 42:17, 42:21, 44:4
**statements** [1] - 15:19
**STATES** [3] - 1:1, 1:12, 1:17
**states** [8] - 15:20, 44:19, 46:6, 46:9, 56:9, 59:14, 65:8, 65:10
**States** [2] - 60:21, 69:11
**stating** [1] - 19:15
**statute** [22] - 21:10, 21:12, 21:13, 24:3, 24:7, 24:8, 24:19, 25:5, 25:8, 25:14, 28:10, 38:15, 40:3, 41:19, 58:17, 58:20, 58:21, 58:22, 59:17, 60:19, 61:10
**statutorily** [1] - 64:19
**statutory** [5] - 21:5, 24:17, 38:10, 38:12, 41:23
**stay** [1] - 11:10
**stenographic** [1] - 69:12
**steps** [1] - 68:16
**still** [9] - 9:6, 12:13, 15:17, 16:21, 20:23, 27:7, 44:2, 49:9, 55:1
**stipulation** [1] - 32:9
**stood** [1] - 16:18
**stop** [1] - 53:17
**stopper** [1] - 65:3
**straight** [1] - 50:2
**strangers** [1] - 11:4

**Strauss** [1] - 38:16
**Street** [1] - 2:3
**STREETS** [1] - 1:13
**strict** [1] - 24:19
**strong** [3] - 19:14, 27:18, 29:16
**strongly** [2] - 28:20, 65:5
**structure** [1] - 46:14
**studied** [1] - 54:2
**subject** [15] - 11:10, 16:1, 19:25, 22:25, 28:7, 29:2, 29:23, 30:11, 33:21, 34:13, 34:18, 34:23, 42:17, 51:20, 58:4
**subjects** [4] - 6:9, 39:10, 59:11, 61:5
**submit** [4] - 23:8, 29:15, 36:15, 55:3
**submitted** [6] - 44:10, 44:17, 45:14, 46:25, 53:5, 54:15
**submitting** [1] - 19:7
**subpoena** [4] - 9:18, 29:12, 47:9, 47:10
**subpoenas** [1] - 55:7
**subsequently** [1] - 29:3
**substantive** [4] - 12:22, 40:1, 40:11, 58:11
**subverted** [1] - 46:17
**successful** [1] - 64:23
**successfully** [1] - 12:3
**sue** [1] - 44:3
**sufficient** [6] - 6:23, 19:23, 36:8, 37:19, 44:2, 53:5
**sufficiently** [1] - 16:13
**suggested** [1] - 38:1
**suggesting** [2] - 37:6, 52:20
**suggestion** [1] - 26:14
**suggests** [1] - 35:8
**suit** [1] - 64:23
**suitability** [1] - 15:23
**suitable** [2] - 52:9, 63:12
**Suite** [2] - 1:22, 2:4
**suites** [1] - 39:11
**suits** [1] - 59:12
**summary** [7] - 6:18, 6:21, 6:24, 28:7, 35:18, 45:23, 52:6
**Super** [2] - 43:5, 62:11
**superior** [5] - 40:5, 40:13, 40:14, 41:22, 42:7
**superiority** [4] - 40:25, 41:15, 44:4, 62:16
**supplemental** [3] - 34:11, 42:22, 59:3
**supply** [1] - 54:17
**support** [3] - 7:10, 22:14, 35:17
**supported** [2] - 37:5
**supports** [5] - 7:20, 8:1, 8:11, 35:16, 58:9
**supposed** [1] - 58:3
**Supreme** [6] - 6:14, 38:24, 47:15, 60:21, 61:9, 62:12
**surprised** [1] - 53:13
**survive** [1] - 52:5
**survives** [1] - 35:8
**suspect** [3] - 23:2, 33:4, 37:10
**suspended** [1] - 32:17

switch [4] - 6:9, 20:9, 20:17, 45:24

## T

tactic [3] - 30:5, 30:9, 56:8
tactical [1] - 21:16
tainted [3] - 13:2, 18:10
tainting [2] - 13:9, 13:10
tampered [1] - 8:24
Taurus [1] - 57:5
tax [1] - 54:21
TCPA [28] - 4:6, 10:19, 38:15, 38:23, 39:9, 39:15, 39:21, 40:5, 42:20, 42:25, 43:20, 43:21, 47:12, 47:13, 47:14, 58:14, 58:15, 59:15, 59:21, 61:5, 61:10, 62:7, 62:15, 64:12, 64:15, 64:18, 64:20
technically [1] - 3:8
technology [1] - 50:11
Telephone [1] - 58:9
ten [1] - 59:2
tens [1] - 58:1
term [3] - 47:12, 47:15, 49:12
termed [2] - 47:6, 47:24
terms [2] - 20:9, 27:17
testify [1] - 12:14
testimony [2] - 12:17, 12:23
THE [109] - 1:1, 1:16, 3:2, 5:6, 5:12, 5:17, 5:22, 6:8, 7:5, 8:3, 9:2, 9:9, 9:13, 9:18, 9:23, 10:10, 10:14, 11:10, 11:16, 11:21, 11:25, 12:7, 12:10, 12:13, 12:24, 13:12, 13:15, 15:2, 17:11, 17:21, 20:3, 20:18, 20:21, 22:2, 22:7, 23:16, 23:22, 24:6, 25:16, 25:19, 25:24, 26:7, 26:13, 26:17, 27:10, 27:16, 27:21, 28:6, 28:9, 28:21, 29:24, 30:4, 31:18, 31:21, 31:24, 32:2, 35:6, 36:14, 38:20, 40:13, 41:3, 41:8, 42:9, 42:11, 42:24, 43:2, 43:6, 43:13, 46:7, 48:14, 48:17, 48:20, 48:25, 49:13, 49:16, 49:21, 50:4, 50:25, 51:13, 52:1, 52:4, 52:21, 53:7, 53:11, 53:23, 54:7, 54:10, 55:24, 56:22, 57:13, 57:16, 57:22, 58:6, 58:13, 58:24, 59:2, 60:2, 60:5, 60:10, 64:3, 64:7, 64:14, 65:19, 66:16, 66:24, 67:2, 67:24, 68:13, 68:19
therefore [2] - 37:15, 59:24
therein [1] - 43:9
they've [5] - 8:24, 10:22, 17:3, 27:25, 32:18
Third [16] - 4:22, 6:14, 38:13, 38:22, 39:3, 39:15, 39:23, 42:12, 44:3, 58:14, 59:21, 60:12, 61:4, 62:2, 64:14, 64:17
third [12] - 3:8, 4:14, 9:15, 11:4, 16:3, 27:16, 31:2, 31:5, 54:19, 56:21, 56:23, 57:2
third-partied [1] - 9:15
third-party [7] - 3:8, 11:4, 27:16, 31:2,
31:5, 56:23, 57:2
thoughts [1] - 53:3
thousands [4] - 27:12, 58:1, 58:2
thrashed [1] - 10:11
three [7] - 3:8, 7:16, 16:16, 21:9, 24:20, 37:17, 62:4
threshold [2] - 17:17, 41:22
throughout [3] - 18:14, 49:2, 56:19
throw [1] - 57:25
throws [1] - 47:24
Tod [1] - 3:16
TOD [1] - 2:3
today [8] - 3:12, 26:23, 37:19, 39:17, 46:23, 48:2, 54:25, 63:16
today's [2] - 3:5, 66:10
together [2] - 5:18, 18:14
token [1] - 68:7
tolled [3] - 21:12, 21:13, 40:3
top [3] - 23:2, 48:5, 53:19
totally [2] - 20:22, 26:25
toward [3] - 9:16, 63:2, 68:6
track [2] - 59:4, 68:15
transaction [2] - 46:21, 50:8
transcript [1] - 45:6
transcription [1] - 69:12
transmission [1] - 50:5
trash [1] - 26:9
treatment [3] - 39:21, 39:24, 59:16
trial [12] - 6:12, 6:15, 8:13, 9:3, 9:6, 12:22, 33:6, 35:7, 45:20, 45:22, 53:1
tried [1] - 45:21
tries [1] - 35:16
trouble [1] - 45:10
troubling [1] - 5:22
true [7] - 10:13, 17:21, 27:8, 27:9, 47:13, 48:9, 69:12
try [1] - 37:15
trying [5] - 31:12, 34:17, 48:2, 57:1, 63:20
turn [5] - 10:3, 22:2, 23:8, 41:14, 43:15
turns [1] - 52:18
two [7] - 15:18, 15:24, 33:25, 45:21, 61:16, 64:19, 65:10
type [6] - 20:4, 26:21, 36:25, 50:22, 58:22, 62:7
types [1] - 43:22
typical [1] - 63:10
typicality [1] - 4:17

## U

U.S [2] - 1:25, 38:17
U.S.A [2] - 4:9, 4:15
ultimately [4] - 16:11, 21:4, 55:11, 63:11
unanswered [1] - 52:11
uncomfortable [1] - 61:13
unconstitutional [1] - 25:14
under [25] - 8:1, 9:4, 13:22, 15:8, 25:15, 29:10, 31:7, 33:4, 35:1, 35:3, 36:20,
39:22, 41:7, 42:19, 42:25, 43:21, 46:19, 47:9, 59:16, 59:21, 62:7, 63:13, 65:3
underline [1] - 19:1
underlying [5] - 21:2, 26:2, 36:5, 39:18, 53:8
undermine [2] - 3:12, 43:23
underway [1] - 60:14
unethical [3] - 15:8, 17:19, 17:23
unethically [1] - 14:12
unexplained [1] - 17:2
unidentified [1] - 23:12
unique [2] - 36:21, 61:25
UNITED [3] - 1:1, 1:12, 1:17
United [2] - 60:21, 69:11
unjust [1] - 50:20
unknown [1] - 23:12
unlawful [3] - 24:14, 24:15, 27:15
unless [1] - 50:10
unprofessional [1] - 56:8
unpublished [1] - 43:7
unquote [6] - 6:19, 7:18, 15:15, 19:3, 23:13, 33:18
unreported [1] - 62:13
unsolicited [7] - 11:22, 12:4, 20:11, 24:2, 24:8, 41:11
unsuitable [1] - 13:22
untoward [1] - 17:1
untrue [1] - 44:16
unwanted [5] - 21:8, 24:1, 24:16, 24:23, 40:20
up [21] - 6:19, 11:7, 15:1, 15:6, 15:13, 18:12, 21:1, 30:5, 36:9, 38:21, 40:7, 45:9, 47:1, 51:18, 51:19, 52:22, 54:1, 55:17, 63:5, 66:5
useful [1] - 68:7
uses [2] - 44:22, 47:14
utterly [1] - 33:4

## V

various [1] - 42:4
vehicle [1] - 40:6
veneer [1] - 36:8
verification [1] - 36:25
versed [1] - 50:11
vice [5] - 5:14, 5:15, 6:1, 19:22, 29:21
victims [1] - 21:7
victory [1] - 52:15
view [9] - 8:1, 16:22, 21:22, 25:14, 32:14, 42:21, 58:8, 62:17, 62:18
viewed [1] - 29:1
views [1] - 65:24
vigorously [1] - 46:1
violate [2] - 15:19, 44:12
violating [1] - 55:16
Violation [1] - 46:9
violation [4] - 16:6, 61:1, 61:2, 62:7
violations [1] - 16:17

**virtue** [1] - 21:12
**vis** [4] - 49:8, 57:11
**vis-a-vis** [2] - 49:8, 57:11
**voluntarily** [1] - 40:21
**vs** [18] - 1:7, 3:4, 7:15, 38:16, 38:25, 43:4, 43:20, 44:17, 44:19, 45:21, 47:5, 49:24, 50:3, 54:8, 54:16, 55:11, 57:23, 62:10

## W

**Wagner** [1] - 49:24
**wait** [1] - 64:8
**waited** [1] - 63:16
**waiting** [1] - 66:23
**walk** [1] - 42:1
**walking** [1] - 41:25
**Wanca** [28] - 5:7, 6:5, 14:12, 14:19, 14:22, 15:7, 15:9, 15:25, 16:24, 17:11, 17:16, 17:19, 17:25, 18:1, 18:24, 19:6, 19:11, 28:24, 33:8, 33:15, 34:20, 44:8, 44:12, 46:24, 54:15, 55:8, 67:18
**Wanca's** [3] - 5:23, 6:2, 17:5
**wants** [1] - 67:15
**warranted** [1] - 39:21
**watch** [1] - 53:12
**weapons** [1] - 46:18
**week** [2] - 3:23, 4:13
**weeks** [1] - 47:16
**weight** [1] - 8:16
**whatsoever** [2] - 16:24, 41:1
**whichever** [1] - 61:2
**whole** [3] - 31:10, 45:19, 52:16
**wholesale** [1] - 28:1
**wildest** [1] - 33:5
**willing** [1] - 53:5
**wily** [1] - 48:10
**window** [1] - 58:1
**Winter's** [5] - 14:4, 15:5, 15:6, 15:13, 29:20
**wish** [1] - 12:8
**wishes** [4] - 8:18, 31:16, 42:22, 43:12
**withstand** [1] - 6:23
**witness** [12] - 9:9, 9:16, 12:9, 17:14, 29:12, 29:23, 29:25, 30:11, 34:18, 36:22, 49:17, 56:20
**witnesses** [2] - 9:2, 17:16
**woman** [2] - 29:10, 31:9
**won** [1] - 45:23
**wondering** [5] - 32:2, 52:4, 52:6, 52:22, 66:22
**word** [3] - 11:22, 22:14, 47:14
**words** [7] - 20:18, 23:17, 24:10, 44:22, 53:15, 54:12, 63:10
**world** [1] - 55:13
**worry** [1] - 30:6
**written** [2] - 38:10, 68:15
**wrote** [3] - 33:12, 54:1, 66:18

## X

**XIO1492** [1] - 69:16

## Y

**year** [4] - 37:16, 56:16, 58:20, 58:21
**years** [6] - 21:10, 26:11, 37:17, 45:15, 50:6, 51:13
**York** [2] - 9:24, 10:5
**yourself** [1] - 37:22