IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

CITY SELECT AUTO SALES, INC.,
*a New Jersey corporation,
individually and as the
representative of a class of
similarly situated persons*,

                    Plaintiff,

        v.

DAVID RANDALL ASSOCIATES,
INC., et al.,

                    Defendants.

Civil Action
No. 11-2658 (JBS/KMW)

**OPINION**

APPEARANCES:

Alan C. Milstein, Esq.
Sherman, Silverstein, Kohl, Rose & Podolsky, PC
Eastgate Corporate Center
30 Harper Drive
Suite 200
Moorestown, NJ 08057
     -and-
Tod Lewis, Esq.
Jonathan Piper, Esq.
Bock & Hatch, LLC
134 N. La Salle St., Ste. 1000
Chicago, IL 60602
     Attorneys for Plaintiff City Select Auto Sales, Inc.

F. Emmett Fitzpatrick, III, Esq.
Flamm Boroff & Bacine PC
794 Penllyn Pike
Blue Bell, PA 19422
     Attorney for Defendants and Third Party Plaintiffs David
     Randall Associates, Inc. and Raymond Miley, III

**SIMANDLE,** Chief Judge:

**I.   INTRODUCTION**

In this Telephone Consumer Protection Act (hereinafter, the "TCPA") class action concerning transmission of unsolicited fax advertisements, Defendant David Randall Associates, Inc. (hereinafter, "David Randall") and its owner, Defendant Raymond Miley, III (hereafter "Miley" and collectively with David Randall, the "Defendants"), move for summary judgment on all claims.[1] [Docket Item 114.] Defendants specifically assert that the undisputed facts in this litigation fail to support Plaintiff's TCPA, state law conversion, and individual liability claims. Plaintiff generally asserts in opposition that factual disputes concerning Defendants' liability for the facsimile advertisements in this litigation preclude the entry of summary judgment.

The parties do not dispute that a third-party entity, Business to Business Solutions (hereinafter, "B2B"), transmitted the facsimile advertisements that form the predicate for this action. Nor do the parties genuinely dispute that B2B broadcasted and distributed the facsimile advertisements on

---

[1] Plaintiff also filed three motions for leave to submit supplemental authority in opposition to Defendants' motion for summary judgment. [Docket Items 119, 126, & 128.] Defendants have filed no opposition.  The Court will therefore grant the motions.

2

behalf of Defendants. Rather, the parties primarily dispute whether the definition of "sender" under the TCPA envelops solely the entity that physically transmitted the facsimile advertisement, or whether such definition also includes the entity whose goods and/or services are subject to the advertisements. The principal issues before the Court are therefore whether the TCPA limits liability to only those who directly transmit facsimile advertisements and, relatedly, whether triable issues of fact exist with respect to whether, and to what extent, Miley bore personal involvement in the disputed transmissions.

For the reasons explained below, the Court finds that factual disputes preclude the entry of summary judgment in Defendants' favor with respect to all claims set forth in Plaintiff's Complaint. The Court will therefore deny Defendants' motion for summary judgment.[2]

## II.  BACKGROUND

### A. Factual Background

In the spring of 2006—the time period relevant to the pending action—Defendant Raymond Miley, III acted as President

---

[2] The Court exercises subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1332(d), and exercises supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367(a).

3

of Defendant David Randall Associates, Inc., a commercial roofing company organized under the laws of the Commonwealth of Pennsylvania.  (Defs.' SMF [Docket Item 114], ¶¶ 1-2 (citation omitted).)  During the same period, Third Party Defendants Caroline Abraham and Joel Abraham "operated an unincorporated advertising business" named "'Business to Business Solutions'" (as defined above, "B2B").[3]  (Pl.'s SMF [Docket Item 116], 4 (citation omitted).)

B2B "solicited" David Randall's business, and specifically offered to market David Randall's roofing services through B2B's fax broadcasting program.  (Id. at 6 (citing Ex. C at 66:1-68:5 (deposition of Raymond H. Miley, III)).)  Upon receipt of B2B's solicitation, April T. Clemmer, Miley's administrative assistant (Ex. C. at 14:14-18), contacted B2B to inquire into the specific

---

[3] Though Plaintiff failed to furnish a responsive statement of undisputed material facts, Plaintiff's opposition brief contains detailed citations to the record that make clear certain disputed facts. Although Plaintiff failed to comply with Local Civil Rule 56.1, the Court declines to ignore Plaintiff's citations. However, to the extent Plaintiff failed to make clear any dispute of material fact in Defendants' Rule 56.1 statement, the Court will deem any such fact undisputed for purposes of the pending motion. See L. Civ. R. 56.1(a) ("[A]ny material fact not disputed shall be deemed undisputed for purposes of the summary judgment motion."). Consequently, though the Court will not ignore counter-stated facts that are readily apparent from Plaintiff's brief, the Court need not comb the record in search of disputed facts that should have been part of Plaintiff's response to Defendants' Rule 56.1 statement.

pricing and distribution details of B2B's fax marketing services. (Ex. A at 10:5-11:7, 14:11-15:16.) David Randall, with Miley's authorization, then contracted with B2B "'to develop and conduct a fax advertising campaign on its behalf'" (Pl.'s SMF at 4), and provided certain information concerning David Randall's services, in addition to information concerning the targeted radius for advertisement dissemination. (See Ex. A at 17:1-18:14; Ex. B; Ex. C at 35:1-25; Ex. D at 17 on the docket (Miley's advertisement approval).)

B2B thereafter sent multiple fax advertisements on David Randall's behalf to "'a list of persons'" purchased by B2B. (Defs.' SMF at ¶ 5 (citation and emphasis omitted).) The advertisements, ultimately transmitted to "29,113 unique fax numbers[,]" described the roofing services provided by David Randall, provided its contact information, and generally stated "Roof Leaks??? Repairs Available." (Id. at ¶ 5; Exhibit B [Docket Item 116-2].)

**B. Procedural History**

Plaintiff filed the initial Complaint in this action on May 10, 2011. (See Class Action Compl. [Docket Item 1], ¶ 1.) In its Complaint, Plaintiff generally alleges that Defendants have a "policy and practice of faxing unsolicited advertisements" in contravention of the TCPA and state tort law. (Id. at ¶ 1.) In

accordance with this purported policy, Plaintiff alleges that, on April 4, 2006 and May 15, 2006, Defendants sent two (2) such advertisements to Plaintiff, without its "prior express permission or invitation." (Id. at ¶¶ 13, 29.) Plaintiff also states that Defendants similarly transmitted the identical "form facsimile" 44,832 times "without error to 29,113 unique fax numbers" from March 29, 2006 to May 16, 2006. (Id. at ¶ 14.) Plaintiff therefore contends that Defendants' unsolicited transmissions violated the TCPA and also "improperly converted" Plaintiff's fax machine, toner, paper, and employees' time for Defendants' "unauthorized purpose." (Id. at ¶¶ 30-41.) Plaintiff therefore seeks, on behalf of all persons who received such fax advertisements during the spring of 2006, declaratory and injunctive relief and monetary damages, jointly and severally, against David Randall and Miley. (Id. at ¶¶ 29, 41.)

Thereafter, Defendants moved to dismiss Plaintiff's Complaint, asserting that the applicable limitations period and New Jersey's entire controversy doctrine collectively barred Plaintiff's claims. [Docket Item 8.] The Court's February 7, 2012 Opinion denying Defendants' motion found the entire controversy doctrine inapplicable and further concluded that the pendency of a state court action had tolled the limitations period and, accordingly, effected no bar of Plaintiff's claims.

City Select Auto Sales, Inc. v. David Randall Assocs., Inc., No.
11-2658, 2012 WL 426267, at *5 (D.N.J. Feb. 7, 2012).

Defendants thereafter answered Plaintiff's Complaint, and
filed third party claims against the operators of B2B, Caroline
Abraham and Joel Abraham (hereinafter, the "Abrahams"). [Docket
Item 23.]  Though Defendants effectuated service of the Third
Party Complaint on March 22, 2012 [Docket Items 32 & 33], the
Abrahams filed no response.  Defendants therefore moved for
default [Docket Item 42], which the Court granted on December
17, 2012. [Docket Item 53.]

On January 30, 2013, Plaintiff moved to certify its TCPA
claim under Federal Rule of Civil Procedure 23(b)(3) on behalf
of the following class:[4]

_____

[4] On December 17, 2012, the Court dismissed Plaintiff's initial
motion for class certification, and directed that any renewed
motion "incorporate briefing on the effect of 47 U.S.C. §
227(b)(3), and the application of New Jersey's laws and rules of
court," particularly with respect to the Third Circuit's
decision in Landsman & Funk PC v. Skinder-Strauss Assocs., 09-
3105, 2012 WL 2052685 (3d Cir. Apr. 17, 2012).  [Docket Item
53.]  Plaintiff's renewed motion to certify followed on January
30, 2013.  [Docket Item 60.]  On March 5, 2013, the Court stayed
this action and administratively terminated Plaintiff's renewed
motion, pending the Third Circuit's consideration of an
interlocutory appeal in Bais Yaakov of Spring Valley v.
Peterson's Nelnet, LLC, No. 11-00011 (AET), 2013 WL 663301
(D.N.J. Feb. 21, 2013), a case involving a TCPA issue directly
relevant to this litigation.  [Docket Item 72.]  On May 21,
2013, however, Plaintiff informed the Court that the Third
Circuit declined to certify the interlocutory appeal and the

7

> All persons who were successfully sent one or more
> faxes during the period March 29, 2006, through May
> 16, 2006, stating, "ROOF LEAKS??? REPAIRS AVAILABLE
> Just give us a call and let our professional service
> technicians make the repairs!" and "CALL:
> David/Randall Associates, Inc. TODAY."

City Select Auto Sales, Inc. v. David Randall Assocs., Inc., 296

F.R.D. 299, 308 (D.N.J. 2013). By Opinion dated December 20,

2013, the Court found that the proposed class satisfied the

requirements of Federal Rule of Civil Procedure 23 and,

therefore, granted Plaintiff's motion for class certification.

See generally id. In so concluding, the Court rejected

Defendants' argument that state, rather than federal, law

applied to class certification in the TCPA context, and that

Plaintiff lacked standing to pursue its claims. Id. at 311-12.

By Memorandum Opinion dated February 3, 2014, the Court then

approved, subject to certain revisions, Plaintiff's proposed

class notice form. See City Select Auto Sales, Inc. v. David

Randall Assocs., Inc., No. 11-2658, 2014 WL 413533, at *3

(D.N.J. Feb. 3, 2014.) The Court also found Plaintiff's

proposed method of dissemination, i.e., by fax, "most

practicable" under the circumstances. Id. at *8. In permitting

notice by such method, the Court noted "the irony of using faxes

to disseminate class notice in a lawsuit regarding unsolicited

---

Court, accordingly, lifted the stay and restored Plaintiff's
motion to the Court's active docket. [Docket Item 74.]

fax advertisements." Id. at *2.  The Court found, however, notification by facsimile to be most practicable under the circumstances, particularly in light of the sheer quantity of "distinct recipients" ("more than 29,000"), the relative speed and cost of notification by fax, and the easily verifiable nature of a successful transmission.  Id. at *3.

**C. Parties' Arguments**

Defendants generally argue that summary judgment must be granted with respect to Plaintiff's TCPA claim because Defendants cannot, as a matter of law, "be held directly liable" for the acts of a third party.  (Defs.' Br. at 5-6.)  Defendants specifically assert that the Federal Communications Commission (hereinafter, the "FCC") has concluded, in a decision "binding upon [] District Courts," that "a seller cannot be held directly liable for a TCPA violation unless the seller itself perform[ed] the acts[.]"  (Id. at 6 (citation omitted).)  Defendants therefore argue that the FCC ruling compels the Court to find Defendants entitled to judgment, as a matter of law, on Plaintiff's TCPA claims.  (Id. at 7.)  Defendants also assert that Plaintiff's state law conversion claim, which rests upon allegations identical to Plaintiff's TCPA claim, fails for the same reasons.  (Id. at 9-12.)  Moreover, though Defendants concede that undisputed facts support a theory of vicarious

9

liability, Defendants argue that Plaintiff's failure to "specifically" plead such theory constitutes a "fatal pleading deficiency" that cannot now be cured in response to Defendants' motion for summary judgment. (Id. at 8-9.) Rather, Defendants assert that summary judgment must be granted with respect to any and all claims of liability against David Randall. (Id.) Finally, Defendants argue that summary judgment must be granted with respect to Plaintiff's "individual liability" claim against Miley, because the record fails to demonstrate Miley's "personal involvement in the commission of any tort of the violation of any statute[,]" nor Miley's awareness of the "unlawful" nature of the disputed solicitations. (Id. at 12-14.)

Plaintiff counters that the FCC's decision constitutes mere guidance to District Courts, and that the decision cannot trump or otherwise contravene the statutory and regulatory definition of "sender" under the TCPA. (Pl.'s Opp'n [Docket Item 116], 7-11.) Rather, Plaintiff asserts that liability under the TCPA expressly attaches to any "'entity on whose behalf a facsimile unsolicited advertisement is sent'" and/or any entity "'whose goods or services are advertised or promoted in the unsolicited advertisement.'" (Id. at 7 (citing 47 C.F.R. § 64.1200(f)(10)) (emphasis omitted).) Plaintiff also argues that it has "sufficiently pleaded liability against Defendants[,]"

particularly to the extent Plaintiff's Complaint "clearly articulate[s]" that third party actions form the basis for Plaintiff's liability claims.  (Id. at 12 (emphasis and citations omitted).)  Lastly, Plaintiff argues that the record "clearly" demonstrates that Miley "authorized, directed, and facilitated" the TCPA violations alleged in this action, and that he cannot now exculpate himself from liability by "outsourcing [] telemarketing activities to unsupervised third parties[.]'"  (Id. at 14, 16, 18.)

III.  **STANDARD OF REVIEW**

Federal Rule of Civil Procedure 56(a) generally provides that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact" such that the movant is "entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A "genuine" dispute of "material" fact exists where a reasonable jury's review of the evidence could result in "a verdict for the non-moving party" or where such fact might otherwise affect the disposition of the litigation. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts, however, fail to preclude the entry of summary judgment. Id.  In evaluating a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-moving party, and must

11

provide that party the benefit of all reasonable inferences.
Scott v. Harris, 550 U.S. 372, 378 (2007); Halsey v. Pfeiffer,
750 F.3d 273, 287 (3d Cir. 2014).  However, any such inferences
"must flow directly from admissible evidence[,]" because "'an
inference based upon [] speculation or conjecture does not
create a material factual dispute sufficient to defeat summary
judgment.'"  Halsey, 750 F.3d at 287 (quoting Robertson v.
Allied Signal, Inc., 914 F.2d 360, 382 n. 12 (3d Cir. 1990);
citing Anderson, 477 U.S. at 255).

## IV. DISCUSSION

### A. TCPA Claim

"Enacted in 1991 as part of the Federal Communications
Act," the TCPA seeks to address "an increasingly common
nuisance—telemarketing." Erienet, Inc. v. Velocity Net, 156 F.3d
513, 514 (3d Cir. 1998).  The TCPA prohibits the "use of any
telephone facsimile machine, computer, or other device to send,
to a telephone facsimile machine," an advertisement without the
recipient's prior express invitation or permission, unless the
"sender" of such transmission meets certain exceptions. 47
U.S.C. §§ 227(a)(4), (b)(1)(C).  The ban on unsolicited
facsimile advertisements specifically does not apply if: (1) the
sender has an "established business relationship" with the
recipient, 47 U.S.C. § 227(b)(1)(C)(i); (2) the sender obtained

12

the recipient's facsimile number from "a directory, advertisement, or site on the Internet to which the recipient voluntarily agreed to make available its facsimile number for public distribution," 47 U.S.C. § 227(b)(1)(C)(ii); or (3) the advertisement contains a disclosure statement that easily enables the recipient to unsubscribe from any future distributions, 47 U.S.C. § 227(b)(1)(C)(iii).

The TCPA accordingly enables an aggrieved individual or entity to bring a private right of action to recover the greater of the party's "actual monetary loss" from the TCPA violation, or "$500 in damages for each such violation[.]  47 U.S.C. § 227(b)(3)(A)-(C).  In addition, the Court "may, in its discretion," award treble damages for each statutory damage.  47 U.S.C. § 227(b)(3).  However, the plaintiff must specifically demonstrate that: (1) the defendant utilized a "telephone facsimile machine, a computer, or other devise to send one or more faxes to the plaintiff's facsimile machine[;]" (2) the transmissions constituted "'advertisements[;]'" and (3) the defendant sent the transmissions without the plaintiff's prior express invitation or permission.  Brodsky v. HumanaDental Ins. Co., No. 10-C-3233, 2014 WL 2780089, at *6 (N.D. Ill. June 12, 2014) (citation omitted).

   **a.** **The Undisputed Facts do not Entitle Defendants to the Entry of Judgment as a Matter of Law**

  Defendants argue that they do not constitute a "sender" under the TCPA, thereby exculpating Defendants from any liability under the TCPA. (Defs.' Br. at 5-7.) The FCC's TCPA regulations define "sender" as "the person or entity on whose behalf a facsimile unsolicited advertisement is sent or whose goods or services are advertised or promoted in the unsolicited advertisement." 47 C.F.R. § 64.1200(f)(10); <u>see also</u> <u>In Re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991</u>, 10 F.C.C.R. 12391, 12407-08 (1995) (clarifying that "the entity or entities on whose behalf facsimiles are transmitted are ultimately liable for compliance with the rule banning unsolicited facsimile advertisements"). The parties do not dispute that B2B acted as the <u>actual</u> sender of the facsimiles that give rise to this litigation. (<u>See</u> Defs.' SMF; Pl.'s SMF.) The Court must therefore turn to whether B2B sent the facsimile transmissions on Defendants' behalf and/or for the purpose of advertising or promoting Defendant's "goods or services"—either of which would, as explained below, render Defendants potentially liable under the TCPA. 47 C.F.R. § 64.1200(f)(10).

  The TCPA, by its own terms, "'creates a form of vicarious liability making an entity liable when a third party sends

unsolicited communications on its behalf in violation of the Act.'" Brodsky, 2014 WL 2780089, at *6 (quoting Bridgeview Health Care Ctr. v. Clark, No. 09-C-5601, 2013 WL 1154206, at *4 (N.D. Ill. Mar. 19, 2013)). Moreover, defendants cannot exculpate themselves from "'liability simply by hiring an independent contractor'" for the purposes of transmitting "'unsolicited facsimiles on their behalf.'" Brodsky, 2014 WL 2780089, at *6 (citations omitted).

The parties do not dispute that, in 2006, April T. Clemmer, a former David Randall employee, corresponded with B2B concerning a potential fax broadcasting advertisement of David Randall's roofing services. (See Ex. A at 10:5-11:7, 14:11-15:16.) The parties further agree that David Randall ultimately contracted with B2B precisely for the purpose of advertising and/or promoting David Randall's services on Defendants' behalf. (See id. at 17:1-18:14; Ex. B, Ex. C at 35:1-25; Ex. D at 17 on the docket.) Indeed, the disputed facsimiles solely concern David Randall's roofing services, and nowhere advertise the goods, services, or products of any other individual or entity. (See Ex. D.) Moreover, Defendants do not dispute that certain facts support an "on behalf of" theory of liability against Defendants for B2B's acts. (See generally Defs.' Br. at 5-9.) Rather, the parties present primarily a legal dispute concerning

15

whether liability passes to Defendants under the TCPA solely by virtue of B2B's undisputed transmission of Defendants' advertisement.

### i. Liability under the TCPA

The TCPA prescribes two parallel, and often blended, theories of liability relevant to this litigation: the first applies to "the person or entity" on "whose behalf" a third party transmits an unsolicited facsimile advertisement; the other applies to the person or entity "whose goods or services are advertised or promoted in the unsolicited advertisement." 47 C.F.R. § 64.1200(f)(10). The "scope of 'on behalf of' liability" remained initially unsettled. Avio, Inc. v. Alfoccino, Inc., ___ F. Supp. 2d ____, No. 10-10221, 2014 WL 1870108, *10 (E.D. Mich. May 9, 2014) (citation omitted). The FCC's order relied upon by Defendants, however, addressed whether a "seller[,]" but not the entity that "'initiates'" calls under the TCPA, may be held vicariously liable under agency principles for TCPA violations committed by third-party telemarketers. In re Joint Petition filed by DISH Network LLC, 28 F.C.C. 6574 (2013) (hereinafter, the "FCC's DISH Network ruling"). In addressing provisions of the TCPA applicable in that instance, the FCC expressly rejected the notion that the TCPA creates strict liability, and instead concluded that a

16

"principal" may be liable under the TCPA for acts of a third party if the party acted in accordance with a formal agency relationship, possessed "apparent (if not actual) authority" for its conduct, or if the principal "ratifie[d]" the third-party's acts "by knowingly accepting their benefits."  Id. at 6586-87. In so concluding, the FCC found incorporation of "general common law agency principles of vicarious liability" concordant with the TCPA's statutory text and legislative purpose and, accordingly, read such "baseline agency principles" into its interpretation of the telemarketing provisions of the TCPA.  Id. at 6587.  Consequently, though the FCC stated that "an action taken for the benefit of a seller by a third-party" fails, without more, "to trigger" liability, the FCC found "no reason" to exculpate a seller for the acts of a "third-party" where the seller "authorized" or otherwise possessed some supervisory authority over the third party's conduct.  Id. at 6593.

The parties acknowledge the interpretive relevance of the FCC's ruling, albeit to significantly varied extents, but dispute the effect of such ruling on the Court's resolution of the pending motion. Defendants assert that the ruling compels the Court to grant summary judgment in its favor (Defs.' Br. at 5-7); Plaintiff counters, however, that the ruling bears only marginal relevance to the pending dispute because the statutory

17

language at issue in the ruling—the telemarketing provisions that reference the initiation of telephone calls—differs, in material respects, from the junk-fax provisions implicated in this litigation, (Pl.'s Opp'n at 7-11).

The Court finds both positions somewhat unconvincing.  The Court first notes that the Hobbs Act, 28 U.S.C. § 2342(1), requires the Court to apply a <u>final order</u> of the FCC, to the extent such order squarely addresses the disputed issue.  <u>See Avio, Inc.</u>, 2014 WL 1870108, at *11 ("Because Dish Network is an on-point final order, this Court must, under the Hobbs Act, find its reasoning controlling.") (citations omitted); <u>Savanna Grp., Inc. v. Trynex, Inc.</u>, No. 10-7995, 2013 WL 4734004, at *5 (N.D. Ill. Sept. 3, 2013) ("Under the Hobbs Act, the Court must apply a final FCC order if it governs the matter at issue.") (citations omitted); <u>Addison Automatics, Inc. v. RTC Grp., Inc.</u>, No. 12-9869, 2013 WL 3771423, at *4 (N.D. Ill. July 16, 2013) (noting that the court had "no authority" to "disregard" the FCC's ruling); <u>CE Design, Ltd. v. Prism Bus. Media, Inc.</u>, 606 F.3d 443, 446 (7th Cir. 2010) ("[T]he Hobbs Act prevents the district court from reviewing the validity of FCC regulations.").  District Courts must consequently follow the FCC's orders if, but only if, such orders actually dispose of the issue disputed in the litigation.  <u>See Dobkin v. Enterprise</u>

18

Fin. Grp., No. 14-1989, 2014 WL 4354070, at *3 (D.N.J. Sept. 3, 2014).

In the wake of the FCC's DISH Network ruling, numerous courts rejected arguments that the FCC's interpretation of the TCPA's telemarketing provisions had no application to the interpretation of the TCPA's junk-fax provisions. Avio, Inc., 2014 WL 1870108, at *11 (collecting cases); compare 47 C.F.R. § 64.1200(f)(9) ("The term seller means the person or entity on whose behalf a telephone call or message is initiated for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person."), with 47 C.F.R. § 64.1200(f)(10) ("The term sender for purposes of paragraph (a)(4) of this section means the person or entity on whose behalf a facsimile unsolicited advertisement is sent or whose goods or services are advertised or promoted in the unsolicited advertisement."). Indeed, the majority of courts expressly imputed the FCC's DISH Network interpretation into courts' interpretations of the TCPA's junk-fax provisions. See, e.g., Avio, Inc., 2014 WL 1870108, at *11 (citing Imhoff Inv., LLC v. SamMichaels, Inc., No. 10-10996, 2014 WL 172234, at *6 (E.D. Mich. Jan. 15, 2014) ("Even though the FCC's declaratory ruling addressed the definition of seller within the telemarketing context, not sender within the faxing context, the

definitions are similar and the ruling has been applied to senders as well."); Savanna Grp., Inc., 2013 WL 4734004, at *5 ("Given the substantial similarity between the definitions of 'seller' and 'sender' and the broad language of the ruling concerning violations of § 227(b), [the FCC's declaratory ruling] is controlling in this case.")) (citation omitted).

However, in an amicus letter dated July 17, 2014 and filed in connection with a pending appeal before the Eleventh Circuit, Palm Beach Golf Center-Boca, Inc. v. Sarris, No. 13-14013 (11th Cir. 2013), the FCC squarely stated that its DISH Network ruling "applies only to liability for telemarketing calls and neither addresses nor alters the [FCC's] pre-existing regulatory treatment of unsolicited facsimile advertisements." [Docket Item 126-2 at 6.] Moreover, because DISH Network solely concerned telemarketing calls, the FCC specifically stated that it "had no occasion to opine on direct or vicarious liability" in the context of such facsimile transmissions. [Docket Item 126-2 at 6.] Rather, the FCC emphasized that the junk-fax provisions of the TCPA "clearly 'allow[] a plaintiff to recover damages [under a theory of direct liability] from a defendant who [transmitted] no facsimile to the plaintiff, but whose independent contractor did,'" provided that "the transmitted fax constitutes an unsolicited facsimile advertisement promoting the

defendant's goods or services" in accordance with the "binding regulatory definition" of "sender" set forth in 47 C.F.R. § 64.1200(f)(1).  [Docket Item 126-2 at 6-7.]  Consequently, even if the FCC's DISH Network ruling could have been construed to preclude any assertion of direct liability under the TCPA for the acts of a third-party, as argued by Defendants (Defs.' Br. at 5-7), the FCC's subsequent amicus letter unambiguously rejects such interpretation, and the Court need not apply the FCC's DISH Network ruling in this instance.  [Docket Item 126-2.]  Rather, the Court finds Defendants' position that the TCPA precludes a finding of liability against Defendants without merit, particularly because the record contains no dispute that the fax transmissions advertised Defendants' roofing services and that B2B transmitted such advertisements on behalf of Defendants.  See 47 C.F.R. § 64.1200(f)(10) (defining a liable "sender" under the TCPA as "the person or entity on whose behalf a facsimile unsolicited advertisement is sent or whose goods or services are advertised or promoted in the unsolicited advertisement") (emphasis added).  Indeed, Defendants concede such facts.  (See, e.g., Defs.' SMF at ¶ 5 ("'B2B successfully sent 44,832 faxes for Defendants to 29,113 unique fax numbers. . . . the junk fax was sent 'on behalf of' [] Defendants'") (emphasis in original).)  Consequently, the undisputed facts

21

fail to demonstrate Defendants' entitlement to judgment as a
matter of law on Plaintiff's TCPA claim.  The Court therefore
denies Defendants' motion for summary judgment with respect to
such claim.[5]

---

[5] Defendants also challenge Plaintiff's TCPA claim on the basis
that Plaintiff failed "to plead vicarious liability[.]"  (Defs.'
Br. at 8.)  Plaintiff asserts, however, that Plaintiff
"explicitly pled" vicarious liability under the statute, "by
stating that Defendants: 'approved, authorized and participated
in a scheme to broadcast faxes by (a) directing a list to be
purchased and assembled; (b) directing and supervising employees
and third parties to send the faxes; (c) creating and approving
the form of the faxes to be sent; (d) determining the number and
frequency of the facsimile transmissions; and (e) approving and
paying third parties to send the faxes.'"  (Pl.'s Opp'n at 12
(citing Class Action Compl. at ¶ 12).)  Moreover, even if
insufficiently plead, Plaintiff argues that its allegations
concerning the "'sending'" of faxes expressly incorporate the
"'on behalf of'" definition of "'sender'" under the TCPA.
(Pl.'s Opp'n at 12.)  Other courts that have addressed vicarious
liability under the TCPA have, in reliance on the FCC's DISH
Network ruling, applied federal common law agency principles to
determine vicarious seller liability for violations of the TCPA.
See, e.g., Siding & Insulation Co. v. Combined Ins. Grp., Ltd.,
No. 11-1062, 2014 WL 1577465, at *3 (N.D. Ohio Apr. 17, 2014);
Imhoff Inv., LLC., 2014 WL 172234, at *6-*7.  Certain of those
courts, however, also recognized that "the application of the
heightened standard of agency liability does not entirely square
with 47 C.F.R. § 64.1200(f)(10)."  Savanna Grp., 2013 WL
4734004, at *5; see also Addison Automatics, Inc. v. RTC Grp.,
Inc., No. 12-9869, 2013 WL 3771423, at *4 (N.D. Ill. July 16,
2013) (finding the cases requiring plaintiffs to "establish the
existence of an agency relationship in order to hold" defendants
vicariously liable under the TCPA unpersuasive, particularly in
light of the FCC's regulatory definition of "'senders'").  Here,
however, vicarious liability constitutes an alternative theory
of liability over which the Court need not belabor, particularly
given the FCC's most-recent, and unequivocal, expression
concerning liability under 42 U.S.C. § 227(b)(1)(C).  [Docket
Item 126-2.]

**B.    Factual Disputes Preclude Summary Judgment with respect to Plaintiff's State Law Conversion Claim**

Defendants assert that Plaintiff's conversion claim fails as a matter of law because the facsimile transmissions in this litigation resulted in harm too "trivial" and "de minimis" to be compensable in the context of a conversion claim.  (Def.'s Br. at 10 (emphasis omitted).)  Defendants specifically assert that the conversion of "'fax machines, toner and paper[]'" fails to constitute cognizable legal damage, particularly because the Court permitted the dissemination of class notice by fax.[6]  (Id. at 10-11.)

"Under New Jersey law, 't]he tort of conversion is the wrongful exercise of dominion and control over property owned by another in a manner inconsistent with the owner's rights.'"  D & D Tech., Inc. v. CytoCore, Inc., No. 14-4217, 2014 WL 4367314, at *4 (D.N.J. Sept. 2, 2014) (quoting Advanced Enters.

---

[6] The Court rejects Defendants' reliance upon the Court's February 3, 2014 Order as a basis to find the damages derived from the unsolicited facsimile advertisements de minimis. (Defs.' Br. at 11.)  It is readily apparent from the Court's Order that the Court permitted "notice via fax" primarily because "the original list of class members" set forth fax numbers, not "names and addresses."  City Select Auto Sales, Inc., 2014 WL 413533, at *1.  The Court therefore concluded that notice be facsimile best comported with Federal Rule of Civil Procedure 23(c)(2)(B)'s requirement that class notice be the most "'practicable under the circumstances'" to advise class members of the pendency of this litigation.  Id. at *3 (citation omitted).

Recycling, Inc. v. Bercaw, 869 A.2d 468, 472 (N.J. Super. Ct. App. Div. 2006)).  The theory of conversion therefore envisions interference of "'such a major and serious'" degree that the law permits, in essence, a forced "'judicial sale of the chattel upon the defendant.'"  Arcand v. Brother Int'l Corp., 673 F. Supp. 2d 282, 311 (D.N.J. 2009) (quoting LaPlace v. Briere, 962 A.2d 1139, 1145 (N.J. Super. Ct. App. Div. 2009)).  New Jersey law accordingly requires "an interference" that either destroys a person's property, or otherwise materially alters its "quality[.]  Knox v. Samsung Elecs. Am., Inc., No. 08-4308, 2009 WL 1810728, at *10 (D.N.J. 2009) (citation omitted).

The Court finds Defendants' de minimis argument unavailing, particularly in light of the fact that New Jersey courts permit conversion claims for only nominal damages and, in certain instances, even permit an award of punitive damages in the absence of compensatory damages.  See Winkler v. Hartford Accident & Indem. Co., 168 A.2d 418, 422 (N.J. Super Ct. App. Div. 1961) (finding in an action for conversion that, "the better view appears to be that exemplary damages may be awarded" even if "compensatory damages cannot be proved beyond a nominal sum"), certif. denied, 170 A.2d 544 (1961).  In that regard, Defendants' position conflates "'two separate inquiries: first, the degree to which the property at issue (paper and ink/toner)

24

was converted, and second, the value of the property at issue.'" Bell v. Money Res. Corp., No. 08-639, 2009 WL 382478, at *4 (E.D. Pa. Feb. 13, 2009) (citation omitted).  Moreover, various courts have recognized that "unwanted fax[es]" result in the permanent destruction of paper, ink, and toner, therefore completely depriving the owner of their use.  See id. (citing Centerline Equip. Corp. v. Banner Pers. Serv., Inc., 545 F. Supp. 2d 768, 782 (N.D. Ill 2008)).  Here, however, in addition to alleging that the facsimile transmissions "misappropriated" fax machines, toner," and paper, Plaintiff also alleges that the transmissions "converted Plaintiff's employees' time" in connection with the review and processing of the faxes.  (Class Action Compl. at ¶ 35.)  Plaintiff's allegations therefore clearly suffice to demonstrate cognizable legal damage.  (See id.)  Moreover, factual disputes clearly exist with respect to the actual amount of Plaintiff's damages, particularly because Plaintiff received more than one disputed transmission, and because Plaintiff also seeks compensation for the employee time necessarily expended as a result of its receipt of unsolicited faxes.  (See Defs.' SMF at ¶ 4 (noting that Defendants "'sent the same form of facsimile' 44,832 times to 29,113 unique fax numbers") (citation omitted).)  See also Old Town Pizza of Lombard, Inc. v. Corfu-Tasty Gryo's Inc., No. 11-6959, 2012 WL

638765, at *4 (N.D. Ill. Feb. 23, 2012) (applying the de minimis doctrine where plaintiff "only alleged damage from conversion for a single sheet of paper and the toner used to produce the message on the paper").  Consequently, even if the Court accepted application of the de minimis doctrine, factual disputes concerning the extent (or, the de minimis nature) of the transmissions preclude entry of summary judgment with respect to Plaintiff's state law conversion claim.[7]  See Bell, 2009 WL 382478, at *5 (rejecting application of the de minimis

_____

[7] The Court is, of course, mindful that Plaintiff's conversion claim seeks relief that mirrors in part the relief sought by Plaintiff's TCPA claims.  (See generally Class Action Compl. [Docket Item 1].)  See also Klein v. Vision Lab. Telecomm., 399 F. Supp. 2d 528, 540 (S.D.N.Y. 2005) ("The TCPA provides for injunctive and compensatory relief in order to stop and/or compensate the plaintiff for the annoyance, the conversion of paper and ink and the effective preemption of his fax machine during the intervals when it is receiving advertisement transmissions.") (citation omitted).  Indeed, one court has stated that the legislative history of the TCPA indicates that the statute directly endeavors to address the injury derived from "the cost of the paper and ink" borne by the owner, in addition to "the fax machine owner's loss" of the machine's use. Compressor Eng'g Corp. v. Mfrs. Fin. Corp., 292 F.R.D. 433, 447-48 (E.D. Mich. 2013). The arguably duplicative nature of Plaintiff's conversion claim does not, however, dictate the entry of summary judgment in Defendants' favor with respect to such claim.  The Court would point out, however, that if the TCPA claim were not present, the remaining conversion claim would likely not satisfy the $5 million threshold for jurisdiction under 28 U.S.C. § 1332(d).  With only 29,113 unique fax numbers receiving either one or two fax transmissions, even if we assumed the toner, paper, and labor associated with two sheets of paper added up to one dollar, the monetary dispute is $29,113 in damages, with no shifting of attorney fees on the conversion claim.

doctrine in the TCPA context, and declining "to dismiss a conversion claim that could, if successful, recover nominal damages").  The Court, therefore, also denies Defendants' motion for summary judgment as to Plaintiff's state law conversion claim.

### C.   Factual Disputes Preclude Summary Judgment with respect to Plaintiff's Claim of Individual Liability against Miley

Finally, Defendants argue that summary judgment must be granted with respect to Plaintiff's personal liability claim against Miley, because the record purportedly fails to demonstrate Miley's "personal involvement in the commission of any tort or the violation of any statute." (Defs.' Br. at 13.) The Court finds Defendants' argument unpersuasive.  Numerous district courts have concluded that individuals acting on behalf of a corporation may be held personally liable for violations of the TCPA where they "had direct, personal participation in or personally authorized the conduct found to have violated the statute." Connor v. Lifewatch, Inc., No. 13-3507, 2014 WL 4198883, at *5 (D.S.C. Aug. 20, 2014) (collecting cases). Indeed, one such district court observed that any contrary interpretation would effectively erode "much of [the TCPA's] force." Md. v. Universal Elections, 787 F. Supp. 2d 408, 415-16 (D. Md. 2011) (citation omitted).

27

Moreover, the factual record in this instance is replete with factual disputes concerning Miley's personal involvement in the junk faxes that form the predicate of this litigation.  In support of Defendants' argument that Plaintiff's claim of individual liability fails, Defendants rely, almost exclusively, on Miley's allegedly "undisputed testimony."  (Defs.' Br. at 13.)  Miley's testimony concerning his involvement, however, is certainly not without dispute.  Indeed, as correctly noted by Plaintiff, Miley's deposition testimony contains little more than "broad memory failures and general denials" concerning his involvement in the dissemination of the facsimile transmissions. (Pl.'s Opp'n at 16.)

For example, Miley specifically testified that, though he authorized payment of marketing-related expenses, he had no responsibility for the oversight of David Randall's marketing materials, nor any knowledge of the individual responsible for the advertising and marketing of David Randall's roofing services.  (Ex. C at 16:17-17:19.)  Miley further acknowledged his signature on correspondence approving the disputed facsimile transmission in this instance, but otherwise stated that he recalled no additional details concerning the contracting for, and design of, the advertisement.  (Id. at 35:5-40:19.)  Miley also testified that he had no personal contact with B2B, but

28

that he assumed, without support, that B2B conducted a lawful and "legitimate" operation.  (Id. at 66:1-68:5.)

Notwithstanding Miley's testimony, the testimony of April T. Clemmer, Miley's former administrative assistant during the relevant period, clearly depicts Miley as intimately involved (albeit through Clemmer) in the discussions and negotiations with B2B concerning the fax broadcasting program.  (See generally Ex. A [Docket Item 116-1].)  Clemmer explicitly testified that Miley commended B2B's initial correspondence to her attention, and thereafter directed Clemmer, on numerous occasions, to contact B2B on Miley's behalf concerning various aspects of the proposed facsimile advertisement.  (Id. at 9:22-16:1.)  Indeed, Clemmer testified that Miley acted as "the ultimate decision-maker in approving the" ads' forms, "determined the number of faxes" to be disseminated, the time within which to transmit such faxes, and authorized payment for B2B's services.  (Id. at 20:4-21:8.)

The Court therefore concludes that factual disputes preclude the entry of summary judgment as to Plaintiff's individual liability claim against Miley.  See Sandusky Wellness Ctr., LLC v. Wagner Wellness, Inc., No. 12-2257, 2014 WL 1333472, at *3 (N.D. Ohio Mar. 28, 2014) (finding disputed facts precluded the entry of summary judgment with respect to

plaintiff's claim of personal liability against defendant's officer for any violations of the TCPA); Jackson Five Star Catering, Inc. v. Beason, No. 10-10010, 2013 WL 5966340, at *4 (E.D. Mich. Nov. 8, 2013) (granting plaintiff's motion for summary judgment where the record contained no dispute that the individual corporate officer participated in the payment of and authorization for the fax ads).

Nor does the Court find that Miley's purported lack of knowledge concerning the legality of the fax advertisements compels any contrary conclusion. (See Defs.' Br. at 13-14.) Indeed, the TCPA does not absolve individuals of culpability simply because such individual "'hir[ed] an independent contractor' to send unsolicited facsimiles on [his] behalf[,]'" without first engaging in the requisite degree of due diligence. Bridgeview Health Care Ctr., 2013 WL 1154206, at *4 (citations omitted). Here, Miley testified that he presumed that B2B presented an offer to disseminate "legitimate" fax advertisements, but concedes that he never personally contacted B2B nor engaged in any investigation into B2B's operation. (Ex. C at 66:23-68:5.) Clemmer, however, testified that Defendants received numerous requests to be removed from the fax broadcasts, and that Miley authorized subsequent fax broadcasts, notwithstanding Defendants' receipt of such requests. (See Ex.

A at 73:14-77:17 (Clemmer's testimony concerning Miley's approval of a May 15, 2006 fax broadcast, despite receipt of requests for removal from the fax dissemination); Ex. B at 50, 62 on the docket (requests dated March 29, 2006 and April 5, 2006, requesting that certain numbers be removed from B2B's fax broadcasting).  The TCPA, however, affords no relief to individuals who turn a blind eye to the conduct of third parties with whom they contract.  See Compressor Eng'g Corp., 292 F.R.D. at 436. Consequently, because factual disputes concerning the level of Miley's personal involvement pervade the record, the Court will deny Defendants' motion for summary judgment on this claim as well.

####    D.    CONCLUSION

    In sum, the Court concludes that factual disputes preclude the entry of summary judgment in Defendants' favor with respect to Plaintiff's claims.  Consequently, the Court will deny Defendants' motion for summary judgment in its entirety.  An appropriate Order will be entered.


    __September 24, 2014__                __s/ Jerome B. Simandle__
    Date                                  JEROME B. SIMANDLE
                                          Chief U.S. District Judge