IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CITY SELECT AUTO SALES, INC., *a New Jersey corporation, individually and as the representative of a class of similarly situated persons*,<br><br>Plaintiff,<br><br>v.<br><br>DAVID/RANDALL ASSOCIATES, INC. and RAYMOND MILEY, III,<br><br>Defendants. | HONORABLE JEROME B. SIMANDLE<br><br><br>Civil Action<br>No. 11-2658 (JBS/KMW)<br><br><br>**MEMORANDUM OPINION** |
| DAVID/RANDALL ASSOCIATES, INC. and RAYMOND MILEY, III,<br><br>Third-Party<br>Plaintiffs,<br><br>v.<br><br>CAROLINE ABRAHAM *d/b/a BUSINESS TO BUSINESS SOLUTIONS* and JOEL ABRAHAM *d/b/a BUSINESS TO BUSINESS SOLUTIONS*,<br><br>Third-Party<br>Defendants. | |

**SIMANDLE, Chief Judge:**

In this class action arising under the Telephone Consumer Protection Act, 47 U.S.C. § 227 (hereinafter, the "TCPA"), Third-Party Plaintiff David/Randall Associates, Inc. (hereinafter, "Third-Party Plaintiff" or "David/Randall") moves

for default judgment under Rule 55(b)(2), Fed. R. Civ. P.,
against Third-Party Defendants Caroline and Joel Abraham, d/b/a
Business to Business Solutions (hereinafter, the "Third-Party
Defendants" or the "Abrahams"), for failure to answer or
otherwise respond to the Third-Party Plaintiff's Complaint.[1]
[See Docket Item 153.]  For the reasons that follow, the Third-
Party Plaintiff's motion will be granted, and the Court will
enter a Default Judgment in favor of David/Randall and against
the Abrahams in the amount of $22,405,000.  The Court finds as
follows:

1.    In its Third-Party Complaint, the David/Randall
generally allege that the Abrahams "operated an unincorporated
advertising business" named "'Business to Business Solutions'"
(hereinafter, "B2B"), which disseminated facsimile
advertisements on behalf of its clients.  (Third-Party Compl. at
¶ 6.)  In 2006, the Abrahams offered to market David/Randall's
roofing services through their facsimile advertising program,
and represented to David/Randall that they operated "a lawful

---

[1] The Third-Party Complaint asserts claims on behalf of
David/Randall and Raymond Miley, III, the President of
David/Randall during the timeframe relevant to this litigation.
(See Third-Party Compl. at ¶¶ 2-3.)  Nevertheless, because the
Court has entered Judgment against David/Randall, but not Mr.
Miley, see generally City Select Auto Sales, Inc. v.
David/Randall Assocs., Inc., ___ F.Supp.3d ____, 2015 WL 1421539
(D.N.J. Mar. 27, 2015), the pending motion only concerns
David/Randall.

fax advertising business" that administered fax advertising campaigns in accordance with all applicable laws. (Id. at ¶¶ 10-12.) As a result, and in reliance on these representations, David/Randall "agreed to allow them to develop and conduct a fax advertising campaign on its behalf." (Id. at ¶ 13.) The Abrahams, in turn, "conceived, designed, and implemented" the campaign and sent 44,832 unsolicited transmissions to a list of individuals "that they alone determined," all of which David/Randall believed to be lawful. (Id. at ¶¶ 15-16; see also Ex. A to Third-Party Compl.)

2.    Nevertheless, on May 10, 2011, Plaintiff City Select Auto Sales, Inc. (hereinafter, "City Select") filed a Class Action Complaint, alleging that David/Randall violated the TCPA by sending, through the Abrahams, "form facsimile" advertisements to "29,113 unique fax numbers" without "prior express permission or invitation." (Ex. A to Third-Party Compl. at ¶¶ 13, 14, 29.) David/Randall, however, alleges that the Abrahams alone "developed" and "sent" all of the unlawful fax transmissions encompassed by City Select's Complaint. (Third-Party Compl. at ¶¶ 14-15.)

3.    In its Third-Party Complaint, David/Randall therefore asserts that the Abrahams should be held "jointly and severally" liable to contribute and/or indemnify David/Randall "for the

exact amount of any judgment" entered against them.[2]  (Id. at ¶¶ 17-18.)  In addition, David/Randall alleges that the Abrahams' "false and fraudulent representations" concerning the lawfulness of the fax transmissions amount to common law fraud (id. at ¶¶ 19-22), and submits that the Abrahams' conduct constitutes negligence, because they allegedly "knew or should have known that the acts they offered, solicited, planned, and ultimately carried out" would result in City Select's claims against David/Randall.  (Id. at ¶¶ 23-27.)

4.  On March 29, 2012, David/Randall successfully effectuated personal service of the Third-Party Complaint upon the Abrahams at their residence in Brooklyn, New York.[3] [See Docket Items 32 & 33.]  Following the Abrahams' failure to answer or otherwise respond to the Third-Party Complaint, the Court entered default against them on December 17, 2012 [Docket Item 53], and David/Randall's motion for default judgment followed.  [See Docket Item 153.]

---

[2] On March 27, 2015, the Court granted in part Plaintiff's motion for class-wide summary judgment, and entered Judgment in favor of the City Select Class and against David/Randall Associates, Inc. (but not Raymond Miley, III) in the amount of $22,405,000. See generally City Select Auto Sales, Inc., ___ F.Supp.3d ____, 2015 WL 1421539.

[3] David/Randall additionally provided the Abrahams with a copy of the summons and Third-Party Complaint by certified mail. [See Docket Items 32 & 33.]

5.    In the pending motion, David/Randall argues that the unchallenged facts of its Complaint demonstrate David/Randall's entitlement to entry of judgment against the Abrahams in the amount of the Judgment entered against it in connection with City Select's Class Action Complaint, $22,405,000. (<u>See</u> David/Randall's Br. at ¶ 5.)

6.    Federal Rule of Civil Procedure 55(b)(2) authorizes courts to enter a default judgment against a properly served third-party defendant who fails to a file a timely responsive pleading. <u>See</u> Fed. R. Civ. P. 55(b)(2); <u>see</u> <u>also</u> <u>Chanel v. Gordashevsky</u>, 558 F. Supp. 2d 532, 535 (D.N.J. 2008) (citing <u>Anchorage Assoc. v. Virgin Is. Bd. of Tax Rev.</u>, 922 F.2d 168, 177 n.9 (3d Cir. 1990)). Nevertheless, the decision of whether to enter a default judgment rests within the sound "discretion of the district court," <u>Hritz v. Woma Corp.</u>, 732 F.2d 1178, 1180 (3d Cir. 1984), and the Court of Appeals for the Third Circuit has "repeatedly state[d] [its] preference that cases be disposed of on the merits whenever practicable." <u>Id.</u> at 1181.

7.    As a result, prior to entering a judgment of default, a court must determine: (1) whether the plaintiff produced sufficient proof of valid service and evidence of jurisdiction, (2) whether the unchallenged facts present a legitimate cause of action, and (3) whether the circumstances otherwise render the entry of default judgment "proper." <u>Teamsters Health & Welfare</u>

Fund of Phila. & Vicinity v. Dubin Paper Co., No. 11-7137, 2012
WL 3018062, at *2 (D.N.J. July 24, 2012) (internal citations
omitted).  In so considering, a court must accept as true every
"well-pled" factual allegation of the complaint.  Comdyne I.
Inc. v. Corbin, 908 F.2d 1142, 1149 (3d Cir. 1990).  A court
need not, however, accept the plaintiff's legal conclusions, nor
the plaintiff's assertions concerning damages.  See id.; see
also Doe v. Simone, No. 12-5825, 2013 WL 3772532, at *2 (D.N.J.
July 17, 2013) (citations omitted).

     8.   As to the first inquiry, the Court must consider
whether David/Randall produced adequate evidence of this Court's
personal jurisdiction over the Third-Party Defendants, both
individual citizens of New York.[4]  Because the record fails to
disclose any basis to exercise general jurisdiction over the
Abrahams,[5] the Court must consider whether the Abrahams have
"'purposefully directed'" relevant activities at this forum for
purposes of specific jurisdiction.  Gen. Elec. Co. v. Deutz AG,
270 F.3d 144, 150 (3d Cir. 2001) (quoting Burger King Corp. v.
Rudzewicz, 471 U.S. 462, 472 (1985)).  The Court, however, need

---

[4] Based upon David/Randall's certificates of service, the Court
finds sufficient proof that David/Randall personal served the
Abrahams at their residence in Brooklyn, New York.  [See Docket
Items 32 & 33.]
[5] The Third-Party Complaint identifies the Abrahams as
individuals who reside at 1601 East 18th Street, Brooklyn, New
York, 11230.  (See Third-Party Compl. at ¶¶ 3-4.)

6

not belabor this inquiry, because the Third-Party Complaint and its exhibits make plain that the Abrahams deliberately and personally directed a significant number of facsimile transmissions toward this forum—indeed over 40,000 transmissions—and that these intentional communications form the fabric of City Select's underlying suit.  (See generally Ex. A to Third-Party Compl.)  As a result, the Court finds that the undisputed facts readily support the exercise of specific jurisdiction over the Abrahams.  See Grand Entm't Grp., Ltd. v. Star Media Sales, Inc., 988 F.2d 476, 482-83 (3d Cir. 1999) (finding the exercise of personal jurisdiction appropriate in connection with the entry of a default judgment, where the default judgment defendants "deliberately and personally" directed "at least twelve" relevant telephone and mail communications toward the forum).

9.   With respect to the second inquiry, the Court must consider whether the undisputed facts of David/Randall's Third-Party Complaint disclose legitimate claims for common law contribution against the Abrahams.  In addressing this inquiry, the Court turns to state law.[6]

---

[6] Under Federal Rule of Civil Procedure 14(a), a "defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty" on the grounds that the nonparty "may be liable to it for all or part of the claim against it." FED. R. CIV. P. 14(a)(1).  A third-party claim under Rule 14 can, however, only be maintained "if the liability asserted is in some way

10.   Under New Jersey' Joint Tortfeasors Contribution Law (hereinafter, "JTCL"), liability for contribution exists among "joint tortfeasors."  N.J.S.A. § 2A:53A-2 ("The right of contribution exists among joint tortfeasors.").  The act, in turn, defines "joint tortfeasors" as "two or more persons jointly or severally liable in tort for the same injury to person or property," regardless of whether a judgment "has been recovered against all or some of them."  N.J.S.A. § 2A:53A1.  The "true test" for joint tortfeasor contribution therefore hinges upon "'joint liability and not joint, common or concurrent negligence.'"  Cherry Hill Manor Assocs. v. Paul

---

derivative of the main claim."  Chao v. N.J. Licensed Beverage Ass'n, Inc., 461 F. Supp. 2d 303, 306 (D.N.J. 2006).  In other words, "[s]uch a claim is viable only where a proposed third party plaintiff says, in effect, 'If I am liable to plaintiff, then my liability is only technical or secondary or partial, and the third party defendant is derivatively liable and must reimburse me for all or part ... of anything I must pay plaintiff.'"  Id.  Moreover, "'[b]eing procedural in nature, Rule 14 itself does not create a right of contribution or indemnity; rather, a third-party plaintiff's right to relief must be cognizable under the substantive law.'"  Meyers v. Heffernan, No. 12-2434, 2014 WL 3343803, at *10 (D.N.J. July 8, 2014) (quoting Ford Motor Co. v. Edgewood Props., Inc., No. 06-1278, 2007 WL 4526594, at *10 (D.N.J. Dec. 18, 2007)).  The Third-Party Complaint gives little attention to the substantive basis for David/Randall's claim for contribution and/or indemnification.  Rather, the Complaint merely states, in its prefatory section, that the claims for contribution arise under state law.  (See Third-Party Complaint at ¶ 7.)  Nevertheless, upon review of the Third-Party Complaint in its entirety, the Court will construe this claim as one brought, as it must be, under New Jersey's Joint Tortfeasors Contribution Law.  See N.J.S.A. § 2A:53A-2.

Faugno, Rogan & Faugno, Harleysville Ins. Co. of N.J., 861 A.2d
123, 128 (N.J. 2004) (citations omitted).  Indeed, "'common
liability'" forms the "'very essence of [an] action of
contribution.'"  Tomkovich v. Pub. Serv. Coordinated Transp.,
160 A.2d 507, 509 (N.J. Super. Ct. App. Div. 1960) (citations
omitted).  In other words, in order to trigger the provisions of
the JCTL, the act of the alleged joint tortfeasor must have
resulted in the "'same injury'" as that alleged against the
entity seeking contribution, rather than a separate injury,
severable in time and effect.  Cherry Hill Manor Assocs., 861
A.2d at 129; see also Finderne Mgmt. Co., Inc. v. Barrett, 809
A.2d 857, 864 (N.J. Super. Ct. App. Div. 2002).

     11.  The record developed in this action readily supports a
finding that acts by the Abrahams resulted in the same injury
that has been alleged and adjudicated against David/Randall,
namely, the transmission of unsolicited facsimile advertisements
in violation of the TCPA.  Indeed, in entering Judgment against
David/Randall, the Court made clear that David/Randall's
liability flowed directly from the Abrahams' direct transmission
of over 44,000 unlawful facsimile advertisements.  See City
Select Auto Sales, Inc., ___ F. Supp. 3d ____, 2015 WL 1421539,
at *2-*3, *9-*13.  David/Randall, by contrast, bore vicarious
liability for the Abrahams' actual transmissions, as a result of
the fact that the Abrahams sent the transmissions on

David/Randall's behalf, and in order to advertise David/Randall's roofing services. See id. at *12-*13. In that respect, a finding of liability for contribution against the Abrahams plainly comports with JTCL's purpose of "'relie[ving] tortfeasors of an injustice among themselves'" and ensuring that "'those responsible for injury to an innocent victim [] share equally the burden of recompense.'" Cockerline v. Menendez, 988 A.2d 575, 589 (N.J. Super. Ct. App. Div. 2010) (quoting Riccio v. Prudential Prop. and Cas. Ins. Co., 531 A.2d 717, 722 (N.J. 1987)). Therefore, the Court concludes that David/Randall has a legitimate claim for contribution under the JTCL, on the basis that the Abrahams constitute joint tortfeasors.[7] See Katz v. Holzberg, No. 13-1726, 2013 WL 5946502, at *4-*5 (D.N.J. Nov. 4, 2013) (finding that the third-party plaintiff stated a sufficient claim for contribution under the JTCL, where the pleading demonstrated that the third-party defendant beared responsibility for the same alleged injury to the plaintiff).

12. Finally, with respect to the third inquiry, whether the entry of default judgment would be proper, the Court must consider "(1) whether the party subject to default has a

---

[7] David/Randall seeks essentially identical relief under theories of common law fraud and negligence. (See Am. Compl. at ¶¶ 19-27.) However, because David/Randall has made a sufficient showing on its claim for contribution, the Court need not reach these parallel claims (which, in any event, do not provide the basis for the pending motion).

meritorious defense, (2) the prejudice suffered by the party
seeking default, and (3) the culpability of the party subject to
default." Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide
Funds, 250 F.R.D. 171, 177 (D.N.J. 2008).  Here, the Abrahams
have failed to proffer any defense to David/Randall's claims,
meritorious or otherwise, and the Third-Party Complaint provides
no clear suggestion of any meritorious defenses.  See Surdi v.
Prudential Ins. Co. of Am., No. 08-225, 2008 WL 4280081, at *2
(D.N.J. Sept. 8, 2008) ("The facts as alleged in the Complaint
provide no indication of a meritorious defense.").  Moreover,
because the Court entered Judgment against David/Randall, and
because David/Randall has no other means of obtaining
contribution from the Abrahams who share equally the burden of
recompense, the Court finds that David/Randall would be
prejudiced in the absence of a default judgment.  See Gowan v.
Cont'l Airlines, Inc., No. 10-1858, 2012 WL 2838924, at *2
(D.N.J. July 9, 2012) (noting that the inability to "vindicate
rights" absent a default judgment constitutes prejudice); see
also Ramada Worldwide Inc. v. Courtney Hotels USA, Inc., No. 11-
896, 2012 WL 924385, at *5 (D.N.J. Mar. 19, 2012) ("If a default
judgment is not entered, [the plaintiff] will continue to be
harmed because it will not be able to seek damages for its
injuries due to defendant's continuing refusal to participate in
this case.").  Lastly, because the Abrahams failed to defend

11

against this litigation despite effective service of the Third-Party Complaint, the Court finds the Abrahams' default attributable to culpable conduct.  See Lee, 2014 WL 7339195, at *3 (finding the defendant's failure to respond despite awareness of the litigation "due to culpable conduct").  For these reasons, the Court finds default judgment warranted as to David/Randall's claim for contribution.

13.  Nevertheless, the Court must still assess the appropriate amount of damages to be awarded.  Under Federal Rule of Civil Procedure 55(b)(2), a court "may conduct such hearing or order such references as it deems necessary and proper" in order "to determine the amount of damages."  Where, however, the movant seeks damages for a "sum certain or for a sum which can by computation be made certain," FED. R. CIV. P. 55(b)(1), the Court may rely upon detailed affidavits, without further evidentiary inquiry.  Durant v. Husband, 28 F.3d 12, 15 (3d Cir. 1994); Amresco Fin. I L.P. v. Storti, No. 99-2613, 2000 WL 284203, at *2 (E.D. Pa. Mar. 13, 2000) (noting that the entry of a default judgment with an award of damages is proper when the damage amount can be ascertained from detailed figures in evidence and affidavits).

14.  Here, because David/Randall's damages flow directly from the Judgment entered against it on March 27, 2015, the calculation of damages in this instance proves uncomplicated.

Indeed, because the Abrahams, as stated above, have equal liability to that of David/Randall as joint tortfeasors in connection with the unlawful fax transmissions, the Court finds David/Randall entitled to the entry of Judgment in the same amount entered against it, $22,405.000.[8]

15.  For all of these reasons, David/Randall's motion for default judgment will be granted, and the Court will enter Judgment upon the Third-Party Complaint against the Abrahams and in favor of David/Randall in the amount of $22,405,000.

16.  An accompanying Order will be entered.


**July 23, 2015**                          **s/ Jerome B. Simandle**
Date                                       JEROME B. SIMANDLE
                                           Chief U.S. District Judge

---

[8] In its Third-Party Complaint (but not its pending motion), David/Randall seeks to augment any judgment with an award of punitive damages, costs, interest, and attorneys' fees. Nevertheless, the Court need not reach this issue, because David/Randall only requests at this time the entry of Judgment against the Abrahams in the exact amount assessed against it, $22,405,000.