1                 UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF NEW JERSEY
2    _____
     CITY SELECT AUTO SALES, INC.,
3
              Plaintiff,
4
              vs.                         NO. 1:11-CV-02658-JBS-KMW
5
     DAVID RANDALL ASSOCIATES, INC.,
6    et al,
7             Defendants.
     _____
8                                  UNITED STATES COURTHOUSE
                                   ONE JOHN F. GERRY PLAZA
9                                  4TH AND COOPER STREETS
                                   CAMDEN, NEW JERSEY 08101
10                                 MAY 24, 2016

11   B E F O R E:       THE HONORABLE JEROME B. SIMANDLE
                        UNITED STATES DISTRICT JUDGE
12
     A P P E A R A N C E S:
13
     BOCK & HATCH
14        BY:  DANIEL J. COHEN, ESQUIRE
               TOD A. LEWIS, ESQUIRE
15                  Counsel for Plaintiff

16   FLAMM WALTON HEIMBACH & LAMM P.C.
          BY:  F. EMMETT FITZPATRICK, III, ESQUIRE
17                  Counsel for Defendants

18

19

20

21

22

23   Certified as true and correct as required by Title 28,
     U.S.C., Section 753.
24
                         /S/ Karen Friedlander, CRR, RMR
25                       /S/ Robert Tate, CRR, RMR


                     *United States District Court*
                       *Camden, New Jersey*

1              **W I T N E S S   I N D E X**

2

3     **WITNESS**                                                    **PAGE**

4     APRIL CLEMMER                                                 28

5     DIRECT EXAMINATION OF APRIL CLEMMER BY MR. COHEN:             29

6     VOIR DIRE EXAMINATION OF APRIL CLEMMER BY MR.                 101

7     FITZPATRICK:

8     CONTINUED DIRECT EXAMINATION EXAMINATION OF APRIL             102

9     CLEMMER BY MR. COHEN:

10    VOIR DIRE EXAMINATION OF APRIL CLEMMER BY MR.                 109

11    FITZPATRICK:

12    CROSS-EXAMINATION OF APRIL CLEMMER BY MR.                     113

13    FITZPATRICK:

14    REDIRECT EXAMINATION OF APRIL CLEMMER BY MR. COHEN:           138

15    RECROSS EXAMINATION OF APRIL CLEMMER BY MR.                   149

16    FITZPATRICK:

17

18

19

20

21

22

23

24

25

1          **E X H I B I T   I N D E X**

2

3

4     **EXHIBIT NUMBER**                                      **PAGE**

5

6     PLAINTIFF EXHIBIT P-1 WAS RECEIVED IN EVIDENCE        40

7     PLAINTIFF EXHIBIT P-2 WAS RECEIVED IN EVIDENCE        43

8     PLAINTIFF EXHIBIT P-4 WAS RECEIVED IN EVIDENCE        46

9     PLAINTIFF EXHIBIT P-3 WAS RECEIVED IN EVIDENCE        46

10    PLAINTIFF EXHIBIT P-5 WAS RECEIVED IN EVIDENCE        48

11    PLAINTIFF EXHIBIT P-6 WAS RECEIVED IN EVIDENCE        49

12    PLAINTIFF EXHIBIT P-7 WAS RECEIVED IN EVIDENCE        50

13    PLAINTIFF EXHIBIT P-34 WAS RECEIVED IN EVIDENCE       53

14    PLAINTIFF EXHIBITS P-8 AND P-9 WERE RECEIVED IN       58

15    EVIDENCE

16    PLAINTIFF EXHIBIT P-10 WAS RECEIVED IN EVIDENCE       61

17    PLAINTIFF EXHIBIT P-11 WAS RECEIVED IN EVIDENCE       64

18    PLAINTIFF EXHIBIT P-12 WAS RECEIVED IN EVIDENCE       66

19    PLAINTIFF EXHIBIT P-13 WAS RECEIVED IN EVIDENCE       70

20    PLAINTIFF EXHIBIT P-14 WAS RECEIVED IN EVIDENCE       74

21    PLAINTIFF EXHIBIT P-15 WAS RECEIVED IN EVIDENCE       75

22    PLAINTIFF EXHIBIT P-16 WAS RECEIVED IN EVIDENCE       83

23    PLAINTIFF EXHIBIT P-17 WAS RECEIVED IN EVIDENCE       84

24    PLAINTIFF EXHIBIT P-18 WAS RECEIVED IN EVIDENCE       87

25    PLAINTIFF EXHIBIT P-19 WAS RECEIVED IN EVIDENCE       88

```
 1    PLAINTIFF EXHIBIT P-10 WAS RECEIVED IN EVIDENCE        91
 2    PLAINTIFF EXHIBIT P-21 WAS RECEIVED IN EVIDENCE        92
 3    PLAINTIFF EXHIBIT P-22 WAS RECEIVED IN EVIDENCE        94
 4    PLAINTIFF EXHIBIT P-23 WAS RECEIVED IN EVIDENCE        99
 5    PLAINTIFF EXHIBIT P-40 WAS RECEIVED IN EVIDENCE       101
 6    PLAINTIFF EXHIBIT P-24 WAS RECEIVED IN EVIDENCE       104
 7    PLAINTIFF EXHIBIT P-25 WAS RECEIVED IN EVIDENCE       106
 8    PLAINTIFF EXHIBIT P-26 WAS RECEIVED IN EVIDENCE       107
 9    PLAINTIFF EXHIBIT P-27 WAS RECEIVED IN EVIDENCE       108
10    PLAINTIFF EXHIBIT P-28 WAS RECEIVED IN EVIDENCE       113
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

1           THE DEPUTY CLERK:  All rise.

2           (OPEN COURT, May 24, 2016, 9:46 a.m.)

3           RESPONSE:  Good morning, Your Honor.

4           THE COURT:  Good morning.  Be seated, please.

5       Overnight, as I promised, I looked into the issue of

6   sender liability more and then this morning, there arrived a

7   supplemental trial brief from the plaintiffs on that issue,

8   and Mr. Fitzpatrick, have you reviewed the plaintiff's brief?

9           MR. FITZPATRICK:  I have not, sir.  I only received

10  it this morning, as well.

11          THE COURT:  Okay.  What I had done, overnight

12  actually before seeing the brief, was to rethink the nature of

13  why sender is used in the statute and to revise the

14  description of the case and the summary of applicable law, so

15  that we can begin this trial.  And so I've handed out what's

16  called Draft No. 3, description of the case and summary of

17  applicable law.

18      What this does is to recognize that David Randall

19  Associates was determined to be a sender and that if Mr. Miley

20  is acting on behalf of the sender, then that would satisfy --

21  that would satisfy that.  And so the revision clarifies the

22  summary of applicable law and it boils down to trial issue to

23  the personal responsibility of Defendant Miley.

24      So have you had an opportunity to review Draft No. 3?

25          MR. COHEN:  Plaintiff has.

*United States District Court*
*Camden, New Jersey*

```
1              THE COURT:  All right.

2              MR. FITZPATRICK:  Yes, we have, sir.

3              THE COURT:  All right.  Any objections?

4              MR. COHEN:  None from plaintiff.

5              MR. FITZPATRICK:  No, sir.

6              THE COURT:  Okay.  Then that will be the basis of

7   the --

8              MR. FITZPATRICK:  May I just add --

9              THE COURT:  -- of instruction.

10             MR. FITZPATRICK:  -- just to be clear, none that

11  weren't stated yesterday and we've already -- Your Honor has

12  already ruled upon them.

13             THE COURT:  Yes, I understand.

14             MR. FITZPATRICK:  Okay.

15             THE COURT:  Also, you should have a copy of the order

16  that I signed that enters the partial summary judgement.

17  Yesterday, I think you had a draft version of it.  It's been

18  slightly tweaked in light of the sender clarification, and so

19  this morning's version is the version that is going on the

20  CMECF system right now, because I've actually signed it.

21        Any other questions before we bring the jury in?

22             MR. COHEN:  No, Your Honor.

23             THE COURT:  Okay.  Let me say a word about opening

24  statements.  I want to remind counsel on both sides of the

25  purpose and nature of an opening statement.  It's not
```

1    argument.  It's not argument in trying to persuade the jury of

2    how they should line up facts that they haven't heard any

3    evidence on yet.  It's properly meant to be a prediction of

4    what you hope the evidence will be, what the counterevidence

5    might be, and what you have to prove or what you have to make

6    sure the other side doesn't prove, as the case may be.

7            Anything that's helpful to orient the jury into what it

8    is they're going to be seeing and hearing, and it's really not

9    a time to quote much law either.  That will come at the end of

10   the case when we have our final instructions and for those, as

11   far as I'm concerned, you can quote them verbatim to the jury.

12   You can put them up on the screen if you want or whatever you

13   want to do as to the applicable law, because you will have the

14   final version of the instructions before you do your closings.

15           Any questions about openings?

16           MR. COHEN:  Judge, I wouldn't intend to pontificate

17   on law in opening, but I assume we can go to the simple point

18   of explaining the TCPA prohibits the sending of unsolicited

19   fax advertisements.

20           THE COURT:  Absolutely, you can orient them as to the

21   law, try to be faithful to the language of the statute or of

22   this summary and the finer points of the law, I'll be

23   explaining to them at the end.

24           MR. COHEN:  Understood, Judge, thank you.

25           THE COURT:  Oh, you'll also notice in the draft, I

*United States District Court*
*Camden, New Jersey*

1  should be sure to point this out, Draft No. 3 contains the

2  definition of the class that was missing yesterday.  Paragraph

3  No. 2 recites the class definition, so that when we refer to

4  the word "class," the jury will know what is the class.

5       Okay.  I believe we're ready to start then.  And all I

6  ask is that you be respectful of the process and play fair.

7  I'll try not to intervene and I enjoy letting attorneys, you

8  know, practice their craft, try their case.

9           THE DEPUTY CLERK:  All rise.

10          (JURY ENTERS; 9:54 a.m.)

11          THE COURT:  Be seated, please.  Good morning, ladies

12  and gentlemen, welcome back.

13          RESPONSE:  Good morning.

14          THE COURT:  You'll recall that you were sworn as

15  jurors yesterday and I'll now give you some preliminary

16  instructions to guide you in your participation in this trial.

17       What's the duty of the jury?  It will be your duty to

18  find from the evidence what the facts are.  You, and you alone

19  are the judges of the facts.  You will then have to apply to

20  those facts the law as the Court will give it to you.  You

21  must follow that law, whether you agree with it or not.  Now,

22  nothing that I may say or do during the course of the trial is

23  intended to indicate or should be taken by you as indicating

24  what your verdict should be.

25       What is evidence?  The evidence from which you will

1   find the facts will consist of the testimony of witnesses,

2   documents and other things received into the record as

3   exhibits and any facts that the lawyers agree or stipulate to

4   or that the Court may instruct you to find.

5        Certain things are not evidence and must not be

6   considered by you and I'll list them for you now:  First, the

7   statements, arguments and questions by the lawyers are not

8   evidence.

9        Second, objections to questions are not evidence.

10  Lawyers have an obligation to their clients to make an

11  objection when they believe evidence being offered is improper

12  under the rules of evidence.  You should not be influenced by

13  the objection or by the Court's ruling on it.  If the

14  objection is sustained, that is, if I find that the objection

15  has merit, then you should ignore the question.  If I overrule

16  the objection, then treat the question and the answer like any

17  other.  If you're instructed that some item of evidence is

18  received for a limited purpose only, then you must follow my

19  limiting instruction.

20       Third, testimony that the Court excludes or tells you

21  to disregard is not evidence and may not be considered.

22  Sometimes it will happen that a witness will volunteer

23  information that's not part of the question that that witness

24  has been asked, and that would not be proper, and so I would

25  instruct you to disregard what the witness just said that went

1   beyond the question that the witness was asked.  That's one

2   example, and there may be others.

3        And fourth, anything that you see or hear outside the

4   courtroom is not evidence and must be disregarded.  You are to

5   decide the case solely on the evidence presented here in the

6   courtroom.

7        Now, there are two kinds of evidence:  Direct evidence

8   and circumstantial evidence.  Direct evidence is direct proof

9   of a fact, such as testimony of an eyewitness.  Circumstantial

10  evidence is proof of facts from which you may infer or

11  conclude that other facts exist.  And I'll give you further

12  instructions on these, as well as other matters at the end of

13  the case, but have in mind that you may indeed consider both

14  kinds of evidence, both circumstantial and direct evidence,

15  and it will be up to you to decide which witnesses to believe,

16  which witnesses not to believe and how much of any witness's

17  testimony to accept or reject.  And I'll give you some

18  guidelines for determining the credibility of witnesses at the

19  end of the case.

20       But bear in mind, in weighing credibility and the

21  weight that you give to evidence, that you bring your common

22  sense into this courtroom.  You can consider in weighing

23  credibility the appearance and demeanor of the witness while

24  on the witness stand, whether the witness has done or said

25  something previously that contradicts what the witness is

1  testifying to now, whether that contradiction is major or

2  something that you deem insignificant.

3      You can weigh credibility by comparing what the witness

4  says to other evidence in the case in which you hold a greater

5  degree of confidence.  In short, you can evaluate a witness

6  the same way that you would evaluate others in transactions

7  that are of importance to you.

8      Let me say a word about pretrial discovery.  You may

9  hear during the trial that information was given or received

10 during the discovery phase of a case before trial.  Pretrial

11 discovery means the exchange of relevant information about the

12 facts of this case that is permitted under the Court's rules

13 as the parties are preparing for trial or other resolution of

14 their dispute.

15     Discovery normally takes place in up to three types of

16 procedures.  First, Interrogatories.  You may hear that a

17 party has answered Interrogatories.  These are written

18 questions to a party which are answered in writing under

19 penalty of perjury.

20     You may hear about document production.  A party may

21 obtain copies of certain relevant documents from another party

22 or even from a third party for possible use at trial.

23     And, third, you may hear of depositions.  At a

24 deposition, a party may obtain testimony under oath from

25 another party or a witness about the case and a written

1   transcript is prepared for possible use at trial.

2          Let me discuss the burden of proof.  This, as you know,

3   is a civil case.  The plaintiff, City Select Auto Sales,

4   Incorporated and the plaintiff class has the burden of proving

5   their case by what is called the preponderance of the

6   evidence.  That means that the plaintiff has to produce

7   evidence which, considered in the light of all the facts,

8   leads you to believe that what the plaintiff claims is more

9   likely true than not.

10          To put it differently, if you were to put the evidence

11  favorable to the plaintiff and the evidence favorable to the

12  defendant on opposite sides of a balance scale, the plaintiff

13  would have to make the scales tip somewhat on the plaintiff's

14  side.  If the plaintiff fails to meet this burden, the verdict

15  must be for the defendant.

16          Now those of you who have sat on a criminal jury will

17  have heard about proof beyond a reasonable doubt.  That

18  requirement does not apply in a civil case and you should

19  therefore put it out of your mind.  A fact is deemed to be

20  established if you find that it is supported by a

21  preponderance of the evidence.

22          So I'd like to give you a very brief description of the

23  case and the summary of the applicable law, and in a moment,

24  the attorneys will talk to you more by way of introduction

25  about the case.

*United States District Court*
*Camden, New Jersey*

1     In 2006, a commercial roofing company, David Randall

2  Associates, Incorporated, engaged a company known as Business

3  to Business Solutions, or B2B, to send facsimile

4  advertisements on its behalf.  In this case, City Select Auto

5  Sales, Incorporated, which is the plaintiff, claims that these

6  fax advertisements violated the Telephone Consumer Protection

7  Act and the plaintiff seeks to hold the former president of

8  David Randall, namely, Mr. Raymond Miley, III personally and

9  individually responsible for these transmissions.

10     A class of plaintiffs has been certified in this case,

11  with City Select Auto Sales, Inc., serving as the class

12  representative.  The class is defined as follows:  Quote, all

13  persons and entities with whom David Randall Associates did

14  not have an established business relationship, who were

15  successfully sent one or more unsolicited faxes during the

16  period March 29th, 2006 through May 16th, 2006, stating roof

17  leaks, repairs available, just give us a call and let our

18  professional service technicians make the repairs and call

19  David Randall Associates, Incorporated, today, close quote.

20  That's the definition of the class.

21     The Telephone Consumer Protection Act or TCPA makes it

22  unlawful for any person to send any unsolicited advertisement

23  to a fax machine unless the advertisements meet certain

24  exceptions and it awards $500 in damages for each violation of

25  the statute.  A TCPA claim generally requires proof that

1    first, the defendant utilized or caused to be utilized a

2    telephone facsimile machine to send one or more faxes; second,

3    that the transmission constituted advertisements, or

4    advertisements; third, that the defendant sent the

5    transmission without the recipient's consent and outside of

6    any one of the statutory exceptions; fourth, that the

7    defendant qualifies as a sender for purposes of the TCPA, that

8    is, the entity on whose behalf a facsimile unsolicited

9    advertisement is sent or whose goods or services are

10   advertised or promoted in the unsolicited advertisement or a

11   person acting on behalf of that entity; and in the case of an

12   individual, No. 5, that the individual defendant had a high

13   level of personal involvement in the unlawful fax

14   transmissions.

15        In this case, I instruct you that certain facts are not

16   in dispute and may be regarded as proved; namely, No. 1, that

17   a telephone facsimile machine was successfully used to

18   transmit the subject faxes; No. 2, that the fax transmissions

19   constituted advertisements within the meaning of the TCPA;

20   No. 3, that the subject fax transmissions were sent without

21   the consent or authorization of the recipients; and No. 4,

22   that David Randall Associates, Inc., is a sender under the

23   TCPA.

24        On the other hand, it is disputed whether Defendant

25   Miley acted on behalf of David Randall Associates and whether

1 he had a high level of personal involvement in the lawful fax

2 transmissions.  Such personal involvement requires plaintiff

3 to demonstrate that Defendant Miley personally participated in

4 or specifically authorized the facsimile advertisements that

5 have been found to be unlawful.

6      I'll give you more detailed instructions on the law at

7 the end of the case and those instructions will control your

8 deliberations and decision.  In order to help you follow the

9 evidence, however, I'll now give you a brief summary of the

10 specific showing that the plaintiff, City Select, must make by

11 a preponderance of the evidence to prove its case for the

12 personal liability of Mr. Miley.

13      As a general matter, if a corporation is found to have

14 violated a federal statute, its officers will not be

15 personally liable solely because of their status as officers.

16 Under the TCPA, however, an individual acting on behalf of a

17 corporation may, under certain limited circumstances, be held

18 personally or individually liable for the corporation's

19 violation of the TCPA if the individual, first, had direct

20 personal participation in the conduct found to have violated

21 the TCPA; or second, personally authorized the conduct found

22 to have violated the TCPA.  Thus, the personal liability of a

23 corporate director or officer must be founded upon active

24 oversight of or control over the conduct that violated the

25 TCPA, rather than merely tangential involvement.

*United States District Court*
*Camden, New Jersey*

**1**      Your involvement, as the jury, will be to determine

**2**  whether Mr. Miley acted on behalf of David Randall and whether

**3**  Mr. Miley's activities relative to the unlawful facsimile

**4**  advertisements meet these requirements based upon the evidence

**5**  presented to you during this trial.

**6**      If the plaintiff class fails to prove any of these

**7**  elements, then your verdict must be for Defendant Miley.  If,

**8**  however, you find that the plaintiff class has met these

**9**  elements, then you will determine the quantity of unlawful

**10**  facsimile advertisements for which Defendant Miley is liable.

**11**      Now, I'd like to share a few words about your conduct

**12**  as jurors.  First, I instruct you that during the trial,

**13**  you're not to discuss the case with anyone or permit anyone to

**14**  discuss it with you.  Until you retire to the jury room at the

**15**  end of the case to deliberate on your verdict, you are simply

**16**  not to talk about your impressions of this case.

**17**      Second, do not read or listen to anything touching on

**18**  this case in any way.  If anyone should try to talk to you

**19**  about it, bring it to the Court's attention promptly.

**20**      Third, do not try to do any research or make any

**21**  investigation about the case on your own.  For example, do not

**22**  even think about trying to find relevant information on the

**23**  internet.  It would violate your oath as a juror to do so.

**24**      This means that you may not communicate about this case

**25**  by cell phone or any other modality.  You may not chat about

1  it, you may not post it on your Facebook page about it, and

2  you may not, in short, use any sort of social media to portray

3  your participation in this case as a juror, your impressions

4  of the case or anything else.

5          Also, please be aware that this is a small courthouse.

6  The people in the elevators, the lobby and the hallways may

7  well be attorneys or witnesses connected with this case.

8  Please do not engage in any conversation with others and do

9  not have any discussion with one another that can be

10  overheard.  And similarly, when you're at lunch, please do not

11  discuss the case.

12          Do not form any opinion until all the evidence is in.

13  Keep an open mind until you start your deliberations at the

14  end of the case.

15          Finally, if any member of the jury has a friend or a

16  family member who is in attendance at this public trial, that

17  visitor must first register with my clerk, Marnie Macciarella,

18  because special rules will govern their attendance.  You may

19  not discuss any aspect of this case with your visitor nor may

20  you permit the visitor to discuss it with you.

21          A word about taking notes.  You will recall that during

22  the jury selection process, I indicated that you're permitted

23  to take notes in this case if it will help you to remember.

24  If you wish, you may take notes of the testimony.  My clerk

25  will distribute notebooks to each of you which you are free to

1   use or not use and remember that they are for your own

2   personal use.  They're not to be given or read to anyone else.

3   Many jurors do find it helpful to jot down the name of the

4   witness who is testifying and a few of the points of the

5   witness's testimony that you wish to remember.

6        This can be helpful when you're trying to recall later

7   on exactly what it was that a witness said or failed to say.

8   You don't get copies of the transcripts.  In fact, there is no

9   transcript of the case as we go along, and so it's up to you

10  to use your best recollection collectively, as members of the

11  jury, to recall the evidence when you are analyzing it and

12  deliberating at the end of the case.

13       I'd like to say a word about asking questions.  As

14  jurors, you will have the opportunity to ask questions of

15  witnesses in writing.  When a witness has been examined and

16  cross-examined by counsel and after I ask any clarifying

17  questions of the witness, then I will ask whether any juror

18  has any questions for the witness.  If so, you will take a

19  moment to write your question on a piece of paper without

20  discussing your question with any other juror and hand it to

21  my deputy clerk.  I will review your question with the

22  attorneys at the sidebar and determine whether the question is

23  appropriate under the rules of court.  If so, that question

24  and perhaps reasonable follow-up questions will be asked of

25  the witness.  If not, then the question will not be asked and

1    I normally don't give an explanation of why it's not being

2    asked.

3        Remember in forming your question, that this

4    opportunity is for the purpose of clarifying testimony to aid

5    your understanding, and certainly, no one is required to

6    formulate any questions.  But if you have questions, that's

7    the procedure for getting them answered.

8        The trial will now begin.  First, each side will make

9    an opening statement.  An opening statement is not evidence

10   and it's not even argument.  You don't hear argument until the

11   end of the case.  But it is an outline of what that party

12   intends to prove, offered to help you to follow the evidence.

13       Next, the plaintiff and plaintiff class will present

14   their witnesses and the defendant, through counsel, may

15   cross-examine them.  Then the defendant, Mr. Miley, will

16   present his witnesses, and plaintiff, through their attorneys,

17   may cross-examine them.  After that, the attorneys will make

18   their closing arguments to summarize and interpret the

19   evidence for you and the Court will give you instructions on

20   the law, and then you will retire to deliberate on your

21   verdict.  You will be able, again, to see the exhibits, that

22   is, the documents that are received in evidence at trial.

23       You do not receive transcripts of the trial testimony,

24   so you must concentrate during the trial and rely on your

25   recollection of the testimony.

1          Also, as I previously said, if at any time you can't

2     hear a witness or you can't see an exhibit, put up your hand

3     so that we can do a better job of making sure that you hear it

4     and see it.  But if you say nothing, then we just won't know

5     if you're not getting it.

6          We take regular breaks, as I mentioned yesterday, and

7     if at any time aside from that, you feel you need a break,

8     again, just put up your hand and I'll honor that request.

9          And so that completes these preliminary instructions.

10    Is there anything else that counsel would have me share with

11    the jury at this time?

12         MR. COHEN:  No, Your Honor.

13         MR. FITZPATRICK:  No, Your Honor.

14         THE COURT:  Okay.  Very well.

15         Then, ladies and gentlemen, and I'll call upon

16    Mr. Daniel Cohen who will speak with you on behalf of the

17    plaintiff class.  Mr. Cohen.

18         MR. COHEN:  Thank you, Judge.  May it please the

19    Court, Counsel.  Good morning.  My name is Dan Cohen and I'm

20    joined by my co-counsel Tod Lewis and together we represent

21    City Select Auto Sales.  We are joined by Mr. Pellegrini who

22    is the owner and he's here on -- both his own behalf as the

23    owner of the plaintiff company and on behalf of the class of

24    people and companies that were similarly situated to his, in

25    that they received via legal fax advertisements, advertising

**1**   David Randall Associates' goods and services.

**2**       This is -- I will anticipate this is going to be a

**3**   short trial.  I anticipate the trial might end tomorrow.  I

**4**   apologize if I turn out to be wrong, but I do anticipate we

**5**   will be done tomorrow, because we're going to put a witness on

**6**   the stand today and we may or may not finish with her, but

**7**   when we're done, I anticipate the defendant will put one

**8**   witness on the stand and when that witness is done, I believe

**9**   the evidence is going to be concluded, and I simply don't

**10**  think that's going to go beyond tomorrow.

**11**      What I'm going to tell you now is undisputed.  In

**12**  March, April and May of 2006, a company called Business to

**13**  Business Solutions, or B2B, and they also operated under a

**14**  marketing logo called Maxi-Leads.  They issued four separate

**15**  independent broadcast blasts of faxes; one in March and in

**16**  April and in May, total of four separate broadcast blasts.

**17**  Each broadcast was in the number of thousands and thousands of

**18**  fax transmissions.  Each broadcast advertised the goods and

**19**  services of David Randall Associates.

**20**      Mr. Miley, the defendant in this case, in this

**21**  courtroom at this time, at that time was an owner and the

**22**  managing officer of David Randall Associates.

**23**      All four of those fax broadcasts and all of the

**24**  thousands of fax transmissions in each of those fax broadcasts

**25**  violated the Telephone Consumer Protection Act, or the TCPA,

1  because it's unlawful under the TCPA to send unsolicited fax

2  advertisements.

3       The Court has already found that the company David

4  Randall Associates is liable for all four of those broadcasts

5  and all of the many thousands of fax transmissions in each of

6  those broadcasts, and that $500 per fax transmission, the

7  Court has entered judgment against the company, David Randall

8  Associates, in the approximate amount of $22 million.

9       In this case, the issue is whether Mr. Miley, the

10  former owner and managing officer of David Randall Associates,

11  is also individually liable for those violations and for

12  damages.  In fact, that is the only issue, and that's why one

13  of the questions that was asked of you when we were selecting

14  the jury yesterday morning was Question No. 20, which noted

15  that under certain limited circumstances, the law provides

16  that an owner or officer of the company can be held personally

17  liable for the unlawful actions of his company if he directly

18  participated in or personally authorized such unlawful

19  actions, and the Court asked, would you be able to follow my

20  instructions as to the law of individual liability, and each

21  of you indicated you would.

22       And this entire trial ends up being about that Question

23  No. 20, because as the Court has already foreshadowed for all

24  of us, in order to hold Mr. Miley liable for the four fax

25  broadcasts on behalf of -- shouldn't forget the name of the

1    defendant, but I apologize -- on behalf of the company, the

2    evidence has to prove that he had direct personal

3    participation in the fax broadcasting process or that he

4    personally authorized those fax broadcasts.

5         And that kind of involvement, either/or, the

6    participation or the authorization, the Court has already

7    contrasted for you against what the Court described as merely

8    tangential involvement, collateral, off to the side, not

9    significant.

10        What the evidence is going to be is that Mr. Miley not

11   only had significant direct participation in the fax

12   broadcasting decisions and the whole process, but that he was

13   the central figure at David Randall Associates doing it all.

14   He was acting through a staff member, a woman named April

15   Clemmer, who will be coming in to testify.  She was in the

16   nature of a secretary, office manager, but with very limited

17   authority, and she was the one communicating with the fax

18   broadcaster, B2B, but you're going to hear from her that at

19   all times, she was merely doing what Mr. Miley told her to do.

20   She was merely communicating that which Mr. Miley had

21   indicated, instructed, authorized and approved.

22        As the Judge indicated, we conduct discovery before

23   trial and we get to gather documents, we get to take

24   depositions.  Ms. Clemmer has been deposed.  She was deposed a

25   long time ago and she walked through her involvement and

1    participation in these fax broadcasts and she was very clear

2    at all times.

3         Among other things, I expect what she will tell you

4    when she comes in here and testifies today, is that in her

5    capacity with the company, David Randall Associates, she did

6    not have authority to enter into contracts.  She did not have

7    authority to bind the company contractually or to pay money on

8    behalf of the company.  She did not have the authority to sign

9    on the checking account of David Randall Associates, that when

10   it came to marketing and advertising, Mr. Miley handled that.

11        That when Business to Business Solutions, or B2B, fax

12   broadcasting company, contacted David Randall Associates, it

13   was Mr. Miley who came to Ms. Clemmer and brought it to her

14   attention that there was this offer of fax broadcasting

15   advertising services, and he asked her to follow up with B2B

16   to find out what the cost would be, how many faxes for a

17   particular price and what other information B2B would need to

18   proceed with the broadcasts.

19        At his request and instruction, she spoke with B2B and

20   then she reported back to Mr. Miley with the information she

21   had learned.  And Mr. Miley responded, quote, it sounded like

22   something we'd be interested in doing for service repairs.

23   And the meaning of service repairs is Mr. Miley and David

24   Randall Associates was a roofing contractor, so the idea was

25   if you're not installing a roof, you're repairing a roof, and

1  the idea was this would be a good advertisement method for our

2  roofing repairs service.

3      Ms. Clemmer will tell you that it was Mr. Miley's idea

4  for the first of these four broadcasts to wait until a rainy

5  day.  The idea being, if you have a roof that leaks, that's

6  when you'll encounter the problem, and if you happen to get a

7  fax on that day that offers roofing services, you're likely to

8  get a call.

9      And he asked Ms. Clemmer to touch base with the fax

10 broadcaster B2B to see how much lead time B2B would need so

11 that everything would be set up and ready to go so when the

12 rainy day hit, they could contact B2B and say, do it now.

13     And Ms. Clemmer, at Mr. Miley's request and

14 instruction, worked that out with B2B and she will tell you

15 that throughout the process, she kept Mr. Miley aware of what

16 she was doing at all times and of what B2B was telling her at

17 all times, and that all of her contact with B2B at all times

18 was on Mr. Miley's behalf.

19     And I anticipate she's going to confirm for you that

20 Mr. Miley himself individually and personally reviewed the ad

21 that the fax broadcaster B2B came up with advertising David

22 Randall Associates' goods and services, that he was the

23 ultimate decision-maker in approving the form of that ad, that

24 he determined for each of the four broadcasts the number of

25 faxes to be sent, that he determined when each of those four

1  fax broadcasts would issue, and that he determined the desired

2  or intended geographic scope of each of the broadcasts.

3      The fax broadcasts were paid for with a company check

4  and the method of handling it was in sending in to B2B by fax,

5  the final approval to go ahead, they would make a copy of the

6  check, it would be fully filled out that it would say void,

7  and they would fax a copy of the completed check payable to

8  B2B, they would fax it to B2B and then B2B would create an

9  electronic check using the routing information from what was

10  faxed to them.  Mr. Miley approved the sending of the copy of

11  the check in order that B2B could create an electronic check

12  and make an electronic deposit and withdrawal.

13      All of her communications with B2B were at Mr. Miley's

14  request.  The okay to send broadcasts, all four of them on

15  particular days, came from Mr. Miley.  And she'll tell you

16  that all of her communications with B2B were done with the

17  full knowledge, approval and authorization of Mr. Miley.

18      I could be wrong, but I think it's fair to say the

19  opening statement, what I've just shared with you and when

20  Mr. Fitzpatrick gets up and gets to talk to you, what he will

21  share with you, is going to be the most exciting part of this

22  trial because the subject matter itself already isn't exciting

23  and presenting the evidence is going to be even less so,

24  because what we have are 28 to 30 documents that were

25  contemporaneous with the time of Ms. Clemmer and Mr. Miley's

1    interaction with B2B that reflect the process of gearing up

2    and getting each of these broadcasts done.

3        And it's in large part what Ms. Clemmer relies on to

4    refresh her recollection of what happened when, and these are

5    documents she created and she will tell you, I created them at

6    his request, but it's going to take a little while to walk

7    through all these documents with her.  It is going to be

8    boring, but it is going to be relevant and probative.  These

9    are the documents that together with Ms. Clemmer's testimony

10   support the case and prove that Mr. Miley had direct personal

11   participation and personally authorized these broadcasts.

12       Mr. Miley is no longer an owner of David Randall

13   Associates.  The company still exists under different

14   ownership and that company is subject to a $22 million

15   judgment, and we are here in this courtroom and in this trial

16   asking you to find and hold that Mr. Miley himself bears

17   personal individual responsibility for the conduct that has

18   placed his former company under that judgment.

19       I'll look forward to presenting our evidence.  Thank

20   you very much.

21       THE COURT:  Okay.  Thank you, Mr. Cohen.

22       Ladies and gentlemen, I'd now like to call upon

23   Mr. Emmett Fitzpatrick.  Mr. Fitzpatrick will speak with you

24   on behalf of the defendant, Raymond Miley, III.

25       MR. FITZPATRICK:  I appreciate that, Your Honor.

*United States District Court*
*Camden, New Jersey*

**1** Excuse me, but I'd like to reserve opening at this point and I

**2** request that the jury be given a brief description of that

**3** procedural selection.

**4**          THE COURT:  All right.  Very well.

**5**          No party is required to make an opening statement and

**6** what Mr. Fitzpatrick is electing is to defer his opening

**7** statement.  So you won't be hearing an opening from the

**8** defendant.  And since that's a party's right, you should bear

**9** it no particular notice.

**10**          And so we'll now begin -- ready, then, to have the

**11** first witness called.  Who will go first, Mr. Cohen?

**12**          MR. COHEN:  Yes.  We will call Ms. Clemmer, April

**13** Clemmer.

**14**          THE COURT:  Okay.  Please bring Ms. Clemmer to the

**15** witness stand.

**16**          Okay.  Please come to the witness stand.

**17**          THE DEPUTY CLERK:  Ma'am, can you please place your

**18** left hand on the Bible right there and raise your right hand.

**19** (**APRIL CLEMMER**, having been duly sworn as a witness, testified

**20** as follows:)

**21**          THE DEPUTY CLERK:  I need you to state your name,

**22** ma'am, and I need you to spell your first and last name,

**23** please.

**24**          THE WITNESS:  April Clemmer, A-P-R-I-L,

**25** C-L-E-M-M-E-R.

*United States District Court*
*Camden, New Jersey*

CLEMMER - DIRECT - COHEN

1          THE DEPUTY CLERK:  Thank you, ma'am.  You can be

2    seated and please speak into the microphone.  Thank you.

3          MR. COHEN:  And, Judge, we are going to, if it's all

4    right, put a copy of Ms. Clemmer's deposition just in case it

5    becomes necessary, and also a binder of all of the exhibits

6    which I'll ask Ms. Clemmer not to refer to unless and until I

7    bring it to her attention, but that will keep me from having

8    to constantly walk back and forth with the exhibits, if that's

9    okay.

10          THE COURT:  Yes, very well.

11          MR. COHEN:  Thank you.

12        May I proceed, Judge?

13          THE COURT:  Yes.

14          MR. COHEN:  Thank you.

15   (DIRECT EXAMINATION OF APRIL CLEMMER BY MR. COHEN:)

16   Q.   Good morning.  Would you please introduce yourself.

17   A.   I'm April Clemmer.

18   Q.   Ms. Clemmer, you understand we're here to ask you some

19   questions today about some stuff that happened back in 2006?

20   A.   Yes.

21   Q.   Are you currently employed by David Randall Associates?

22   A.   No.

23   Q.   By whom are you currently employed?

24   A.   Lockhart & Associates.

25   Q.   And how long have you been employed by them?

1   A.   Nine-and-a-half years.

2   Q.   The events at issue in this lawsuit occurred in March,

3   April, May of 2006.  Were you employed with David Randall

4   Associates at that point in time?

5   A.   Yes.

6   Q.   Do you recall the month in 2006 when you moved to your

7   current employment where you've been for nine-plus years?

8   A.   September of 2006.

9   Q.   When you left David Randall Associates, was that

10  voluntary of your own accord?

11  A.   Yes.

12  Q.   Was there any negative events, hostilities, antagonisms,

13  anything when you left the company?

14  A.   No.

15  Q.   Did we have you served with a subpoena essentially

16  requiring you to come testify in court?

17  A.   Yes.

18  Q.   And I mentioned it to the jury, did you give a deposition

19  in this case back in March of 2011, a little more than five

20  years ago?

21  A.   Yes.

22  Q.   Have you had an opportunity to review that testimony to

23  refresh your recollection for purposes of testifying today?

24  A.   Yes.

25  Q.   And in fact, we sent that to you so you'd have it?

CLEMMER - DIRECT - COHEN

1  A.   Yes.

2  Q.   Did you see anything in there that you thought was

3  incorrect or you wanted to change?

4  A.   No.

5  Q.   When you with David Randall Associates, what was your

6  position?

7  A.   I was considered the office manager.

8  Q.   And what kinds of responsibilities did you have?

9  A.   Basic secretarial duties.  I would have answered the

10 phone, taken care of, like, office supplies.  I did also work

11 with the service department.  I would take requests for

12 service -- servicing the roofs.

13 Q.   Who did you report to?

14 A.   To Randy Miley.

15 Q.   And technically, formally his name is Raymond Miley, III.

16 When you reference Randy Miley, are you referring to

17 Mr. Miley?

18 A.   Yes.

19 Q.   In your capacity, your employment position with David

20 Randall Associates, did you have authority to enter into

21 contracts for the company?

22 A.   No.

23 Q.   Did you have authority to bind the company contractually,

24 or to pay money?

25 A.   No.

*United States District Court*
*Camden, New Jersey*

CLEMMER - DIRECT - COHEN

1  Q.   Could you sign on the David Randall Associates' bank

2  account?

3  A.   No.

4  Q.   Within the company, who was responsible -- well, let me

5  ask you first, were you responsible as a job assigned to you,

6  that you had authority over -- for the marketing and

7  advertising?

8  A.   I was not responsible for it, but I helped with it.

9  Q.   Who was the person with the responsibility that you

10 helped?

11 A.   Mr. Miley.

12 Q.   You understand what's at issue in this case, focusing on

13 March, April and May of 2006, is some fax advertising that

14 occurred where the goods or services of David Randall

15 Associates was advertised by fax?

16 A.   Yes.

17 Q.   Do you have recollection and knowledge of some of those

18 events?

19 A.   Yeah.  I would say I wouldn't have remembered much,

20 except I do have the paperwork that you supplied.

21 Q.   And to the extent that refreshed your recollection, your

22 testimony and the documents you reviewed back in 2011, that's

23 great.

24      If at any point, your recollection is not as good today

25 as it was then, we might ask you to take a look at what you

CLEMMER – DIRECT – COHEN

1  said back in 2011 and you can tell us if that seems to be

2  true.  Okay?

3  A.   Okay.

4  Q.   How did -- as far as you recall, how did the whole

5  concept of possibly advertising by fax come to your attention?

6  A.   Mr. Miley.

7  Q.   Now, there's a company I've told the jury about, Business

8  to Business Solutions or B2B, and that they go under the name

9  Maxi-Leads at times.

10       Are you familiar with those terms?

11 A.   I remember them, yes.

12 Q.   When Mr. Miley approached you and talked to you about the

13 possibility of advertising by fax, was it in relation to B2B

14 or Maxi-Leads?

15 A.   Yes.

16 Q.   Do you recall what, if anything, he asked you to do at

17 that time?

18 A.   I believe we had gotten a fax advertisement and we just

19 kind of looked at that and he thought that that might be a way

20 of advertising he would like to pursue.

21 Q.   And did he then ask you to follow up and do anything in

22 furtherance of that?

23 A.   Yes.  I was supposed to just check in with them and see

24 what kind of cost was involved and what exactly they offered.

25 Q.   Did you do that?

CLEMMER - DIRECT - COHEN

1  A.   Yes.

2  Q.   And after you spoke with a person at B2B -- was that a

3  gentleman?

4  A.   I believe it was, yes.

5  Q.   There's a name we might see in some documents, Kevin

6  Wilson.  Does that ring a bell?

7  A.   It does because of the paperwork.  I do know it was a

8  gentleman, but, yes, yes.

9  Q.   After you spoke with Mr. Wilson at B2B at Mr. Miley's

10  request and you gathered information that Mr. Miley had asked

11  you to gather, did you report back to Mr. Miley what you had

12  learned?

13  A.   Yes.

14  Q.   In terms of whether that was something that sounded like

15  a prospect to go forward with versus something we're not

16  interested in, what, if anything, do you recall Mr. Miley

17  saying after you shared that information with him?

18  A.   That it was something that we would look into pursuing.

19  Q.   Is that -- and I'm focusing on what your employment

20  responsibility was, what your authority was at David Randall

21  Associates.  The decision to pursue that, to go forward with

22  that with B2B, is that something you could have done on your

23  own without Mr. Miley's knowledge and approval?

24  A.   No.

25  Q.   Was there any consideration given by Mr. Miley to the

CLEMMER - DIRECT - COHEN

1  best timing of a fax broadcast advertising his roofing

2  services?

3  A.   Yes.  I mean, we thought that it -- if it would go out on

4  a rainy day, if the person had a roof leak, that that would be

5  a good opportunity for them to consider using David Randall

6  Associates.

7  Q.   And you can't always predict a rainy day.  Did Mr. Miley

8  give you any instructions to follow up with the company about

9  how to try to coordinate or figure out what could be done in

10 that regard?

11 A.   Yes.  I just checked in with them to see if we could get

12 everything set up so that we could just let them know a

13 specific date when it would be raining that they could send

14 those out.

15 Q.   As far as the first, and actually, it may apply to all --

16 may well apply to all four of the broadcasts, but were there

17 geographic limitations or restrictions, whether it be a

18 certain radius around David Randall Associates or certain area

19 codes or ZIP codes, was there any geographic restriction

20 associated with each of the broadcasts?

21 A.   I'm not sure if I understand what you mean by

22 "restriction."  We had chosen -- we had chosen ZIP codes that

23 would be around our servicing area.

24 Q.   Okay.

25      MR. FITZPATRICK:  I just have an objection, Your

*United States District Court*
*Camden, New Jersey*

CLEMMER – DIRECT – COHEN

1   Honor, to the leading nature of the question.

2          THE COURT:  All right.

3          MR. FITZPATRICK:  The witness hasn't said anything

4   about broadcasts and we're already having words put in her

5   mouth about that.

6          THE COURT:  All right.  Could we -- could we go back

7   and could you redevelop it without leading questions.

8          MR. COHEN:  Certainly.

9   BY MR. COHEN:

10  Q.   At some point, as far as you understand, was there a fax

11  advertisement sent out on behalf of David Randall Associates?

12  A.   Yes.

13  Q.   You mentioned a moment ago ZIP codes.  Were ZIP codes

14  used?

15  A.   Yes.

16  Q.   Who decided what ZIP codes would be used as a restriction

17  or an instruction for the issuance of the fax advertisement?

18  A.   Mr. Miley.

19         MR. FITZPATRICK:  Again, Your Honor, I object to the

20  leading nature of the question.  The witness didn't testify

21  that -- in the words that counsel is using that there were

22  geographic restrictions and instructions given to some --

23  anything.

24         THE COURT:  Overruled.  The particular question is

25  not leading.  I'll permit it.

CLEMMER - DIRECT - COHEN

1  BY MR. COHEN:

2  Q.   The ZIP codes that you've talked about for the

3  broadcasts, was that communicated to B2B?

4  A.   Yes.

5  Q.   Who communicated it?

6  A.   I would have.

7  Q.   But whose decision was it?

8  A.   Mr. Miley's.

9  Q.   When you would communicate with B2B and Kevin Wilson, and

10  if you need to parse this out, sometimes yes, sometimes no,

11  please feel free.  But when you would communicate with B2B,

12  you would communicate information to them, or you would

13  receive information from them, would you pass that along to

14  Mr. Miley?

15  A.   Yes.

16  Q.   When you contacted -- communicated with, interacted with

17  B2B, were you doing it on your own behalf or on Mr. Miley's

18  behalf?

19  A.   On Mr. Miley's behalf.

20  Q.   Do you know whether Mr. Miley reviewed the fax

21  advertisement proposal that the broadcaster B2B came up with?

22  A.   I'm not sure what you mean by "proposal."

23  Q.   At some point, did B2B propose an ad?

24  A.   Yeah, right, yes, and he would have reviewed it.

25  Q.   And at some point, was the ad that would be used in the

CLEMMER - DIRECT - COHEN

1  fax advertisement, at some point, was that decided upon?

2  A.   Yes.

3  Q.   Who was the ultimate decision-maker in approving the form

4  and content of the ad that was ultimately used?

5  A.   Mr. Miley.

6  Q.   As far as you recall, and based upon your recollection of

7  your deposition and the documents attached to it, and we will

8  be going through those, but was there more than one broadcast?

9  A.   Yes.

10  Q.   We'll talk about how many there were in a moment, but to

11  the extent that each broadcast of an advertisement of David

12  Randall Associates' goods and services, to the extent that

13  each broadcast involved a certain number of fax transmissions,

14  who decided how many faxes should be sent out for each

15  broadcast?

16  A.   Mr. Miley.

17  Q.   As far as the timing of the broadcasts, when they would

18  issue, who decided when they would issue?

19  A.   Mr. Miley.

20  Q.   Do you recall how David Randall Associates made payments

21  for the fax broadcasts by B2B?

22  A.   Via check.

23  Q.   Maybe you can explain for us how that was actually

24  handled in terms of creating the check and what was done with

25  the check?

CLEMMER - DIRECT - COHEN

1  A.   I believe that we did a -- had to send a copy of the

2  check to the -- B2B, Business to Business Solutions and they

3  would do an electronic withdrawal or whatever based on that

4  check, we never physically sent the check.

5  Q.   Do you know whether Mr. Miley was aware that that was

6  being done?

7  A.   Yes.

8  Q.   Did Mr. Miley approve of that?

9  A.   Yes.

10  Q.   Did you have any communications with B2B about fax

11  broadcasting, advertising David Randall Associates' goods and

12  services, did you have any such communications with B2B that

13  were not at Mr. Miley's request and with his knowledge and

14  approval?

15  A.   No.

16  Q.   Were you successful in getting the first broadcast from

17  B2B to happen on a rainy day?

18  A.   Yes.

19  Q.   And did the okay to send that first broadcast on that

20  specific rainy day come from Mr. Miley?

21  A.   Yes.

22  Q.   And were there subsequent broadcasts after that?

23  A.   Yes.

24  Q.   Ms. Clemmer, in front of you, you have a very big

25  three-ring binder and it's got tabs in it that number the

CLEMMER – DIRECT – COHEN

1  exhibits, and what I'm wondering if you could do, is flip to

2  the tab for Exhibit No. 1.

3  A.   Mm-hmm.

4  Q.   And I'll represent to you that the first 28 exhibits are

5  the same 28 exhibits in your deposition.

6  A.   Okay.

7  Q.   So there is going to be a symmetry about that.

8       Do you recognize Plaintiff's Exhibit 1?

9  A.   Yes.

10 Q.   The first page of Plaintiff's Exhibit 1, is that a

11 document that you would have created as a communication from

12 you to somebody at B2B or Maxi-Leads?

13 A.   Yes.

14 Q.   And if you look through the three pages comprising

15 Exhibit 1, is this a true and accurate copy of that fax

16 transmission?

17 A.   Yes.

18       MR. COHEN:  We would move for admission of

19 Plaintiff's Exhibit 1.

20       THE COURT:  Any objection?

21       MR. FITZPATRICK:  No objections.

22       THE COURT:  Okay.  Plaintiff's Exhibit 1 is received

23 into evidence.

24 (PLAINTIFF EXHIBIT P-1 WAS RECEIVED IN EVIDENCE)

25       MR. COHEN:  Request permission to publish, Judge?

CLEMMER - DIRECT - COHEN

1          THE COURT:  Yes, you may.

2          MR. COHEN:  Thank you.

3   BY MR. COHEN:

4   Q.   I'm drawing your attention to Page 1 of Plaintiff's

5   Exhibit 1, to Christine at Maxi-Leads from April Clemmer.

6   That's you?

7   A.   Yes.

8   Q.   And it indicates a date, 3-21-06.  Would that be the date

9   on which you did this?

10  A.   Yes.

11  Q.   Under comments, where it says:  Attached is the

12  information you requested to work up an ad for us, I've also

13  enclosed an ad we came up with, I'll wait -- I will await your

14  price list and additional information regarding whom we want

15  to target for this ad campaign.  Thank you for your help,

16  April.

17         Was Mr. Miley aware you were communicating that

18  information to Maxi-Leads?

19  A.   Yes.

20  Q.   Where it indicates:  The information you requested to

21  work up an ad, who put together that information?

22  A.   Mr. Miley would have supplied the information.

23  Q.   And where it says:  "I've also enclosed an ad we came up

24  with," who came up with that ad?

25  A.   Mr. Miley.

CLEMMER - DIRECT - COHEN

1  Q.  You say in the second sentence or third sentence, "I'll

2  await your price list and additional information regarding

3  whom we want to target for this ad campaign."

4       Who wanted the price list?

5  A.  Mr. Miley.

6  Q.  And who wanted information bearing on the target?

7  A.  Mr. Miley.

8  Q.  Page 2 of Exhibit 1, at the top, it says, "Tell us what

9  to write in your free ad," and then it's got some information

10 and instructions and then it's got the template information,

11 your name, company name, et cetera.

12      Was this a template document from B2B?

13 A.  Yes.

14 Q.  And we covered it a little bit a moment ago, but all of

15 the information responding to the particulars about David

16 Randall Associates, who provided that information?

17 A.  Mr. Miley.

18 Q.  And then the third page of Exhibit 1, that's an

19 advertisement, Roof Leaks, and you indicated earlier about an

20 ad that you -- we came up with, and you indicated Mr. Miley.

21      Is Page 3 of Exhibit 1 the advertisement that Mr. Miley

22 came up with for you to send to B2B?

23 A.  Yes.

24 Q.  Ma'am, if you could turn to Exhibit No. 2.

25      Do you recognize the first page of Plaintiff's

*United States District Court*
*Camden, New Jersey*

CLEMMER – DIRECT – COHEN

1   Exhibit No. 2?

2   A.   Yes.

3   Q.   Is this a document you created as a communication to

4   Kevin Wilson at Maxi-Leads or B2B?

5   A.   Yes.

6   Q.   And looking both at the cover page and the attached page,

7   are these true and accurate copies of the originals of these

8   documents?

9   A.   Yes.

10         MR. COHEN:  Your Honor, we would move for admission

11   of Plaintiff's Exhibit 2.

12         MR. FITZPATRICK:  No objection, sir.

13         THE COURT:  Okay.  Plaintiff's Exhibit 2 is received

14   into evidence.

15   (PLAINTIFF EXHIBIT P-2 WAS RECEIVED IN EVIDENCE)

16         MR. COHEN:  Thank you.  May I publish?

17         THE COURT:  Yes.

18         MR. COHEN:  And Judge, I always ask, shall I assume I

19   may publish these as we go?

20         THE COURT:  Yes, you may, but only after they've been

21   actually officially received into evidence.

22         MR. COHEN:  Certainly.  Thank you.

23   BY MR. COHEN:

24   Q.   So we see here from April Clemmer to Kevin Wilson at

25   Maxi-Leads on March 23, 2006, that would be two days later?

*United States District Court*
*Camden, New Jersey*

CLEMMER – DIRECT – COHEN

1   A.   Mm-hmm, yes.

2   Q.   And it states, under comments, "Kevin, I just received

3   part of the fax you sent me.  I only received Pages 1, 2, half

4   of 3, see attached, and no Page 4 at all.  Please re-fax

5   Pages 3 and 4 so I may review and approve.  I would appreciate

6   your doing this ASAP.  We would like to get everything set up

7   for a mass faxing to go out on Monday, March 27th."

8        Did I read that correctly?

9   A.   Yes.

10  Q.   Where it says in the second line there, "Please re-fax

11  Pages 3 and 4 so I may review and approve."

12       Were you going to be the person at David Randall

13  Associates that approved?

14  A.   No.

15  Q.   Who were you speaking of in terms of the use of the word,

16  "approve?"

17  A.   Randy.

18  Q.   Mr. Miley?

19  A.   Mr. Miley.

20  Q.   And it says, "I would appreciate your doing this ASAP.

21  We would like to get everything set up for a faxing to go out

22  March 27th."

23       Who is the "we," who wanted to get it set up to go out?

24  A.   Mr. Miley.

25  Q.   Page 2 of Exhibit 2, is this the cutoff page you were

CLEMMER - DIRECT - COHEN

1  referring to?

2  A.   I assume so.

3  Q.   Because it said half of three -- on Page 1, it says, "I

4  only received Pages 1, 2, half of 3.  See attached."

5        Is that why you say you assume so?

6  A.   Yes.

7  Q.   Would you please turn to Plaintiff's Exhibit No. 3,

8  ma'am.

9        Exhibit No. 3 appears to be the same document as

10 Exhibit 2, at least the cover page, correct?

11 A.   Yes.

12 Q.   But when we look at the second page of Exhibit 3, we see

13 a cutoff fax.

14 A.   Yes.

15 Q.   As far as you know, is this actually the Page 3 that was

16 cut off?

17 A.   It appears so, yes.

18 Q.   If you could turn to Plaintiff's Exhibit 4.

19       Are you familiar with this document?

20 A.   Yes.

21 Q.   Is this a fax communication from you to Mr. Wilson at B2B

22 on March 23rd, 2007?

23 A.   Yes.

24 Q.   So that's the same day as Exhibits 2 and 3?

25 A.   Yes.

CLEMMER - DIRECT - COHEN

1          MR. COHEN:  We would move for admission of

2  Plaintiff's Exhibit 4.

3          THE COURT:  Okay.  Any objection?

4          MR. FITZPATRICK:  No, sir.

5          THE COURT:  Okay.  Plaintiff's Exhibit 4 is received

6  into evidence.

7  (PLAINTIFF EXHIBIT P-4 WAS RECEIVED IN EVIDENCE)

8          THE COURT:  Did you mean to move Plaintiff's 3 into

9  evidence as well?

10          MR. COHEN:  I forgot to do that, Judge.  We would

11  move for admission of Plaintiff's Exhibit 3.

12          THE COURT:  Any objection?

13          MR. FITZPATRICK:  No.

14          THE COURT:  Okay.  P-3 is also received into

15  evidence.

16  (PLAINTIFF EXHIBIT P-3 WAS RECEIVED IN EVIDENCE)

17          MR. COHEN:  Thank you, Judge.

18  BY MR. COHEN:

19  Q.   Ms. Clemmer, drawing your attention to Page 1 of

20  Plaintiff's Exhibit 4 from you to Mr. Wilson, March 23, 2006,

21  and regarding Ad for Fax Blast.

22          Under comments, you put, "Thanks for your ads, but I

23  think we prefer the simplicity of our ad.  Please keep the top

24  heading and picture.  You may play a little with the font and

25  layout of the information part.  Please note the change in our

CLEMMER - DIRECT - COHEN

1  second line -- see attached.  I will await your changes.

2  Thanks for your prompt help, April."

3       Was that your communication to B2B at that time?

4  A.  Yes.

5  Q.  In the first line of your comment, where you say, "I

6  think we prefer the simplicity of our ad," who's the "we," who

7  preferred and made the decision that the simplicity of the

8  David Randall-created ad was better?

9  A.  Mr. Miley.

10  Q.  And if we look at the second page of Exhibit 4, what the

11  jury is looking at right now, is this the attachment to that

12  fax you sent to B2B?

13  A.  Yes.

14  Q.  Here where it says in the second line, "Our commercial

15  roofing company," and it looks like some stuff has been whited

16  out and handwritten, "Established in 1989, services," who

17  decided that should be inserted?

18  A.  Mr. Miley.

19  Q.  If you would turn to Plaintiff's Exhibit 5 in your

20  binder.  By the way, do you have water?  Do you need water?

21  A.  I'm fine, thanks.

22  Q.  Is this a document you're familiar with?

23  A.  Yes.

24  Q.  Is this a communication by facsimile from you to Kevin

25  Wilson at B2B or MaxiLeads dated one day later, March 24 of

CLEMMER – DIRECT – COHEN

1   2006?

2   A.   Yes.

3   Q.   And if you look at both page 1 and the attachment, page

4   2, are these true and accurate copies of the originals?

5   A.   Yes.

6       MR. COHEN:  We would move for admission of

7   Plaintiff's Exhibit 5, Judge.

8       MR. FITZPATRICK:  No objection, sir.

9       THE COURT:  Okay.  Plaintiff's Exhibit 5 is received

10  into evidence.

11      MR. COHEN:  Thank you.

12  (PLAINTIFF EXHIBIT P-5 WAS RECEIVED IN EVIDENCE.)

13  BY MR. COHEN:

14  Q.   Ma'am, drawing your attention to the cover page of

15  Plaintiff's Exhibit 5, indicating from you to Mr. Wilson,

16  March 24th, 2006, under comments, you put, "Here is another

17  revision.  We decided we should put our toll free number on

18  the ad and add the phrase 'repairs available' in the top

19  section.  We also noted yesterday a change to the second

20  sentence in the first paragraph."  Did I read that correctly?

21  A.   Yes.

22  Q.   When you're referring to we, we decided the toll free

23  number, we decided to add the phrase "repairs available," we

24  noted a change yesterday, who is the we?

25  A.   Mr. Miley.

*United States District Court*
*Camden, New Jersey*

CLEMMER – DIRECT – COHEN

1   Q.   And the second page of Exhibit 5, is this what you were

2   referring to?

3   A.   Yes.

4   Q.   And, ma'am, if you could take a look at Plaintiff's

5   Exhibit 6, does Plaintiff's Exhibit 6 appear to be essentially

6   the same thing as Plaintiff's Exhibit 5?

7   A.   Yes.

8   Q.   And just to remind you, Plaintiff's Exhibit 5, because we

9   didn't focus on it, up here at the top it has faxed, a fax

10  stamp with the date and time, and are those your initials?

11  A.   Yes.

12  Q.   Okay.  Plaintiff's Exhibit 6, same document, does it not

13  have that stamp, but then it's actually got the actual fax

14  transmission confirmation header at the top?

15  A.   Yes.

16       MR. COHEN:  We move for admission of Plaintiff's

17  Exhibit 6, Judge.

18       MR. FITZPATRICK:  No objection.

19       THE COURT:  Exhibit P-6 is received into evidence.

20  (PLAINTIFF EXHIBIT P-6 WAS RECEIVED IN EVIDENCE.)

21  BY MR. COHEN:

22  Q.   And just so the ladies and gentlemen of the jury see, is

23  that the difference between 5 and 6, 6 has the fax header at

24  the top but not your stamp?

25  A.   Yes.

CLEMMER - DIRECT - COHEN

1  Q.  Thank you.  Ma'am, if I could draw your attention to

2  Plaintiff's Exhibit 7.  Do you recognize this document?

3  A.  Yes.

4  Q.  Is this a fax transmission from you to Kevin Wilson at

5  MaxiLeads or B2B again on the same date as the last one, March

6  24th of 2008?

7  A.  Yes.

8  Q.  And if you look at both the cover page and the page

9  attached, are these true and accurate copies of the originals

10 as you recall them?

11 A.  Yes.

12       MR. COHEN:  We move for admission of Plaintiff's

13 Exhibit 7, Judge.

14       MR. FITZPATRICK:  No objection, sir.

15       THE COURT:  Okay.  Exhibit P-7 is received into

16 evidence.

17 (PLAINTIFF EXHIBIT P-7 WAS RECEIVED IN EVIDENCE.)

18 BY MR. COHEN:

19 Q.  So, we show April Clemmer to Kevin Wilson, March 24th,

20 2006, and under comments, it says, "Attached is the approved

21 ad.  We would like the following ZIP codes solicited for

22 businesses," and then it's got seven lines of ZIP codes.  It

23 says, "We are looking at doing at least the 5,000 plus

24 additional 1,000, 6,000 total, but possibly even 10,000, plus

25 2,000 additional, equals totaling 12,000.  How many business

CLEMMER - DIRECT - COHEN

1  faxes would the above list of ZIP codes include?  I will wait

2  to hear from you regarding proceeding with this."  First of

3  all, did I read that correctly?

4  A.  Yes.

5  Q.  In the first sentence under comments, "Attached is the

6  approved ad," what I'm placing on the screen now, which is

7  page 2 of this exhibit, is that the ad that was approved?

8  A.  Yes.

9  Q.  And on page 2 of this exhibit where it says in

10  handwriting "client," and it's got "K032107, ad Ok," is that

11  your handwriting?

12  A.  Yes.

13  Q.  Was that what you needed to do under B2B's instructions

14  to give them the final approval?

15  A.  Yes.

16  Q.  And under comments on page 1 of this exhibit where it

17  says, "Attached is the approved ad," who approved it?

18  A.  Mr. Miley.

19  Q.  Where it then says, "We would like the following ZIP

20  codes solicited for businesses," and it's got seven lines of

21  ZIP codes, did you come up with those ZIP codes?

22  A.  No.

23  Q.  Who came up with those ZIP codes and gave them to you?

24  A.  Mr. Miley.

25  Q.  Who instructed you to communicate those ZIP codes to B2B?

*United States District Court*
*Camden, New Jersey*

CLEMMER – DIRECT – COHEN

1  A.   Mr. Miley.

2  Q.   Where it says, we are looking at doing at least 5,000

3  plus an additional 1,000 for 6,000, but maybe even 10,000 plus

4  2,000 for a total of 12,000, who decided those were the

5  numbers or the volumes or the quantities that David Randall

6  Associates was looking at doing?

7  A.   Mr. Miley.  That was the increments that MaxiLeads

8  offered, so he was deciding between the 5,000 and 10,000,

9  depending on how many would be affected by that ZIP code area.

10  Q.   So, B2B or MaxiLeads had ideas, 5,000 plus an extra one,

11  or 10,000 plus an extra two, the question was what did David

12  Randall Associates want to do?

13  A.   Yeah.  He didn't make a decision yet.  He is basing it on

14  their answer.

15  Q.   You then ask, "How many business faxes would the above

16  list of ZIP codes include?"  Who came up with that question;

17  who wanted to know that?

18  A.   Mr. Miley.

19  Q.   Ma'am, would you take a look at, and this is going to

20  require you to flip, kind of jump a lot of exhibits, can you

21  go to Plaintiff's Exhibit 34?

22       Are you there?

23  A.   Yes, I'm sorry, yes.

24  Q.   Okay.  There is some handwriting at the bottom right of

25  this document, Plaintiff's Exhibit 34.  Do you see that?

CLEMMER - DIRECT - COHEN

1  A.   Yes.

2  Q.   Whose handwriting is that?

3  A.   Both mine and Mr. Miley's.

4  Q.   Is this a document that you would have received,

5  reviewed, you put your handwriting on it, then Mr. Miley put

6  his handwriting on it?

7  A.   Yes.

8  Q.   And both page 1 and page 2, are these true and accurate

9  copies of the originals as you recall them to have been?

10  A.   Yes.

11        MR. COHEN:  We would move for the admission of

12  Plaintiff's Exhibit 34.

13        MR. FITZPATRICK:  No objection, your Honor.

14        THE COURT:  Okay.  Exhibit P-34 is received into

15  evidence.

16  (PLAINTIFF EXHIBIT P-34 WAS RECEIVED IN EVIDENCE.)

17  BY MR. COHEN:

18  Q.   Most of the, maybe all of the stuff we have looked at so

19  far has been outgoing faxes from you to B2B.  This may be the

20  first one we've looked at which was an incoming fax.  Was this

21  an incoming fax to you at David Randall Associates from Kevin

22  Wilson at MaxiLeads or B2B?

23  A.   Yes.

24  Q.   And it indicates it's dated March 24, 2006.  As far as

25  you can recall, would that be accurate?

CLEMMER – DIRECT – COHEN

1  A.  Yes.

2  Q.  It says, "Following, find the revised ad written for your

3  business.  If still needed, make corrections, additions, or

4  changes on the fax itself and fax it back to us immediately

5  at," and it's got a number.  "If the ad now meets with your

6  approval, please write 'client number:  K032107, ad OK' on it

7  and fax the approved ad back to us.  We will call you to make

8  the final arrangements for your advertising campaign."  Did I

9  read that correctly?

10  A.  Yes.

11  Q.  Just to jump back to what we had as page 2 of Exhibit 7,

12  Exhibit 7 was your fax to Mr. Wilson with the ZIP codes, and

13  page 2 was the ad with "client number" and "ad Ok," were those

14  the instructions of Mr. Wilson that you were complying with

15  when you wrote the client number and ad Ok?

16  A.  Yes.

17  Q.  And actually attached as page 2 to Exhibit 34, is that

18  same ad, correct?

19  A.  Yes.

20  Q.  With the same "client number" and "ad Ok" circled?

21  A.  Yes.

22  Q.  At the bottom, the bottom right of Plaintiff's Exhibit

23  34, the handwriting that is yours, would you please read that.

24  A.  "Randy, are we okay with this ad?"

25  Q.  And Randy was Mr. Miley?

CLEMMER – DIRECT – COHEN

1   A.   Yes.

2   Q.   Did you have authority to approve that ad without getting

3   the approval from Mr. Miley?

4   A.   No.

5   Q.   Is that why you were approaching Mr. Miley and seeking

6   his decision and approval?

7   A.   Yes.

8   Q.   There is a word under it circled with a date and an

9   initial.  Whose handwriting is that?

10   A.   Mr. Miley's.

11   Q.   And what was his answer to your question, are we okay

12   with this ad?

13   A.   Yes.

14   Q.   Is the initial M for Miley?

15   A.   Yes.

16   Q.   And is that date, 3/24/06, is that your date or his?

17   A.   His.

18   Q.   When you communicated back to Kevin Wilson in what we

19   have already seen was Exhibit 7 that the attached ad is

20   approved, was the approval what we see at the bottom right of

21   Exhibit 34?

22   A.   Yes.

23   Q.   From Mr. Miley?

24   A.   Yes.

25   Q.   Now, you indicated earlier that there were subsequent fax

CLEMMER – DIRECT – COHEN

1  broadcasts, and we'll see some documents about how many and

2  the details of them.  Did you obtain from Mr. Miley approval

3  for each and every fax broadcast that you then communicated to

4  B2B that it was okay to go ahead?

5  A.   Yes.

6           THE COURT:  Excuse me, Mr. Cohen.  Let me know when

7  it comes time for a mid morning break.

8           MR. COHEN:  Judge, this would be just fine.

9           THE COURT:  Is it?  Okay.

10          So, ladies and gentlemen, let's take about 10 minutes

11  and then we will resume.

12          You may step down.

13          THE DEPUTY COURT CLERK:  All rise.

14          (Whereupon the jury exited the courtroom.)

15          THE COURT:  Okay.  So, we will resume at 11:30.

16          MR. FITZPATRICK:  Thank you, your Honor.

17          (Recess at 11:18 a.m.)

18          (In open court at 11:33 a.m.)

19          THE DEPUTY COURT CLERK:  All rise.

20          THE COURT:  Okay.  Are we ready to proceed?

21          MR. COHEN:  Yes, your Honor.

22          THE COURT:  Please bring the jury.

23          THE DEPUTY COURT CLERK:  All rise.

24          (Whereupon the jury entered the courtroom.)

25          THE COURT:  Be seated, please.

*United States District Court*
*Camden, New Jersey*

CLEMMER - DIRECT - COHEN

1          Mr. Cohen, you may continue.

2               MR. COHEN:  Thank you, Judge.

3    BY MR. COHEN:

4    Q.   Ms. Clemmer, we looked at Plaintiff's 7, and then we

5    jumped to Plaintiff's 34.  I'm going to ask you to look back

6    now at Plaintiff's 8.  Is this a document that you recognize?

7    A.   Yes.

8    Q.   There is handwriting on this document.  Do you know whose

9    that is?

10   A.   That's mine.

11   Q.   Is this a true and accurate copy of the document that you

12   received at David Randall Associates from Kevin Wilson on

13   March 27th of 2006?

14   A.   Yes.

15   Q.   Except you then added your handwriting on it?

16   A.   Correct.

17   Q.   And if you could flip to Plaintiff's Exhibit 9, is this

18   the same incoming fax from Kevin Wilson on March 27, 2006,

19   that we saw in Plaintiff's Exhibit 8, again with handwriting

20   by you but a variation in the handwriting?

21   A.   Yes.

22               MR. COHEN:  We would move for admission of

23   Plaintiff's Exhibits 8 and 9.

24               THE COURT:  Any objection?

25               MR. FITZPATRICK:  No objection, your Honor.

*United States District Court*
*Camden, New Jersey*

CLEMMER – DIRECT – COHEN

1            THE COURT:  Okay.  Exhibit P-8 and Exhibit P-9 are

2    received into evidence.

3    (PLAINTIFF EXHIBITS P-8 AND P-9 WERE RECEIVED IN EVIDENCE.)

4    BY MR. COHEN:

5    Q.   It indicates March 27, 2006, from Kevin Wilson to you,

6    "Welcome aboard.  We now have everything needed to start your

7    faxing campaign, except payment."  On the third line it

8    references, "We accept payment by fax check."  Is that what

9    you were talking about earlier when you talked about sending

10   them a check and they do an electronic withdrawal?

11   A.   Yes.

12   Q.   In the second paragraph, it says, "As agreed, you pay

13   only $438 for us sending 10,000 faxes, $20 for the required

14   toll free remove number use, and $2 per 1,000 faxes sent, $20

15   for incoming remove calls.  This is a total of $478.  To begin

16   your program immediately, follow these simple instructions."

17   Did I read that correctly?

18   A.   Yes.

19   Q.   Over here to the right of the "$20 for the required toll

20   free remove number use," your handwriting, what does that say?

21   A.   "Waived as club member."

22   Q.   And then the next section down below where we've been

23   reading, it says, "Starting your campaign," and then you've

24   got some handwriting to the right that reads, "Priority Club

25   member."  That's your handwriting?

CLEMMER – DIRECT – COHEN

1  A.   Yes.

2  Q.   And is that the club member you are referring to a little

3  up higher?

4  A.   Yes.

5  Q.   And just below "Starting your campaign," it's got some

6  handwriting.  What does that say?

7  A.   "$394 okayed per Kevin Wilson 4/3/2006."

8  Q.   We are looking at this document, and it says it's dated

9  March 27, 2006, as the incoming fax to you.  When you're

10 handwriting on it talking about a different price okayed by

11 Kevin Wilson and you're putting 4/3/06, what does that tell us

12 about when this was okayed by Mr. Wilson?

13      MR. FITZPATRICK:  Judge, do you want me to state my

14 objection in front of the jury?

15      THE COURT:  Well, is it an objection as to form?

16      MR. FITZPATRICK:  Yes.

17      THE COURT:  Okay.  I agree.  Could you please

18 rephrase the question and break it down into its parts?

19 BY MR. COHEN:

20 Q.   When you put 4/3/06 as a date, what were you referring to

21 as corresponding to that date?

22 A.   The date that it was okayed.

23 Q.   By Mr. Wilson?

24 A.   By Mr. Wilson.

25 Q.   And we see the 394 and it's right above an area that

CLEMMER - DIRECT - COHEN

1  seems to have something whited out.  As we sit here today,

2  without looking at Exhibit 9, do you -- if we didn't have

3  Exhibit 9, would you know what was originally typed in there?

4  A.  I assume a dollar value, but I don't know what it would

5  have been.

6  Q.  If we then look at Exhibit 9, the same document just with

7  some different handwriting, it's still got the "waived as club

8  member"?

9  A.  Yes.

10  Q.  And it's still got Priority Club member and everything

11  about okayed per Kevin Wilson.

12  A.  Yes.

13  Q.  But instead of saying $394, it says $422.

14  A.  Yes.

15  Q.  And the 478 is crossed through, but it's not whited out.

16  A.  Yes.

17  Q.  So we can see that.  Do you remember as we sit here

18  today, before we get to some other document, which of these

19  two came first, the one where you thought it was 394 or the

20  one where you thought it was 422?

21  A.  I don't recall.

22  Q.  Would you take a look at Plaintiff's Exhibit 10, please.

23  Do you see that?

24  A.  Yes.

25  Q.  Is this an e-mail from you to Mr. Wilson dated March 28th

CLEMMER – DIRECT – COHEN

1  of 2006?

2  A.   Yes.

3  Q.   The typed part, is that a true and accurate copy of the

4  original?

5  A.   Yes.

6  Q.   There's also some handwriting.  Whose handwriting is

7  that?

8  A.   That's mine.

9       MR. COHEN:  Your Honor, we would move for admission

10  of Plaintiff's Exhibit 10.

11       MR. FITZPATRICK:  No objection, sir.

12       THE COURT:  Okay.  P-10 is received into evidence.

13  (PLAINTIFF EXHIBIT P-10 WAS RECEIVED IN EVIDENCE.)

14  BY MR. COHEN:

15  Q.   It states, "Kevin, we would like to join the Priority

16  Club.  I understand there is a $28 membership fee.  Is that

17  for a year, a lifetime, or what?  I believe that would drop

18  our price for the 10,000 faxes to $394 and would already

19  include the toll free remove number use.  What is that?  Also,

20  what is the $2 per 1,000 fax charge for incoming remove calls?

21  Is that also included in the Priority Club pricing, too?  The

22  Priority Club also entitles us to 2,000 free additional faxes,

23  1,000 free for every 5,000 faxes ordered.  To cover those, you

24  can add the following ZIP codes to our list," and it lists six

25  ZIP codes.  "I believe our total should be $422.  Please send

CLEMMER – DIRECT – COHEN

1    us a new bill immediately for me to give to our accounting

2    department for processing.  I will try to get this faxed back

3    to you today if you do your part promptly.  We want the faxes

4    sent in the morning, not in the afternoon or evening, possibly

5    even tomorrow, Wednesday, 29th, if we get this finalized."

6         There's a second paragraph about wanting some

7    verification the faxes were sent, and invoice with

8    description, and I'll wait to hear from you.  Was that your

9    communication to Mr. Wilson?

10   A.   Yes.

11   Q.   In the first line where you say, "We would like to join

12   the Priority Club," who made the decision to join the Priority

13   Club?

14   A.   Mr. Miley.

15   Q.   The questions, the requests for additional information

16   about some of these things, who needed to understand in order

17   to make decisions?

18   A.   Mr. Miley.

19   Q.   The additional ZIP codes added to the previous list that

20   you had sent, did you come up with those additional ZIP codes?

21   A.   No.

22   Q.   Who would have come up with them?

23   A.   Mr. Miley.

24   Q.   In the first paragraph towards the bottom, it says, "We

25   want the faxes sent in the morning, not afternoon or evening."

*United States District Court*
*Camden, New Jersey*

CLEMMER - DIRECT - COHEN

1   Who wanted the faxes sent in the morning?

2   A.   Mr. Miley.

3   Q.   And then you have circled "morning," and in that

4   sentence, "we want the faxes sent in the morning," you've got

5   an arrow down and it says, with an asterisk, "Note this on fax

6   when sending check."  That's your handwriting?

7   A.   Yes.

8   Q.   Was this communication by you to Mr. Wilson by e-mail on

9   March 28th, 2006, done in accordance with Mr. Miley's

10  knowledge, approval and instruction?

11  A.   Yes.

12  Q.   If you could take a look at Plaintiff's Exhibit 11,

13  please.

14  A.   Yes.

15  Q.   Is this another fax transmission from you to Mr. Wilson

16  at B2B on March 28th, 2006?

17  A.   Yes.

18  Q.   And it indicates -- it's two pages including the cover

19  page.  The second page, is that the attachment?

20  A.   Yes.

21  Q.   Are these true and accurate copies of the originals?

22  A.   Yes.

23        MR. COHEN:  We would move for admission of

24  Plaintiff's Exhibit 11, Judge.

25        MR. FITZPATRICK:  No objection, sir.

*United States District Court*
*Camden, New Jersey*

CLEMMER – DIRECT – COHEN

1          THE COURT:  Okay.  Exhibit P-11 is received into

2   evidence.

3   (PLAINTIFF EXHIBIT P-11 WAS RECEIVED IN EVIDENCE.)

4   BY MR. COHEN:

5   Q.   It's from you to Mr. Wilson on March 28th, 2006.  "Kevin,

6   as per our conversation, here is our check for $422 for our

7   campaign for 12,000 faxes to be sent, Priority Club price of

8   $394 for 10,000 plus 2,000 free plus the $28 membership fee.

9   Please note:  Fax should be sent Wednesday morning, 29th, not

10  in the afternoon or evening.  We authorize only one debit to

11  our account for the amount on this check, as this is a payment

12  in full for services rendered!  Please send us a receipt for

13  our records."  Is that your communication to Mr. Wilson?

14  A.   Yes.

15  Q.   And then page 2, the attachment, is that actually the

16  copy of the David Randall Associates check for the $422

17  payable to Business to Business Solutions?

18  A.   Yes.

19  Q.   Did you have authority to prepare and issue a check like

20  this?

21  A.   No.

22  Q.   Who authorized the creation and issuance of this check?

23  A.   Mr. Miley.

24  Q.   So, I know it would be hard to remember volumes and

25  quantities 10 years ago for fax broadcasts, but based upon

CLEMMER – DIRECT – COHEN

1    your communication to Mr. Wilson in Exhibit 11 dated 3/28/06

2    ordering a fax broadcast on 3/29/06 in the morning, can you

3    tell us how many fax transmissions were to be included in that

4    first fax broadcast?

5    A.   12,000.

6    Q.   Who decided it should be 12,000?

7    A.   Mr. Miley.

8    Q.   Now, we've seen the advertisement that was used.  Did it

9    advertise anything about April Clemmer?

10   A.   No.

11   Q.   Did it advertise anything about Mr. Miley personally?

12   A.   No.

13   Q.   What -- who or what did it advertise?

14   A.   The roofing company David Randall Associates.

15   Q.   These things that you were doing and that Mr. Miley was

16   having you do, were these on behalf of David Randall

17   Associates?

18   A.   Yes.

19   Q.   The decision that it should be sent Wednesday morning,

20   not afternoon or evening, whose decision was that?

21   A.   Mr. Miley.

22   Q.   The language, "We authorize only one debit to our account

23   as this is a payment in full," who wanted that caveat, that

24   warning?

25   A.   Mr. Miley.

CLEMMER – DIRECT – COHEN

1  Q.   And when it says "we authorize," who is the person

2  authorizing?

3  A.   Mr. Miley.

4  Q.   Would you please turn to Plaintiff's Exhibit 12 now.

5  A.   Yes.

6  Q.   Do you recognize this document?

7  A.   Yes.

8  Q.   Is Plaintiff's 12 a fax transmission from you to Mr.

9  Wilson at B2B dated March 29th, 2006?

10  A.   Yes.

11  Q.   So, just corresponding this exhibit, P-12, to the one we

12  just looked at, P-11, P-11 was the 28th ordering a broadcast

13  on the 29th, and then P-12 is on the 29th?

14  A.   Yes.

15  Q.   And the attachments, there's two pages of attachments,

16  were these the original attachments or copies of the original

17  attachments to that fax?

18  A.   Yes.

19        MR. COHEN:  Your Honor, we would move for the

20  admission of Plaintiff's 12.

21        MR. FITZPATRICK:  No objection.

22        THE COURT:  Okay.  P-12 is received into evidence.

23  (PLAINTIFF EXHIBIT P-12 WAS RECEIVED IN EVIDENCE.)

24  BY MR. COHEN:

25  Q.   In this fax from you to Mr. Wilson at B2B on March 29th,

*United States District Court*
*Camden, New Jersey*

CLEMMER - DIRECT - COHEN

1    apparently, if you look at the top, you see it's March 29th at

2    1600 hours?

3    A.   Yes.

4    Q.   4:00 p.m.?

5    A.   Yes.

6    Q.   Under comments, "Kevin, please remove the following

7    numbers, see attached notices and numbers below, from your

8    call list.  They obviously don't want to be bothered and are

9    annoyed by the many faxes they received from your company.

10   Thanks, April Clemmer."  Did I read that right?

11   A.   Yes.

12   Q.   And then there's handwriting.  Is that your handwriting?

13   A.   Yes.

14   Q.   And it's 1, 2, 3, and it's got three fax numbers?

15   A.   Yes.

16   Q.   And then there is the second page of this exhibit and

17   it's handwritten and it reads, "Remove from fax list," and

18   it's got two fax numbers, "or we will contact the FCC."  Do

19   you see that?

20   A.   Yes.

21   Q.   Was this a fax that David Randall Associates received

22   after the first broadcast on March 29th, 2006?

23   A.   Yes.

24   Q.   And were you including that as an attachment to your

25   communication, Exhibit 12, to Mr. Wilson so he would remove

CLEMMER - DIRECT - COHEN

1   those two numbers as well?

2   A.   Yes.

3   Q.   And then the third page of Exhibit 12 appears to be the

4   actual fax advertisement that B2B sent on behalf of David

5   Randall?

6   A.   Yes.

7   Q.   But it's got handwriting at the bottom.  Was this a fax

8   that David Randall Associates received from somebody who had

9   received the B2B advertisement?

10  A.   Yes.

11  Q.   And I'm assuming this handwriting -- is the handwriting

12  at the very bottom yours?

13  A.   Yes.

14  Q.   So, it says, "That fax number wants removed"?

15  A.   That's mine, yes.

16  Q.   But above that, it says, "This is not true.  No approval

17  was given from our business.  We are tenants, not roof owners.

18  Stop future time and paper waste."  Do you see that?

19  A.   Yes.

20  Q.   That's what whoever received this and then sent it on to

21  David Randall wrote?

22  A.   Yes.

23  Q.   As these faxes came in, either people calling in, the

24  numbers listed on the first page of Exhibit 12, or the second

25  and the third page where people are faxing in, did you make

United States District Court
Camden, New Jersey

CLEMMER – DIRECT – COHEN

1  Mr. Miley aware of these?

2  A.  Yes.

3  Q.  And when you then communicated by page 1 of Exhibit 12 to

4  Mr. Wilson to remove these people, was Mr. Miley aware you

5  were doing that?

6  A.  Yes.

7  Q.  Did you decide to do that on your own, or was that

8  something Mr. Miley would have told you to do?

9  A.  That I don't recall.

10  Q.  Was he aware you were doing it, though?

11  A.  Yes.

12  Q.  Would you please turn to Plaintiff's Exhibit 13, ma'am.

13  A.  Okay.

14  Q.  Is this a fax from you to Kevin Wilson at B2B dated March

15  31st of 2006?

16  A.  Yes.

17  Q.  So, this is two days after the first fax broadcast?

18  A.  Yes.

19  Q.  And two days after David Randall Associates had received

20  the six complaints?

21  A.  Yes.

22  Q.  And is the second page of Plaintiff's Exhibit 13

23  something that was, in fact, attached to the fax transmission?

24  A.  Yes.

25       MR. COHEN:  Judge, we would move for the admission of

United States District Court
Camden, New Jersey

CLEMMER – DIRECT – COHEN

1  Plaintiff's Exhibit 13.

2        MR. FITZPATRICK:  No objection, sir.

3        THE COURT:  Okay.  P-13 is received into evidence.

4  (PLAINTIFF EXHIBIT P-13 WAS RECEIVED IN EVIDENCE.)

5  BY MR. COHEN:

6  Q.  So, you see it's from you to Mr. Wilson at B2B on March

7  31st, 2006.  "Kevin, we would like to do another fax marketing

8  blitz.  We'll use the same ad as we used on 3/29/06, copy

9  attached.  Should we reference the same client number as

10  before, or will you assign a new one?  We can issue a check as

11  soon as we hear back from you.  We would like to send this out

12  next week on a rainy day, hopefully Wednesday or Thursday.

13  Will you hold off on sending the fax until we notify you?  We

14  would call you by 8:30 a.m. on the day we want them to go out

15  and would like them sent immediately that morning.  Do you do

16  that?  We were looking at sending 12,000 again, 10,000 plus

17  the 2,000 free, since we are Priority Club members.  We would

18  like the following areas solicited for this campaign, can you

19  do it by counties?"  And then it's got New Jersey, Delaware

20  and Pennsylvania with specific counties listed off to the

21  side.  Did I read all that correctly?

22  A.  Yes.

23  Q.  In the first paragraph, first sentence, "We would like to

24  do another fax marketing blitz," who made the decision to do

25  another fax marketing blitz?

*United States District Court*
*Camden, New Jersey*

CLEMMER – DIRECT – COHEN

1  A.   Mr. Miley.

2  Q.   And just to be clear, that's on March 31st of 2006, two

3  days after you had received those complaints.  Mr. Miley, had

4  you made him aware of those complaints?

5  A.   Yes.

6  Q.   "We'll use the same ad as we used on 3/29/06."  Who made

7  the decision that the second broadcast would use the same ad

8  as the first?

9  A.   Mr. Miley.

10  Q.   "We can issue a check as soon as we hear back from you."

11  Who would be the only person that could issue a check?

12  A.   Mr. Miley.

13  Q.   "We would like to send this out next week on a rainy

14  day."  Whose decision was that?

15  A.   Mr. Miley.

16  Q.   This is the third paragraph, "We were looking at sending

17  12,000 again."  Whose decision was that?

18  A.   Mr. Miley.

19  Q.   "We would like the following areas solicited for this

20  campaign," and the list of states and counties, whose decision

21  was that?

22  A.   Mr. Miley.

23  Q.   And is that your handwriting at the bottom?

24  A.   Yes.

25  Q.   "$394 for 10,000 plus 2,000 free faxes"?

*United States District Court*
*Camden, New Jersey*

CLEMMER – DIRECT – COHEN

1    A.   Yes.

2    Q.   And then page 2 is a map with ZIP codes at the bottom?

3    A.   Yes.

4    Q.   Did you come up with that list of additional ZIP codes to

5    try?

6    A.   No.

7    Q.   Where would that kind of information have come from?

8    A.   Mr. Miley.

9    Q.   And when I ask you things like that, because we're

10   talking about 10 years ago, do you recall interacting with

11   anyone else at David Randall Associates about this stuff?

12   A.   No.

13   Q.   Anyone else that you can think of that you would have

14   gotten this kind of ZIP code information from?

15   A.   No.

16   Q.   Would you look at Exhibit 14, please, ma'am.

17   A.   Yes.

18   Q.   Except for a few differences which we will discuss, is 14

19   the same as 13?

20   A.   Yes.

21        MR. FITZPATRICK:  Your Honor.

22        THE COURT:  Yes.

23        MR. FITZPATRICK:  Do you want my objection stated?

24        THE COURT:  Yes.

25        MR. FITZPATRICK:  I think the question should be

CLEMMER - DIRECT - COHEN

1    asked does the witness know if there are any differences

2    between 14 and 13, not the premise there are some differences.

3    It's not her testifying.

4              MR. COHEN:  I can rephrase that, Judge.

5              THE COURT:  Okay.  Please rephrase.

6    BY MR. COHEN:

7    Q.   Ma'am, are there differences between 14 and 13?

8    A.   Actually, I do see the page 2 is different.

9    Q.   And what about actually page 1, the contents of page 1,

10   are there any differences in page 1?

11   A.   I don't think so, no.

12             MR. COHEN:  Judge, we would move for admission of

13   Plaintiff's Exhibit 14.

14             THE COURT:  Any objection?

15             MR. FITZPATRICK:  I just didn't hear her say she

16   recognized it and it's accurate.

17             THE WITNESS:  Page 1, yes.

18             THE COURT:  Well, I'll ask Mr. Cohen to develop the

19   foundation for this briefly.

20   BY MR. COHEN:

21   Q.   Is Plaintiff's Exhibit 14 a fax transmission from you to

22   Mr. Wilson on March 31st of 2006?

23   A.   Yes.

24   Q.   And both the cover page and the attachment, are these

25   true and accurate copies?

CLEMMER – DIRECT – COHEN

1   A.   Yes.

2         MR. COHEN:  We would move for admission of

3   Plaintiff's 14.

4         MR. FITZPATRICK:  No objection, sir.

5         THE COURT:  Okay.  P-14 is received into evidence.

6   (PLAINTIFF EXHIBIT P-14 WAS RECEIVED IN EVIDENCE.)

7   BY MR. COHEN:

8   Q.   So, what I'm going to do, ma'am, just for comparative

9   purposes, is remind the jury, Plaintiff's Exhibit 13 was your

10  fax to Mr. Wilson on March 31st that talked about "We would

11  like another marketing blitz," and it listed the state and

12  counties, correct, we talked about that?

13  A.   Yes.

14  Q.   And up at the top of P-13, we have your faxed stamp with

15  the date, time and your initials?

16  A.   Yes.

17  Q.   P-14, is that the same fax cover sheet?

18  A.   Yes.  It just doesn't have the faxed stamp on it.

19  Q.   But all the text and content is the same?

20  A.   Yes.

21  Q.   And we had also talked about the fact that P-13 had that

22  handwriting at the bottom that was yours, right?

23  A.   Yes.

24  Q.   And P-14, even though it's the same text, the same typed

25  stuff, it doesn't have your handwriting, correct?

CLEMMER – DIRECT – COHEN

1  A.  Yes.

2  Q.  And we had talked about the fact that P-13 had an

3  attachment that was a map.  Do you recall?

4  A.  Yes.

5  Q.  And then P-14, even though it's the same fax cover sheet,

6  had another copy of the ad that was approved, correct?

7  A.  Yes.

8  Q.  Would you please take a look at Plaintiff's 15.

9  A.  Okay.

10  Q.  Do you recognize this document?

11  A.  Yes.

12  Q.  Is this, at least page 1, a fax cover sheet from you to

13  Mr. Wilson on April 3rd of 2006?

14  A.  Yes.

15  Q.  And there is an attachment.  Would that have been the

16  attachment to this fax when you sent it?

17  A.  Yes.

18        MR. COHEN:  We would move for the admission of

19  Plaintiff's Exhibit 15.

20        MR. FITZPATRICK:  No objection, sir.

21        THE COURT:  Okay.  Exhibit P-15 is received into

22  evidence.

23  (PLAINTIFF EXHIBIT P-15 WAS RECEIVED IN EVIDENCE.)

24  BY MR. COHEN:

25  Q.  So, it's from you to Mr. Wilson on April 3rd of 2006, and

*United States District Court*
*Camden, New Jersey*

CLEMMER - DIRECT - COHEN

1  regarding second fax blast, correct?

2  A.  Yes.

3  Q.  It reads, "Kevin, as per our conversation this morning,

4  please find enclosed our check for $394 for our second

5  campaign for another 12,000 faxes.  Please notify me of the

6  areas, counties or ZIP codes hit by this fax blitz so we can

7  know which ones to target for next time.  Again, we authorize

8  only one debit to our account for the amount on this check, as

9  this is payment in full for services rendered.  Please send us

10  a receipt for our records verifying services rendered."  And

11  then -- first of all, was that included in what you sent to

12  Mr. Wilson?

13  A.  Yes.

14  Q.  And at the bottom, it says, "Note:  This fax is to be

15  sent Tuesday morning, 4/4/06.  Please include us in fax so we

16  know it was sent."  Did I read that correctly?

17  A.  Yes.

18  Q.  When we go back down -- or back up to the start of this,

19  "As per our conversation this morning," I'm getting the

20  impression from some of the exhibits we've seen so far and

21  this one that you would actually speak to Mr. Wilson on the

22  phone sometimes?

23  A.  I think so, yes.

24       MR. FITZPATRICK:  Judge, I have an objection.  May we

25  see you at sidebar?

*United States District Court*
*Camden, New Jersey*

CLEMMER - DIRECT - COHEN

1          THE COURT:  Okay.  Sidebar please.

2          (Sidebar.)

3          MR. FITZPATRICK:  I object to the continual leading

4    and improper form of questioning by this attorney.  That was a

5    whole premise that he laid out and then said I'm getting the

6    impression that blah-blah-blah.  He's not asking questions.

7    Every single question he's asking, he's laying his own

8    premise, which is really just a speech to the jury.  I have

9    tried to keep from jumping up to bring unnecessary attention

10   to it, but this is going too far.  Nobody cares about his

11   impression and it's not a legitimate subject for a question to

12   this witness.

13         THE COURT:  Mr. Cohen.

14         MR. COHEN:  Judge, I've been doing this 25 years, and

15   usually you get through the basic stuff that doesn't actually

16   have any particular probative relevance one way or the other

17   except that it lays the groundwork for a relevant question.

18   We had just covered the fact she said "per our conversation"

19   this morning.  What else could it have been?

20         I'm keeping it conversational because it's so boring.

21   I'm thrilled the jury is still awake.  And, I mean, if we

22   always have to go in the absolute open-ended format, then it

23   just drags it out.  But if -- if the Court wants to indulge

24   what I believe is a technically appropriate objection, then

25   I'll do my best to painfully drag it out with the witness.

CLEMMER – DIRECT – COHEN

1   It's not like I am asking the witness anything that is going

2   to bear upon the issue that the jury has to resolve in a

3   leading manner.  I'm just trying to get us through 28 painful

4   documents.

5        THE COURT:  Well, it's not that painful.  But the

6   preface that "I'm getting the impression" is improper, and so

7   you should refrain from doing that.

8        MR. COHEN:  Okay.

9        THE COURT:  Where everybody knows that a particular

10  document is what it is and there's not a dispute about it, I

11  always permit a certain amount of leading.  Every question

12  just about that's asked in almost any trial has a certain

13  amount of leading because, from the entire universe, you're

14  focusing on something and suggesting what it is to the witness

15  and asking if they agree, and that's not improper.  But I'll

16  sustain the objection to the original predicate of the

17  sentence; in other words, I'm agreeing that counsel shouldn't

18  share with the jury what his impression is.

19       I think it was only conversational.  I don't see it

20  doing any harm.  But on the other hand, the defendant is

21  entitled to reasonably insist there be no leading questions.

22       MR. FITZPATRICK:  We're entitled to hear what's her

23  own recollection and not counsel's words ahead of time.  This

24  is 10 years old.

25       THE COURT:  This is a disputed area about the fact

*United States District Court*
*Camden, New Jersey*

1    that she had conversations with Kevin Wilson?

2            MR. FITZPATRICK:  I don't think she has any

3    independent recollection of this.  She didn't have it five

4    years ago and she doesn't have it now.  It's just that she was

5    prepped and it's all leading.

6            THE COURT:  Then all the more reason to rely upon the

7    witness's own recollection.  If she needs her recollection

8    refreshed by any document, then, of course, there's a

9    procedure for that, but counsel shouldn't suggest any answers

10   to supply what is missing from her recollection as we go

11   forward.  I don't find you have done any of that so far, but

12   if we're getting into an area that might be contentious, then

13   that's the best way to proceed.

14           MR. COHEN:  I'll do better, Judge.  Thank you.

15           THE COURT:  Okay.  Thank you.

16           (End of sidebar.)

17           THE COURT:  All right.  Ladies and gentlemen, the

18   last question, there was a predicate which I am striking where

19   Mr. Cohen said "it's my impression that."  That would be

20   leading and so you shouldn't consider that as part of the

21   question.  And I'll ask that the question be reframed and

22   asked again.

23           MR. COHEN:  Thank you, Judge.

24   BY MR. COHEN:

25   Q.  Ma'am, in Exhibit 15, your fax to Mr. Wilson dated April

1   3rd of 2006 where you state in the first sentence, "Kevin, as

2   per our conversation this morning," what are you referring to

3   when you refer to our conversation this morning?

4   A.   I don't recall.

5   Q.   And when you say you don't recall, what is it you don't

6   recall?

7   A.   The conversation.

8   Q.   Okay.

9   A.   I have no idea.

10  Q.   Were your communications with Kevin Wilson, start to

11  finish over a period of time, however much time passed, and

12  we'll get through that in the documents, was your

13  communication with him limited to faxing and e-mails?

14  A.   I don't believe so.  It appears that I talked to him on

15  the phone.

16  Q.   "As per our conversation this morning, please find

17  enclosed our check for $394."  If you had a conversation with

18  Mr. Wilson by telephone at any time, that morning or at any

19  other time, would you have communicated to Mr. Miley the

20  contents?

21  A.   Yes.

22  Q.   "For our second campaign for another 12,000 faxes."  Who

23  made a decision to go forward with the request for 12,000

24  faxes and the issuance of a check for $394 for those 12,000

25  faxes?

CLEMMER – DIRECT – COHEN

1   A.   Mr. Miley.

2   Q.   It says, "Please notify me of the areas, counties or ZIP

3   codes hit by this fax blitz so we can know which ones to

4   target for next time."  Who wanted to know so they could

5   target for next time?

6   A.   Mr. Miley.

7   Q.   The bottom where it said, "This fax is to be sent Tuesday

8   morning, 4/4/06," with an exclamation point, who was it that

9   decided to make it important that the fax broadcast issued on

10  Tuesday morning, 4/4/06?

11  A.   Mr. Miley.

12  Q.   And what I've put up on the screen, page 2 of Exhibit 15,

13  is this a copy of the David Randall Associates check in the

14  amount of $394 to pay for that second fax broadcast?

15  A.   Yes.

16  Q.   And who would have prepared that check?

17          MR. FITZPATRICK:  Objection, your Honor.

18          THE COURT:  Well, please reframe.  Does she recall

19  who prepared it, you should ask.

20  BY MR. COHEN:

21  Q.   Do you know or recall who would have prepared that check?

22          MR. FITZPATRICK:  Objection.

23          THE COURT:  Sustained.  It's the word "would have."

24          MR. COHEN:  Oh, I apologize.  I didn't understand the

25  focus of it.

CLEMMER – DIRECT – COHEN

1  BY MR. COHEN:

2  Q.   Do you know or recall who prepared that check?

3  A.   It would have been the accountant in the office, but at

4  Mr. Miley's request.

5  Q.   In your experience working at David Randall Associates,

6  did anybody other than Mr. Miley have the authority to

7  authorize the issuance of a check?

8  A.   Not the issuance of.

9  Q.   Can you turn to Plaintiff's Exhibit 16 now?

10  A.   Yes.

11  Q.   Are you familiar with this document?

12  A.   Yes.

13  Q.   And what is this document?

14  A.   This is confirmation from the marketing that they

15  received our check and they were going to be cashing it.

16  Q.   Is this a document that you received at David Randall

17  Associates in the course and scope of your work and the

18  business of David Randall Associates?

19  A.   Yes.

20  Q.   Relating to the fax broadcasting issues?

21  A.   Yes.

22       MR. COHEN:  We would move for its admission, Judge.

23       MR. FITZPATRICK:  No objection, sir.

24       THE COURT:  Okay.  Exhibit P-16 is received into

25  evidence.

*United States District Court*
*Camden, New Jersey*

CLEMMER – DIRECT – COHEN

1  (PLAINTIFF EXHIBIT P-16 WAS RECEIVED IN EVIDENCE.)

2  BY MR. COHEN:

3  Q.  What do we see at the top of Plaintiff's Exhibit 16, the

4  pay to the order part?

5  A.  Pay to the order of Business to Business Solutions.

6  Q.  Right.  Is that the same check -- is that the actual same

7  identical check which was an exhibit to the last exhibit, the

8  David Randall Associates check?

9  A.  It's a similar copy, but it doesn't look like the exact

10  same thing.

11  Q.  And then Mr. Wilson says, on Tuesday, April 4th, "Please

12  find above a copy of the check we will deposit into Apple Bank

13  on Tuesday, April 4th, or within the next two business days."

14  And at the bottom, "For your information, in this run we sent

15  12,000 faxes to numbers in Hunterdon, Mercer, Burlington, and

16  Camden Counties in New Jersey."  Did I read that correctly?

17  A.  Yes.

18  Q.  Ma'am, would you please turn to Plaintiff's Exhibit 17.

19  Do you recognize this document?

20  A.  Yes.

21  Q.  Is this a fax from you to Kevin Wilson dated April 12,

22  2006?

23  A.  Yes.

24  Q.  And there's some handwriting on it.  Do you know whose

25  handwriting that is?

*United States District Court*
*Camden, New Jersey*

CLEMMER – DIRECT – COHEN

1  A.   Mine.

2          MR. COHEN:  Your Honor, we would move for the

3  admission of Plaintiff's Exhibit 17.

4          MR. FITZPATRICK:  No objection, your Honor.

5          THE COURT:  Exhibit P-17 is received into evidence.

6  (PLAINTIFF EXHIBIT P-17 WAS RECEIVED IN EVIDENCE.)

7  BY MR. COHEN:

8  Q.   What we see at the top there, is that that same stamp

9  that we have seen before, your stamp and then you handwrote in

10  4/12/06 at 11:50 a.m.?

11          MR. FITZPATRICK:  Objection, your Honor.

12          MR. COHEN:  Judge, I'll withdraw and rephrase.  He is

13  correct.

14          THE COURT:  All right.

15  BY MR. COHEN:

16  Q.   Ma'am, you indicated that's your handwriting.  Can you

17  tell us what your handwriting says in the -- in and below the

18  faxed stamp?

19  A.   It has the date 4/12/06 at 11:50 a.m. and my initials.

20  Q.   And what's the significance of the handwritten part; what

21  does it tell us?

22  A.   When it was faxed.

23  Q.   And what does the re caption or line indicate?

24  A.   I'm sorry, what?  Oh, the regarding?

25  Q.   Yes.

CLEMMER - DIRECT - COHEN

1   A.   Another ad for fax blast.

2   Q.   It reads, "Kevin, we would like to do one more fax using

3   the original area we solicited on March 29th of '06 plus

4   adding the Reading/Allentown, Pennsylvania areas."  Did I read

5   that correctly?

6   A.   Yes.

7   Q.   Who was the person who decided to do one more fax using

8   the original areas plus adding two more areas?

9   A.   Mr. Miley.

10  Q.   The next sentence reads, "We are hoping for 18,000 to be

11  sent, 15,000 at Priority Club pricing of $565 plus the 3,000

12  free."  Did I read that correctly?

13  A.   Yes.

14  Q.   Who was it that decided on the volume 18,000 to be sent

15  on this third broadcast?

16  A.   Mr. Miley.

17  Q.   "We would like the fax to go out this Friday morning

18  4/14/06."  Who decided on the date that the fax broadcast

19  should issue?

20  A.   Mr. Miley.

21  Q.   The handwriting below that and to the right, can you tell

22  me us what that says?

23  A.   "Area codes 610, 484."

24  Q.   Do you know what the significance of those two area codes

25  is as it relates to the typed content of the letter?

CLEMMER - DIRECT - COHEN

1   A.   Just that those are phone numbers that would be in the

2   Reading and Allentown areas.

3   Q.   Below your name, it says, "Note:  You must remove the

4   following numbers from the list for Friday's fax," and it's

5   got five fax numbers on there?

6   A.   Yes.

7   Q.   And it says, "These are the people who called me last

8   time asking to be removed.  I do not want to get another call

9   from them for receiving unsolicited faxes from us.  Thank

10  you."  Did I read that correctly?

11  A.   Yes.

12  Q.   Did you communicate to Mr. Miley the fact that five more

13  people had called complaining about receiving faxes from the

14  second broadcast?

15  A.   I would have made him aware.  I don't know which ones

16  these were from, but these were ones that I would have saved

17  as had called to be removed.

18  Q.   And I guess my question is, if that information came to

19  you, somebody is complaining --

20  A.   I made Mr. Miley aware.

21  Q.   Would you please take a look at Exhibit 18, ma'am.  Are

22  you familiar with this one?

23  A.   Yes.

24  Q.   Is this another fax from you to Mr. Wilson on 4/12/06?

25  A.   Yes.

CLEMMER - DIRECT - COHEN

1  Q.  And the attachment, is that a true and accurate copy of

2  what was attached to the original fax at that time?

3  A.  Yes.

4       MR. COHEN:  We would move for the admission of

5  Plaintiff's 18.

6       MR. FITZPATRICK:  No objection, your Honor.

7       THE COURT:  Exhibit P-18 is received into evidence.

8  (PLAINTIFF EXHIBIT P-18 WAS RECEIVED IN EVIDENCE.)

9  BY MR. COHEN:

10  Q.  Ma'am, this may require you to do a quick comparison

11  between 17 and 18, but what can you tell us about the

12  similarity or differences between 17 and 18?

13  A.  They look similar.  It just doesn't have my area code

14  written in.

15  Q.  And then page 2 of 18, what is that?

16  A.  A copy of the ad.

17  Q.  Which ad?

18  A.  The fax, the ad to go out for the fax, yes.

19  Q.  For that third broadcast?

20  A.  Yes.

21  Q.  Did Mr. Miley know what ad was going to be used for the

22  third broadcast?

23  A.  Yes.

24  Q.  Who decided which ad would be used for the third

25  broadcast?

CLEMMER – DIRECT – COHEN

1  A.   Mr. Miley.

2  Q.   Ma'am, would you please look at Exhibit 19.

3  A.   Okay.

4  Q.   Do you recognize this document?

5  A.   Yes.

6  Q.   Is this a fax from you to Mr. Wilson at B2B on April

7  12th, 2006, relating to the third broadcast?

8  A.   Yes.

9  Q.   And the attachment, is that a true and accurate copy of

10 the attachment that accompanied your original fax at the time?

11 A.   Yes.

12        MR. COHEN:  We would move for the admission of

13 Plaintiff's Exhibit 19, Judge.

14        THE COURT:  Any objection?

15        MR. FITZPATRICK:  No, sir.

16        THE COURT:  Okay.  Exhibit P-19 is received into

17 evidence.

18 (PLAINTIFF EXHIBIT P-19 WAS RECEIVED IN EVIDENCE.)

19 BY MR. COHEN:

20 Q.   April Clemmer to Kevin Wilson, 4/12/06, regarding third

21 fax blast, and it reads, "Kevin, as per our conversation

22 today, please find enclosed our check for $565 for our third

23 campaign for another 18,000 faxes."  Would Mr. Miley have been

24 aware that you were sending this communication?

25 A.   Yes.

CLEMMER – DIRECT – COHEN

1        MR. FITZPATRICK:  Objection.

2        THE COURT:  Sustained.  I'll strike the question and

3   answer.

4        Please rephrase, not whether he would have been, but

5   was he.

6   BY MR. COHEN:

7   Q.   Was Mr. Miley aware that you were sending this

8   communication?

9   A.   Yes.

10  Q.   Would you ever have sent a communication of this type

11  while working at David Randall Associates without the

12  knowledge, approval, instruction and authorization of Mr.

13  Miley?

14  A.   No.

15       MR. FITZPATRICK:  Objection.

16       THE COURT:  I'll permit it.

17       You may answer.

18       THE WITNESS:  No.

19  BY MR. COHEN:

20  Q.   At the bottom of Exhibit 19, it says, "Note:  This fax is

21  to be sent Friday morning, 4/14/06."  Who decided on the date?

22  A.   Mr. Miley.

23  Q.   And at the very bottom, three asterisks, "You must remove

24  the following numbers from the list for this campaign," and

25  it's got I guess five fax numbers.  What were those fax

CLEMMER – DIRECT – COHEN

1  numbers?

2  A.   Those are the persons who called to say they wanted to be

3  removed.

4  Q.   If you knew those people called in complaining, did you

5  communicate that to Mr. Miley?

6  A.   Yes.

7  Q.   And then the attachment to this exhibit, can you tell us

8  what that is?

9  A.   That's the payment check.

10 Q.   Did Mr. Miley authorize the issuance of this payment?

11 A.   Yes.

12 Q.   If you could look at Exhibit 20, please.

13 A.   Yes.

14 Q.   Is this also a fax cover page from you to Mr. Wilson

15 dated April 12th?

16 A.   Yes.

17 Q.   Also regarding the third fax blast?

18 A.   Yes.

19 Q.   Can you identify similarities or differences between

20 Exhibits 19 and 20?

21 A.   They look the same.

22       MR. COHEN:  We would move for the admission of 20,

23 Judge.

24       MR. FITZPATRICK:  I'm not sure if they're the same.

25 Why would he have two?

CLEMMER - DIRECT - COHEN

1          MR. COHEN:  We're going to identify potential

2    differences, but I don't want to lead the witness.

3          THE COURT:  Okay.  Very well.  I'll permit it.  Is

4    there any objection otherwise to 20?

5          MR. FITZPATRICK:  It --

6          THE COURT:  I would admit it into evidence subject to

7    it being proved up that there are differences.

8          MR. COHEN:  Thank you, Judge.

9    (PLAINTIFF EXHIBIT P-10 WAS RECEIVED IN EVIDENCE)

10   BY MR. COHEN:

11   Q.  Ma'am, showing you again what we had as 19.

12       19 has your fax stamp?

13   A.  Yes.

14   Q.  And is that your handwriting?

15   A.  Yes.

16   Q.  And then as far as the text, the typed part, do you see

17   any differences between 19 and 20, the typed part?

18   A.  The content is the same.

19   Q.  Does 20 have your fax stamp?

20   A.  20 does not.

21   Q.  And 20, at the top, the fax header, is that shown at the

22   top of 19?

23   A.  No.

24   Q.  Could you please take a look at Exhibit 21.

25   A.  Yes.

CLEMMER – DIRECT – COHEN

1  Q.   Do you recognize this document?

2  A.   Yes.

3  Q.   Is this a communication received by you at David Randall

4  Associates from Business to Business Solutions pertaining to

5  the third fax broadcast?

6  A.   Yes.

7        MR. COHEN:  We would move for the introduction of

8  Plaintiff's 21, Judge.

9        MR. FITZPATRICK:  No objection, sir.

10        THE COURT:  Okay.  Exhibit P-21 is received into

11  evidence.

12  (PLAINTIFF EXHIBIT P-21 WAS RECEIVED IN EVIDENCE)

13  BY MR. COHEN:

14  Q.   And in general, what is this document that you received

15  at David Randall Associates from Business to Business

16  Solutions?

17  A.   It's another confirmation that they're going to be

18  depositing a check for that third blast.

19  Q.   As payment for, does it indicate what?

20  A.   Payment for faxing 18,000 ads.

21        THE COURT:  Excuse me, Mr. Cohen, we're a little past

22  12:30.  Let me know when you come to a good point to stop.

23        MR. COHEN:  Judge, I think it's probably a perfect

24  time.

25        THE COURT:  Okay.  Then, ladies and gentlemen, let's

*United States District Court*
*Camden, New Jersey*

CLEMMER – DIRECT – COHEN

1  take our luncheon recess.  I'll ask you to report downstairs

2  to the jury assembly room in an hour, about 1:35 p.m. and then

3  we'll get started as soon as everybody is ready.

4      So enjoy your lunch.

5      THE DEPUTY CLERK:  All rise.

6      (JURY EXITS; 12:37 p.m.)

7      THE COURT:  Okay.  Anything else before we leave?

8      MR. COHEN:  Just for, I guess, housekeeping, I'm

9  sometimes off on how long things will take, but I think I'm

10 probably about 20 to 30 minutes away from being done with the

11 direct, if that helps the Court, if that helps for

12 Mr. Fitzpatrick to plan his time.

13     THE COURT:  That's good.  All right.  Thank you.

14     MR. FITZPATRICK:  That you, sir.

15     THE DEPUTY CLERK:  All rise.

16     (OPEN COURT; 1:46 p.m.)

17     THE COURT:  Good afternoon, are we ready to continue?

18     MR. COHEN:  Yes.

19     THE COURT:  Okay.  Please bring in the jury.

20     THE DEPUTY CLERK:  All rise.

21     (JURY ENTERS; 1:47 p.m.)

22     THE COURT:  Good afternoon, everybody.  Welcome back.

23 Please be seated.

24     We're ready to continue with Ms. Clemmer's testimony.

25     MR. COHEN:  Thank you, Judge.

CLEMMER - DIRECT - COHEN

1  BY MR. COHEN:

2  Q.   Welcome back.  Ma'am, when we stopped for lunch, we were

3  about to address Plaintiff's Exhibit 22.

4       Do you have that in front of you?

5  A.   Yes.

6  Q.   Can you identify this as a copy of a fax cover sheet from

7  you to Kevin Wilson at Maxi-Leads or B2B dated May 12th of

8  2006?

9  A.   Yes.

10  Q.   And do you, in fact, recognize this fax?

11  A.   Yes.

12  Q.   Is this a true and accurate copy of the original?

13  A.   Yes.

14       MR. COHEN:  We would move for admission of

15  Plaintiff's Exhibit 22.

16       MR. FITZPATRICK:  No objection, sir.

17       THE COURT:  Okay.  Exhibit P-22 is received into

18  evidence.

19  (PLAINTIFF EXHIBIT P-22 WAS RECEIVED IN EVIDENCE)

20  BY MR. COHEN:

21  Q.   First of all, ma'am, you have an area at the top, we've

22  seen it before.  What is this again?  You've told us before,

23  but what is that?

24  A.   It's just an identification of the time and date that I

25  would have faxed something.

*United States District Court*
*Camden, New Jersey*

CLEMMER – DIRECT – COHEN

1  Q.  And how do you take a page that doesn't have this

2  originally and get that to be on there?

3  A.  It was a stamp.

4  Q.  And it's got some handwriting.  Is that yours?

5  A.  Yes.

6  Q.  And what does that say?

7  A.  First is copy at the top, then it has the date, 5-12-06,

8  my initials and time, 8:50 a.m., and at the end, PA area.

9  Q.  And I missed what you said, the last thing?

10  A.  PA area at the bottom.

11  Q.  Ah, I wasn't even showing that yet.

12      Is that what you are referring to at the bottom?

13  A.  Yes.

14  Q.  What does PA stand for?

15  A.  Pennsylvania.

16  Q.  Approximately how long did you work for David Randall

17  Associates?

18  A.  A little over a year.

19  Q.  And you said you left September of 2006, so approximately

20  when do you think you started?

21  A.  About August.

22  Q.  Of?

23  A.  Of 2005.

24  Q.  How did you come to have a stamp that allowed you to do

25  that, where you would stamp something faxed and then handwrite

CLEMMER - DIRECT - COHEN

1   in the stuff like you've been showing and telling us about?

2   A.   It was just a stamp that was at the office there by the

3   fax machine.

4   Q.   Was it there from the day you got there?

5   A.   I don't recall.

6   Q.   Do you -- and I guess what I'm wondering, do you have any

7   ability to speak to whether you had just started using a fax

8   stamp like that, right around the March, April, May, 2006 time

9   period, or whether that had been something you had been doing

10  for quite some time already?

11  A.   I honestly don't remember.  I'm sorry.

12  Q.   Did you only -- strike that.

13       When would you use the fax stamp?  Was it for just

14  outgoing, for outgoing and incoming?  Explain to us when you

15  would use it.

16  A.   I would use it when I faxed something as proof of the

17  date and time that I actually sent it.

18  Q.   Did you have any other stamps that you would use?

19  A.   I don't recall.

20  Q.   When you faxed something out, what procedure, if any, did

21  you follow with regard to giving a copy of it to somebody who

22  needed to know?

23  A.   I don't remember having anything that I specifically had

24  to do.

25  Q.   Good enough.  So we've got April Clemmer to Kevin Wilson,

*United States District Court*
*Camden, New Jersey*

CLEMMER – DIRECT – COHEN

1  May 12th of 2006, and the text:  "Kevin, we would like to send

2  another fax blast to the original area we targeted in March.

3  I have enclosed a check in the amount of $394 for 12,000 faxes

4  to be sent as quoted in the Priority Club which we joined.

5  You should have a record of the areas targeted, but I believe

6  we included the following ZIP codes," and then it's got seven

7  lines of ZIP codes, correct?

8  A.   Yes.

9  Q.   And it says:  "Please have this faxed out Monday morning,

10  May 15th."

11  A.   Yes.

12  Q.   Whose decision was it to send another fax blast, which

13  would be a fourth broadcast?

14  A.   Mr. Miley.

15  Q.   And whose decision was it that this fourth fax broadcast

16  would be to the original area targeted in the first broadcast

17  in March?

18  A.   Mr. Miley.

19  Q.   Who would have agreed to the payment of $394 for this --

20  I'll rephrase that.

21       Did you authorize the issuance of a check in the amount

22  of $394 for this fourth broadcast?

23  A.   No.

24  Q.   Who authorized it?

25  A.   Mr. Miley.

*United States District Court*
*Camden, New Jersey*

CLEMMER - DIRECT - COHEN

1  Q.  Who decided that this fourth broadcast would be for

2  12,000 faxes?

3  A.  Mr. Miley.

4  Q.  Would you have ever obligated the company, David Randall

5  Associates, for an obligation to pay for something, for faxing

6  to thousands of people, 12,000 persons or entities without

7  Mr. Miley's approval?

8  A.  No.

9  Q.  Ms. Clemmer, if you could turn to Exhibit 23.

10  A.  Okay.

11  Q.  Do you recognize this document?

12  A.  Yes.

13  Q.  Is this also a fax from you to Mr. Wilson dated May 12th,

14  2006, relating to the fourth broadcast?

15  A.  Yes.

16  Q.  And it has two documents attached.  Were these documents

17  that are attached part of the original fax transmission?

18  A.  Yes.

19       MR. COHEN:  We would move to the introduction of

20  Exhibit 23.

21       MR. FITZPATRICK:  Could we just have some

22  clarification, sir?  This looks like Exhibit 22 with a few

23  additional pages.

24       MR. COHEN:  I would have clarified that except that

25  would have been leading.

*United States District Court*
*Camden, New Jersey*

CLEMMER - DIRECT - COHEN

1        THE COURT:  Well, the question is whether there's any

2   objection to the cover sheet plus the two attachments.  Do you

3   wish to --

4        MR. FITZPATRICK:  I have no objection to that, Your

5   Honor.  I'm just confused and if the witness is not, I am.

6        THE COURT:  Okay.  You can explore it on cross.

7   Exhibit P-23 will be received into evidence.

8   (PLAINTIFF EXHIBIT P-23 WAS RECEIVED IN EVIDENCE)

9   BY MR. COHEN:

10  Q.   Ma'am, if we look at P-22 again, where you talked about

11  your fax stamp and your handwriting, and up there at the top

12  where it says, "Copy," whose handwriting is that?

13  A.   Mine.

14  Q.   If we're looking at Exhibit 23, can we tell if the

15  typewritten text of the cover fax page is the same as 22?

16  A.   Yes.

17  Q.   Does it have your fax stamp?

18  A.   No.

19  Q.   Does it have the handwritten word, "Copy?"

20  A.   No.

21  Q.   We talked about the fact that Exhibit 23 has two pages

22  attached.

23       How many pages does your fax cover sheet for Exhibit 23

24  indicate are being sent, including the cover page?

25  A.   Three.

CLEMMER – DIRECT – COHEN

1  Q.  And if we look at the second page of Exhibit 23, and I

2  know we've seen it before, but tell us, what is this?

3  A.  This is the advertisement that was going to go out for

4  the marketing.

5  Q.  Who approved and decided that that would be the ad

6  accompanying the fourth broadcast?

7  A.  Mr. Miley.

8  Q.  And the third page of Exhibit 23, what is that?

9  A.  That's the payment of that blast.

10  Q.  And I missed the last few words.

11  A.  For the fax blast.

12  Q.  For the fourth broadcast?  Is that a yes?

13  A.  Yes.

14  Q.  Who authorized the issuance of this payment?

15  A.  Mr. Miley.

16  Q.  Could I ask you to flip to Plaintiff's Exhibit 40.

17  A.  Okay.

18  Q.  Do you have that in front of you?

19  A.  Yes.

20  Q.  There is handwriting on this document.  Can you identify

21  whose handwriting that is?

22  A.  That's mine.

23  Q.  Does this document pertain to the payment for the fourth

24  broadcast we were just talking about?

25  A.  I don't recall which one it would be for.

CLEMMER - DIRECT - COHEN

1   Q.   Does this -- what does the -- except for your

2   handwriting, setting aside your handwriting, what is the --

3   what is the content of this document, Exhibit 40?

4   A.   It is a payment for one of the fax blasts to Business to

5   Business Solutions.

6   Q.   And if you look at the date --

7        MR. COHEN:  Well, Judge, we would move for the

8   admission of Plaintiff's Exhibit 40 based upon the witness's

9   identification of it and the fact that it has her handwriting

10  on it.

11       THE COURT:  Any objection to P-40?

12       MR. FITZPATRICK:  May I just ask the witness a

13  follow-up question?

14       THE COURT:  Yes, you may.  You may voir dire.

15  (VOIR DIRE EXAMINATION OF APRIL CLEMMER BY MR. FITZPATRICK:)

16  Q.   Did you say that you know what this is or you don't know

17  what it is?

18  A.   I don't recall exactly which payment that would have been

19  for.

20  Q.   But you recognize the document?

21  A.   I recognize it.

22       MR. FITZPATRICK:  Okay.  Thank you, sir.  No

23  objections.

24       THE COURT:  P-40 is received into evidence.

25  (PLAINTIFF EXHIBIT P-40 WAS RECEIVED IN EVIDENCE)

*United States District Court*
*Camden, New Jersey*

CLEMMER – DIRECT – COHEN

1          MR. COHEN:  Thank you, Judge.

2  (CONTINUED DIRECT EXAMINATION EXAMINATION OF APRIL CLEMMER BY

3  MR. COHEN:)

4  Q.  So if we look at the date that was from an actual David

5  Randall Associates check up at the top, what date is showing?

6  A.  April 3rd.

7  Q.  Of 2006?

8  A.  2006, mm-hmm.

9  Q.  Thank you.

10          Do you see down on the front side of the check on

11  Exhibit 40, what the original date was typed in?

12  A.  April 3rd, 2006.

13  Q.  The same as the date on the receipt slip?

14  A.  Yes.

15  Q.  But that's crossed out and there's handwriting.  Whose

16  handwriting is that?

17  A.  That's mine.

18  Q.  And what date did you handwrite in?

19  A.  May 12th, 2006.

20  Q.  Okay.  So if we turn this over, and again, this is off to

21  the right side of the page, we've turned it vertical so we can

22  read it, but that's your handwriting?

23  A.  Yes.

24  Q.  What does that say?

25  A.  "I will need a check in the amount of $394 payable as

*United States District Court*
*Camden, New Jersey*

CLEMMER - DIRECT - COHEN

1  shown here and note no signature required.  Put void on

2  signature line."

3  Q.  Could you have issued a check yourself?

4  A.  No.

5  Q.  We see this for the May 12th payment.  Could you have

6  issued any of the other three payments yourself?

7  A.  No.

8  Q.  We were looking at Exhibit 23 a moment ago.  If we put

9  Exhibit 23 back up, what date do we see for Exhibit 23?

10 A.  May 12th, 2006.

11 Q.  Is that the same date you had handwritten in on

12 Exhibit 40?

13 A.  Yes.

14 Q.  And on Exhibit 23, the slip for this check, it explained

15 the description that -- is this your handwriting?

16 A.  No.

17 Q.  Okay.  The person whose handwriting it is, what did they

18 use to -- what did they say to describe what this was for?

19 A.  Fax marketing.

20 Q.  Would you please turn to Exhibit 24, ma'am.

21 A.  Okay.

22 Q.  Do you recognize this document, at least the first page,

23 as a fax cover from you to Mr. Wilson dated May 15th of 2006?

24 A.  Yes.

25 Q.  And it indicates that there's two pages including the

CLEMMER - DIRECT - COHEN

1  cover.  Looking at the second page, can you identify that as

2  the page that accompanied the fax at the time?

3  A.  Yes.

4       MR. COHEN:  Your Honor, we would move for the

5  introduction of Plaintiff's Exhibit 24.

6       MR. FITZPATRICK:  No objection.

7       THE COURT:  Okay.  Exhibit P-24 is received into

8  evidence.

9  (PLAINTIFF EXHIBIT P-24 WAS RECEIVED IN EVIDENCE)

10  BY MR. COHEN:

11  Q.  So I have a fax from you to Mr. Wilson dated May 15th of

12  2006:  "Kevin, I left two messages for you this morning and

13  haven't heard back from you yet.  I got the answer to my first

14  question already.  A fax must have gone out this morning since

15  I have gotten several calls from people asking to have their

16  numbers removed from your list.  However, I am questioning the

17  area where they were sent.  It appears they were sent to

18  New Jersey instead of Pennsylvania.  My request -- see

19  attached -- was to target the original area we sent to which

20  was for businesses within a ten-mile radius of our company,

21  which is in Pennsylvania.  If you mistakenly sent to

22  New Jersey, I am asking you to resend to the correct area at

23  no additional charge.  Can this be done yet today or first

24  thing tomorrow morning?  I will wait for your response."

25       Was that the content of the fax transmission and

CLEMMER - DIRECT - COHEN

1  communication you sent to Mr. Wilson?

2  A.   Yes.

3  Q.   In the second paragraph towards the bottom, it says:  "If

4  you mistakenly sent to New Jersey, I'm asking you to resend to

5  the correct area at no additional charge."

6       Would you take it upon yourself to make the decision

7  about how to handle this problem without speaking to somebody

8  else in the company?

9            MR. FITZPATRICK:  Objection, Your Honor.

10           THE COURT:  Sustained.

11           MR. COHEN:  I'll rephrase.

12           THE COURT:  Okay.

13  BY MR. COHEN:

14  Q.   Did you take it upon yourself to draft this fax and

15  decide on your own how to handle the apparent possible

16  screw-up by B2B in sending to New Jersey instead of

17  Pennsylvania?  Did you take it upon yourself how to handle

18  that and send this without communicating with Mr. Miley?

19  A.   No.

20  Q.   Was this communication sent with the knowledge, approval

21  and instruction of Mr. Miley?

22  A.   Yes.

23  Q.   If you would turn to Exhibit 25.

24  A.   Okay.

25  Q.   Is there any difference in the substance of the typed

CLEMMER - DIRECT - COHEN

1  text between Exhibits 24 and 25?

2  A.   No.

3  Q.   Both of them talk about:  "My requests, see attached, was

4  to target the original area."

5       Does Exhibit 25 have attached your original request

6  setting forth all of those ZIP codes?

7  A.   Yes.

8       MR. COHEN:  Judge, we would move for admission of

9  Exhibit 25.

10      MR. FITZPATRICK:  No objection, sir.

11      THE COURT:  All right.  Exhibit P-25 was received

12  into evidence.

13  (PLAINTIFF EXHIBIT P-25 WAS RECEIVED IN EVIDENCE)

14  BY MR. COHEN:

15  Q.   Can you take a look at Plaintiff's Exhibit 26, please.

16  A.   Okay.

17  Q.   Is this the document received by you at David Randall

18  Associates from Kevin Wilson on or about May 15th of 2006?

19  A.   Yes.

20  Q.   Pertaining to the fourth fax blast?

21  A.   Yes.

22      MR. COHEN:  We would move for the introduction of

23  Plaintiff's Exhibit 26.

24      THE COURT:  Any objection?

25      MR. FITZPATRICK:  No, sir.  I'm sorry.

*United States District Court*
*Camden, New Jersey*

CLEMMER - DIRECT - COHEN

1          THE COURT:  Okay.  P-26 will be received into

2     evidence.

3     (PLAINTIFF EXHIBIT P-26 WAS RECEIVED IN EVIDENCE)

4     BY MR. COHEN:

5     Q.   We've seen documents like this as to other of the

6     broadcasts, the earlier.

7          When you communicated with B2B in whatever format,

8     whether you were sending them a fax, whether they were sending

9     you a fax, whether you were sending them an e-mail, whether

10    they were sending you an e-mail, and whether you said

11    something to Kevin Wilson on the phone or he said something to

12    you on the phone, did you convey that information to

13    Mr. Miley?

14    A.   Yes.

15    Q.   Ma'am, would you please turn to Plaintiff's Exhibit 27.

16    A.   Okay.

17    Q.   Do you recognize this document?

18    A.   Yes.

19    Q.   Is this a fax cover sheet which attached documents from

20    you to Mr. Wilson at B2B dated April 17th of 2006?

21    A.   Yes.

22    Q.   And the documents that are attached, what are these

23    documents that are attached?

24    A.   They are copies of the notices that we received from

25    different persons saying they wanted to be removed from the

CLEMMER – DIRECT – COHEN

1   fax list.

2   Q.   And were you forwarding and communicating that

3   information to Mr. Wilson so that he would remove their names,

4   their numbers from any future fax broadcast?

5   A.   Yes.

6           MR. COHEN:  Your Honor, we would move for the

7   admission of Plaintiff's Exhibit 27.

8           MR. FITZPATRICK:  No objection, sir.

9           THE COURT:  All right.  Exhibit P-27 is received into

10  evidence.

11  (PLAINTIFF EXHIBIT P-27 WAS RECEIVED IN EVIDENCE)

12  BY MR. COHEN:

13  Q.   Before you took these communications you received from

14  people asking to have their phone numbers removed from any

15  further fax broadcast lists, had you made Mr. Miley aware of

16  it?

17  A.   Yes.

18  Q.   And so just looking at Bates Page 63, 0063, one of the

19  attachments where it says:  "Remove the following fax number

20  from your list," and it has a fax number and it says:  "We do

21  not want any further faxes from you.  Why don't you provide an

22  800 number to call.  I believe it's the law to do so."

23          Before forwarding this as part of the attachment to

24  Mr. Wilson, Mr. Miley was made aware of this?

25  A.   Yes.

CLEMMER – DIRECT – COHEN

1  Q.  And this was on April 17th of 2006, well before the

2  fourth broadcast, correct?

3  A.  Yes.

4  Q.  Ma'am, last, I'd ask you to take a look at Exhibit 28.

5  A.  Okay.

6  Q.  And so you know and for the record, I have removed Bates

7  Page 0050.

8       Do you recognize these, these pages?

9  A.  Yes.

10  Q.  What are these?

11  A.  These are my lists of leads that we got from the fax

12  advertising that we did.

13  Q.  So to the extent that you advertise hoping to get a

14  response and possible business, you got it.

15  A.  Yes.

16       MR. COHEN:  Judge, we would move for the introduction

17  of Plaintiff's Exhibit 28, limited to Bates Pages 48, 49 and

18  57.

19       THE COURT:  Any objection?

20       MR. FITZPATRICK:  May I just voir dire her on one

21  question?

22       THE COURT:  Yes.

23  (VOIR DIRE EXAMINATION OF APRIL CLEMMER BY MR. FITZPATRICK:)

24  Q.  What was removed from this?  What is Bates No. 0050?

25  A.  An in-house lead form.

*United States District Court*
*Camden, New Jersey*

CLEMMER - DIRECT - COHEN

1  Q.  Why was that removed?

2  A.  I don't know.

3       MR. COHEN:  Judge, how could she know why I asked to

4  have it removed?

5  BY MR. FITZPATRICK:

6  Q.  Was the in-house lead form part of this package, to your

7  recollection?

8  A.  If it was with these papers, I would imagine so, but I

9  don't recall.

10 Q.  Is the in-house lead form something that you generated?

11 A.  I did not.  It's not my handwriting.

12 Q.  Do you know who did?

13 A.  It doesn't have -- no, it doesn't have a name on it.

14 Q.  Do --

15 A.  Oh, it says, "Received by April," but it's not my

16 handwriting.

17 Q.  Is that a document that was part of the in-house lead

18 forms that comprise this package of documents?

19       MR. COHEN:  Judge, may we approach?

20       THE COURT:  All right.  Sidebar, please.

21     (SIDEBAR AS FOLLOWS:)

22       THE COURT:  Why was Bates 50 withdrawn?

23       MR. COHEN:  Because he objected to it.  Because when

24 we submitted our exhibit list and he submitted his objections,

25 he said he had no objection to any page but Bates 50 because

1    in her deposition, she couldn't authenticate it, but she

2    authenticated all the others in her deposition, so he had no

3    objection to any of the others.  So as an appeasement and

4    acquiescence to his objection and her deposition inability to

5    authenticate this document, I took it out.  Now the witness is

6    being chastised, I'm being implicated with somehow withholding

7    something, when all I did was accommodate his objection.

8         THE COURT:  Best thing to do if it happens is just to

9    explain to counsel before you use it, that, you know, you are

10   acquiescing to his objection.  Do you recall that?

11        MR. FITZPATRICK:  No, but my -- more importantly on

12   -- I do recall that she's unable to identify certain of these

13   documents and I just wanted to show that this witness, in

14   these documents, did not have a recollection of a document

15   that should be included in that package.

16        MR. COHEN:  No.

17        MR. FITZPATRICK:  I think it should have been

18   presented to her and she would have testified that she didn't

19   recognize it.

20        MR. COHEN:  Judge, that's incorrectly describing the

21   history.  In the production of documents in this case, from

22   defendant, we got the documents that were at Exhibit 28.  They

23   didn't necessarily come as a packet.  They did not necessarily

24   come as a representation these all go together.  We thought

25   they went together.  We put them together.  We marked them as

1    Exhibit 28 in her deposition.  We showed them to her and she

2    said, yes, the first page, the second page and the fourth

3    page, that's my notes.  She said the third page, the in-house

4    leads, I didn't create that, I really can't say anything about

5    it.

6         So when he made an objection to our designation

7    Exhibit 28 for trial, I looked at his objection, I went to

8    Bates 50, I said, you know, it is what she said in her depo,

9    she can't authenticate that, so I took it out.

10        THE COURT:  Okay.  Do you accept that?

11        MR. FITZPATRICK:  I do.

12        THE COURT:  Okay.  Then what shall we say, that you

13   have no objection to the three pages of Exhibit 28?

14        MR. FITZPATRICK:  I will say I have no further

15   objections to -- yeah, to the admission of the ones that are

16   marked.

17        THE COURT:  Okay.

18        MR. COHEN:  That's fine.

19        THE COURT:  All right.

20        (END OF SIDEBAR.)

21        MR. FITZPATRICK:  Your Honor.  Just for the record, I

22   have no objection to the documents that have been marked as

23   Exhibit 28 with the one that has been removed.

24        THE COURT:  All right.  And so Exhibit P-28 is

25   received into evidence, consisting of three pages that are

CLEMMER – CROSS – FITZPATRICK

1   Bates-stamped 0048, 49 and 57.

2   (PLAINTIFF EXHIBIT P-28 WAS RECEIVED IN EVIDENCE)

3   BY MR. COHEN:

4   Q.   Ms. Clemmer, at the time you worked for David Randall

5   Associates, who was the top managing officer in that company?

6   A.   Mr. Miley.

7   Q.   Just so the jury understands, have you ever been

8   threatened with litigation?  Have you ever been involved in

9   this lawsuit?  Have you ever been exposed or at risk or felt

10   exposed or at risk of liability in any way that would affect

11   your testimony?

12   A.   No.

13        MR. COHEN:  I do appreciate your time, ma'am.

14   Nothing further.

15        THE COURT:  Okay.  Very well.

16        Cross-examination, Mr. Fitzpatrick.

17        MR. FITZPATRICK:  Thank you, Your Honor.

18   (CROSS-EXAMINATION OF APRIL CLEMMER BY MR. FITZPATRICK:)

19   Q.   Ms. Clemmer, you were deposed in this case five years

20   ago?

21   A.   Yes.

22   Q.   Right?

23        And at that time, did you have any problem recollecting

24   any of the events that you were asked about?

25   A.   Yes.  They were five years old.

CLEMMER - CROSS - FITZPATRICK

1   Q.   At that time.

2   A.   Mm-hmm.

3   Q.   And now they're ten years old.

4   A.   Right.

5   Q.   When you started out testifying today, you mentioned that

6   you had not a complete recollection of these events, other

7   than from your having read documents and prepared for coming

8   here today, is that right?

9   A.   Yes, yes.

10  Q.   Okay.  So what you're testifying about today is based

11  upon your review of documents with plaintiff's counsel before

12  your testimony.

13  A.   Yes.

14  Q.   And did you review your deposition from 2011?

15  A.   I did.

16  Q.   Now, the fax broadcasting that's the subject of this

17  litigation, did David Randall Associates ever engage in fax

18  broadcasting before or after March, April and May of 2006?

19  A.   Not while I was there.

20  Q.   And before this fax broadcasting, the acts that are

21  charged in this case, David Randall didn't do any advertising

22  or marketing, did it?

23  A.   No.

24  Q.   Okay.  So there was no advertising and marketing

25  department in the company?

CLEMMER – CROSS – FITZPATRICK

1   A.   Correct.

2   Q.   The company did have departments, though, right?

3   A.   Yes.

4   Q.   It was organized with different areas of responsibility?

5   A.   Yes.

6   Q.   What were they?

7   A.   There was the accounting and then there was a service

8   department and then there was new installation.

9   Q.   And you mentioned, I believe, that you worked with the

10  service department?

11  A.   Yes.

12  Q.   That was part of your job?

13  A.   Yes.

14  Q.   What did you do with them?

15  A.   Basically, I just took -- if someone would call in with a

16  leak and needed servicing, then I would just take the

17  information and pass it along to the manager there.

18  Q.   Who was the manager?

19  A.   George -- I don't remember his last name.

20  Q.   Okay.  And was a part of your job to pass along any leads

21  that would come into the company?

22  A.   If anything came in, those would go to the installation

23  division.

24  Q.   Would those calls get routed to you in the first

25  instance?

CLEMMER – CROSS – FITZPATRICK

1  A.   Some may and some may not, but I generally answered the

2  phones so --

3  Q.   Okay.

4  A.   -- I probably would have.

5  Q.   And you took -- as the office manager, you received any

6  faxes that came in that were not specifically addressed?

7  A.   Correct.

8  Q.   Okay.  And the fax that came in that wasn't specifically

9  addressed, that was the solicitation from B2B that led to the

10  acts which are -- have been discussed here today.

11  A.   Mm-hmm.

12  Q.   That went to you.

13  A.   I don't remember it specifically, but I would imagine

14  that I would have seen it, mm-hmm.

15  Q.   Did you see that before coming here today?

16  A.   No, I didn't see it.  The original?

17  Q.   Yes.

18  A.   I didn't see it.

19  Q.   Do you remember that?

20  A.   I don't remember the initial marketing piece.

21  Q.   Do you remember what it said?

22  A.   No, I don't.

23  Q.   Do you remember testifying in your deposition about what

24  it said?

25  A.   No.

CLEMMER – CROSS – FITZPATRICK

1           MR. FITZPATRICK:  May I refresh her recollection,

2    Your Honor?

3           THE COURT:  Yes.

4    BY MR. FITZPATRICK:

5    Q.  Do you remember being --

6           THE COURT:  Well, just a moment, I think rather than

7    read that, since she's not a party, show it to her.

8           MR. FITZPATRICK:  Sure.

9           THE COURT:  Ask her to read it to herself and see if

10   it refreshes her recollection.

11          MR. FITZPATRICK:  Very well, Your Honor.

12   BY MR. FITZPATRICK:

13   Q.  The question begins at Line 8 on Page 9 of your

14   deposition, and the answer is below.

15   A.  Okay.  Thank you.

16   Q.  Do you recall being asked that question?

17   A.  Yeah.

18   Q.  Okay.  The question was:  How did you become aware of the

19   fax advertising while you were employed at David Randall?

20          Your answer was:  We got a fax one -- got a fax

21   advertisement saying that they would do a marketing.  It was a

22   marketing firm that would help you with whatever your business

23   was.

24          Do you remember that?

25   A.  Mm-hmm.

1              THE REPORTER:  You have to say yes or no.

2              THE WITNESS:  I'm sorry, yes.

3    BY MR. FITZPATRICK:

4    Q.   And you passed that along to Mr. Miley, right?

5    A.   Yes.

6    Q.   And he told you to follow up and find out about it?

7    A.   Yes.

8    Q.   Did you do that?

9    A.   Yes.

10   Q.   What did you find out?

11   A.   I got pricing and found out what kind of area they would

12   do and how quickly it would be done and what needed to happen

13   to get that process started.

14   Q.   Okay.  And before you received that fax, did you have any

15   plan or make any suggestion to do fax advertising --

16   A.   No.

17   Q.   -- for David Randall?

18   A.   No.

19   Q.   And Mr. Miley didn't come up with that plan?

20   A.   No.

21   Q.   This all resulted from your receipt of that fax?

22   A.   Yes.

23   Q.   Now, after Mr. Miley told you to look into it, you did so

24   -- do you recall telling him that you felt that B2B was

25   legitimate?

CLEMMER - CROSS - FITZPATRICK

1  A.   I don't recall that.

2  Q.   Do you recall doing any investigation where you -- where

3  you decided that?

4  A.   I would just have followed up with them, in talking with

5  them, but I don't remember.

6  Q.   Okay.  Do you remember being asked that at your

7  deposition?

8  A.   No, I'm sorry, I don't.

9       MR. FITZPATRICK:  May I, Your Honor?

10      THE COURT:  Yes.

11  BY MR. FITZPATRICK:

12  Q.   I'd ask you to look at Line 19 on Page 14 of your

13  deposition, the question and answer.

14  A.   Oh, up here, okay.

15  Q.   Do you now recall?

16  A.   Yes.

17  Q.   So the question was:  Do you recall what you said to him

18  or what he said to you when you first made contact with him?

19      Answer:  I just asked them a little bit about their

20  marketing strategies and what they were offering.  It sounded

21  legitimate.

22      Do you recall telling us that?

23  A.   Yes.

24  Q.   And is that what you told Mr. Miley?

25  A.   Yes, I suppose.  I mean, I don't remember exactly what I

CLEMMER – CROSS – FITZPATRICK

1  would have said, but I would have passed that along, yes.

2  Q.   Okay.  And then did you follow up after that?

3  A.   Yes.

4  Q.   And I believe you were asked today about the creation of

5  the ad?

6  A.   Yes.

7  Q.   The first ad?

8  A.   Mm-hmm.

9  Q.   And you told us that Mr. Miley created that?

10 A.   Mm-hmm -- yes.

11 Q.   Do you remember saying otherwise five years ago?

12 A.   No.  But like I said, it's been awhile.

13 Q.   So as you sit here today, is your -- what was the basis

14 of your declaration that Mr. Miley made this first fax,

15 recollection?

16 A.   Just that he was the one that would give any instruction

17 for things to do.  Now, I know I helped him prepare something.

18 He asked for a layout and we worked together on some things,

19 but he was the one that would have initially decided how he

20 wanted it laid out.

21 Q.   Okay.  Throughout your testimony today, you have been

22 asked questions about would have, that used the term "would

23 have," and you just used the term "would have" in describing

24 your answers twice.

25 A.   Okay.

CLEMMER – CROSS – FITZPATRICK

1  Q.  When you say, "would have," you're not testifying from
2  your own memory of events that actually occurred, are you?
3  A.  No.
4  Q.  You're just saying you believe that because --
5  A.  The way things worked, this is what my recollection --
6  Q.  But you have no actual recollection that that's how
7  things worked in this case.
8  A.  Correct.
9  Q.  Is there a reason why you didn't tell us that earlier?
10 A.  No.
11 Q.  Do you recall when you were first asked this five years
12 ago, that you said you created the ad copy?
13      MR. COHEN:  Judge, I would ask, if he's referencing
14 prior testimony, I think we need to know where he's taking it
15 from.
16      MR. FITZPATRICK:  Sure, I'm about to do that.
17      THE COURT:  Very well.
18 BY MR. FITZPATRICK:
19 Q.  I'd ask you to read the question at Line 2 on Page 16 of
20 your deposition and your answer.
21 A.  Okay.  Do you want me to read it?
22 Q.  Do you recall being asked:  Did you or someone at the
23 company work up an ad copy that was provided to the fax
24 broadcaster?
25      Answer:  I believe we did, yes.

*United States District Court*
*Camden, New Jersey*

CLEMMER – CROSS – FITZPATRICK

1    Question:  Who did that?

2    Answer:  I probably did the initial and then would come

3  up with an initial layout or whatever.

4  A.  There again, it's a probably, so I didn't have full

5  recollection.

6  Q.  But you testified today that Mr. Miley did that, not you,

7  right?

8  A.  Yes.  You're right, I did.

9  Q.  There was no -- excuse me.

10    Just to be very clear, no one from David Randall ever

11  communicated with anybody from B2B or Maxi-Leads, whatever

12  they called themselves, except you?

13  A.  Correct.

14  Q.  Right?  By fax, e-mail and phone?

15  A.  Correct.

16  Q.  Now, you were also asked today about Exhibit 7.  Would

17  you look at that?

18  A.  Okay.  Yes.

19  Q.  That's a letter from you to Kevin Wilson of Maxi-Leads,

20  right?

21  A.  Yes.

22  Q.  A fax, I should say.  And this fax includes seven lines,

23  as counsel said, of ZIP codes, right?

24  A.  Yes, mm-hmm.

25  Q.  Okay.  And Mr. Cohen asked you who gave you those ZIP

CLEMMER – CROSS – FITZPATRICK

1   codes.

2        Do you recall that?

3   A.   Yes.

4   Q.   Do you recall answering to him and the jury that

5   Mr. Miley gave them to you?

6   A.   Yes.

7   Q.   Do you recall testifying to the contrary five years

8   before?

9   A.   No, I don't.  Sorry.

10  Q.   I'm going to ask you to read the question beginning at

11  Line 19 and then the answer and the question beginning at Line

12  22 and then the answer.

13       MR. COHEN:  Of what page, sir?

14       MR. FITZPATRICK:  Oh, I'm sorry.  48.

15       THE WITNESS:  I'm sorry, where should I start again?

16  BY MR. FITZPATRICK:

17  Q.   Question:  You wanted them sent to businesses within

18  these area codes, is that correct?

19       Answer:  Yes.

20       Do you remember giving that answer?

21  A.   Yes.

22  Q.   And when it says, "you wanted them sent," it was

23  referencing fax advertisements, correct?  You wanted them

24  sent?

25  A.   Yes, yes.

CLEMMER – CROSS – FITZPATRICK

1   Q.   And then it says:  Who provided you with the ZIP codes

2   that are listed on the top page of Exhibit 7?

3   A.   Okay.  And I –– at that time, I said I don't know.

4   Q.   At that time you said you don't know.

5   A.   Yeah.

6   Q.   You still don't know, do you?

7   A.   I guess I don't, if –– no.

8   Q.   You don't.

9   A.   No.

10  Q.   But you testified that Randy Miley gave them to you

11  earlier today, right?

12  A.   Am I allowed to clarify?  Yes, I mean, you're right, I

13  did.  My –– anything that I would have done was under the

14  instruction of Mr. Miley at the time that I worked there.

15  However, you're right, when it came to specific, I suppose I

16  don't remember him specifically giving me those numbers.

17  Q.   But you do agree that you did testify earlier today to

18  this jury that you did specifically remember and he gave them

19  to you at the exclusion of someone else, right?

20  A.   Yes.

21  Q.   Would you please take a look at Exhibit 13.

22  A.   Yes.

23  Q.   That's another exhibit you testified about earlier today,

24  correct?

25  A.   Okay.  Yes.

CLEMMER – CROSS – FITZPATRICK

1   Q.  That's not your handwriting at the bottom?

2   A.  Yes.

3   Q.  It is your handwriting?

4   A.  It is.

5   Q.  It is.  You did testify about that?

6   A.  I'm sure I did.

7   Q.  Okay.  And would you look at Page 2 of that same exhibit?

8   A.  Yes.

9   Q.  That's a map with some ZIP codes below it, correct?

10  A.  Correct.

11  Q.  That's not your handwriting, is it?

12  A.  The ZIP codes?

13  Q.  The handwritten portion.

14  A.  The handwritten numbers are mine.

15  Q.  The handwritten numbers at the bottom?

16  A.  Try  -- and it has all these ZIP code numbers.

17  Q.  You provided them?

18  A.  I wrote them down, yes.

19  Q.  Okay.  All right.  Thank you.

20      Now, along with these ads that you testified were

21  ordered from B2B, you sent all the payments, correct?

22  A.  I would have sent a copy of those checks, correct.

23  Q.  You sent payment to B2B via the checks, as you testified?

24  A.  Yes.

25  Q.  You were the person that sent them, right?

CLEMMER – CROSS – FITZPATRICK

1   A.   Yes.

2   Q.   And you testified about communications that you had with

3   Mr. Wilson about prices?

4   A.   Yes.

5   Q.   Right?  And you negotiated some prices down, right?

6   A.   Yes.

7   Q.   And you also included in these purchases, a price paid

8   for a quote unquote toll-free removal number, right?

9   A.   Yeah, there was wording in that, yes.  I don't know what

10  it was, but yes.

11  Q.   But you know you paid for it as well?

12  A.   Yes.

13  Q.   Okay.  Now, you then on several occasions communicated to

14  Mr. Wilson that he was to remove certain fax numbers from his

15  broadcast lists, right?

16  A.   Yes.

17  Q.   Would you look at Exhibit 12.

18  A.   Yes.

19  Q.   That's a fax from you to him of March 29th, '06, right?

20  A.   Yes.

21  Q.   And that fax is only about removal, right?

22  A.   Yes.

23  Q.   There's nothing else that's the subject of that fax?

24  A.   Correct.

25  Q.   Okay.  And you instruct him to remove three numbers.  Is

*United States District Court*
*Camden, New Jersey*

CLEMMER - CROSS - FITZPATRICK

1  that your handwriting?

2  A.   Yes.

3  Q.   And you said:  They obviously don't want to be bothered

4  and they are annoyed by the many faxes they receive from your

5  company.

6  A.   Yes.

7  Q.   And "annoyed" is underlined.  Was that your emphasis?

8  A.   Yes.

9  Q.   So that's something you did on your own?

10 A.   Yes.

11 Q.   Okay.  Then would you look at Exhibit 17.

12 A.   Okay.

13 Q.   That's another exhibit that you testified you recalled.

14 It's a fax from you --

15 A.   Yes.

16 Q.   -- to Mr. Wilson dated 4-12-06.

17 A.   Yes.

18 Q.   And at the bottom of that fax, it states:  You must

19 remove the following numbers from this list for Friday's fax,

20 and you list five numbers, right?

21 A.   Yes.

22 Q.   And "note" is all capitals and all bold, right?

23 A.   Yes.

24 Q.   And "remove" is all capitals and all bold?

25 A.   "Must remove," yes.

CLEMMER - CROSS - FITZPATRICK

1  Q.  You must remove.  You put that emphasis on there, didn't

2  you?

3  A.  I'm sure that was mine, yes.

4  Q.  So you earlier had testified about -- that at times when

5  you were writing to someone and you said, "I," you actually

6  meant "we."

7      Do you remember testifying about that?

8  A.  No, but okay.

9  Q.  Well, when you say "I" in these faxes --

10  A.  Oh, okay.

11  Q.  Do you mean yourself or do you mean somebody else?

12  A.  Generally, when I'm saying "we," it's Mr. Miley and I.

13  Q.  And if it's "I," is it you?

14  A.  If it's "I," as in what example?

15  Q.  I'm just asking you in the faxes about what you've

16  testified in your direct testimony.  Many of those faxes use

17  the term "I" and some use the term "we."  You testified that

18  when you said "we," you meant you and Mr. Miley, right?

19  A.  Mm-hmm, yes.

20  Q.  And when you said "I" and didn't say "we," what did you

21  mean?

22      MR. COHEN:  Judge, I would object.  The witness asked

23  for him to direct her to a specific example and she would

24  address what it said there.  I believe demanding the witness

25  to answer what it means across all the exhibits without

CLEMMER - CROSS - FITZPATRICK

1   focusing her in is improper.

2        THE COURT:  Well, if Ms. Clemmer understands the

3   question and can answer it, then she can.  If you need a

4   specific example, then say that.

5        THE WITNESS:  I guess I would like an example to be

6   able to clarify.

7        MR. FITZPATRICK:  I'll be happy to do that, Your

8   Honor.

9   BY MR. FITZPATRICK:

10  Q.  Let's take a look, for example, at Exhibit 27.

11  A.  Okay.

12  Q.  That uses the term "I."  Who were you referring to there?

13  A.  Our company, David Randall.

14  Q.  Your company?

15  A.  I have -- I had received numerous requests, so they came

16  into the company.

17  Q.  Okay.  Would you look at 25.  What does "I" mean there?

18  A.  "I left two messages for you this morning."

19      So that was me, a phone call.

20  Q.  So "I" can mean you or it can mean the company?

21  A.  Correct.

22  Q.  And "we" can mean you and Mr. Miley or you and somebody

23  else?  How are we to determine what you're talking about in

24  these faxes when you're using the terms "I" and "we?"  That's

25  what I'm asking you today.

CLEMMER — CROSS — FITZPATRICK

1  A.   Well, they can mean different things in different

2  situations, I suppose.

3  Q.   Would you take a look again at Exhibit 19?

4  A.   Okay.

5  Q.   This is a fax from you to Kevin Wilson dated April 12th,

6  2006?

7  A.   Yes.

8  Q.   Would you look at the bottom, it has three asterisks and

9  it's all capitals and all bold.

10  A.   Mm-hmm.

11  Q.   Did you type this fax?

12  A.   Yes.

13  Q.   And that says "you must remove" and "must remove" is

14  underlined, right?

15  A.   Yes.

16  Q.   "The following numbers from the list for this campaign,"

17  and you list five numbers, right?

18  A.   Yes.

19  Q.   You emphatically were telling Mr. Wilson at that time to

20  remove fax numbers --

21  A.   Yes.

22  Q.   -- right?  Would you look at Exhibit 12, please, the last

23  page of that attachment.  Well, I'll show you the exhibit

24  first.

25       Exhibit 12 is another letter from you to Kevin Wilson

*United States District Court*
*Camden, New Jersey*

CLEMMER – CROSS – FITZPATRICK

1 of B2B, correct?

2 A.   Yes.

3 Q.   That's the one where you underlined the word "annoyed."

4 A.   Yes.

5 Q.   And you sent him several attachments.

6 A.   Yes.

7 Q.   And one of the attachments was a handwritten note about

8 which you testified earlier, that says:  "Remove from fax

9 list," puts two numbers and it says:  "Or we will contact the

10 FCC," right?

11 A.   Yes.

12 Q.   So you had received this and then you sent it to Kevin

13 Wilson?

14 A.   Yes.

15 Q.   Emphatically telling him to remove those numbers.

16 A.   Yes.

17 Q.   What was the FCC?

18 A.   I don't know what that stands for.  I've heard of it,

19 but...

20 Q.   What was your understanding of that communication when

21 you forwarded it to Mr. Wilson?

22 A.   That he needed to remove those numbers.

23 Q.   Because why?

24 A.   Because it seemed like he was doing something that was

25 not proper.  If somebody asked to be removed, that they should

*United States District Court*
*Camden, New Jersey*

CLEMMER − CROSS − FITZPATRICK

1  be removed.

2  Q.   And at that point, did you become fearful that you had

3  done something wrong that would -- for which you would be

4  charged with a violation of law?

5  A.   No.

6  Q.   Now, you sent another fax notice to Mr. Wilson in which

7  another -- you told him to remove and another recipient said

8  that it's a -- I believe it's a violation of the law, right?

9  A.   Yes.

10  Q.   And at that point, did you become aware that -- that any

11  of the activities with B2B could be a violation of the law?

12  A.   No.

13  Q.   And did you become fearful that you might become

14  embroiled in such a charge?

15  A.   No.

16  Q.   Then why did you emphasize to Mr. Wilson that he must

17  remove?  Why did you increasingly bold, underlined, bold,

18  underlined, in your communications with him?

19  A.   I was just more concerned about them being annoyed, not

20  so much that I would be in trouble for something that they

21  weren't doing.  I'm just trying to pass along the annoyance of

22  the person to say we don't want to be included on your fax

23  numbers, so please remove us from your list.

24  Q.   And you testified earlier that Mr. Miley -- that you had

25  communicated your receipt of these messages from people who

CLEMMER - CROSS - FITZPATRICK

1  wanted to be removed --

2  A.  Mm-hmm.

3  Q.  -- with Mr. Miley, right?

4  A.  Yes.

5  Q.  On every occasion you told us?

6  A.  Yes.

7  Q.  Okay.  And so let's talk about the first communication on

8  that -- the attachments on Exhibit 12.

9  A.  On this one?  Okay.

10  Q.  What did you communicate to Mr. Miley about your receipt

11  of those communications?

12  A.  I would have just shown him what we received.

13  Q.  Okay.  I'd like to ask you what you did, not what you

14  would have.  Do you have any recollection of actually having

15  discussed that with him?

16  A.  Do I have a recollection?  No.

17  Q.  Okay.  Do you have a recollection of his telling you

18  anything in response?

19  A.  No.

20  Q.  You do know that if you had such a conversation and he

21  did respond, he didn't tell you to do other than you did

22  correctly -- correct, which was to notify the fax broadcast

23  company, right?

24  A.  Correct.

25  Q.  But again, this is just would have.  This is just

*United States District Court*
*Camden, New Jersey*

CLEMMER — CROSS — FITZPATRICK

1  speculation sitting here today.  You have no independent

2  recollection of this.

3  A.  It was ten years ago.

4  Q.  But you didn't tell us that in your direct testimony,

5  right?

6  A.  Right.

7  Q.  Would you look at Exhibit No. 24, please.

8  A.  Okay.

9  Q.  This is your e-mail to -- I'm sorry, your fax to Kevin

10 Wilson of May 15th, 2008, correct?

11 A.  Yes.

12 Q.  Now, which fax broadcast -- these activities have been

13 described as four fax broadcasts, right?

14 A.  Correct.

15 Q.  Which one was this referring to?

16 A.  This one doesn't specifically say.  I would just have to

17 go by the dates and figure it out.

18 Q.  Well, what's your recollection?

19 A.  Maybe would have been the third or fourth one.

20 Q.  Do you know which?

21 A.  Not without looking back at the dates specifically.

22 Q.  Okay.  But in that communication, you conveyed your

23 knowledge to Mr. -- or your belief to Mr. Wilson that B2B had

24 made a big mistake, right?

25 A.  It appears so, yes.

CLEMMER – CROSS – FITZPATRICK

1   Q.   In fact, you're telling him, you didn't do anything that

2   I ordered, right?

3   A.   It looks like they went to New Jersey and the request had

4   been for Pennsylvania.

5   Q.   The request that you had given him?

6   A.   That I had given him on behalf of Mr. Miley.

7   Q.   Understood.  But on that occasion for all of those

8   specific faxes that are encompassed by whether it was three or

9   four, you don't know -- excuse me -- they didn't go as you

10  instructed.

11  A.   Correct.

12  Q.   So they weren't authorized by you or Mr. Miley or anybody

13  at David Randall, right?

14  A.   Well, what was actually sent was not, correct.

15  Q.   Okay.  And then you asked to have them resent, right?

16  A.   Yes.

17  Q.   You don't know that they ever were, do you?

18  A.   No.

19  Q.   Did you tell us that in your direct testimony?

20        MR. COHEN:  Judge, she wasn't asked that.

21  BY MR. FITZPATRICK:

22  Q.   Is there a reason why you didn't tell us that, that you

23  don't know that they went through?

24        MR. COHEN:  Judge, I object.  Suggesting a witness

25  has done something wrong.

*United States District Court*
*Camden, New Jersey*

CLEMMER – CROSS – FITZPATRICK

1        MR. FITZPATRICK:  I'm not trying to suggest that,

2   Your Honor.  I'm asking her about her knowledge.

3        THE COURT:  Okay.  You can ask her if she testified

4   to the contrary.  Generally witnesses are not permitted to

5   volunteer extra information.  If she was asked and said

6   something contrary, you can explore that or you can ask her

7   now what the facts are.

8        I'll sustain the objection.

9   BY MR. FITZPATRICK:

10  Q.   So standing here today, you do know that that referenced

11  fax ad request was not carried out, right?

12  A.   Correct.

13  Q.   And you don't know if it ever was carried out.

14  A.   Correct.

15  Q.   I'm going to show you Exhibit 28 about which you

16  testified to.  Do you remember that fax marketing leads?

17  A.   Yes.

18  Q.   And there are some attached pages with handwriting on

19  them.

20  A.   Yes.

21  Q.   Whose handwriting is that?

22  A.   Mine.

23  Q.   And whose handwriting is on the third page, in-house lead

24  form?

25  A.   That's the one they took out.  I'm not sure.

CLEMMER – CROSS – FITZPATRICK

1  Q.  Oh, that's the one -- I'm sorry.

2  A.  Yeah.

3  Q.  Then that's not -- no, that's not the one that was taken

4  out.

5  A.  Oh.

6  Q.  This is Bates No. 72.  So you're really not sure --

7  A.  I'm sorry.

8  Q.  -- who that is?

9  A.  "Lead given to Don," so I think he was the one that

10  filled it out.

11       MR. FITZPATRICK:  72 is in mine.

12       MR. COHEN:  I mean, I just pulled it out and I told

13  you I was removing it.

14       MR. FITZPATRICK:  Oh, I apologize, that's my error,

15  sir, there's two Bates numbers on here.  I was looking at the

16  bottom.  Okay.  Thank you.

17       THE COURT:  Okay.

18  BY MR. FITZPATRICK:

19  Q.  On any of the faxes that you generated and testified

20  about today that you sent to B2B, faxes and e-mails, Raymond

21  Miley is not copied on any of them, is he?

22  A.  I don't know about e-mails.  I don't remember ever

23  copying him on them.  Faxes would have just been the fax sent.

24  Q.  Well, again, I'm not asking you would have been.  I'm

25  asking you about the exhibits about which you testified here

CLEMMER – REDIRECT – COHEN

1    today.

2         Can you tell the jury that Mr. Miley was copied on any

3    of those faxes?

4    A.   He was not copied, but he would have seen them.

5    Q.   Again, would have, but you don't know.

6    A.   Correct.

7         MR. FITZPATRICK:  May I just take a moment, Your

8    Honor?

9         THE COURT:  Yes.

10        MR. FITZPATRICK:  Thank you, sir.

11        That's all I have, sir.  Thank you.

12        THE COURT:  Okay.  Thank you.  Any redirect?

13        MR. COHEN:  Briefly, Judge.

14   (REDIRECT EXAMINATION OF APRIL CLEMMER BY MR. COHEN:)

15   Q.   Ma'am, I just wanted to cover a couple things that you

16   just discussed with Mr. Fitzpatrick.

17        Do you recall in his questioning at the beginning, he

18   talked about reviewing documents with plaintiff's counsel.

19   Just so you know, we're plaintiff's counsel.  Do you recall

20   that?

21   A.   Yes.

22   Q.   Have you ever sat down with me or Mr. Lewis or any of the

23   attorneys representing the plaintiffs in class in this case?

24   A.   I have not sat down with you, no.  I was just provided

25   the information that I had given before.

*United States District Court*
*Camden, New Jersey*

CLEMMER - REDIRECT - COHEN

1  Q.   We sent it to you?

2  A.   Sent it to me.

3  Q.   Did we ever have a conversation with you over the phone

4  to get ready for your testimony, where we pow-wowed about

5  specifics and details and strategy?

6  A.   No, you just gave me instruction of where to be and so

7  forth.

8  Q.   When to get here.

9  A.   When to get here.

10 Q.   Mr. Fitzpatrick drew your attention to some prior

11 testimony you gave in your deposition five years ago, focusing

12 on the question of the initiating fax from B2B that started

13 this whole ball rolling, who got it, who brought it to whom

14 and he had you read page --

15      MR. COHEN:  May I approach the witness, Judge?

16      THE COURT:  Yes.

17 BY MR. COHEN:

18 Q.   He had you read at Page 9 and he specified starting at

19 Line 8, and he said -- end at 18.  So that would be:

20      Question:  How did you become aware of the fax

21 advertising while you were employed at David Randall?

22      Answer:  We got a fax one -- got a fax advertisement

23 saying that they would do a marketing.  It was a marketing

24 firm that would help you with whatever your business was.

25      Question:  So you received some type of solicitation by

*United States District Court*
*Camden, New Jersey*

CLEMMER – REDIRECT – COHEN

1  an ad that was faxed over the company fax machine?

2       Answer:  I believe so, yes.

3       Did I read that correctly?

4  A.  Yes.

5  Q.  And that's what Mr. Fitzpatrick asked you to read

6  earlier.

7       I'd like to ask you to read, starting at the same page,

8  Page 9 at Line 22 continuing over to the top of Page 10.

9       Question:  Is that something you would have received or

10 Mr. Miley received or someone else?

11      Answer:  The company would have received it.  I believe

12 Mr. Miley brought it to my attention.

13      Did I read that correctly?

14 A.  Yes.

15 Q.  Was that the answer you gave five years ago about the

16 question, who actually got that first fax and who brought it

17 to whose attention?

18 A.  That was my recollection at that time, yes.

19 Q.  And is that consistent with what you testified here

20 today?

21 A.  Yes.

22 Q.  This issue of the ZIP codes, this issue of a lot of

23 things, but let's start with the ZIP codes, in terms of what

24 you specifically remember and what you, quote, would have done

25 or what would have happened.

CLEMMER - REDIRECT - COHEN

1        Is there anybody else in David Randall Associates that

2  you went to to get the ZIP code information that was included

3  in your communications with B2B?

4  A.   No.

5  Q.   Did you pull out all that ZIP code information yourself,

6  make your own decision about what the scope of this fax --

7  these fax broadcasts would be and instruct B2B to follow that

8  ZIP code limitation without talking to Mr. Miley?

9  A.   No.

10 Q.   Did Mr. Miley know the ZIP codes, the volumes, the dates

11 of the broadcasts, all of them?

12 A.   Yes.

13 Q.   Did you make all these decisions and he just

14 rubber-stamped them or was he the one giving you the

15 instructions?

16        MR. FITZPATRICK:  Your Honor, may we have a

17 specification of what we're talking about here?  Are we still

18 talking about ZIP codes or some other "would have"?

19        MR. COHEN:  I'll be more clear.

20        THE COURT:  Okay.

21 BY MR. COHEN:

22 Q.   The details of each of the broadcasts, the geographic

23 scope, the number of them, the date that they would issue, was

24 that something -- were those the things that you decided upon

25 and he merely agreed to, or was that what he decided upon and

CLEMMER - REDIRECT - COHEN

1  you followed his instructions?

2  A.   Those had been his decisions and I followed through.

3  Q.   There was something I wasn't sure about and then I

4  thought I got the point.

5       On these specific faxes that are exhibits that

6  Mr. Fitzpatrick went through with you where you were alerting

7  B2B to the fact that you had received complaints, David

8  Randall had received complaints and David Randall wanted these

9  numbers removed, there was a point where he was saying, was

10  that you, you specifically, and I think you said yes, and I

11  wasn't sure.

12       When you said yes, that was me, were you talking about

13  the emphasis, the underlining, the capitalization, or were you

14  talking about the decision to notify B2B to remove them was

15  just your decision alone?

16  A.   All the emphasis was mine, yeah.

17  Q.   The decision to notify B2B that you had received that --

18  that David Randall had received these complaints, these

19  requests to have the number removed and that B2B should remove

20  them, did that decision originate with you or did it originate

21  with Mr. Miley?

22  A.   That, I don't know specifically.  Sorry.

23  Q.   Fair enough, and I appreciate that.

24       Wherever that decision originated, when you

25  communicated to B2B on behalf of David Randall Associates,

CLEMMER - REDIRECT - COHEN

1  we've received these complaints, removed these numbers, did

2  Mr. Miley know about it?

3  A.  Yes.

4  Q.  I think we've just got two other things to cover real

5  quick.  Mr. Fitzpatrick asked you some questions about the

6  fourth broadcast not going to the people that --

7           MR. COHEN:  I'm sorry, what's the objection?

8           MR. FITZPATRICK:  The objection is the witness was

9  unable to tell us whether it was the third or the fourth

10  broadcast.  I did not ask about -- I asked her which it was.

11  I didn't say which it was and she didn't say which it was.

12  Mr. Cohen is suggesting a specific broadcast.

13           MR. COHEN:  I can rephrase it.

14           THE COURT:  All right.  Please do.

15  BY MR. COHEN:

16  Q.  Mr. Fitzpatrick was asking you about one of the

17  broadcasts where, apparently, based on what the exhibit

18  showed, you were communicating to B2B that apparently the

19  broadcast went to New Jersey instead of Pennsylvania when the

20  instructions had been to go to Pennsylvania.

21       Do you recall that?

22  A.  Yes.

23  Q.  Do you recall one of the exhibits we put up there

24  earlier, we covered it, was that the -- that broadcast was to

25  go to the same targets as the first broadcast?

*United States District Court*
*Camden, New Jersey*

CLEMMER - REDIRECT - COHEN

1    A.   Yes.

2    Q.   So to the extent the first broadcast was to recipients

3    who didn't want it and it was TCPA violations, if B2B had

4    followed your instructions or Mr. Miley's instructions on the

5    broadcast that went to New Jersey instead of Pennsylvania,

6    would it have changed the outcome?

7              MR. FITZPATRICK:  Objection.

8              THE COURT:  Sustained.  It would be a hypothetical

9    question.

10             MR. COHEN:  I appreciate that, Judge.

11   BY MR. COHEN:

12   Q.   And here's my last question.  There was questions by me

13   because we're talking about something ten years ago about what

14   would have done -- what you would have done, what would have

15   happened and then Mr. Fitzpatrick brought out some of your

16   testimony was what would have happened, what you would have

17   done.

18        When you worked at David Randall Associates, were there

19   procedures, were there routines that were followed?

20   A.   Yes.

21   Q.   Were they standard operating practices about how certain

22   things would be handled to ensure uniformity and smooth flow?

23   A.   Yes.

24   Q.   Did that include that Mr. Miley saw outgoing faxes?

25   A.   Yes.

CLEMMER - REDIRECT - COHEN

1  Q.  In following the routine, the custom, the habit that was

2  standard daily operating practice for you at David Randall

3  Associates during the period of time you were there in March,

4  April and May of 2006, would you have done any of these things

5  with B2B, sent them the communications you did, provided them

6  the information you did and had these broadcast issues without

7  Mr. Miley specifically knowing about it and authorizing it?

8       MR. FITZPATRICK:  Objection, Your Honor.

9       THE COURT:  Sustained.  The question again should be

10  along the lines of, did you do any of these things without

11  Mr. Miley's authorization.

12       MR. FITZPATRICK:  And I have an additional objection,

13  sir.  This is becoming argument in the form of repeated

14  questions, would, would have, et cetera.

15       THE COURT:  Let me see counsel at sidebar.

16   (SIDEBAR AS FOLLOWS:)

17       THE COURT:  As to the latter point, I don't think

18  it's argumentative.  It's important questioning, but as to the

19  other point, I may change my ruling, but I want to hear from

20  both sides.  You've attempted to establish a pattern and

21  practice of their normal operating procedures.

22       I think you asked a question about whether they had a

23  normal procedure about who sees faxes, outgoing faxes, does

24  Mr. Miley see outgoing faxes.  So it's okay to ask that

25  question.

CLEMMER – REDIRECT – COHEN

1    The question that was objected to was along the lines

2    of, would you have ever done this without following the right

3    procedure.  That's not exactly a question about what the

4    procedures were.  It would have to be reversed, did you follow

5    the right procedure in doing this in all circumstances.  As

6    long as you've laid the foundation of there having an office

7    procedure, it's proper to ask her, did you always follow that

8    procedure or was there ever a time when you did not follow the

9    procedure.  Either of those questions would work.  But would

10   you have always followed the procedure, I still have qualms

11   about.

12          MR. COHEN:  And Judge, I appreciate that and I think

13   I didn't lay a sufficient foundation on following procedure

14   and I can do that.  But I was, as I think the Court can see,

15   trying to go to the routine, custom and habit routine under

16   the Federal Rules of Evidence.

17          THE COURT:  Right, right.

18          MR. COHEN:  And I think I may not have laid a

19   sufficient predicate for that, but I think I can still do

20   that.

21          THE COURT:  It's still your witness and, you know,

22   you can continue your questioning along the lines of the

23   routine, custom and habit.

24          That only can be pushed so far, though, because she

25   said that they never had a fax advertising campaign before or

*United States District Court*
*Camden, New Jersey*

CLEMMER - REDIRECT - COHEN

1   after this.  So I don't know what the routines for a campaign

2   would be, but the routines for how pieces of paper move

3   through the office, who saw them, who approved them, I think

4   all of that is in play.  Is there anything else?

5          MR. FITZPATRICK:  No, sir.

6          THE COURT:  Okay.

7          MR. FITZPATRICK:  I just -- may I just add one other

8   thing?

9          THE COURT:  Yes.

10         MR. FITZPATRICK:  I don't want to have to be seen as

11  jumping up and making obvious objections.  I don't want to

12  hear him ask again "would have."  That is inappropriate in any

13  structured question to this witness, I believe.  "Would you

14  have done this" is not a proper question.

15         MR. COHEN:  Well, first of all, when he spent several

16  questions dealing with the witness about would have,

17  criticizing her for it, I can bring out what she meant by it

18  and let her explain herself, and second of all, when you are

19  going down the routine, custom and habit route of laying an

20  evidentiary foundation to speak to what did or didn't happen,

21  that's actually the way you do it, you establish what the

22  routine, custom and habit is and you ask, would you follow

23  that.

24         THE COURT:  No, I agree, and I think what was missing

25  is the first "would have" question is what is the

*United States District Court*
*Camden, New Jersey*

CLEMMER – REDIRECT – COHEN

1   establishment of the routine, custom and habit.

2          MR. COHEN:  I agree.

3          THE COURT:  So you have an opportunity to lay that

4   foundation now.

5          MR. FITZPATRICK:  Thank you, sir.

6          (END OF SIDEBAR.)

7          THE COURT:  Okay.  I've sustained the objection to

8   the present question, but I'm permitting it to be rephrased by

9   laying a proper foundation for the custom and habit.

10          MR. COHEN:  Thank you, Judge.

11  BY MR. COHEN:

12  Q.   In the routine day-to-day standard operating procedure at

13  David Randall Associates while you were there performing the

14  function and the job with the responsibilities you did and

15  had, were there some things you would take it upon yourself to

16  do independently, unilaterally, without needing to notify

17  somebody, but other things that you would not do on your own

18  and that you would make sure Mr. Miley knew that he was

19  notified and that he made the decision?

20  A.   Yes.

21  Q.   With regard to these fax broadcasts, all of your

22  interaction with B2B, all of what you sent them that led to

23  the broadcasts, does that fall within the category that as a

24  matter of your routine, custom and habit, that's the kind of

25  thing you do on your own, or is that the kind of thing you

CLEMMER – RECROSS – FITZPATRICK

1  would only do with Mr. Miley's full knowledge, instruction and

2  approval?

3  A.   With Mr. Miley, yes.

4  Q.   And is that what you did here?

5  A.   Yes.

6        MR. COHEN:  Thank you, ma'am.

7        THE COURT:  Any recross within that scope?

8  (RECROSS EXAMINATION OF APRIL CLEMMER BY MR. FITZPATRICK:)

9  Q.   Are you now testifying that every fax that was generated

10  at David Randall was copied to Mr. Miley?

11  A.   I think we already talked -- I don't know that -- what

12  you mean by "copied to Mr. Miley."

13  Q.   I mean only what Mr. Cohen just asked you and your

14  response.  I understood your response to --

15  A.   Regarding the fact --

16  Q.   One moment.

17  A.   Sorry.

18  Q.   The term he used was, was Mr. Miley included in outgoing

19  faxes, in all outgoing faxes, and you answered yes.

20        Do you remember that?

21  A.   Did he ask that?

22  Q.   Do you remember just being asked that?

23  A.   He just asked if anything regarding the faxing would have

24  been with the knowledge of Mr. Miley and I said yes.

25  Q.   No.  In an earlier question, this is what I'm asking you

CLEMMER – RECROSS – FITZPATRICK

1   about, Mr. Cohen asked you whether it was the custom that all

2   outgoing faxes went to Mr. Miley to be seen by him, and you

3   answered yes.

4          MR. COHEN:  And Judge, I object, I don't believe

5   that's the phrasing of my question and it would make a

6   difference but...

7          THE COURT:  Well, I don't recall.  The witness may

8   answer.

9   BY MR. FITZPATRICK:

10  Q.   Is it your testimony today, just so we're perfectly clear

11  before you leave here --

12  A.   Mm-hmm.

13  Q.   -- is it now your testimony that Mr. Miley, in the

14  ordinary course of business when you worked there, received

15  and reviewed copies of all of your outgoing faxes?

16  A.   No.  He would not have seen everything.

17         MR. FITZPATRICK:  Thank you.  Nothing further, sir.

18         THE COURT:  Anything else?

19         MR. COHEN:  No, Your Honor.

20         THE COURT:  All right.  I have -- I have one

21  clarifying question and before I ask it, let me say two

22  things.

23         Under the rules of evidence, the jury should know that

24  a judge can ask clarifying questions along the way and

25  sometimes I do and sometimes I don't.  And also the attorneys

1   should know that if the judge ever asks a question that you

2   feel is objectionable, to voice the objection and we will go

3   to sidebar right away, or to raise the objection at the first

4   available moment after that.

5           And the question is this.  Could you go back to

6   Exhibit 27 in the book?

7               THE WITNESS:  Yes.

8               THE COURT:  What were your normal work hours when you

9   were working for David Randall?

10              THE WITNESS:  8 to 4:30.

11              THE COURT:  And on Exhibit 27, do you see your fax

12   stamp at the top of the page?

13              THE WITNESS:  Yes.

14              THE COURT:  And do you see the time that you say you

15   wrote there?

16              THE WITNESS:  Yep.  It says a.m.  That should have

17   been p.m., I'm sure.

18              THE COURT:  So it's not 3:25 a.m.?

19              THE WITNESS:  I'm sure it should have been p.m.

20              THE COURT:  Did you ever work in the middle of the

21   night like that?

22              THE WITNESS:  No.

23              THE COURT:  All right.  I was just curious.

24          Now, I don't have any other questions.  First, do the

25   attorneys have any follow-up questions raised by mine?

1              MR. FITZPATRICK:  No, sir.

2              MR. COHEN:  No, Your Honor.

3              THE COURT:  And now is there any member of the jury

4    that has a question for Ms. Clemmer?  If so, raise your hand

5    and I'll give you a minute to write it down.  Any questions?

6    Nope?

7         Okay, well, thank you, Ms. Clemmer, you're done.  Thank

8    you.  You may step down.

9              THE WITNESS:  Am I done to leave, as well, or --

10             THE COURT:  Yes.

11             MR. COHEN:  We would ask that she be released from

12   the subpoena unless Mr. Fitzpatrick has an expectation of

13   possibly wanting to call her back.

14             MR. FITZPATRICK:  I don't envision needing her back.

15             THE COURT:  All right.  Then you are excused and

16   thank you for responding to your subpoena.

17        Is this a good time for a break?

18             MR. FITZPATRICK:  Yes.

19             MR. COHEN:  Yes.

20             THE COURT:  Let's take our mid-afternoon break,

21   ladies and gentlemen.  We will resume in about ten minutes.

22             THE DEPUTY CLERK:  All rise.

23             (JURY EXITS 3:17 p.m.)

24             (RECESS TAKEN; 3:17 p.m.)

25             THE DEPUTY CLERK:  All rise.

1          (OPEN COURT; 3:32 p.m.)

2          THE COURT:  Okay.  Be seated, please.  Okay.  My

3    deputy clerk tells me that plaintiff is prepared to rest.

4          MR. COHEN:  That is correct, Judge.

5          THE COURT:  And so you will be able to do that in a

6    moment in front of the jury, but if you're going to rest and

7    if there's going to be a motion at the close of plaintiff's

8    case, then I should probably hear that out of the jury's

9    presence and before we bring them in.  Is that acceptable to

10   both sides?

11         MR. COHEN:  It is, Judge.

12         MR. FITZPATRICK:  Before they rest?

13         THE COURT:  No, no.

14         MR. FITZPATRICK:  Oh, yeah, yeah.  Sure, it has to be

15   heard outside their presence.

16         THE COURT:  Okay.  But rather than my bringing the

17   jury in, just so that they hear the words "I rest," that the

18   record will reflect that the plaintiff is resting now, no

19   matter what happens in the Rule 50 motion.

20         Is that acceptable or do you want to see the jury's

21   faces?

22         MR. COHEN:  Judge, what I would propose, as long as

23   when the jury comes in, I can do the show, for lack of a

24   better word of standing up and saying "plaintiff rests," I

25   will state now for the record, to make all of Mr.

*United States District Court*
*Camden, New Jersey*

1   Fitzpatrick's procedural concerns nonexistent, plaintiff

2   rests.

3          THE COURT:  Okay.  Very well.  Then the record

4   reflects plaintiff has rested and Mr. Fitzpatrick, is there a

5   motion?

6          MR. FITZPATRICK:  There is, Your Honor.  I have a

7   motion for directed verdict.

8          THE COURT:  And the basis?

9          MR. FITZPATRICK:  The basis is that the evidence the

10  plaintiffs presented cannot possibly meet the requirements of

11  proof of the elements required by the law, in particular, the

12  claim of Mr. Miley's active material involvement.  This

13  plaintiff's witness, extraordinarily, on cross-examination

14  admitted that none of what she testified about on direct exam

15  was -- did she have any personal knowledge of that and she was

16  making suppositions throughout that Mr. Miley, quote unquote

17  would have done this, I would have done this, I would have

18  done that, this would have been this, this would have been

19  that, without any personal recollection at all.

20         And this jury -- to permit this jury to consider that

21  as -- in terms of determining a preponderance of the evidence,

22  it doesn't even meet the threshold test.  It is completely,

23  completely abjectly suspect by that witness's own admission.

24  And there's no -- no bounds -- no grounds for submitting it to

25  the jury, and it's not -- the claim -- the picture that the

1  plaintiff's counsel presents through this witness's direct

2  testimony is not bolstered by her review of the faxes that she

3  asserted that she recognized and were accurate at the time

4  because there's not a single fax in there, as she admitted

5  that she knows was ever sent to Mr. Miley.

6      The only two people that have knowledge about the

7  circumstances of this case are Randy Miley and April Clemmer

8  and she does not have a sufficient basis for sending the case

9  to the jury, therefore, I move for directed verdict on behalf

10 of the defendant David -- I'm sorry, Raymond Miley, III.

11      THE COURT:  All right.  Thank you.  Mr. Cohen?

12      MR. COHEN:  Yes, Judge, there are several problems

13 with Mr. Fitzpatrick's argument.  The first is that he did a

14 nice job on a point-by-point basis of attempting to undercut

15 the credibility of her direct testimony about what Mr. Miley's

16 knowledge, participation, authorization and involvement was.

17      If we started from the premise that on each point he

18 challenged her, that he was so effective he completely negated

19 the probative value of her direct testimony on that point, we

20 would still be dealing with the situation where he did not

21 point-by-point negate all of her direct testimony about her

22 interaction with Mr. Miley and Mr. Miley's involvement.

23      He took her to task on specific things and on specific

24 things, he got her to admit that as to that specific thing,

25 she did not specifically recall.

1        If he wanted to go through with her and try to get her

2   to negate every single thing she said on direct, we would be

3   dealing with something a little different.  But he didn't, so

4   from the starting point, he only took away at all from a

5   portion, a fraction of her total direct testimony, and he

6   wants it to seem as if it deflated the whole ship.  It didn't.

7        Beyond that, whatever he did, did not negate the

8   probative value of her testimony on direct as a matter of law.

9   It's not as if somebody says, A is true and then on cross, you

10  get them to admit something that's weaker than that and their

11  direct testimony ceases to be probative at all.  That's not

12  the law.

13       But then finally, on everything that he got her to

14  admit, she did not specifically recall, on redirect, I got her

15  to testify to her routine, custom, practice and habit at David

16  Randall Associates, and in particular, that there are things

17  she did on her own without seeking input and approval and

18  there are things she didn't do, and that her involvement

19  relative to B2B and the fax broadcasting was not the kind of

20  thing she did unilaterally, and she did have knowledge,

21  approval and authorization from Mr. Miley for all of it.

22       So whatever the effect of Mr. Fitzpatrick's

23  cross-examination, which isn't nearly as substantial as he

24  thinks it was, it was completely mooted by the redirect, which

25  reestablished the submissibility of every aspect of her prior

1    testimony.  Thank you, Judge.

2            THE COURT:  All right.  Thank you.

3            I'm going to deny the motion under Rule 50 and permit

4    the case to go forward.  The witness had, in my view,

5    sufficient recollection that she is a competent witness.  Were

6    I to strike all of her testimony, then there would be

7    literally no evidence.  But her testimony is for the jury to

8    -- to sort out.  She testified as to her office custom, habit

9    and practice, and generally, the steps that she followed with

10   Mr. Miley.

11           She testified with some certainty about Mr. Miley's

12   knowledge.  On some details, she didn't recall or she admitted

13   on cross that she didn't specifically recall whether certain

14   ideas came from Mr. Miley or came from her, didn't recall any

15   specific conversations where Mr. Miley said certain words

16   verbatim.

17           But overall, the jury is free to find from this

18   evidence that she acted at all times at Mr. Miley's direction,

19   that the fax campaign was his idea, that he had knowledge of

20   what was being set up, that he had knowledge of what was in

21   the ads and of the numbers of fax transmissions that were

22   being authorized in each of the transmittals, that she

23   testified that only he could approve the expenditure of the

24   funds that were used to pay, and that he approved of each of

25   the four.

1   And so I'm unable to say that a reasonable jury could

2 never find a legally sufficient basis to find for the

3 plaintiff on these issues.  The jury will have to sort through

4 this witness's testimony as any other, but certainly, she's

5 not a witness who, for instance, has amnesia about everything

6 that she testified about, where I would have a duty to

7 instruct the jury to disregard her testimony or that she's

8 simply making it up.

9   And also, there were instances where -- when

10 plaintiff's counsel showed her her deposition from five years

11 ago, that it actually was consistent, not inconsistent with

12 what she testified to before this jury today.

13   There were inconsistencies and they were brought out on

14 cross-examination, but under Rule 50(a)(1), I'm going to deny

15 the motion for judgment as a matter of law and I'll permit the

16 case to go forward.

17   MR. FITZPATRICK:  I have an additional motion, Your

18 Honor.

19   THE COURT:  Yes.

20   MR. FITZPATRICK:  A motion for judgment as a matter

21 of law with regard to the fourth fax broadcast campaign, which

22 is alleged in this case.  The plaintiff's only witness

23 admitted that, A, the faxes that were sent in that fourth

24 campaign, she didn't use fourth, she couldn't say third or

25 fourth, but we know from the dates, as she said, we can tell

*United States District Court*
*Camden, New Jersey*

1  from the dates that it was the fourth, and the records that

2  are her own faxes and the other records that the plaintiff

3  submitted confirm that B2B did not carry out any instructions

4  that were given by Randy Miley or attributable -- or Raymond

5  Miley were attributable to Mr. Miley at all in that -- in the

6  transmissions that were -- that have been considered in this

7  case as the fourth transmissions.

8      They were erroneously sent and she complained about it

9  and she requested that they be resent, but she admitted

10  unequivocally that she had no confirmation that they were ever

11  resent.  And, in fact, there's nothing in this record at all

12  that indicates that those faxes -- that the fourth tranche

13  that's alleged to have been sent with Mr. Miley's

14  authorization or participation or whatever they want to call

15  it, that didn't happen.

16      So we -- we're entitled to a judgment as a matter of

17  law as to that claim.

18          THE COURT:  Was the fourth one the one that was

19  supposed to be the same as the first one?

20          MR. COHEN:  Yes.

21          THE COURT:  And the first one, did that include any

22  New Jersey faxes or was it all Pennsylvania?

23          MR. COHEN:  I believe it was all Pennsylvania.  I'm

24  not positive.  I'll have to check.

25          MR. FITZPATRICK:  And I don't want to go on anybody's

*United States District Court*
*Camden, New Jersey*

1  belief, Your Honor.

2       THE COURT:  Let's take a look at the documents for

3  the first one.  Okay.

4       I'm looking at P-7, the list of ZIP codes.  I can take

5  judicial notice they are all Pennsylvania ZIP codes.  Does

6  everyone agree?

7       MR. FITZPATRICK:  Yes, Your Honor.

8       THE COURT:  All New Jersey ZIP codes start with 0, 08

9  or 07, and all of these start with 18 or 19.  So if this

10 March 24th, '08 list of ZIP codes was the first broadcast,

11 then they were all Pennsylvania.

12      If we know that the fourth broadcast had at least some

13 sent to New Jersey, does that mean that the entire fourth

14 broadcast should be disregarded?

15      Is there any circumstantial evidence that some were

16 sent to New Jersey and some to Pennsylvania, for instance?

17      MR. FITZPATRICK:  No.  They all must be disregarded

18 in our view because we know that the instructions, which are

19 the core allegation of this Complaint, we know they were not

20 followed.  They were not followed.  Wherever faxes may have

21 been sent in that fourth campaign, she affirmed and confirmed

22 that they were not sent in accordance with the instructions

23 that she gave to B2B.  She complained about it and she asked

24 for a renewed tranche and there's no evidence before this

25 Court anywhere in the record and none can be surmised that

1    indicates that a subsequent fax advertising broadcast went out

2    in accordance with her request.  There's just not evidence at

3    all of that.

4         THE COURT:  All right.  So the question, then, is, is

5    there evidence that the fourth broadcast was sent as

6    authorized and directed by Mr. Miley?

7         MR. COHEN:  And may I respond, Judge?

8         THE COURT:  Yes.

9         MR. COHEN:  Because there's a factual issue and

10   there's a legal issue.  The factual issue is that we have

11   clear instructions to broadcast in Pennsylvania to the same

12   targets as on the first broadcast, and the only indication we

13   have that may not have happened is Ms. Clemmer's supposition

14   that because she got some calls from people in New Jersey,

15   that maybe some or all of this broadcast maybe went to

16   New Jersey instead of Pennsylvania, as if somehow that

17   constitutes now an established fact.  It doesn't.  It just

18   can't.

19        I mean -- but there's a far bigger issue than that, and

20   we would ask for the opportunity to brief this and I can

21   submit this -- I can submit this this evening.  The Court will

22   have it and Mr. Fitzpatrick will have it.  And the Court can

23   make its resolution, perhaps taking Mr. Fitzpatrick's motion

24   as to the fourth broadcast under advisement and resolve it

25   before closing argument.

*United States District Court*
*Camden, New Jersey*

1          First, I will candidly acknowledge that there are some

2     TCPA cases that are flatly wrong in holding that where the

3     broadcaster broadcasts to a geography or a population other

4     than that which the sender wanted them to broadcast, that you

5     can't hold the sender liable for that.  They're absolutely

6     incorrect decisions under the TCPA because nothing about the

7     TCPA changes the federal common law of principal and agency,

8     when it comes to the concept that negligent performance by an

9     agent of the agency given to him by his principal, that ends

10    up harming an innocent third party does not absolve or protect

11    the principal from liability for what the agent did, and the

12    case law goes beyond that and says that an agent's failure to

13    abide by a specific limiting instructions or restrictions

14    known only to the agent, given to the agent by the principal,

15    the failures -- the agent's failure to follow those

16    instructions and restrictions that ends up leading to harm to

17    an innocent third party, the principal is liable for what its

18    agent did, even though it did it in violation of instructions.

19         That's the common law that applies here.  We have

20    plenty of case law to cite the Court to for that premise,

21    including a U.S. Supreme Court authority, but beyond that, it

22    ends up being an overwhelmingly --

23         THE COURT:  Well, it might still be an unlawful fax

24    transmission, no matter where it ends up, but what -- what is

25    there in that transmission that would have been authorized by

1  Mr. Miley, if Mr. Miley said, send these to Pennsylvania and

2  instead, they are sent to New Jersey?

3         MR. COHEN:  Well, we would get to the issue of what

4  is -- what is the -- excuse me.  What is it that the

5  individual must authorize?  Must they authorize a broadcast

6  that violated in the end a TCPA or must they authorize the

7  broadcast the way it was done?  And I think that's relevant

8  because we've actually briefed this in front of Judge Tharp in

9  the Northern District of Illinois and his ruling was, it's not

10 who they were sent to, it's the broadcast.  Did the defendant

11 authorize the broadcaster to issue a broadcast?  And quite

12 frankly, we lost that case on the merits to a jury in front of

13 Judge Tharp, the jury decided the defendant did not authorize

14 a broadcast at all, but Judge Tharp's holding was, it's not

15 about authorizing as to the specific recipients.

16        One of the biggest problems associated with this kind

17 of an argument by the defendant in a TCPA case is that no

18 matter who the faxes were sent to, it was going to be TCPA

19 violations.

20        So when Mr. Miley, under our evidence, authorized the

21 fourth broadcast of 12,000 additional faxes, that was going to

22 be 12,000 TCPA violations, whether B2B followed his

23 instructions and did it in Pennsylvania or didn't and did it

24 in New Jersey.

25        No matter, it's almost like you hire somebody and you

1    say burn down that guy's house and he gets it wrong and he

2    burns down that guy's house and you say, well, I'm not

3    responsible because that's not the house I told him to burn

4    down.  No matter what, there were TCPA violations that were

5    going to come from the authorization that Mr. Miley gave, and

6    I don't think it's a -- an absolution of that liability on the

7    fourth broadcast that the wrong people had their rights taken

8    away, not the 12,000 he meant, but I've candidly told you,

9    there are some decisions out there that go against us.  I

10   would simply like the opportunity to submit our case law to

11   Your Honor.

12        THE COURT:  All right.  I'll grant you that

13   opportunity.  I'll reserve decision until Mr. Fitzpatrick and

14   I have the opportunity to see your brief.

15        MR. FITZPATRICK:  Let me just briefly say this.  I

16   don't need a brief on this.  Because this is not a TCPA issue.

17   This is trial practice law 101.  What I'm saying to you is

18   aside from -- they haven't shown authority.  That's a

19   fundamental fatal flaw that they can't make up for.  They

20   cannot and have not proved that there was a fourth tranche

21   sent.  That's their burden of proof.  They cannot prove.

22        This witness said she does not know.  She knows that

23   there were errors made and she does not know -- she admitted

24   on the stand in response to my question that she does not know

25   that the fourth -- that a subsequent fifth tranche, which

**1**  they're trying to supply as a fourth, was ever sent.  That --

**2**  that's failure of evidence.

**3**       THE COURT:  It's correct that there's no evidence

**4**  that a fifth batch was sent, not from this witness and not

**5**  from any other document.  There is evidence that a fourth

**6**  batch was sent because returns were coming from New Jersey,

**7**  and so it could be --

**8**       MR. FITZPATRICK:  That was unauthorized.  It could

**9**  have been somebody's instructions that we don't even know.  It

**10** could have been somebody else's fax that we don't know.  We

**11** can't speculate that.  There's no evidence of that fourth

**12** tranche.

**13**      THE COURT:  Does the plaintiff need this fourth

**14** tranche for some reason?

**15**      MR. FITZPATRICK:  For money.

**16**      THE COURT:  Well, just a moment.  If there's -- if

**17** there's 30,000 or so transmissions in play in the first three,

**18** if those are proven, does this really matter in terms of the

**19** evidence in the case and what this jury should be -- should be

**20** deciding?

**21**      MR. COHEN:  There are a couple aspects of that and

**22** the first I want to make clear, and I don't know how far

**23** Mr. Fitzpatrick meant when he said to go, there is not only

**24** evidence that the fourth broadcast was issued and was

**25** successfully sent, but the Court's summary judgment ruling

**1**   against David Randall found that.

**2**        So they can then say, yes, but we didn't raise the

**3**   issue of the wrong recipients.  And that, I appreciate, they

**4**   can make that argument now and I've told the Court I think

**5**   they're wrong and I'll get the Court the briefing on that.

**6**        But there's no doubt, there was a successfully sent

**7**   fourth broadcast.  To the Court's point --

**8**        THE COURT:  All right.  I'm giving you, sir, the

**9**   opportunity to brief it.

**10**        MR. COHEN:  I appreciate that.  To the Court's point,

**11**   when a plaintiff stands up and makes an argument -- well, when

**12**   a plaintiff stands up and states his claim to the jury in

**13**   opening statement and presents evidence and the evidence is A,

**14**   B, C and D, I would never want to give up D when I don't think

**15**   I have to on the notion, well, you know, isn't it sufficient

**16**   with A, B and C, because it can impact my credibility with the

**17**   jury.

**18**        So we made a conscious decision recognizing

**19**   Mr. Fitzpatrick would make this argument about the fourth

**20**   transmission to still proceed on all four.  If the Court holds

**21**   that we have not as a matter of law made our claim on the

**22**   fourth transmission, we will have to abide by that and it may

**23**   well impact our credibility in closing and in the jury's

**24**   deliberations.  I don't want to voluntarily accept and invite

**25**   that problem to my credibility.

 1          THE COURT:  All right.  That's fair.  And so I think

 2  you've already briefed an issue similar to this.

 3          How much time do you need for this supplemental brief

 4  tonight?

 5          MR. COHEN:  Judge, we can have that to the Court

 6  within two hours after we leave the courthouse.

 7          Do you think less?

 8          I mean, this is briefing that has been done.  We just

 9  need to pull it from other cases and we can supply it.

10          THE COURT:  Well, do your best.  Tonight, if

11  possible, tomorrow morning at the latest.

12          MR. COHEN:  Oh, it will definitely be this evening,

13  Judge, definitely.

14          THE COURT:  That will be fine.  Make sure

15  Mr. Fitzpatrick gets a copy instantly.

16          MR. COHEN:  Will do.

17          THE COURT:  Okay.  Then I will reserve on this aspect

18  of whether there's sufficient evidence of a fourth authorized

19  transmission.

20          MR. FITZPATRICK:  Your Honor, under those

21  circumstances, I request that we just let the jury go tonight.

22  It's almost four clock and I'll open tomorrow.  They can

23  close, I'll open and then put Mr. Miley on, once I know the

24  Court's response on that ruling.

25          MR. COHEN:  And I appreciate that.  I have no

*United States District Court*
*Camden, New Jersey*

1    objection.  The Court, obviously, will decide.  There was a

2    point I did not make.  I can make it, I believe, in 15 seconds

3    and it just slipped my mind.

4         Assuming that the Court does not agree with me on the

5    law of authorization and principal responsibility when an

6    agent violates the instructions, the individual liability

7    standard for Mr. Miley is two-pronged and it's either/or.

8    It's direct participation or personal authorization, and when

9    it's either/or, they can't mean the same thing and one can't

10   negate the other.

11        So I believe as to all of these, and definitely the

12   fourth as well, we satisfy the direct and personal

13   participation even if the Court holds that we don't satisfy

14   the authorization, and we will include that briefly in our

15   briefing.

16        THE COURT:  All right.  Then I'll take a look at

17   those cases and we'll return tomorrow morning.

18        Okay.  I'll excuse the jury then today.  It's 4 o'clock

19   already, and then in any event, Mr. Fitzpatrick should be

20   prepared to open tomorrow morning, whether it's as to

21   defending against the three transmissions or the four.

22        MR. FITZPATRICK:  And just to note one other thing

23   that -- if Your Honor is -- I believe has arisen as a result

24   of this evidentiary deficiency, that if Your Honor is inclined

25   to allow the jury to consider whether there was a fourth

1    tranche attributable to Mr. Miley, then we would also need an

2    amendment of the proposed verdict sheet to have them make a

3    specific finding that there was a fourth tranche.

4          THE COURT:  We will talk about the jury sheet

5    tomorrow and, however it ends up, it will be consistent with

6    the final jury instructions.

7          MR. FITZPATRICK:  Thank you.  I just wanted to bring

8    it to your attention while I was thinking about it.

9          THE COURT:  Okay.  All right.  So why don't we bring

10   the jury in and Mr. Cohen will have the opportunity to rise

11   before the jury and say the plaintiff rests and then --

12         MR. COHEN:  Thank you.

13         THE COURT:  I will explain that we will pick up

14   tomorrow morning at 9:30.

15         So you can please bring the jury in.

16         MR. COHEN:  Judge, would the Court like us to leave

17   the originals of exhibits somewhere in the courtroom or just

18   make sure --

19         THE COURT:  Keep them, keep them safe until both

20   sides have rested, and then you will go through them with

21   Marnie and make sure that all the exhibits that are in

22   evidence, that she has the original copy of for the jury.

23         MR. COHEN:  Great.

24         THE COURT:  So for tonight, just hang onto them.

25         MR. COHEN:  Thank you.

*United States District Court*
*Camden, New Jersey*

1          THE DEPUTY CLERK:  All rise.

2          (JURY ENTERS; 4:03 p.m.)

3          THE COURT:  Be seated, please.

4     Okay.  Ladies and gentlemen, thank you.  I'm sorry the

5  break was a little bit extended.

6          Mr. Cohen, do you have any other witnesses on behalf of

7  the plaintiff and its class?

8          MR. COHEN:  Your Honor, at this time the plaintiff

9  rests.

10         THE COURT:  Okay.  Ladies and gentlemen, the

11 plaintiff has rested.

12         You've heard the evidence in the plaintiff's case and

13 when we return tomorrow, we will start the defendant's case,

14 and so I'll ask you once again to continue to keep an open

15 mind until all the evidence is in, to not discuss the case or

16 permit anyone to discuss it with you, to not attempt to do any

17 research on your own about anything touching upon this case.

18         And thank you for paying such good attention today and

19 for being here.  Tomorrow morning, I'll ask you to report back

20 downstairs at 9:15 in the morning and we hope to be started by

21 9:30 and I anticipate a full day.

22         Do you have any questions about the schedule or

23 anything else?  Okay.  Thank you and have a safe trip home.

24 See you tomorrow.

25         THE DEPUTY CLERK:  All rise.

*United States District Court*
*Camden, New Jersey*

```
 1                (JURY EXITS; 4:04 p.m.)

 2           THE COURT:  Okay.  Be seated, please.  So the jury

 3   has been excused for the day.  Is there anything else before

 4   we adjourn?

 5           MR. COHEN:  Just in terms of predictions, and I'm not

 6   seeking to hold Mr. Fitzpatrick to anything, I'm trying to

 7   figure out if we think we will get to closing arguments

 8   tomorrow afternoon.

 9           THE COURT:  Okay.  Mr. Fitzpatrick?

10           MR. FITZPATRICK:  I wouldn't see why not.  We don't

11   have 50 pages of documents to go through with the exhibits,

12   so...

13           THE COURT:  Okay.  Is Mr. Miley your only witness or

14   are there others?

15           MR. FITZPATRICK:  He's the only one I expect right

16   now.

17           THE COURT:  Okay.  I don't have the draft jury charge

18   for you tonight, but hopefully, it will be on your desk

19   tomorrow morning as a working copy of what the jury

20   instructions will be, and then we will go through it first.  I

21   say informally, meaning we go through, we figure out what

22   needs to be in there, what shouldn't be in there, see where

23   there's agreement and we see where there's disagreement and

24   then as to any matters of disagreement where we need to make a

25   record, then I would go on the record and have the final jury
```

1   charge conference and make rulings.

2        That won't happen until after the parties rest.  I do

3   have your proposed jury instructions from both sides and of

4   course I'm working with those.

5        Might be -- well, we will see how the day unfolds.

6   I'll finish up what I can on the jury instructions tonight and

7   we will see how long the witness or witnesses take tomorrow.

8   It might not be until Thursday that we're actually able to put

9   the case into the jury's hands, but that's fine.  I'm not

10  trying to rush the case.  But I think that's a good

11  prediction.

12        It may be tomorrow with some luck, depends how many

13  disputes there are about the jury charges.  Anything else?

14        MR. COHEN:  Not tonight, sir.

15        THE COURT:  Okay.  Thanks a lot.  Good night.

16        (4:07 p.m.)

17

18

19

20

21

22

23

24

25

## $

**$20** [3] - 58:13, 58:14, 58:19
**$22** [2] - 22:8, 27:14
**$28** [2] - 61:16, 64:8
**$394** [13] - 59:7, 60:13, 61:18, 64:8, 71:25, 76:4, 80:17, 80:24, 81:14, 97:3, 97:19, 97:22, 102:25
**$422** [4] - 60:13, 61:25, 64:6, 64:16
**$438** [1] - 58:13
**$478** [1] - 58:15
**$500** [2] - 13:24, 22:6
**$565** [2] - 85:11, 88:22

## '

**'06** [2] - 85:3, 126:19
**'08** [1] - 160:10
**'client** [1] - 54:6
**'repairs** [1] - 48:18

## /

**/S** [2] - 1:24, 1:25

## 0

**0** [1] - 160:8
**0048** [1] - 113:1
**0050** [2] - 109:7, 109:24
**0063** [1] - 108:18
**07** [1] - 160:9
**08** [1] - 160:8
**08101** [1] - 1:9

## 1

**1** [26] - 14:16, 40:2, 40:8, 40:10, 40:15, 40:19, 40:22, 41:4, 41:5, 42:8, 42:18, 42:21, 44:3, 45:3, 45:4, 46:19, 48:3, 51:16, 53:8, 67:14, 69:3, 73:9, 73:10, 73:17, 75:12
**1,000** [5] - 50:24, 52:3, 58:14, 61:20, 61:23
**10** [7] - 56:10, 60:22, 61:10, 64:25, 72:10, 78:24, 140:8
**10,000** [9] - 50:24, 52:3, 52:8, 52:11, 58:13, 61:18, 64:8, 70:16, 71:25
**101** [3] - 2:6, 4:5, 164:17
**102** [1] - 2:8
**104** [1] - 4:6
**106** [1] - 4:7
**107** [1] - 4:8
**108** [1] - 4:9
**109** [1] - 2:10
**11** [3] - 63:12, 63:24, 65:1
**113** [2] - 2:12, 4:10
**11:18** [1] - 56:17
**11:30** [1] - 56:15
**11:33** [1] - 56:18
**11:50** [2] - 84:10, 84:19
**12** [12] - 66:4, 66:8, 66:20, 67:25, 68:3, 68:24, 69:3, 83:21, 126:17, 130:22, 130:25, 133:8
**12,000** [18] - 50:25, 52:4, 64:7, 65:5, 65:6, 70:16, 71:17, 76:5, 80:22, 80:23, 80:24, 83:15, 97:3, 98:2, 98:6, 163:21, 163:22, 164:8
**12:30** [1] - 92:22
**12:37** [1] - 93:6
**12th** [9] - 88:7, 90:15, 94:7, 97:1, 98:13, 102:19, 103:5, 103:10, 130:5
**13** [8] - 69:12, 69:22, 70:1, 72:19, 73:2, 73:7, 74:9, 124:21
**138** [1] - 2:14
**14** [8] - 72:16, 72:18, 73:2, 73:7, 73:13, 73:21, 74:3, 119:12
**149** [1] - 2:15
**15** [5] - 75:8, 75:19, 79:25, 81:12, 168:2
**15,000** [1] - 85:11
**15th** [5] - 97:10, 103:23, 104:11, 106:18, 134:10
**16** [3] - 82:9, 83:3, 121:19
**1600** [1] - 67:2
**16th** [1] - 13:16
**17** [5] - 83:18, 84:3, 87:11, 87:12, 127:11
**17th** [2] - 107:20, 109:1

**18** [7] - 86:21, 87:5, 87:11, 87:12, 87:15, 139:19, 160:9
**18,000** [4] - 85:10, 85:14, 88:23, 92:20
**19** [12] - 88:2, 88:13, 89:20, 90:20, 91:11, 91:12, 91:17, 91:22, 119:12, 123:11, 130:3, 160:9
**1989** [1] - 47:16
**1:11-CV-02658-JBS-KMW** [1] - 1:4
**1:35** [1] - 93:2
**1:46** [1] - 93:16
**1:47** [1] - 93:21

## 2

**2** [30] - 8:3, 14:18, 42:8, 42:24, 43:1, 43:11, 43:13, 44:3, 44:25, 45:4, 45:10, 45:24, 48:4, 51:7, 51:9, 53:8, 54:11, 54:13, 54:17, 58:14, 61:20, 64:15, 67:14, 72:2, 73:8, 81:12, 87:15, 121:19, 125:7
**2,000** [6] - 50:25, 52:4, 61:22, 64:8, 70:17, 71:25
**20** [11] - 22:14, 22:23, 90:12, 90:20, 90:22, 91:4, 91:17, 91:19, 91:20, 91:21, 93:10
**2005** [1] - 95:23
**2006** [52] - 13:1, 13:16, 21:12, 29:19, 30:3, 30:6, 30:8, 32:13, 43:25, 46:20, 48:1, 48:16, 50:20, 53:24, 57:13, 57:18, 58:5, 59:9, 61:1, 63:9, 63:16, 64:5, 66:9, 67:22, 69:15, 70:7, 71:2, 73:22, 75:13, 75:25, 80:1, 83:22, 88:7, 94:8, 95:19, 96:8, 97:1, 98:14, 102:7, 102:8, 102:12, 102:19, 103:10, 103:23, 104:12, 106:18, 107:20, 109:1, 114:18, 130:6, 145:4
**2007** [1] - 45:22
**2008** [2] - 50:6, 134:10
**2011** [4] - 30:19,

32:22, 33:1, 114:14
**2016** [2] - 1:10, 5:2
**21** [2] - 91:24, 92:8
**22** [6] - 94:3, 94:15, 98:22, 99:15, 123:12, 140:8
**23** [13] - 43:25, 46:20, 98:9, 98:20, 99:14, 99:21, 99:23, 100:1, 100:8, 103:8, 103:9, 103:14
**23rd** [1] - 45:22
**24** [8] - 11:0, 5:2, 47:25, 53:24, 103:20, 104:5, 106:1, 134:7
**24th** [4] - 48:16, 50:6, 50:19, 160:10
**25** [6] - 77:14, 105:23, 106:1, 106:5, 106:9, 129:17
**26** [2] - 106:15, 106:23
**27** [8] - 57:18, 58:5, 59:9, 107:15, 108:7, 129:10, 151:6, 151:11
**27th** [3] - 44:7, 44:22, 57:13
**28** [14] - 1:23, 2:4, 26:24, 40:4, 40:5, 78:3, 109:4, 109:17, 111:22, 112:1, 112:7, 112:13, 112:23, 136:15
**28th** [5] - 60:25, 63:9, 63:16, 64:5, 66:12
**29** [1] - 2:5
**29th** [11] - 13:16, 62:5, 64:9, 66:9, 66:13, 66:25, 67:1, 67:22, 85:3, 126:19

## 3

**3** [17] - 5:16, 5:24, 8:1, 14:20, 42:21, 44:4, 44:5, 44:11, 45:4, 45:7, 45:9, 45:12, 45:15, 45:24, 46:8, 46:11, 67:14
**3,000** [1] - 85:11
**3-21-06** [1] - 41:8
**3/24/06** [1] - 55:16
**3/28/06** [1] - 65:1
**3/29/06** [3] - 65:2, 70:8, 71:6
**30** [2] - 26:24, 93:10
**30,000** [1] - 165:17
**31st** [5] - 69:15, 70:7,

71:2, 73:22, 74:10
**34** [7] - 52:21, 52:25, 53:12, 54:17, 54:23, 55:21, 57:5
**394** [2] - 59:25, 60:19
**3:17** [2] - 152:23, 152:24
**3:25** [1] - 151:18
**3:32** [1] - 153:1
**3rd** [5] - 75:13, 75:25, 80:1, 102:6, 102:12

## 4

**4** [10] - 14:21, 44:4, 44:5, 44:11, 45:18, 46:2, 46:5, 46:20, 47:10, 168:18
**4-12-06** [1] - 127:16
**4/12/06** [4] - 84:10, 84:19, 86:24, 88:20
**4/14/06** [2] - 85:18, 89:21
**4/3/06** [2] - 59:11, 59:20
**4/3/2006** [1] - 59:7
**4/4/06** [3] - 76:15, 81:8, 81:10
**40** [6] - 3:6, 100:16, 101:3, 101:8, 102:11, 103:12
**422** [1] - 60:20
**43** [1] - 3:7
**46** [2] - 3:8, 3:9
**478** [1] - 60:15
**48** [3] - 3:10, 109:17, 123:14
**484** [1] - 85:23
**49** [3] - 3:11, 109:17, 113:1
**4:00** [1] - 67:4
**4:03** [1] - 170:2
**4:04** [1] - 171:1
**4:07** [1] - 172:16
**4:30** [1] - 151:10
**4TH** [1] - 1:9
**4th** [2] - 83:11, 83:13

## 5

**5** [9] - 14:12, 47:19, 48:7, 48:9, 48:15, 49:1, 49:6, 49:8, 49:23
**5,000** [5] - 50:23, 52:2, 52:8, 52:10, 61:23
**5-12-06** [1] - 95:7
**50** [7] - 3:12, 110:22,

110:25, 112:8,
153:19, 157:3,
171:11
**50(a)(1** [1] - 158:14
**53** [1] - 3:13
**57** [2] - 109:18, 113:1
**58** [1] - 3:14

## 6

**6** [6] - 49:5, 49:12,
49:17, 49:23
**6,000** [2] - 50:24, 52:3
**61** [1] - 3:16
**610** [1] - 85:23
**63** [1] - 108:18
**64** [1] - 3:17
**66** [1] - 3:18

## 7

**7** [8] - 50:2, 50:13,
54:11, 54:12, 55:19,
57:4, 122:16, 124:2
**70** [1] - 3:19
**72** [2] - 137:6, 137:11
**74** [1] - 3:20
**75** [1] - 3:21
**753** [1] - 1:23

## 8

**8** [6] - 57:6, 57:19,
57:23, 117:13,
139:19, 151:10
**800** [1] - 108:22
**83** [1] - 3:22
**84** [1] - 3:23
**87** [1] - 3:24
**88** [1] - 3:25
**8:30** [1] - 70:14
**8:50** [1] - 95:8

## 9

**9** [8] - 57:17, 57:23,
60:2, 60:3, 60:6,
117:13, 139:18,
140:8
**91** [1] - 4:1
**92** [1] - 4:2
**94** [1] - 4:3
**99** [1] - 4:4
**9:15** [1] - 170:20
**9:30** [2] - 169:14,
170:21
**9:46** [1] - 5:2

**9:54** [1] - 8:10

## A

**a.m** [10] - 5:2, 8:10,
56:17, 56:18, 70:14,
84:10, 84:19, 95:8,
151:16, 151:18
**abide** [2] - 162:13,
166:22
**ability** [1] - 96:7
**abjectly** [1] - 154:23
**able** [5] - 19:21, 22:19,
129:6, 153:5, 172:8
**aboard** [1] - 58:6
**absolute** [1] - 77:22
**absolutely** [2] - 7:20,
162:5
**absolution** [1] - 164:6
**absolve** [1] - 162:10
**accept** [4] - 10:17,
58:8, 112:10, 166:24
**acceptable** [2] -
153:9, 153:20
**accommodate** [1] -
111:7
**accompanied** [2] -
88:10, 104:2
**accompanying** [1] -
100:6
**accord** [1] - 30:10
**accordance** [3] - 63:9,
160:22, 161:2
**account** [5] - 24:9,
32:2, 64:11, 65:22,
76:8
**accountant** [1] - 82:3
**accounting** [2] - 62:1,
115:7
**accurate** [15] - 40:15,
43:7, 48:4, 50:9,
53:8, 53:25, 57:11,
61:3, 63:21, 73:16,
73:25, 87:1, 88:9,
94:12, 155:3
**acknowledge** [1] -
162:1
**acquiescence** [1] -
111:4
**acquiescing** [1] -
111:10
**Act** [3] - 13:7, 13:21,
21:25
**acted** [3] - 14:25, 16:2,
157:18
**acting** [4] - 5:20,
14:11, 15:16, 23:14
**actions** [2] - 22:17,
22:19

**active** [2] - 15:23,
154:12
**activities** [3] - 16:3,
132:11, 134:12
**acts** [2] - 114:20,
116:10
**actual** [5] - 49:13,
68:4, 83:6, 102:4,
121:6
**Ad** [1] - 46:21
**ad** [53] - 25:20, 25:23,
37:23, 37:25, 38:4,
41:12, 41:13, 41:15,
41:21, 41:23, 41:24,
42:3, 42:9, 42:20,
46:23, 47:6, 47:8,
48:18, 50:21, 51:6,
51:7, 51:10, 51:17,
54:2, 54:5, 54:6,
54:7, 54:13, 54:15,
54:18, 54:20, 54:24,
55:2, 55:12, 55:19,
70:8, 71:6, 71:7,
75:6, 85:1, 87:16,
87:17, 87:18, 87:21,
87:24, 100:5, 120:5,
120:7, 121:12,
121:23, 136:11,
140:1
**add** [5] - 6:8, 48:18,
48:23, 61:24, 147:7
**added** [2] - 57:15,
62:19
**adding** [2] - 85:4, 85:8
**additional** [16] - 41:14,
42:2, 50:24, 50:25,
52:3, 61:22, 62:15,
62:19, 62:20, 72:4,
98:23, 104:23,
105:5, 145:12,
158:17, 163:21
**additions** [1] - 54:3
**address** [2] - 94:3,
128:24
**addressed** [2] - 116:6,
116:9
**adjourn** [1] - 171:4
**admission** [27] -
40:18, 43:10, 46:1,
46:11, 48:6, 49:16,
50:12, 53:11, 57:22,
61:9, 63:23, 66:20,
69:25, 73:12, 74:2,
75:18, 82:22, 84:3,
87:4, 88:12, 90:22,
94:14, 101:8, 106:8,
108:7, 112:15,
158:11
**admit** [4] - 91:6,
155:24, 156:10,

156:14
**admitted** [6] - 154:14,
155:4, 157:12,
158:23, 159:9,
164:23
**ads** [4] - 46:22, 92:20,
125:20, 157:21
**advertise** [4] - 65:9,
65:11, 65:13, 109:13
**advertised** [3] - 14:10,
21:18, 32:15
**advertisement** [18] -
13:22, 14:9, 14:10,
25:1, 33:18, 36:11,
36:17, 37:21, 38:1,
38:11, 42:19, 42:21,
65:8, 68:4, 68:9,
100:3, 117:21,
139:22
**advertisements** [13] -
7:19, 13:4, 13:6,
13:23, 14:3, 14:4,
14:19, 15:4, 16:4,
16:10, 20:25, 22:2,
123:23
**advertising** [20] -
20:25, 24:10, 24:15,
25:21, 32:7, 32:13,
33:5, 33:13, 33:20,
35:1, 39:11, 54:8,
109:12, 114:21,
114:24, 117:19,
118:15, 139:21,
146:25, 161:1
**advisement** [1] -
161:24
**affect** [1] - 113:10
**affected** [1] - 52:9
**affirmed** [1] - 160:21
**afternoon** [8] - 62:4,
62:25, 64:10, 65:20,
93:17, 93:22,
152:20, 171:8
**agency** [2] - 162:7,
162:9
**agent** [6] - 162:9,
162:11, 162:14,
162:18, 168:6
**agent's** [2] - 162:12,
162:15
**ago** [16] - 23:25,
30:20, 36:13, 42:14,
64:25, 72:10, 79:4,
103:8, 113:20,
120:11, 121:12,
134:3, 139:11,
140:15, 144:13,
158:11
**agree** [9] - 8:21, 9:3,
59:17, 78:15,

124:17, 147:24,
148:2, 160:6, 168:4
**agreed** [2] - 58:12,
97:19, 141:25
**agreeing** [1] - 78:17
**agreement** [1] -
171:23
**ahead** [3] - 26:5, 56:4,
78:23
**aid** [1] - 19:4
**al** [1] - 1:6
**alerting** [1] - 142:6
**allegation** [1] - 160:19
**alleged** [2] - 158:22,
159:13
**Allentown** [1] - 86:2
**allow** [1] - 168:25
**allowed** [2] - 95:24,
124:12
**almost** [3] - 78:12,
163:25, 167:22
**alone** [2] - 8:18,
142:15
**amendment** [1] -
169:2
**amnesia** [1] - 158:5
**amount** [9] - 22:8,
64:11, 76:8, 78:11,
78:13, 81:14, 97:3,
97:21, 102:25
**analyzing** [1] - 18:11
**AND** [3] - 1:9, 3:14,
58:3
**annoyance** [1] -
132:21
**annoyed** [5] - 67:9,
127:4, 127:7, 131:3,
132:19
**answer** [17] - 9:16,
52:14, 55:11, 89:3,
89:17, 104:13,
117:14, 117:20,
119:13, 121:20,
123:11, 123:12,
123:20, 128:25,
129:3, 140:15, 150:8
**Answer** [7] - 119:19,
121:25, 122:2,
123:19, 139:22,
140:2, 140:11
**answered** [7] - 11:17,
11:18, 19:7, 31:9,
116:1, 149:19, 150:3
**answering** [1] - 123:4
**answers** [2] - 79:9,
120:24
**antagonisms** [1] -
30:12
**anticipate** [6] - 21:2,
21:3, 21:4, 21:7,

25:19, 170:21

**apologize** [4] - 21:4, 23:1, 81:24, 137:14

**apparent** [1] - 105:15

**appear** [1] - 49:5

**appearance** [1] - 10:23

**appeasement** [1] - 111:3

**Apple** [1] - 83:12

**applicable** [5] - 5:14, 5:17, 5:22, 7:13, 12:23

**applies** [1] - 162:19

**apply** [4] - 8:19, 12:18, 35:15, 35:16

**appreciate** [10] - 27:25, 44:5, 44:20, 113:13, 142:23, 144:10, 146:12, 166:3, 166:10, 167:25

**approach** [2] - 110:19, 139:15

**approached** [1] - 33:12

**approaching** [1] - 55:5

**appropriate** [2] - 18:23, 77:24

**approval** [18] - 26:5, 26:17, 34:23, 39:14, 51:14, 54:6, 55:3, 55:6, 55:20, 56:2, 63:10, 68:16, 89:12, 98:7, 105:20, 149:2, 156:17, 156:21

**approve** [6] - 39:8, 44:5, 44:11, 44:16, 55:2, 157:23

**approved** [14] - 23:21, 26:10, 44:13, 50:20, 51:6, 51:7, 51:17, 54:7, 55:20, 75:6, 100:5, 147:3, 157:24

**approving** [2] - 25:23, 38:3

**approximate** [1] - 22:8

**APRIL** [17] - 2:4, 2:5, 2:6, 2:8, 2:10, 2:12, 2:14, 2:15, 28:19, 28:24, 29:15, 101:15, 102:2, 109:23, 113:18, 138:14, 149:8

**April** [35] - 21:12, 21:16, 23:14, 28:12, 28:24, 29:17, 30:3, 32:13, 41:5, 41:16, 43:24, 47:2, 50:19,

65:9, 67:10, 75:13, 75:25, 79:25, 83:11, 83:13, 83:21, 88:6, 88:20, 90:15, 96:8, 96:25, 102:6, 102:12, 107:20, 109:1, 110:15, 114:18, 130:5, 145:4, 155:7

**area** [22] - 35:18, 35:23, 52:9, 59:25, 78:25, 79:12, 85:3, 85:23, 85:24, 87:13, 94:21, 95:8, 95:10, 97:2, 97:16, 104:17, 104:19, 104:22, 105:5, 106:4, 118:11, 123:18

**areas** [10] - 70:18, 71:19, 76:6, 81:2, 85:4, 85:8, 86:2, 97:5, 115:4

**argument** [14] - 7:1, 19:10, 145:13, 155:13, 161:25, 163:17, 166:4, 166:11, 166:19

**argumentative** [1] - 145:18

**arguments** [2] - 9:7, 19:18, 171:7

**arisen** [1] - 168:23

**arrangements** [1] - 54:8

**arrived** [1] - 5:6

**arrow** [1] - 63:5

**AS** [2] - 110:21, 145:16

**ASAP** [2] - 44:6, 44:20

**aside** [3] - 20:7, 101:2, 164:18

**aspect** [3] - 17:19, 156:25, 167:17

**aspects** [1] - 165:21

**assembly** [1] - 93:2

**asserted** [1] - 155:3

**assign** [1] - 70:10

**assigned** [1] - 32:5

**associated** [2] - 35:20, 163:16

**ASSOCIATES** [1] - 1:5

**Associates** [62] - 5:19, 13:2, 13:13, 13:19, 14:22, 14:25, 21:19, 21:22, 22:4, 22:8, 22:10, 23:13, 24:5, 24:9, 24:12, 24:24, 27:13, 29:21, 29:24, 30:4, 30:9, 31:5, 31:20, 32:15, 34:21,

35:6, 35:18, 36:11, 38:20, 42:16, 44:13, 52:6, 52:12, 53:21, 57:12, 64:16, 65:14, 65:17, 67:21, 68:8, 69:19, 72:11, 81:13, 82:5, 82:17, 82:18, 83:8, 89:11, 92:4, 92:15, 95:17, 98:5, 102:5, 106:18, 113:5, 114:17, 141:1, 142:25, 144:18, 145:3, 148:13, 156:16

**Associates'** [5] - 21:1, 25:22, 32:1, 38:12, 39:11

**assume** [5] - 7:17, 43:18, 45:2, 45:5, 60:4

**assuming** [2] - 68:11, 168:4

**asterisk** [1] - 63:5

**asterisks** [2] - 89:23, 130:8

**attached** [26] - 38:7, 41:11, 43:6, 44:4, 45:4, 47:1, 50:9, 50:20, 51:5, 51:17, 54:17, 55:19, 67:7, 69:23, 70:9, 87:2, 98:16, 98:17, 99:22, 104:19, 106:3, 106:5, 107:19, 107:22, 107:23, 136:18

**attachment** [15] - 47:11, 48:3, 63:19, 64:15, 67:24, 73:24, 75:3, 75:15, 75:16, 87:1, 88:9, 88:10, 90:7, 108:23, 130:23

**attachments** [9] - 66:15, 66:16, 66:17, 99:2, 108:19, 131:5, 131:7, 133:8

**attempt** [1] - 170:16

**attempted** [1] - 145:20

**attempting** [1] - 155:14

**attendance** [2] - 17:16, 17:18

**attention** [14] - 16:19, 24:14, 29:7, 33:5, 41:4, 46:19, 48:14, 50:1, 77:9, 139:10, 140:12, 140:17, 169:8, 170:18

**attorney** [1] - 77:4

**attorneys** [9] - 8:7,

12:24, 17:7, 18:22, 19:16, 19:17, 138:23, 150:25, 151:25

**attributable** [3] - 159:4, 159:5, 169:1

**August** [1] - 95:21

**authenticate** [3] - 111:1, 111:5, 112:9

**authenticated** [1] - 111:2

**authority** [13] - 23:17, 24:6, 24:7, 24:8, 31:20, 31:23, 32:6, 34:20, 55:2, 64:19, 82:6, 162:21, 164:18

**authorization** [12] - 14:21, 23:6, 26:17, 89:12, 145:11, 155:16, 156:21, 159:14, 164:5, 168:5, 168:8, 168:14

**authorize** [12] - 64:10, 65:22, 66:1, 76:7, 82:7, 90:10, 97:21, 163:5, 163:6, 163:11, 163:13

**authorized** [15] - 15:4, 15:21, 22:18, 23:4, 23:21, 27:11, 64:22, 97:24, 100:14, 135:12, 157:22, 161:6, 162:25, 163:20, 167:18

**authorizing** [3] - 66:2, 145:7, 163:15

**Auto** [4] - 12:3, 13:4, 13:11, 20:21

**AUTO** [1] - 1:2

**available** [3] - 13:17, 48:23, 151:4

**available'** [1] - 48:18

**await** [3] - 41:13, 42:2, 47:1

**awake** [1] - 77:21

**awards** [1] - 13:24

**aware** [17] - 17:5, 25:15, 39:5, 41:17, 69:1, 69:4, 69:10, 71:4, 86:15, 86:20, 88:24, 89:7, 108:15, 108:24, 117:18, 132:10, 139:20

**awhile** [1] - 120:12

## B

**B2B** [89] - 13:3, 21:13, 23:18, 24:11, 24:15,

24:17, 24:19, 25:10, 25:12, 25:14, 25:16, 25:17, 25:21, 26:4, 26:8, 26:11, 26:13, 26:16, 27:1, 33:8, 33:13, 34:2, 34:9, 34:22, 37:3, 37:9, 37:11, 37:17, 37:21, 37:23, 38:21, 39:2, 39:10, 39:12, 39:17, 40:12, 42:12, 42:22, 43:4, 45:21, 47:3, 47:12, 47:25, 50:5, 51:25, 52:10, 53:19, 53:22, 56:4, 63:16, 66:9, 66:25, 68:4, 68:9, 69:14, 70:6, 88:6, 94:7, 105:16, 107:7, 107:20, 116:9, 118:24, 122:11, 125:21, 125:23, 131:1, 132:11, 134:23, 137:20, 139:12, 141:3, 141:7, 142:7, 142:14, 142:17, 142:19, 142:25, 143:18, 144:3, 145:5, 148:22, 156:19, 159:3, 160:23, 163:22

**B2B's** [1] - 51:13

**balance** [1] - 12:12

**ball** [1] - 139:13

**bank** [1] - 32:1

**Bank** [1] - 83:12

**base** [1] - 25:9

**based** [7] - 16:4, 38:6, 39:3, 64:25, 101:8, 114:10, 143:17

**basic** [2] - 31:9, 77:15

**basing** [1] - 52:13

**basis** [7] - 6:6, 120:13, 154:8, 154:9, 155:8, 155:14, 158:2

**batch** [2] - 165:4, 165:6

**Bates** [10] - 108:18, 109:6, 109:17, 109:24, 110:22, 110:25, 112:8, 113:1, 137:6, 137:15

**Bates-stamped** [1] - 113:1

**bear** [3] - 10:20, 28:8, 78:2

**bearing** [1] - 42:6

**bears** [1] - 27:16

**become** [6] - 117:18, 132:2, 132:10,

**becomes** [1] - 29:5
**becoming** [1] - 145:13
**begin** [4] - 5:15, 19:8, 28:10, 58:15
**beginning** [3] - 123:10, 123:11, 138:17
**begins** [1] - 117:13
**behalf** [25] - 5:20, 13:4, 14:8, 14:11, 14:25, 15:16, 16:2, 20:16, 20:22, 20:23, 22:25, 23:1, 24:8, 25:18, 27:24, 36:11, 37:17, 37:18, 37:19, 65:16, 68:4, 135:6, 142:25, 155:9, 170:6
**belief** [2] - 134:23, 160:1
**bell** [1] - 34:6
**below** [8] - 58:22, 59:5, 67:7, 84:17, 85:21, 86:3, 117:14, 125:9
**best** [6] - 18:10, 35:1, 77:25, 79:13, 111:8, 167:10
**better** [4] - 20:3, 47:8, 79:14, 153:24
**between** [9] - 49:23, 52:8, 73:2, 73:7, 87:11, 87:12, 90:19, 91:17, 106:1
**beyond** [6] - 10:1, 12:17, 21:10, 156:7, 162:12, 162:21
**Bible** [1] - 28:18
**big** [2] - 39:24, 134:24
**bigger** [1] - 161:19
**biggest** [1] - 163:16
**bill** [1] - 62:1
**bind** [2] - 24:7, 31:23
**binder** [3] - 29:5, 39:25, 47:20
**bit** [3] - 42:14, 119:19, 170:5
**blah** [3] - 77:6
**blah-blah-blah** [1] - 77:6
**Blast** [1] - 46:21
**blast** [10] - 76:1, 85:1, 88:21, 90:17, 92:18, 97:2, 97:12, 100:9, 100:11, 106:20
**blasts** [3] - 21:15, 21:16, 101:4
**blitz** [6] - 70:8, 70:24, 70:25, 74:11, 76:6, 81:3

**BOCK** [1] - 1:13
**boils** [1] - 5:22
**bold** [5] - 127:22, 127:24, 130:9, 132:17
**bolstered** [1] - 155:2
**book** [1] - 151:6
**boring** [2] - 27:8, 77:20
**bothered** [2] - 67:8, 127:3
**bottom** [23] - 52:24, 54:22, 55:20, 62:24, 68:7, 68:12, 71:23, 72:2, 74:22, 76:14, 81:7, 83:14, 89:20, 89:23, 95:10, 95:12, 105:3, 125:1, 125:15, 127:18, 130:8, 137:16
**bounds** [1] - 154:24
**break** [6] - 20:7, 56:7, 59:18, 152:17, 152:20, 170:5
**breaks** [1] - 20:6
**brief** [11] - 5:7, 5:8, 5:12, 12:22, 15:9, 28:2, 161:20, 164:14, 164:16, 166:9, 167:3
**briefed** [2] - 163:8, 167:2
**briefing** [3] - 166:5, 167:8, 168:15
**briefly** [4] - 73:19, 138:13, 164:15, 168:14
**bring** [13] - 6:21, 10:21, 16:19, 28:14, 29:7, 56:22, 77:9, 93:19, 147:17, 153:9, 169:7, 169:9, 169:15
**bringing** [1] - 153:16
**broadcast** [72] - 21:15, 21:16, 21:17, 21:18, 35:1, 38:8, 38:11, 38:13, 38:15, 39:16, 39:19, 56:3, 65:2, 65:4, 66:12, 67:22, 69:17, 71:7, 81:9, 81:14, 85:15, 85:18, 86:14, 87:19, 87:22, 87:25, 88:7, 92:5, 97:13, 97:15, 97:16, 97:22, 98:1, 98:14, 100:6, 100:12, 100:24, 108:4, 108:15, 109:2, 126:15,

133:22, 134:12, 143:6, 143:10, 143:12, 143:19, 143:24, 143:25, 144:2, 144:5, 145:6, 158:21, 160:10, 160:12, 160:14, 161:1, 161:5, 161:11, 161:12, 161:15, 161:24, 162:4, 163:5, 163:7, 163:10, 163:11, 163:14, 163:21, 164:7, 165:24, 166:7
**broadcaster** [7] - 23:18, 25:10, 25:21, 37:21, 121:24, 162:3, 163:11
**broadcasting** [10] - 23:3, 23:12, 24:12, 24:14, 39:11, 82:20, 114:16, 114:18, 114:20, 156:19
**broadcasts** [34] - 21:23, 21:24, 22:4, 22:6, 22:25, 23:4, 24:1, 24:18, 25:4, 25:24, 26:1, 26:2, 26:3, 26:14, 27:2, 27:11, 35:16, 35:20, 36:4, 37:3, 38:17, 38:21, 39:22, 56:1, 64:25, 107:6, 134:13, 141:7, 141:11, 141:22, 143:17, 148:21, 148:23, 162:3
**brought** [6] - 24:13, 139:13, 140:12, 140:16, 144:15, 158:13
**burden** [4] - 12:2, 12:4, 12:14, 164:21
**Burlington** [1] - 83:15
**burn** [2] - 164:1, 164:3
**burns** [1] - 164:2
**Business** [20] - 13:2, 13:3, 21:12, 21:13, 24:11, 33:7, 33:8, 39:2, 64:17, 83:5, 92:4, 92:15, 101:4, 101:5
**business** [11] - 13:14, 50:25, 52:15, 54:3, 68:17, 82:18, 83:13, 109:14, 117:22, 139:24, 150:14
**businesses** [4] - 50:22, 51:20, 104:20, 123:17

**but..** [2] - 131:19, 150:6
**BY** [74] - 1:14, 1:16, 2:5, 2:6, 2:9, 2:10, 2:12, 2:14, 2:15, 29:15, 36:9, 37:1, 41:3, 43:23, 46:18, 48:13, 49:21, 50:18, 53:17, 57:3, 58:4, 59:19, 61:14, 64:4, 66:24, 70:5, 73:6, 73:20, 74:7, 75:24, 79:24, 81:20, 82:1, 83:2, 84:7, 84:15, 87:9, 88:19, 89:6, 89:19, 91:10, 92:13, 94:1, 94:20, 99:9, 101:15, 102:2, 104:10, 105:13, 106:14, 107:4, 108:12, 109:23, 110:5, 113:3, 113:18, 117:4, 117:12, 118:3, 119:11, 121:18, 123:16, 129:9, 135:21, 136:9, 137:18, 138:14, 139:17, 141:21, 143:15, 144:11, 148:11, 149:8, 150:9

## C

**C-L-E-M-M-E-R** [1] - 28:25
**CAMDEN** [1] - 1:9
**Camden** [1] - 83:16
**campaign** [20] - 41:15, 42:3, 54:8, 58:7, 58:23, 59:5, 64:7, 70:18, 71:20, 76:5, 80:22, 88:23, 89:24, 130:16, 146:25, 147:1, 157:19, 158:21, 158:24, 160:21
**candidly** [2] - 162:1, 164:8
**cannot** [3] - 154:10, 164:20, 164:21
**capacity** [2] - 24:5, 31:19
**capitalization** [1] - 142:13
**capitals** [3] - 127:22, 127:24, 130:9
**caption** [1] - 84:23
**care** [1] - 31:10
**cares** [1] - 77:10

**carried** [2] - 136:11, 136:13
**carry** [1] - 159:3
**case** [69] - 5:14, 5:16, 7:6, 7:10, 8:8, 10:5, 10:13, 10:19, 11:4, 11:10, 11:12, 11:25, 12:3, 12:5, 12:18, 12:23, 12:25, 13:4, 13:10, 14:11, 14:15, 15:7, 15:11, 16:13, 16:15, 16:16, 16:18, 16:21, 16:24, 17:3, 17:4, 17:7, 17:11, 17:14, 17:19, 17:23, 18:9, 18:12, 19:1, 21:20, 22:9, 27:10, 29:4, 30:19, 32:12, 111:21, 113:19, 114:21, 121:7, 138:23, 153:8, 155:7, 155:8, 157:4, 158:16, 158:22, 159:7, 162:12, 162:20, 163:12, 163:17, 164:10, 165:19, 170:12, 170:13, 170:15, 170:17, 172:9, 172:10
**cases** [3] - 162:2, 167:9, 168:17
**cashing** [1] - 82:15
**category** [1] - 148:23
**caused** [1] - 14:1
**caveat** [1] - 65:23
**ceases** [1] - 156:11
**cell** [1] - 16:25
**central** [1] - 23:13
**certain** [6] - 9:5, 11:21, 13:23, 14:15, 15:17, 22:15, 35:18, 38:13, 78:11, 78:12, 111:12, 126:14, 144:21, 157:13, 157:15
**certainly** [4] - 19:5, 36:8, 43:22, 158:4
**certainty** [1] - 157:11
**Certified** [1] - 1:23
**certified** [1] - 13:10
**cetera** [2] - 42:11, 145:14
**challenged** [1] - 155:18
**change** [5] - 31:3, 46:25, 48:19, 48:24, 145:19
**changed** [1] - 144:6
**changes** [3] - 47:1,

**class** [16] - 8:2, 8:3, 8:4, 12:4, 13:10, 13:11, 13:12, 13:20, 16:6, 16:8, 19:13, 20:17, 20:23, 138:23, 170:7

**clear** [8] - 6:10, 24:1, 71:2, 122:10, 141:19, 150:10, 161:11, 165:22

**CLEMMER** [16] - 2:4, 2:5, 2:6, 2:9, 2:10, 2:12, 2:14, 2:15, 28:19, 29:15, 101:15, 102:2, 109:23, 113:18, 138:14, 149:8

**Clemmer** [32] - 23:15, 23:24, 24:13, 25:3, 25:9, 25:13, 26:25, 27:3, 28:12, 28:13, 28:14, 28:24, 29:6, 29:17, 29:18, 39:24, 41:5, 43:24, 46:19, 50:19, 57:4, 65:9, 67:10, 88:20, 96:25, 98:9, 113:4, 113:19, 129:2, 152:4, 152:7, 155:7

**Clemmer's** [4] - 27:9, 29:4, 93:24, 161:13

**CLERK** [15] - 5:1, 8:9, 28:17, 28:21, 29:1, 56:13, 56:19, 56:23, 93:5, 93:15, 93:20, 152:22, 152:25, 170:1, 170:25

**clerk** [4] - 17:17, 17:24, 18:21, 153:3

**client** [5] - 51:10, 54:13, 54:15, 54:20, 70:9

**clients** [1] - 9:10

**clock** [1] - 167:22

**close** [3] - 13:19, 153:7, 167:23

**closing** [4] - 19:18, 161:25, 166:23, 171:7

**closings** [1] - 7:14

**Club** [10] - 60:10, 61:16, 61:21, 61:22, 62:12, 62:13, 64:7, 70:17, 85:11, 97:4

**club** [4] - 58:21, 58:24, 59:2, 60:7

**CMECF** [1] - 6:20

**co** [1] - 20:20

**co-counsel** [1] - 20:20

**code** [7] - 52:9, 72:14,

54:4, 162:7

**charge** [6] - 61:20, 104:23, 105:5, 132:14, 171:17, 172:1

**charged** [2] - 114:21, 132:4

**charges** [1] - 172:13

**chastised** [1] - 111:6

**chat** [1] - 16:25

**check** [49] - 26:3, 26:6, 26:7, 26:9, 26:11, 33:23, 38:22, 38:24, 38:25, 39:2, 39:4, 58:8, 58:10, 63:6, 64:6, 64:11, 64:16, 64:19, 64:22, 70:10, 71:10, 71:11, 76:4, 76:8, 80:17, 80:24, 81:13, 81:16, 81:21, 82:2, 82:7, 82:15, 83:6, 83:7, 83:8, 83:12, 88:22, 90:9, 92:18, 97:3, 97:21, 102:5, 102:10, 102:25, 103:3, 103:14, 159:24

**checked** [1] - 35:11

**checking** [1] - 24:9

**checks** [2] - 125:22, 125:23

**chosen** [2] - 35:22

**Christine** [1] - 41:5

**circled** [3] - 54:20, 55:8, 63:3

**circumstances** [5] - 15:17, 22:15, 146:5, 155:7, 167:21

**circumstantial** [4] - 10:8, 10:9, 10:14, 160:15

**cite** [1] - 162:20

**City** [5] - 12:3, 13:4, 13:11, 15:10, 20:21

**CITY** [1] - 1:2

**civil** [2] - 12:3, 12:18

**claim** [6] - 13:25, 154:12, 154:25, 159:17, 166:12, 166:21

**claims** [2] - 12:8, 13:5

**clarification** [2] - 6:18, 98:22

**clarified** [1] - 98:24

**clarifies** [1] - 5:21

**clarify** [2] - 124:12, 129:6

**clarifying** [4] - 18:16, 19:4, 150:21, 150:24

87:13, 125:16, 141:2, 141:5, 141:8

**codes** [44] - 35:19, 35:22, 36:13, 36:16, 37:2, 50:21, 50:22, 51:1, 51:20, 51:21, 51:23, 51:25, 52:16, 54:12, 61:24, 61:25, 62:19, 62:20, 72:2, 72:4, 76:6, 81:3, 85:23, 85:24, 97:6, 97:7, 106:6, 122:23, 123:1, 123:18, 124:1, 125:9, 125:12, 140:22, 140:23, 141:10, 141:18, 160:4, 160:5, 160:8, 160:10

**COHEN** [173] - 1:14, 2:5, 2:9, 2:14, 5:25, 6:4, 6:22, 7:16, 7:24, 20:12, 20:18, 28:12, 29:3, 29:11, 29:14, 29:15, 36:8, 36:9, 37:1, 40:18, 40:25, 41:2, 41:3, 43:10, 43:16, 43:18, 43:22, 42:23, 46:1, 46:10, 46:17, 46:18, 48:6, 48:11, 48:13, 49:16, 49:21, 50:12, 50:18, 53:11, 53:17, 56:8, 56:21, 57:2, 57:3, 57:22, 58:4, 59:19, 61:9, 61:14, 63:23, 64:4, 66:19, 66:24, 69:25, 70:5, 73:4, 73:6, 73:12, 73:20, 74:2, 74:7, 75:18, 75:24, 77:14, 78:8, 79:14, 79:23, 79:24, 81:20, 81:24, 82:1, 82:22, 83:2, 84:2, 84:7, 84:12, 84:15, 87:4, 87:9, 88:12, 88:19, 89:6, 89:19, 90:22, 91:1, 91:8, 91:10, 92:7, 92:13, 92:23, 93:8, 93:18, 93:25, 94:1, 94:14, 94:20, 98:19, 98:24, 99:9, 101:7, 102:1, 102:3, 104:4, 104:10, 105:11, 105:13, 106:8, 106:14, 106:22, 107:4, 108:6, 108:12, 109:16, 110:3, 110:19, 110:23, 111:16, 111:20, 112:18,

113:3, 113:13, 121:13, 123:13, 128:22, 135:20, 135:24, 137:12, 138:13, 138:14, 139:15, 139:17, 141:19, 141:21, 143:7, 143:13, 143:15, 144:10, 144:11, 146:12, 146:18, 147:15, 148:2, 148:10, 148:11, 149:6, 150:4, 150:19, 152:2, 152:11, 152:19, 153:4, 153:11, 153:22, 155:12, 159:20, 159:23, 161:7, 161:9, 163:3, 165:21, 166:10, 167:5, 167:12, 167:16, 167:25, 169:12, 169:16, 169:23, 169:25, 170:8, 171:5, 172:14

**Cohen** [18] - 20:16, 20:17, 20:19, 27:21, 28:11, 56:6, 57:1, 73:18, 77:13, 79:19, 92:21, 122:25, 143:12, 149:13, 150:1, 155:11, 169:10, 170:6

**collateral** [1] - 23:8

**collectively** [1] - 18:10

**coming** [4] - 23:15, 114:7, 116:15, 165:6

**comment** [1] - 47:5

**comments** [8] - 41:11, 44:2, 46:22, 48:16, 50:20, 51:5, 51:16, 67:6

**commercial** [2] - 13:1, 47:14

**common** [3] - 10:21, 162:7, 162:19

**communicate** [8] - 16:24, 37:9, 37:11, 37:12, 51:25, 86:12, 90:5, 133:10

**communicated** [12] - 37:3, 37:5, 37:16, 55:18, 56:3, 69:3, 80:19, 107:7, 122:11, 126:13, 132:25, 142:25

**communicating** [6] - 23:17, 23:20, 41:17, 105:18, 108:2,

143:18

**communication** [20] - 40:11, 43:3, 45:21, 47:3, 47:24, 62:9, 63:8, 64:13, 65:1, 67:25, 80:13, 88:24, 89:8, 89:10, 92:3, 105:1, 105:20, 131:20, 133:7, 134:22

**communications** [11] - 26:13, 26:16, 39:10, 39:12, 80:10, 108:13, 126:2, 132:18, 133:11, 141:3, 145:5

**companies** [1] - 20:24

**company** [32] - 13:1, 13:2, 20:23, 21:12, 22:3, 22:7, 22:16, 22:17, 23:1, 24:5, 24:7, 24:8, 24:12, 26:3, 27:13, 27:14, 27:18, 30:13, 31:21, 31:23, 32:4, 33:7, 35:8, 42:11, 47:15, 65:14, 67:9, 98:4, 104:20, 105:8, 113:5, 114:25, 115:2, 115:21, 121:23, 127:5, 129:13, 129:14, 129:16, 129:20, 133:23, 140:1, 140:11

**comparative** [1] - 74:8

**comparing** [1] - 11:3

**comparison** [1] - 87:10

**competent** [1] - 157:5

**complained** [2] - 159:8, 160:23

**complaining** [3] - 86:13, 86:19, 90:4

**Complaint** [1] - 160:19

**complaints** [7] - 69:20, 71:3, 71:4, 142:7, 142:8, 142:18, 143:1

**complete** [1] - 114:6

**completed** [1] - 26:7

**completely** [4] - 154:22, 154:23, 155:18, 156:24

**completes** [1] - 20:9

**complying** [1] - 54:14

**comprise** [1] - 110:18

**comprising** [1] - 40:14

**concentrate** [1] -

19:24

concept [2] - 33:5, 162:8

concerned [2] - 7:11, 132:19

concerns [1] - 154:1

conclude [1] - 10:11

concluded [1] - 21:9

conduct [6] - 15:20, 15:21, 15:24, 16:11, 23:22, 27:17

conference [1] - 172:1

confidence [1] - 11:5

confirm [2] - 25:19, 159:3

confirmation [4] - 49:14, 82:14, 92:17, 159:10

confirmed [1] - 160:21

confused [1] - 99:5

connected [1] - 17:7

conscious [1] - 166:18

consent [2] - 14:5, 14:21

consider [6] - 10:13, 10:22, 35:5, 79:20, 154:20, 168:25

consideration [1] - 34:25

considered [5] - 9:6, 9:21, 12:7, 31:7, 159:6

consist [1] - 9:1

consistent [3] - 140:19, 158:11, 169:5

consisting [1] - 112:25

constantly [1] - 29:8

constituted [2] - 14:3, 14:19

constitutes [1] - 161:17

Consumer [3] - 13:6, 13:21, 21:25

contact [5] - 25:12, 25:17, 67:18, 119:18, 131:9

contacted [2] - 24:12, 37:16

contains [1] - 8:1

contemporaneous [1] - 26:25

content [6] - 38:4, 74:19, 85:25, 91:18, 101:3, 104:25

contentious [1] - 79:12

contents [2] - 73:9,

80:20

continual [1] - 77:3

continue [5] - 57:1, 93:17, 93:24, 146:22, 170:14

CONTINUED [2] - 2:8, 102:2

continuing [1] - 140:8

contractor [1] - 24:24

contracts [2] - 24:6, 31:21

contractually [2] - 24:7, 31:23

contradiction [1] - 11:1

contradicts [1] - 10:25

contrary [3] - 123:7, 136:4, 136:6

contrasted [1] - 23:7

control [2] - 15:7, 15:24

conversation [13] - 17:8, 64:6, 76:3, 76:19, 77:18, 80:2, 80:3, 80:7, 80:16, 80:17, 88:21, 133:20, 139:3

conversational [2] - 77:20, 78:19

conversations [2] - 79:1, 157:15

convey [1] - 107:12

conveyed [1] - 134:22

COOPER [1] - 1:9

coordinate [1] - 35:9

copied [5] - 137:21, 138:2, 138:4, 149:10, 149:12

copies [11] - 11:21, 18:8, 43:7, 48:4, 50:9, 53:9, 63:21, 66:16, 73:25, 107:24, 150:15

Copy [2] - 99:12, 99:19

copy [28] - 6:15, 26:5, 26:7, 26:10, 29:4, 39:1, 40:15, 57:11, 61:3, 64:16, 70:8, 75:6, 81:13, 83:9, 83:12, 87:1, 87:16, 88:9, 94:6, 94:12, 95:7, 96:21, 121:12, 121:23, 125:22, 167:15, 169:22, 171:19

copying [1] - 137:23

core [1] - 160:19

corporate [1] - 15:23

corporation [2] -

15:13, 15:17

corporation's [1] - 15:18

Correct [9] - 115:1, 116:7, 122:13, 125:10, 126:24, 129:21, 134:14, 136:12, 136:14

correct [30] - 1:23, 45:10, 54:18, 57:16, 74:12, 74:25, 75:6, 76:1, 84:13, 97:7, 104:22, 105:5, 109:2, 121:8, 122:15, 123:18, 123:23, 124:24, 125:9, 125:21, 125:22, 131:1, 133:22, 133:24, 134:10, 135:11, 135:14, 138:6, 153:4, 165:3

corrections [1] - 54:3

correctly [14] - 44:8, 48:20, 51:3, 54:9, 58:17, 70:21, 76:16, 83:16, 85:5, 85:12, 86:10, 133:22, 140:3, 140:13

corresponding [2] - 59:21, 66:11

cost [2] - 24:16, 33:24

counsel [16] - 6:24, 18:16, 19:14, 20:10, 20:20, 36:21, 78:17, 79:9, 111:9, 114:11, 122:23, 138:18, 138:19, 145:15, 155:1, 158:10

Counsel [3] - 1:15, 1:17, 20:19

counsel's [1] - 78:23

counterevidence [1] - 7:4

counties [6] - 70:19, 70:20, 71:20, 74:12, 76:6, 81:2

Counties [1] - 83:16

couple [2] - 138:15, 165:21

course [5] - 8:22, 79:8, 82:17, 150:14, 172:4

court [3] - 18:23, 30:16, 56:18

COURT [193] - 1:1, 5:2, 5:4, 5:11, 6:1, 6:3, 6:6, 6:9, 6:13, 6:15, 6:23, 7:20, 7:25, 8:11, 8:14,

20:14, 27:21, 28:4, 28:14, 29:10, 29:13, 36:2, 36:6, 36:24, 40:20, 40:22, 41:1, 43:13, 43:17, 43:20, 46:3, 46:5, 46:8, 46:12, 46:14, 48:9, 49:19, 50:15, 53:14, 56:6, 56:9, 56:13, 56:15, 56:19, 56:20, 56:22, 56:23, 56:25, 57:24, 58:1, 59:15, 59:17, 61:12, 64:1, 66:22, 70:3, 72:22, 72:24, 73:5, 73:14, 73:18, 74:5, 75:21, 77:1, 77:13, 78:5, 78:9, 78:25, 79:6, 79:15, 79:17, 81:18, 81:23, 82:24, 84:5, 84:14, 87:7, 88:14, 88:16, 89:2, 89:16, 91:3, 91:6, 92:10, 92:21, 92:25, 93:7, 93:13, 93:16, 93:17, 93:19, 93:22, 94:17, 99:1, 99:6, 101:11, 101:14, 101:24, 104:7, 105:10, 105:12, 106:11, 106:24, 107:1, 108:9, 109:19, 109:22, 110:20, 110:22, 111:8, 112:10, 112:12, 112:17, 112:19, 112:24, 113:15, 117:3, 117:6, 117:9, 119:10, 121:17, 129:2, 136:3, 137:17, 138:9, 138:12, 139:16, 141:20, 143:14, 144:8, 145:9, 145:15, 145:17, 146:17, 146:21, 147:6, 147:9, 147:24, 148:3, 148:7, 149:7, 150:7, 150:18, 150:20, 151:8, 151:11, 151:14, 151:18, 151:20, 151:23, 152:3, 152:10, 152:15, 152:20, 153:1, 153:2, 153:5, 153:13, 153:16, 154:3, 154:8, 155:11, 157:2, 158:19, 159:18, 159:21, 160:2,

160:8, 161:4, 161:8, 162:23, 164:12, 165:3, 165:13, 165:16, 166:8, 167:1, 167:10, 167:14, 167:17, 168:16, 169:4, 169:9, 169:13, 169:19, 169:24, 170:3, 170:10, 171:2, 171:9, 171:13, 171:17, 172:15

Court [27] - 8:20, 9:4, 9:20, 19:19, 20:19, 22:3, 22:7, 22:19, 22:23, 23:6, 23:7, 77:23, 93:11, 146:14, 160:25, 161:21, 161:22, 162:20, 162:21, 164:4, 166:5, 166:20, 167:5, 168:1, 168:4, 168:13, 169:16

Court's [7] - 9:13, 11:12, 16:19, 165:25, 166:7, 166:10, 167:24

courthouse [2] - 17:5, 167:6

COURTHOUSE [1] - 1:8

courtroom [8] - 10:4, 10:6, 10:22, 21:21, 27:15, 56:14, 56:24, 169:17

cover [21] - 43:6, 45:10, 48:14, 50:8, 61:23, 63:18, 73:24, 74:17, 75:5, 75:12, 90:14, 94:6, 99:2, 99:15, 99:23, 99:24, 103:23, 104:1, 107:19, 138:15, 143:4

covered [3] - 42:14, 77:18, 143:24

craft [1] - 8:8

create [3] - 26:8, 26:11, 112:4

created [7] - 27:5, 40:11, 43:3, 47:8, 120:9, 121:12

creating [1] - 38:24

creation [2] - 64:22, 120:4

credibility [8] - 10:18, 10:20, 10:23, 11:3, 155:15, 166:16,

166:23, 166:25
**criminal** [1] - 12:16
**criticizing** [1] - 147:17
**CROSS** [2] - 2:12,
113:18
**cross** [10] - 18:16,
19:15, 19:17, 99:6,
113:16, 154:13,
156:9, 156:23,
157:13, 158:14
**cross-examination**
[4] - 113:16, 154:13,
156:23, 158:14
**CROSS-**
**EXAMINATION** [2] -
2:12, 113:18
**cross-examine** [2] -
19:15, 19:17
**cross-examined** [1] -
18:16
**crossed** [2] - 60:15,
102:15
**CRR** [2] - 1:24, 1:25
**curious** [1] - 151:23
**current** [1] - 30:7
**custom** [11] - 145:1,
146:15, 146:23,
147:19, 147:22,
148:1, 148:9,
148:24, 150:1,
156:15, 157:8
**cut** [1] - 45:16
**cutoff** [2] - 44:25,
45:13

**D**

**daily** [1] - 145:2
**damages** [2] - 13:24,
22:12
**Dan** [1] - 20:19
**DANIEL** [1] - 1:14
**Daniel** [1] - 20:16
**date** [27] - 35:13, 41:8,
49:10, 50:5, 55:8,
55:16, 59:20, 59:21,
59:22, 74:15, 84:19,
85:18, 89:21, 94:24,
95:7, 96:17, 101:6,
102:4, 102:5,
102:11, 102:13,
102:18, 103:9,
103:11, 141:23
**dated** [17] - 47:25,
53:24, 59:8, 60:25,
65:1, 66:9, 69:14,
79:25, 83:21, 90:15,
94:7, 98:13, 103:23,
104:11, 107:20,

127:16, 130:5
**dates** [5] - 134:17,
134:21, 141:10,
158:25, 159:1
**David** [85] - 5:18, 13:1,
13:8, 13:13, 13:19,
14:22, 14:25, 16:2,
21:1, 21:19, 21:22,
22:3, 22:7, 22:10,
23:13, 24:5, 24:9,
24:12, 24:23, 25:21,
27:12, 29:21, 30:3,
30:9, 31:5, 31:19,
32:1, 32:14, 34:20,
35:5, 35:18, 36:11,
38:11, 38:20, 39:11,
42:15, 44:12, 47:8,
52:5, 52:11, 53:21,
57:12, 64:16, 65:14,
65:16, 67:21, 68:4,
68:8, 68:21, 69:19,
72:11, 81:13, 82:5,
82:16, 82:18, 83:8,
89:11, 92:3, 92:15,
95:16, 98:4, 102:4,
106:17, 113:4,
114:17, 114:21,
117:19, 118:17,
122:10, 129:13,
135:13, 139:21,
141:1, 142:7, 142:8,
142:18, 142:25,
144:18, 145:2,
148:13, 149:10,
151:9, 155:10,
156:15, 166:1
**DAVID** [1] - 1:5
**day-to-day** [1] -
148:12
**days** [6] - 26:15,
43:25, 69:17, 69:19,
71:3, 83:13
**dealing** [3] - 147:16,
155:20, 156:3
**debit** [3] - 64:10,
65:22, 76:8
**decide** [5] - 10:5,
10:15, 69:7, 105:15,
168:1
**decided** [23] - 36:16,
38:1, 38:14, 38:18,
47:17, 48:17, 48:22,
48:23, 52:4, 65:6,
81:9, 85:7, 85:14,
85:18, 87:24, 89:21,
98:1, 100:5, 119:3,
120:19, 141:24,
141:25, 163:13
**deciding** [2] - 52:8,
165:20

**decision** [29] - 15:8,
25:23, 34:21, 37:7,
38:3, 47:7, 52:13,
55:6, 62:12, 65:19,
65:20, 70:24, 71:7,
71:14, 71:17, 71:20,
80:23, 97:12, 97:15,
105:6, 141:6,
142:14, 142:15,
142:17, 142:20,
142:24, 148:19,
164:13, 166:18
**decision-maker** [2] -
25:23, 38:3
**decisions** [6] - 23:12,
62:17, 141:13,
142:2, 162:6, 164:9
**declaration** [1] -
120:14
**deem** [1] - 11:2
**deemed** [1] - 12:19
**defendant** [19] -
12:12, 12:15, 14:1,
14:4, 14:7, 14:12,
19:14, 19:15, 21:7,
21:20, 23:1, 27:24,
28:8, 78:20, 111:22,
155:10, 163:10,
163:13, 163:17
**Defendant** [5] - 5:23,
14:24, 15:3, 16:7,
16:10
**defendant's** [1] -
170:13
**Defendants** [2] - 1:7,
1:17
**defending** [1] - 168:21
**defer** [1] - 28:6
**deficiency** [1] -
168:24
**defined** [1] - 13:12
**definitely** [3] - 167:12,
167:13, 168:11
**definition** [3] - 8:2,
8:3, 13:20
**deflated** [1] - 156:6
**degree** [1] - 11:5
**Delaware** [1] - 70:19
**deliberate** [2] - 16:15,
19:20
**deliberating** [1] -
18:12
**deliberations** [3] -
15:8, 17:13, 166:24
**demanding** [1] -
128:24
**demeanor** [1] - 10:23
**demonstrate** [1] -
15:3
**deny** [2] - 157:3,

158:14
**department** [5] -
31:11, 62:2, 114:25,
115:8, 115:10
**departments** [1] -
115:2
**depo** [1] - 112:8
**deposed** [2] - 23:24,
113:19
**deposit** [2] - 26:12,
83:12
**depositing** [1] - 92:18
**deposition** [17] -
11:24, 29:4, 30:18,
38:7, 40:5, 111:1,
111:2, 111:4, 112:1,
114:14, 116:23,
117:14, 119:7,
119:13, 121:20,
139:11, 158:10
**depositions** [2] -
11:23, 23:24
**DEPUTY** [15] - 5:1,
8:9, 28:17, 28:21,
29:1, 56:13, 56:19,
56:23, 93:5, 93:15,
93:20, 152:22,
152:25, 170:1,
170:25
**deputy** [2] - 18:21,
153:3
**describe** [1] - 103:18
**described** [2] - 23:7,
134:13
**describing** [2] -
111:20, 120:23
**description** [6] - 5:14,
5:16, 12:22, 28:2,
62:8, 103:15
**designation** [1] -
112:6
**desired** [1] - 26:1
**desk** [1] - 171:18
**detailed** [1] - 15:6
**details** [4] - 56:2,
139:5, 141:22,
157:12
**determine** [4] - 16:1,
16:9, 18:22, 129:23
**determined** [4] - 5:19,
25:24, 25:25, 26:1
**determining** [2] -
10:18, 154:21
**develop** [1] - 73:18
**difference** [3] - 49:23,
105:25, 150:6
**differences** [10] -
72:18, 73:1, 73:2,
73:7, 73:10, 87:12,
90:19, 91:2, 91:7,

91:17
**different** [9] - 27:13,
59:10, 60:7, 73:8,
107:25, 115:4,
130:1, 156:3
**differently** [1] - 12:10
**DIRE** [4] - 2:6, 2:10,
101:15, 109:23
**dire** [2] - 101:14,
109:20
**direct** [24] - 10:7, 10:8,
10:14, 15:19, 23:2,
23:11, 27:10, 93:11,
128:16, 128:23,
134:4, 135:19,
154:14, 155:1,
155:15, 155:19,
155:21, 156:2,
156:5, 156:8,
156:11, 168:8,
168:12
**DIRECT** [4] - 2:5, 2:8,
29:15, 102:2
**directed** [3] - 154:7,
155:9, 161:6
**direction** [1] - 157:18
**directly** [1] - 22:17
**director** [1] - 15:23
**disagreement** [2] -
171:23, 171:24
**discovery** [5] - 11:8,
11:10, 11:11, 11:15,
23:22
**discuss** [9] - 12:2,
16:13, 16:14, 17:11,
17:19, 17:20, 72:18,
170:15, 170:16
**discussed** [3] -
116:10, 133:15,
138:16
**discussing** [1] - 18:20
**discussion** [1] - 17:9
**dispute** [3] - 11:14,
14:16, 78:10
**disputed** [2] - 14:24,
78:25
**disputes** [1] - 172:13
**disregard** [3] - 9:21,
9:25, 158:7
**disregarded** [2] -
10:4, 160:14, 160:17
**distribute** [1] - 17:25
**District** [1] - 163:9
**DISTRICT** [3] - 1:1,
1:1, 1:11
**division** [1] - 115:23
**document** [40] -
11:20, 40:11, 42:12,
43:3, 45:9, 45:19,
47:22, 49:12, 50:2,

draw [1] - 50:1
drawing [3] - 41:4, 46:19, 48:14
drew [1] - 139:10
drop [1] - 61:17
duly [1] - 28:19
during [9] - 8:22, 11:9, 11:10, 13:15, 16:5, 16:12, 17:21, 19:24, 145:3
duties [1] - 31:9
duty [3] - 8:17, 158:6

## E

e-mail [6] - 60:25, 63:8, 107:9, 107:10, 122:14, 134:9
e-mails [3] - 80:13, 137:20, 137:22
effect [1] - 156:22
effective [1] - 155:18
either [3] - 7:9, 68:23, 146:9
either/or [3] - 23:5, 168:7, 168:9
electing [1] - 28:6
electronic [5] - 26:9, 26:11, 26:12, 39:3, 58:10
elements [3] - 16:7, 16:9, 154:11
elevators [1] - 17:6
embroiled [1] - 132:14
Emmett [1] - 27:23
EMMETT [1] - 1:16
emphasis [4] - 127:7, 128:1, 142:13, 142:16
emphasize [1] - 132:16
emphatically [2] - 130:19, 131:15
employed [6] - 29:21, 29:23, 29:25, 30:3, 117:19, 139:21
employment [3] - 30:7, 31:19, 34:19
enclosed [6] - 41:13, 41:23, 76:4, 80:17, 88:22, 97:3
encompassed [1] - 135:8
encounter [1] - 25:6
END [2] - 112:20, 148:6
end [14] - 7:9, 7:23, 10:12, 10:19, 15:7, 16:15, 17:14, 18:12,

documents [32] - 9:2, 11:21, 19:22, 23:23, 26:24, 27:5, 27:7, 27:9, 32:22, 34:5, 38:7, 43:8, 56:1, 78:4, 80:12, 98:16, 107:5, 107:19, 107:22, 107:23, 110:18, 111:13, 111:14, 111:21, 111:22, 112:22, 114:7, 114:11, 138:18, 160:2, 171:11
dollar [1] - 60:4
Don [1] - 137:9
done [33] - 5:11, 10:24, 21:5, 21:7, 21:8, 26:16, 27:2, 34:22, 35:9, 38:24, 39:6, 63:9, 79:11, 93:10, 104:23, 118:12, 124:13, 132:3, 135:25, 140:24, 144:14, 144:17, 145:4, 146:2, 147:14, 152:7, 152:9, 154:17, 154:18, 163:7, 167:8
doubt [2] - 12:17, 166:6
down [18] - 5:22, 18:3, 56:12, 58:22, 59:18, 63:5, 76:18, 102:10, 125:18, 126:5, 138:22, 138:24, 147:19, 152:5, 152:8, 164:1, 164:2, 164:4
downstairs [2] - 93:1, 170:20
Draft [3] - 5:16, 5:24, 8:1
draft [4] - 6:17, 7:25, 105:14, 171:17
drag [1] - 77:25
drags [1] - 77:23

19:11, 21:3, 79:16, 95:8, 139:19, 163:6
ended [1] - 77:22
ends [6] - 22:22, 162:9, 162:16, 162:22, 162:24, 169:5
engage [2] - 17:8, 114:17
engaged [1] - 13:2
enjoy [2] - 8:7, 93:4
ensure [1] - 144:22
enter [2] - 24:6, 31:20
entered [2] - 22:7, 56:24
ENTERS [3] - 8:10, 93:21, 170:2
enters [1] - 6:16
entire [3] - 22:22, 78:13, 160:13
entities [2] - 13:13, 98:6
entitled [3] - 78:21, 78:22, 159:16
entitles [1] - 61:22
entity [2] - 14:8, 14:11
envision [1] - 152:14
equals [1] - 50:25
erroneously [1] - 159:8
error [1] - 137:14
errors [1] - 164:23
ESQUIRE [3] - 1:14, 1:14, 1:16
essentially [2] - 30:15, 49:5
establish [2] - 145:20, 147:21
established [4] - 12:20, 13:14, 47:16, 161:17
establishment [1] - 148:1
et [3] - 1:6, 42:11, 145:14
evaluate [2] - 11:5, 11:6
evening [6] - 62:4, 62:25, 64:10, 65:20, 161:21, 167:12
event [1] - 168:19
events [6] - 30:2, 30:12, 32:18, 113:24, 114:6, 121:2
evidence [95] - 7:3, 7:4, 8:18, 8:25, 9:5, 9:8, 9:9, 9:11, 9:12, 9:17, 9:21, 10:4, 10:5, 10:7, 10:8, 10:10, 10:14, 10:21,

11:4, 12:6, 12:7, 12:10, 12:11, 12:21, 15:9, 15:11, 16:4, 17:12, 18:11, 19:9, 19:12, 19:19, 19:22, 21:9, 23:2, 23:10, 26:23, 27:19, 40:23, 43:14, 43:21, 46:6, 46:9, 46:15, 48:10, 49:19, 50:16, 53:15, 58:2, 61:12, 64:2, 66:22, 70:3, 74:5, 75:22, 82:25, 84:5, 87:7, 88:17, 91:6, 92:11, 94:18, 99:7, 101:24, 104:8, 106:12, 107:2, 108:10, 112:25, 150:23, 154:9, 154:21, 157:7, 157:18, 160:15, 160:24, 161:2, 161:5, 163:20, 165:2, 165:3, 165:5, 165:11, 165:19, 165:24, 166:13, 167:18, 169:22, 170:12, 170:15
EVIDENCE [58] - 3:6, 3:7, 3:8, 3:9, 3:10, 3:11, 3:12, 3:13, 3:15, 3:16, 3:17, 3:18, 3:19, 3:20, 3:21, 3:22, 3:23, 3:24, 3:25, 4:1, 4:2, 4:3, 4:4, 4:5, 4:6, 4:7, 4:8, 4:9, 4:10, 40:24, 43:15, 46:7, 46:16, 48:12, 49:20, 50:17, 53:16, 58:3, 61:13, 64:3, 66:23, 70:4, 74:6, 75:23, 83:1, 84:6, 87:8, 88:18, 91:9, 92:12, 94:19, 99:8, 101:25, 104:9, 106:13, 107:3, 108:11, 113:2
Evidence [1] - 146:16
evidentiary [2] - 147:20, 168:24
exact [1] - 83:9
exactly [5] - 18:7, 33:24, 101:18, 119:25, 146:3
exam [1] - 154:14
examination [4] - 113:16, 154:13, 156:23, 158:14
EXAMINATION [16] - 2:5, 2:6, 2:8, 2:10,

2:12, 2:14, 2:15, 29:15, 101:15, 102:2, 109:23, 113:18, 138:14, 149:8
examine [2] - 19:15, 19:17
examined [2] - 18:15, 18:16
example [7] - 10:2, 16:21, 128:14, 128:23, 129:4, 129:5, 129:10
except [8] - 32:20, 57:15, 58:7, 72:18, 77:17, 98:24, 101:1, 122:12
exceptions [2] - 13:24, 14:6
exchange [1] - 11:11
exciting [2] - 26:21, 26:22
exclamation [1] - 81:8
excludes [1] - 9:20
exclusion [1] - 124:19
excuse [7] - 28:1, 56:6, 92:21, 122:9, 135:9, 163:4, 168:18
excused [2] - 152:15, 171:3
exhibit [17] - 20:2, 51:7, 51:9, 51:16, 66:11, 67:16, 83:7, 88:16, 90:7, 99:7, 110:24, 124:23, 125:7, 127:13, 130:23, 143:17
EXHIBIT [57] - 3:4, 3:6, 3:7, 3:8, 3:9, 3:10, 3:11, 3:12, 3:13, 3:16, 3:17, 3:18, 3:19, 3:20, 3:21, 3:22, 3:23, 3:24, 3:25, 4:1, 4:2, 4:3, 4:4, 4:5, 4:6, 4:7, 4:8, 4:9, 4:10, 40:24, 43:15, 46:7, 46:16, 48:12, 49:20, 50:17, 53:16, 61:13, 64:3, 66:23, 70:4, 74:6, 75:23, 83:1, 84:6, 87:8, 88:18, 91:9, 92:12, 94:19, 99:8, 101:25, 104:9, 106:13, 107:3, 108:11, 113:2
Exhibit [147] - 40:2, 40:8, 40:10, 40:15, 40:19, 40:22, 41:5, 42:8, 42:18, 42:21,

42:24, 43:1, 43:11, 43:13, 44:25, 45:7, 45:9, 45:10, 45:12, 45:18, 46:2, 46:5, 46:11, 46:20, 47:10, 47:19, 48:7, 48:9, 48:15, 49:1, 49:5, 49:6, 49:8, 49:12, 49:17, 49:19, 50:2, 50:13, 50:15, 52:21, 52:25, 53:12, 53:14, 54:11, 54:12, 54:17, 54:22, 55:19, 55:21, 57:17, 57:19, 58:1, 60:2, 60:3, 60:6, 60:22, 61:10, 63:12, 63:24, 64:1, 65:1, 66:4, 67:25, 68:3, 68:24, 69:3, 69:12, 69:22, 70:1, 72:16, 73:13, 73:21, 74:9, 75:19, 75:21, 79:25, 81:12, 82:9, 82:24, 83:3, 83:18, 84:3, 84:5, 86:21, 87:7, 88:2, 88:13, 89:20, 90:12, 91:24, 92:10, 94:3, 94:15, 94:17, 98:9, 98:20, 98:22, 99:14, 99:21, 99:23, 100:1, 100:8, 100:16, 101:3, 101:8, 102:11, 103:8, 103:9, 103:12, 103:14, 103:20, 104:5, 104:7, 105:23, 106:5, 106:9, 106:11, 106:15, 106:23, 107:15, 108:7, 108:9, 109:4, 109:17, 111:22, 112:1, 112:7, 112:13, 112:23, 112:24, 122:16, 124:2, 124:21, 126:17, 127:11, 129:10, 130:3, 130:22, 130:25, 133:8, 134:7, 136:15, 151:6, 151:11

**Exhibits** [4] - 45:24, 57:23, 90:20, 106:1

**exhibits** [16] - 9:3, 19:21, 29:5, 29:8, 40:1, 40:4, 40:5, 52:20, 76:20, 128:25, 137:25, 142:5, 143:23, 169:17, 169:21, 171:11

**EXHIBITS** [2] - 3:14, 58:3

**exist** [1] - 10:11

**exists** [1] - 27:13

**exited** [1] - 56:14

**EXITS** [3] - 93:6, 152:23, 171:1

**expect** [2] - 24:3, 171:15

**expectation** [1] - 152:12

**expenditure** [1] - 157:23

**experience** [1] - 82:5

**explain** [5] - 38:23, 96:14, 111:9, 147:18, 169:13

**explained** [1] - 103:14

**explaining** [2] - 7:18, 7:23

**explanation** [1] - 19:1

**explore** [2] - 99:6, 136:6

**exposed** [2] - 113:9, 113:10

**extended** [1] - 170:5

**extent** [5] - 32:21, 38:11, 38:12, 109:13, 144:2

**extra** [3] - 52:10, 52:11, 136:5

**extraordinarily** [1] - 154:13

**eyewitness** [1] - 10:9

## F

**Facebook** [1] - 17:1

**faces** [1] - 153:21

**facsimile** [8] - 13:3, 14:2, 14:8, 14:17, 15:4, 16:3, 16:10, 47:24

**fact** [19] - 10:9, 12:19, 18:8, 22:12, 30:25, 69:23, 74:21, 75:2, 77:18, 78:25, 86:12, 94:10, 99:21, 101:9, 135:1, 142:7, 149:15, 159:11, 161:17

**facts** [12] - 7:2, 8:18, 8:19, 8:20, 9:1, 9:3, 10:10, 10:11, 11:12, 12:7, 14:15, 136:7

**factual** [2] - 161:9, 161:10

**failed** [1] - 18:7

**fails** [2] - 12:14, 16:6

**failure** [3] - 162:12, 162:15, 165:2

**failures** [1] - 162:15

**fair** [4] - 8:6, 26:18, 142:23, 167:1

**faithful** [1] - 7:21

**fall** [1] - 148:23

**familiar** [5] - 33:10, 45:19, 47:22, 82:11, 86:22

**family** [1] - 17:16

**far** [16] - 7:11, 33:4, 35:15, 36:10, 38:6, 38:17, 45:15, 53:19, 53:24, 76:20, 77:10, 79:11, 91:16, 146:24, 161:19, 165:22

**fatal** [1] - 164:19

**favorable** [2] - 12:11

**Fax** [1] - 46:21

**fax** [220] - 7:19, 13:6, 13:23, 14:13, 14:18, 14:20, 15:1, 20:25, 21:18, 21:23, 21:24, 22:1, 22:5, 22:6, 22:24, 23:3, 23:4, 23:11, 23:17, 24:1, 24:11, 24:14, 25:7, 25:9, 25:21, 26:1, 26:3, 26:4, 26:7, 26:8, 32:13, 32:15, 33:5, 33:13, 33:18, 35:1, 36:10, 36:17, 37:20, 38:1, 38:13, 38:21, 39:10, 40:15, 44:3, 44:4, 44:10, 45:13, 45:21, 47:12, 49:9, 49:13, 49:23, 50:4, 53:20, 53:21, 54:4, 54:7, 54:12, 55:25, 56:3, 57:18, 58:8, 59:9, 61:20, 63:5, 63:15, 64:9, 64:25, 65:2, 65:3, 65:4, 66:8, 66:17, 66:25, 67:14, 67:17, 67:18, 67:21, 68:4, 68:7, 68:14, 69:14, 69:17, 69:23, 70:7, 70:13, 70:24, 70:25, 73:21, 74:10, 74:17, 75:5, 75:12, 75:16, 76:1, 76:6, 76:14, 76:15, 79:25, 81:3, 81:7, 81:9, 81:14, 82:20, 83:21, 85:1, 85:2, 85:7, 85:17, 85:18, 86:4, 86:5, 86:24, 87:2, 87:18, 88:6, 88:10, 88:21, 89:20, 89:25, 90:14, 90:17, 91:12, 91:19, 91:21, 92:5, 94:6, 94:10, 96:3, 96:7, 96:13, 97:2, 97:12, 97:15, 98:13, 98:17, 99:11, 99:15, 99:17, 99:23, 100:11, 101:4, 103:19, 103:23, 104:2, 104:11, 104:14, 104:25, 105:14, 106:20, 107:8, 107:9, 107:19, 108:1, 108:4, 108:15, 108:19, 108:20, 109:11, 114:16, 114:17, 114:20, 116:8, 117:19, 117:20, 118:14, 118:15, 118:21, 120:14, 121:23, 122:14, 122:22, 123:23, 126:14, 126:19, 126:21, 126:23, 127:14, 127:18, 127:19, 130:5, 130:11, 130:20, 131:8, 132:6, 132:22, 133:22, 134:9, 134:12, 134:13, 136:11, 136:16, 137:23, 139:12, 139:20, 139:22, 140:1, 140:16, 141:6, 141:7, 146:25, 148:21, 149:9, 151:11, 155:4, 156:19, 157:19, 157:21, 158:21, 161:1, 162:23, 165:10

**faxed** [13] - 26:10, 49:9, 62:2, 74:14, 74:18, 84:18, 84:22, 94:25, 95:25, 96:16, 96:20, 97:9, 140:1

**faxes** [63] - 13:15, 14:2, 14:18, 21:15, 24:16, 25:25, 38:14, 51:1, 52:15, 53:19, 58:13, 58:14, 61:18, 61:22, 61:23, 62:3, 62:7, 62:25, 63:1, 63:4, 64:7, 67:9, 68:23, 71:25, 76:5, 80:22, 80:24, 80:25, 86:24, 87:2, 87:18, 88:6, 88:10, 88:21, 89:20, 89:25, 90:14, 90:17, 91:12, 91:19, 91:21, 92:5, 94:6, 94:10, 96:3, 96:7, 96:13, 97:2, 97:12, 97:15, 98:13, 98:17, 99:11, 99:15, 99:17, 99:23, 100:11, 101:4, 103:19, 103:23, 104:2, 104:11, 104:25, 105:14, 106:20, 107:8, 107:9, 107:19, 108:1, 108:4, 108:15, 108:19, 108:20, 109:11, 114:16, 114:17, 114:20, 116:8, 117:19, 117:20, 118:14, 118:15, 118:21, 120:14, 121:23, 122:14, 122:22, 123:23, 126:14, 126:19, 126:21, 126:23, 127:14, 127:18, 127:19, 130:5, 130:11, 130:20, 131:8, 132:6, 132:22, 133:22, 134:9, 134:12, 134:13, 136:11, 136:16, 137:23, 139:12, 139:20, 139:22, 140:1, 140:16, 141:6, 141:7, 146:25, 148:21, 149:9, 151:11, 155:4, 156:19, 157:19, 157:21, 158:21, 161:1, 162:23, 165:10

86:24, 87:2, 87:18, 88:6, 88:10, 88:21, 89:20, 89:25, 90:14, 90:17, 91:12, 91:19, 91:21, 92:5, 94:6, 94:10, 96:3, 96:7, 96:13, 97:2, 97:12, 97:15, 98:13, 98:17, 99:11, 99:15, 99:17, 99:23, 100:11, 101:4, 103:19, 103:23, 104:2, 104:11, 104:14, 104:25, 105:14, 106:20, 107:8, 107:9, 107:19, 108:1, 108:4, 108:15, 108:19, 108:20, 109:11, 114:16, 114:17, 114:20, 116:8, 117:19, 117:20, 118:14, 118:15, 118:21, 120:14, 121:23, 122:22, 123:23, 126:14, 126:19, 126:21, 126:23, 127:14, 127:18, 127:19, 130:5, 130:11, 130:20, 131:8, 132:6, 132:22, 133:22, 134:9, 134:12, 134:13, 136:11, 136:16, 137:23, 139:12, 139:20, 139:22, 140:1, 140:16, 141:6, 141:7, 146:25, 148:21, 149:9, 151:11, 155:4, 156:19, 157:19, 157:21, 158:21, 161:1, 162:23, 165:10

**faxing** [8] - 44:7, 44:21, 58:7, 68:25, 80:13, 92:20, 98:5, 149:23

**FCC** [3] - 67:18, 131:10, 131:17

**fearful** [2] - 132:2, 132:13

**federal** [2] - 15:14, 162:7

**Federal** [1] - 146:16

**fee** [2] - 61:16, 64:8

**felt** [2] - 113:9, 118:24

**few** [5] - 16:11, 18:4, 72:18, 98:22, 100:10

**fifth** [2] - 164:25, 165:4

**figure** [5] - 23:13, 35:9, 134:17, 171:7, 171:21

**filled** [2] - 26:6, 137:10

**final** [7] - 7:10, 7:14, 26:5, 51:14, 54:8, 169:6, 171:25

**finalized** [1] - 62:5

**finally** [2] - 17:15, 156:13

**fine** [5] - 47:21, 56:8, 112:18, 167:14, 172:9

**finer** [1] - 7:22

**finish** [3] - 21:6, 80:11, 172:6

**firm** [2] - 117:22, 139:24

**first** [66] - 9:6, 11:16, 14:1, 15:19, 16:12, 17:17, 19:8, 25:4, 28:11, 28:22, 32:5, 35:15, 39:16, 39:19, 40:4, 40:10, 42:25, 47:5, 48:20, 51:2, 51:5, 53:20, 60:19, 62:11, 62:24, 65:4,

67:22, 68:24, 69:17, 70:23, 71:8, 76:11, 80:1, 94:21, 95:7, 97:16, 103:22, 104:13, 104:23, 112:2, 115:24, 119:18, 120:7, 120:14, 121:11, 130:24, 133:7, 140:16, 143:25, 144:2, 147:15, 147:25, 151:3, 151:24, 155:13, 159:19, 159:21, 160:3, 160:10, 161:12, 162:1, 165:17, 165:22, 171:20

**FITZPATRICK** [130] - 1:16, 2:7, 2:11, 2:13, 2:16, 5:9, 6:2, 6:5, 6:8, 6:10, 6:14, 20:13, 27:25, 35:25, 36:3, 36:19, 40:21, 43:12, 46:4, 46:13, 48:8, 49:18, 50:14, 53:13, 56:16, 57:25, 59:13, 59:16, 61:11, 63:25, 66:21, 70:2, 72:21, 72:23, 72:25, 73:15, 74:4, 75:20, 76:24, 77:3, 78:22, 79:2, 81:17, 81:22, 82:23, 84:4, 84:11, 87:6, 88:15, 89:1, 89:15, 90:24, 91:5, 92:9, 93:14, 94:16, 98:21, 99:4, 101:12, 101:15, 101:22, 104:6, 105:9, 106:10, 106:25, 108:8, 109:20, 109:23, 110:5, 111:11, 111:17, 112:11, 112:14, 112:21, 113:17, 113:18, 117:1, 117:4, 117:8, 117:11, 117:12, 118:3, 119:9, 119:11, 121:16, 121:18, 123:14, 123:16, 129:7, 129:9, 135:21, 136:1, 136:9, 137:11, 137:14, 137:18, 138:7, 138:10, 141:16, 143:8, 144:7, 145:8, 145:12, 147:5, 147:7, 147:10,

148:5, 149:8, 150:9, 150:17, 152:1, 152:14, 152:18, 153:12, 153:14, 154:6, 154:9, 158:17, 158:20, 159:25, 160:7, 160:17, 164:15, 165:8, 165:15, 167:20, 168:22, 169:7, 171:10, 171:15

**Fitzpatrick** [24] - 5:8, 26:20, 27:23, 28:6, 93:12, 113:16, 138:16, 139:10, 140:5, 142:6, 143:5, 143:16, 144:15, 152:12, 154:4, 161:22, 164:13, 165:23, 166:19, 167:15, 168:19, 171:6, 171:9

**Fitzpatrick's** [4] - 154:1, 155:13, 156:22, 161:23

**five** [15] - 30:19, 79:3, 86:5, 86:12, 89:25, 113:19, 113:25, 120:11, 121:11, 123:7, 127:20, 130:17, 139:11, 140:15, 158:10

**FLAMM** [1] - 1:16

**flatly** [1] - 162:2

**flaw** [1] - 164:19

**flip** [4] - 40:1, 52:20, 57:17, 100:16

**flow** [1] - 144:22

**focus** [2] - 49:9, 81:25

**focusing** [5] - 32:12, 34:19, 78:14, 129:1, 139:11

**follow** [21] - 8:21, 9:18, 15:8, 18:24, 19:12, 22:19, 24:15, 33:21, 35:8, 58:16, 96:21, 101:13, 118:6, 120:2, 141:7, 146:4, 146:7, 146:8, 147:22, 151:25, 162:15

**follow-up** [3] - 18:24, 101:13, 151:25

**followed** [10] - 119:4, 142:1, 142:2, 144:4, 144:19, 146:10, 157:9, 160:20, 163:22

**following** [16] - 50:21,

51:19, 54:2, 61:24, 67:6, 70:18, 71:19, 86:4, 89:24, 97:6, 108:19, 127:19, 130:16, 145:1, 146:2, 146:13

**FOLLOWS** [2] - 110:21, 145:16

**follows** [2] - 13:12, 28:20

**font** [1] - 46:24

**FOR** [1] - 1:1

**foreshadowed** [1] - 22:23

**forget** [1] - 22:25

**forgot** [1] - 46:10

**form** [10] - 17:12, 25:23, 38:3, 59:15, 77:4, 109:25, 110:6, 110:10, 136:24, 145:13

**formally** [1] - 31:15

**format** [2] - 77:22, 107:7

**former** [3] - 13:7, 22:10, 27:18

**forming** [1] - 19:3

**forms** [1] - 110:18

**formulate** [1] - 19:6

**forth** [3] - 29:8, 106:6, 139:7

**forward** [7] - 27:19, 34:15, 34:21, 79:11, 80:23, 157:4, 158:16

**forwarded** [1] - 131:21

**forwarding** [2] - 108:2, 108:23

**foundation** [6] - 73:19, 146:6, 146:13, 147:20, 148:4, 148:9

**founded** [1] - 15:23

**four** [16] - 21:14, 21:16, 21:23, 22:4, 22:24, 25:4, 25:24, 25:25, 26:14, 35:16, 134:13, 135:9, 157:25, 166:20, 167:22, 168:21

**fourth** [45] - 10:3, 14:6, 97:13, 97:15, 97:22, 98:1, 98:14, 100:6, 100:12, 100:23, 106:20, 109:2, 112:2, 134:19, 143:6, 143:9, 158:21, 158:23, 158:24, 158:25, 159:1, 159:7, 159:12,

159:18, 160:12, 160:13, 160:21, 161:5, 161:24, 163:21, 164:7, 164:20, 164:25, 165:1, 165:5, 165:11, 165:13, 165:24, 166:7, 166:19, 166:22, 167:18, 168:12, 168:25, 169:3

**fraction** [1] - 156:5

**frankly** [1] - 163:12

**free** [16] - 17:25, 37:11, 42:9, 48:17, 48:22, 58:14, 58:20, 61:19, 61:22, 61:23, 64:8, 70:17, 71:25, 85:12, 126:8, 157:17

**Friday** [2] - 85:17, 89:21

**Friday's** [2] - 86:4, 127:19

**Friedlander** [1] - 1:24

**friend** [1] - 17:15

**front** [8] - 39:24, 59:14, 94:4, 100:18, 102:10, 153:6, 163:8, 163:12

**full** [7] - 26:17, 64:12, 65:23, 76:9, 122:4, 149:1, 170:21

**fully** [1] - 26:6

**function** [1] - 148:14

**fundamental** [1] - 164:19

**funds** [1] - 157:24

**furtherance** [1] - 33:22

**future** [2] - 68:18, 108:4

---

**G**

**gather** [2] - 23:23, 34:11

**gathered** [1] - 34:10

**gearing** [1] - 27:1

**general** [2] - 15:13, 92:14

**generally** [5] - 13:25, 116:1, 128:12, 136:4, 157:9

**generated** [3] - 110:10, 137:19, 149:9

**gentleman** [2] - 34:3, 34:8

**gentlemen** [10] - 8:12,

20:15, 27:22, 49:22, 56:10, 79:17, 92:25, 152:21, 170:4, 170:10

**geographic** [5] - 26:2, 35:17, 35:19, 36:22, 141:22

**geography** [1] - 162:3

**George** [1] - 115:19

**GERRY** [1] - 1:8

**given** [13] - 11:9, 18:2, 28:2, 34:25, 36:22, 68:17, 135:5, 135:6, 137:9, 138:25, 159:4, 162:9, 162:14

**goods** [7] - 14:9, 21:1, 21:18, 25:22, 32:14, 38:12, 39:11

**govern** [1] - 17:18

**grant** [1] - 164:12

**great** [2] - 32:23, 169:23

**greater** [1] - 11:4

**grounds** [1] - 154:24

**groundwork** [1] - 77:17

**guess** [6] - 86:18, 89:25, 93:8, 96:6, 124:7, 129:5

**guide** [1] - 8:16

**guidelines** [1] - 10:18

---

**H**

**habit** [10] - 145:1, 146:15, 146:23, 147:19, 147:22, 148:1, 148:9, 148:24, 156:15, 157:8

**half** [4] - 30:1, 44:3, 45:3, 45:4

**hallways** [1] - 17:6

**hand** [8] - 14:24, 18:20, 20:2, 20:8, 28:18, 78:20, 152:4

**handed** [1] - 5:15

**handle** [3] - 105:7, 105:15, 105:17

**handled** [3] - 24:10, 38:24, 144:22

**handling** [1] - 26:4

**hands** [1] - 172:9

**handwrite** [2] - 95:25, 102:18

**handwriting** [57] - 51:10, 51:11, 52:24, 53:2, 53:5, 53:6, 54:23, 55:9, 57:8,

57:15, 57:19, 57:20,
58:20, 58:24, 58:25,
59:6, 59:10, 60:7,
61:6, 63:6, 67:12,
68:7, 68:11, 71:23,
74:22, 74:25, 83:24,
83:25, 84:16, 84:17,
85:21, 91:14, 95:4,
99:11, 99:12,
100:20, 100:21,
101:2, 101:9,
102:15, 102:16,
102:22, 103:15,
103:17, 110:11,
110:16, 125:1,
125:3, 125:11,
127:1, 136:18,
136:21, 136:23
**handwritten** [9] -
47:16, 67:17, 84:20,
99:19, 103:11,
125:13, 125:14,
125:15, 131:7
**handwrote** [1] - 84:9
**hang** [1] - 169:24
**happy** [1] - 129:7
**hard** [1] - 64:24
**harm** [2] - 78:20,
162:16
**harming** [1] - 162:10
**HATCH** [1] - 1:13
**header** [3] - 49:14,
49:23, 91:21
**heading** [1] - 46:24
**hear** [19] - 10:3, 11:9,
11:16, 11:20, 11:23,
19:10, 20:2, 20:3,
23:18, 51:2, 62:8,
70:11, 71:10, 73:15,
78:22, 145:19,
147:12, 153:8,
153:17
**heard** [6] - 7:2, 12:17,
104:13, 131:18,
153:15, 170:12
**hearing** [2] - 7:8, 28:7
**HEIMBACH** [1] - 1:16
**held** [2] - 15:17, 22:16
**help** [7] - 15:8, 17:23,
19:12, 41:15, 47:2,
117:22, 139:24
**helped** [2] - 32:8,
32:10, 120:17
**helpful** [3] - 7:7, 18:3,
18:6
**helps** [2] - 93:11
**herself** [2] - 117:9,
147:18
**high** [2] - 14:12, 15:1
**higher** [1] - 59:3

**himself** [2] - 25:20,
27:16
**hire** [1] - 163:25
**history** [1] - 111:21
**hit** [3] - 25:12, 76:6,
81:3
**hmm** [14] - 40:3, 44:1,
102:8, 114:2,
116:11, 116:14,
117:25, 120:8,
120:10, 122:24,
128:19, 130:10,
133:2, 150:12
**hold** [7] - 11:4, 13:7,
22:24, 27:16, 70:13,
162:5, 171:6
**holding** [2] - 162:2,
163:14
**holds** [2] - 166:20,
168:13
**home** [1] - 170:23
**honestly** [1] - 96:11
**Honor** [46] - 5:3, 6:11,
6:22, 20:12, 20:13,
27:25, 36:1, 36:19,
43:10, 53:13, 56:16,
56:21, 57:25, 61:9,
66:19, 72:21, 81:17,
84:2, 84:4, 84:11,
87:6, 99:5, 104:4,
105:9, 108:6,
112:21, 113:17,
117:2, 117:11,
119:9, 129:8, 136:2,
138:8, 141:16,
145:8, 150:19,
152:2, 154:6,
158:18, 160:1,
160:7, 164:11,
167:20, 168:23,
168:24, 170:8
**honor** [1] - 20:8
**HONORABLE** [1] -
1:11
**hope** [2] - 7:4, 170:20
**hopefully** [2] - 70:12,
171:18
**hoping** [2] - 85:10,
109:13
**hostilities** [1] - 30:12
**hour** [1] - 93:2
**hours** [3] - 67:2,
151:8, 167:6
**house** [9] - 109:25,
110:6, 110:10,
110:17, 112:3,
136:23, 164:1,
164:2, 164:3
**housekeeping** [1] -
93:8

**Hunterdon** [1] - 83:15
**hypothetical** [1] -
144:8

---

## I

**idea** [6] - 24:24, 25:1,
25:3, 25:5, 80:9,
157:19
**ideas** [2] - 52:10,
157:14
**identical** [1] - 83:7
**identification** [2] -
94:24, 101:9
**identify** [6] - 90:19,
91:1, 94:6, 100:20,
104:1, 111:12
**ignore** [1] - 9:15
**III** [5] - 1:16, 13:3,
27:24, 31:15, 155:10
**Illinois** [1] - 163:9
**imagine** [2] - 110:8,
116:13
**immediately** [4] -
54:4, 58:16, 62:1,
70:15
**impact** [2] - 166:16,
166:23
**implicated** [1] - 111:6
**importance** [1] - 11:7
**important** [2] - 81:9,
145:18
**importantly** [1] -
111:11
**impression** [6] -
76:20, 77:6, 77:11,
78:6, 78:18, 79:19
**impressions** [2] -
16:16, 17:3
**improper** [5] - 9:11,
77:4, 78:6, 78:15,
129:1
**IN** [58] - 3:6, 3:7, 3:8,
3:9, 3:10, 3:11, 3:12,
3:13, 3:14, 3:16,
3:17, 3:18, 3:19,
3:20, 3:21, 3:22,
3:23, 3:24, 3:25, 4:1,
4:2, 4:3, 4:4, 4:5,
4:6, 4:7, 4:8, 4:9,
4:10, 40:24, 43:15,
46:7, 46:16, 48:12,
49:20, 50:17, 53:16,
58:3, 61:13, 64:3,
66:23, 70:4, 74:6,
75:23, 83:1, 84:6,
87:8, 88:18, 91:9,
92:12, 94:19, 99:8,
101:25, 104:9,

106:13, 107:3,
108:11, 113:2
**in-house** [6] - 109:25,
110:6, 110:10,
110:17, 112:3,
136:23
**inability** [1] - 111:4
**inappropriate** [1] -
147:12
**Inc** [2] - 13:11, 14:22
**INC** [2] - 1:2, 1:5
**inclined** [1] - 168:24
**include** [7] - 51:1,
52:16, 61:19, 76:15,
144:24, 159:21,
168:14
**included** [9] - 61:21,
65:3, 76:11, 97:6,
111:15, 126:7,
132:22, 141:2,
149:18
**includes** [1] - 122:22
**including** [5] - 63:18,
67:24, 99:24,
103:25, 162:21
**incoming** [7] - 53:20,
53:21, 57:18, 58:15,
59:9, 61:20, 96:14
**inconsistencies** [1] -
158:13
**inconsistent** [1] -
158:11
**Incorporated** [4] -
12:4, 13:2, 13:5,
13:19
**incorrect** [2] - 31:3,
162:6
**incorrectly** [1] -
111:20
**increasingly** [1] -
132:17
**increments** [1] - 52:7
**indeed** [1] - 10:13
**independent** [3] -
21:15, 79:3, 134:1
**independently** [1] -
148:16
**indicate** [4] - 8:23,
84:23, 92:19, 99:24
**indicated** [8] - 17:22,
22:21, 23:21, 23:22,
42:19, 42:20, 55:25,
84:16
**indicates** [8] - 41:8,
41:20, 53:24, 58:5,
63:18, 103:25,
159:12, 161:1
**indicating** [2] - 8:23,
48:15
**indication** [1] - 161:12

**individual** [8] - 14:12,
15:16, 15:19, 22:20,
27:17, 163:5, 168:6
**individually** [4] - 13:9,
15:18, 22:11, 25:20
**indulge** [1] - 77:23
**infer** [1] - 10:10
**influenced** [1] - 9:12
**informally** [1] - 171:21
**information** [37] -
9:23, 11:9, 11:11,
16:22, 24:17, 24:20,
26:9, 34:10, 34:17,
37:12, 37:13, 41:12,
41:14, 41:18, 41:20,
41:21, 41:22, 42:2,
42:6, 42:9, 42:10,
42:15, 42:16, 46:25,
62:15, 72:7, 72:14,
83:14, 86:18,
107:12, 108:3,
115:17, 136:5,
138:25, 141:2,
141:5, 145:6
**initial** [5] - 55:9, 55:14,
116:20, 122:2, 122:3
**initials** [4] - 49:10,
74:15, 84:19, 95:8
**initiating** [1] - 139:12
**innocent** [2] - 162:10,
162:17
**input** [1] - 156:17
**inserted** [1] - 47:17
**insignificant** [1] - 11:2
**insist** [1] - 78:21
**installation** [2] -
115:8, 115:22
**installing** [1] - 24:25
**instance** [3] - 115:25,
158:5, 160:16
**instances** [1] - 158:9
**instantly** [1] - 167:15
**instead** [7] - 60:13,
104:18, 105:16,
143:19, 144:5,
161:16, 163:2
**instruct** [7] - 9:4, 9:25,
14:15, 16:12,
126:25, 141:7, 158:7
**instructed** [4] - 9:17,
23:21, 51:25, 135:10
**instruction** [12] - 6:9,
9:19, 24:19, 25:14,
36:17, 63:10, 89:12,
105:21, 120:16,
124:14, 139:6, 149:1
**instructions** [34] -
7:10, 7:14, 8:16,
10:12, 15:6, 15:7,
19:19, 20:9, 22:20,

35:8, 36:22, 42:10, 51:13, 54:14, 58:16, 141:15, 142:1, 143:20, 144:4, 159:3, 160:18, 160:22, 161:11, 162:13, 162:16, 162:18, 163:23, 165:9, 168:6, 169:6, 171:20, 172:3, 172:6
**intend** [1] - 7:16
**intended** [2] - 8:23, 26:2
**intends** [1] - 19:12
**interacted** [1] - 37:16
**interacting** [1] - 72:10
**interaction** [3] - 27:1, 148:22, 155:22
**interested** [2] - 24:22, 34:16
**internet** [1] - 16:23
**interpret** [1] - 19:18
**Interrogatories** [2] - 11:16, 11:17
**intervene** [1] - 8:7
**introduce** [1] - 29:16
**introduction** [6] - 12:24, 92:7, 98:19, 104:5, 106:22, 109:16
**investigation** [2] - 16:21, 119:2
**invite** [1] - 166:24
**invoice** [1] - 62:7
**involved** [3] - 33:24, 38:13, 113:8
**involvement** [12] - 14:13, 15:1, 15:2, 15:25, 16:1, 23:5, 23:8, 23:25, 154:12, 155:16, 155:22, 156:18
**issuance** [8] - 36:17, 64:22, 80:24, 82:7, 82:8, 90:10, 97:21, 100:14
**issue** [28] - 5:5, 5:7, 5:22, 22:9, 22:12, 26:1, 30:2, 32:12, 38:18, 64:19, 70:10, 71:10, 71:11, 78:2, 85:19, 140:22, 141:23, 161:9, 161:10, 161:19, 163:3, 163:11, 164:16, 166:3, 167:2
**issued** [5] - 21:14, 81:9, 103:3, 103:6, 165:24
**issues** [3] - 82:20,

145:6, 158:3
**item** [1] - 9:17
**itself** [2] - 26:22, 54:4

---

**J**

**JEROME** [1] - 1:11
**Jersey** [18] - 70:19, 83:16, 104:18, 104:22, 105:4, 105:16, 135:3, 143:19, 144:5, 159:22, 160:8, 160:13, 160:16, 161:14, 161:16, 163:2, 163:24, 165:6
**JERSEY** [2] - 1:1, 1:9
**job** [6] - 20:3, 32:5, 115:12, 115:20, 148:14, 155:14
**JOHN** [1] - 1:8
**join** [3] - 61:15, 62:11, 62:12
**joined** [3] - 20:20, 20:21, 97:4
**jot** [1] - 18:3
**Judge** [52] - 7:16, 7:24, 20:18, 23:22, 29:3, 29:12, 40:25, 43:18, 46:10, 46:17, 48:7, 49:17, 50:13, 57:2, 63:24, 73:4, 79:14, 79:23, 82:22, 88:13, 90:23, 91:8, 92:8, 92:23, 93:25, 101:7, 102:1, 106:8, 109:16, 110:3, 110:19, 111:20, 121:13, 128:22, 135:20, 138:13, 139:15, 144:10, 146:12, 148:10, 150:4, 153:4, 153:11, 153:22, 155:12, 157:1, 161:7, 163:8, 163:13, 163:14, 167:5, 167:13
**judge** [11] - 56:8, 59:13, 69:25, 73:12, 76:24, 77:14, 84:12, 135:24, 150:24, 151:1, 169:16
**JUDGE** [1] - 1:11
**judgement** [1] - 6:16
**judges** [1] - 8:19
**judgment** [7] - 22:7, 27:15, 27:18, 158:15, 158:20, 159:16, 165:25

**judicial** [1] - 160:5
**jump** [2] - 52:20, 54:11
**jumped** [1] - 57:5
**jumping** [2] - 77:9, 147:11
**juror** [4] - 16:23, 17:3, 18:17, 18:20
**jurors** [4] - 8:15, 16:12, 18:3, 18:14
**jury** [70] - 6:21, 7:1, 7:7, 7:11, 8:4, 8:17, 12:16, 16:1, 16:14, 17:15, 17:22, 18:11, 20:11, 22:14, 28:2, 30:18, 33:7, 47:11, 49:22, 56:14, 56:22, 56:24, 59:14, 74:9, 77:8, 77:21, 78:2, 78:18, 93:2, 93:19, 113:7, 123:4, 124:18, 138:2, 150:23, 152:3, 153:6, 153:17, 153:23, 154:20, 154:25, 155:9, 157:7, 157:17, 158:1, 158:3, 158:7, 158:12, 163:12, 163:13, 165:19, 166:12, 166:17, 167:21, 168:18, 168:25, 169:4, 169:6, 169:10, 169:11, 169:15, 169:22, 171:2, 171:17, 171:19, 171:25, 172:3, 172:6, 172:13
**JURY** [6] - 8:10, 93:6, 93:21, 152:23, 170:2, 171:1
**jury's** [4] - 153:8, 153:20, 166:23, 172:9

---

**K**

**K032107** [2] - 51:10, 54:6
**Karen** [1] - 1:24
**keep** [7] - 17:13, 29:7, 46:23, 77:9, 169:19, 170:14
**keeping** [1] - 77:20
**kept** [1] - 25:15
**Kevin** [40] - 34:5, 37:9, 43:4, 43:24, 44:2, 47:24, 50:4, 50:19, 53:21, 55:18, 57:12,

57:18, 58:5, 59:7, 59:11, 60:11, 61:15, 64:5, 67:6, 69:14, 70:7, 76:3, 79:1, 80:1, 80:10, 83:21, 85:2, 88:20, 88:21, 94:7, 96:25, 97:1, 104:12, 106:18, 107:11, 122:19, 130:5, 130:25, 131:12, 134:9
**kind** [11] - 23:5, 33:19, 33:24, 52:20, 72:7, 72:14, 118:11, 148:24, 148:25, 156:19, 163:16
**kinds** [3] - 10:7, 10:14, 31:8
**knowing** [1] - 145:7
**knowledge** [18] - 26:17, 32:17, 34:23, 39:13, 63:10, 89:12, 105:20, 134:23, 136:2, 149:1, 149:24, 154:15, 155:6, 155:16, 156:20, 157:12, 157:19, 157:20
**known** [2] - 13:2, 162:14
**knows** [3] - 78:9, 155:5, 164:22

---

**L**

**lack** [1] - 153:23
**ladies** [10] - 8:11, 20:15, 27:22, 49:22, 56:10, 79:17, 92:25, 152:21, 170:4, 170:10
**laid** [4] - 77:5, 120:20, 146:6, 146:18
**LAMM** [1] - 1:16
**language** [2] - 7:21, 65:22
**large** [1] - 27:3
**last** [11] - 28:22, 50:5, 79:18, 83:7, 86:7, 95:9, 100:10, 109:4, 115:19, 130:22, 144:12
**latest** [1] - 167:11
**latter** [1] - 145:17
**law** [33] - 5:14, 5:17, 5:22, 7:9, 7:13, 7:17, 7:21, 7:22, 8:20, 8:21, 12:23, 15:6, 19:20, 22:15, 22:20, 108:22, 132:4,

132:8, 132:11, 154:11, 156:8, 156:12, 158:15, 158:21, 159:17, 162:7, 162:12, 162:19, 162:20, 164:10, 164:17, 166:21, 168:5
**lawful** [1] - 15:1
**lawsuit** [2] - 30:2, 113:9
**lawyers** [3] - 9:3, 9:7, 9:10
**lay** [2] - 146:13, 148:3
**laying** [3] - 77:7, 147:19, 148:9
**layout** [3] - 46:25, 120:18, 122:3
**lays** [1] - 77:17
**lead** [8] - 25:10, 91:2, 109:25, 110:6, 110:10, 110:17, 136:23, 137:9
**leading** [13] - 36:1, 36:7, 36:20, 36:25, 77:3, 78:3, 78:11, 78:13, 78:21, 79:5, 79:20, 98:25, 162:16
**Leads** [11] - 21:14, 33:9, 33:14, 40:12, 41:5, 41:18, 43:4, 43:25, 94:7, 122:11, 122:19
**leads** [5] - 12:8, 109:11, 112:4, 115:20, 136:16
**leak** [2] - 35:4, 115:16
**leaks** [3] - 13:17, 25:5
**Leaks** [1] - 42:19
**learned** [2] - 24:21, 34:12
**least** [6] - 45:10, 50:23, 52:2, 75:12, 103:22, 160:12
**leave** [5] - 93:7, 150:11, 152:9, 167:6, 169:16
**led** [2] - 116:9, 148:22
**left** [6] - 28:18, 30:9, 30:13, 95:19, 104:12, 129:18
**legal** [2] - 20:25, 161:10
**legally** [1] - 158:2
**legitimate** [1] - 77:11, 118:25, 119:21
**less** [2] - 26:23, 167:7
**letter** [3] - 85:25, 122:19, 130:25
**letting** [1] - 8:7

**level** [2] - 14:13, 15:1
**Lewis** [2] - 20:20, 138:22
**LEWIS** [1] - 1:14
**liability** [8] - 5:6, 15:12, 15:22, 22:20, 113:10, 162:11, 164:6, 168:6
**liable** [9] - 15:15, 15:18, 16:10, 22:4, 22:11, 22:17, 22:24, 162:5, 162:17
**lifetime** [1] - 61:17
**light** [2] - 6:18, 12:7
**likely** [2] - 12:9, 25:7
**limitation** [1] - 141:8
**limitations** [1] - 35:17
**limited** [4] - 9:18, 15:17, 22:15, 23:16, 80:13, 109:17
**limiting** [2] - 9:19, 162:13
**Line** [7] - 117:13, 119:12, 121:19, 123:11, 139:19, 140:8
**line** [9] - 7:2, 44:10, 47:1, 47:5, 47:14, 58:7, 62:11, 84:23, 103:2
**lines** [7] - 50:22, 51:20, 97:7, 122:22, 145:10, 146:1, 146:22
**list** [26] - 9:6, 41:14, 42:2, 42:4, 51:1, 52:16, 61:24, 62:19, 67:8, 67:17, 71:20, 72:4, 86:4, 89:24, 104:16, 108:1, 108:20, 110:24, 127:19, 127:20, 130:16, 130:17, 131:9, 132:23, 160:4, 160:10
**listed** [4] - 68:24, 70:20, 74:11, 124:2
**listen** [1] - 16:17
**lists** [4] - 61:24, 108:15, 109:11, 126:15
**literally** [1] - 157:7
**litigation** [2] - 113:8, 114:17
**lobby** [1] - 17:6
**Lockhart** [1] - 29:24
**logo** [1] - 21:14
**look** [45] - 27:19, 32:25, 34:18, 40:14, 45:12, 47:10, 48:3,

49:4, 50:8, 52:19, 57:5, 60:6, 60:22, 63:12, 67:1, 72:16, 75:8, 83:9, 86:21, 87:13, 88:2, 90:12, 90:21, 91:24, 99:10, 100:1, 101:6, 102:4, 106:15, 109:4, 118:23, 119:12, 122:17, 124:21, 125:7, 126:17, 127:11, 129:10, 129:17, 130:3, 130:8, 130:22, 134:7, 160:2, 168:16
**looked** [7] - 5:5, 33:19, 53:18, 53:20, 57:4, 66:12, 112:7
**looking** [16] - 43:6, 47:11, 50:23, 52:2, 52:6, 59:8, 60:2, 70:16, 71:16, 99:14, 103:8, 104:1, 108:18, 134:21, 137:15, 160:4
**looks** [3] - 47:15, 98:22, 135:3
**lost** [1] - 163:12
**luck** [1] - 172:12
**lunch** [3] - 17:10, 93:4, 94:2
**luncheon** [1] - 93:1

# M

**ma'am** [29] - 28:17, 28:22, 29:1, 42:24, 45:8, 48:14, 49:4, 50:1, 52:19, 69:12, 72:16, 73:7, 74:8, 79:25, 83:18, 84:16, 86:21, 87:10, 88:2, 91:11, 94:2, 94:21, 99:10, 103:20, 107:15, 109:4, 113:13, 138:15, 149:6
**Macciarella** [1] - 17:17
**machine** [5] - 13:23, 14:2, 14:17, 96:3, 140:1
**mail** [6] - 60:25, 63:8, 107:9, 107:10, 122:14, 134:9
**mails** [3] - 80:13, 137:20, 137:22
**major** [1] - 11:1
**maker** [2] - 25:23, 38:3
**manager** [5] - 23:16,

31:7, 115:17, 115:18, 116:5
**managing** [3] - 21:22, 22:10, 113:5
**manner** [1] - 78:3
**map** [3] - 72:2, 75:3, 125:9
**March** [41] - 13:16, 21:12, 21:15, 30:2, 30:19, 32:13, 43:25, 44:7, 44:22, 45:22, 46:20, 47:25, 48:16, 50:5, 50:19, 53:24, 57:13, 57:18, 58:5, 59:9, 60:25, 63:9, 63:16, 64:5, 66:9, 66:25, 67:1, 67:22, 69:14, 70:6, 71:2, 73:22, 74:10, 85:3, 96:8, 97:2, 97:17, 114:18, 126:19, 145:3, 160:10
**marked** [3] - 111:25, 112:16, 112:22
**marketing** [19] - 21:14, 24:10, 32:6, 70:7, 70:24, 70:25, 74:11, 82:14, 100:4, 103:19, 114:22, 114:24, 116:20, 117:21, 117:22, 119:20, 136:16, 139:23
**Marnie** [2] - 17:17, 169:21
**mass** [1] - 44:7
**material** [1] - 154:12
**matter** [14] - 15:13, 26:22, 148:24, 153:19, 156:8, 158:15, 158:20, 159:16, 162:24, 163:18, 163:25, 164:4, 165:18, 166:21
**matters** [2] - 10:12, 171:24
**Maxi** [11] - 21:14, 33:9, 33:14, 40:12, 41:5, 41:18, 43:4, 43:25, 94:7, 122:11, 122:19
**Maxi-Leads** [11] - 21:14, 33:9, 33:14, 40:12, 41:5, 41:18, 43:4, 43:25, 94:7, 122:11, 122:19
**MaxiLeads** [5] - 47:25, 50:5, 52:7, 52:10, 53:22

**MAY** [1] - 1:10
**mean** [22] - 35:3, 35:21, 37:22, 46:8, 77:21, 119:25, 124:12, 128:11, 128:21, 129:17, 129:20, 129:22, 130:1, 137:12, 149:12, 149:13, 160:13, 161:19, 167:8, 168:9
**meaning** [3] - 14:19, 24:23, 171:21
**means** [4] - 11:11, 12:6, 16:24, 128:25
**meant** [6] - 7:3, 128:6, 128:18, 147:17, 164:8, 165:23
**media** [1] - 17:2
**meet** [5] - 12:14, 13:23, 16:4, 154:10, 154:22
**meets** [1] - 54:5
**member** [9] - 17:15, 17:16, 23:14, 58:21, 58:25, 59:2, 60:8, 60:10, 152:3
**members** [2] - 18:10, 70:17
**membership** [2] - 61:16, 64:8
**memory** [1] - 121:2
**mentioned** [5] - 20:6, 30:18, 36:13, 114:5, 115:9
**Mercer** [1] - 83:15
**merely** [5] - 15:25, 23:7, 23:19, 23:20, 141:25
**merit** [1] - 9:15
**merits** [1] - 163:12
**messages** [3] - 104:12, 129:18, 132:25
**met** [1] - 16:8
**method** [2] - 25:1, 26:4
**microphone** [1] - 29:2
**mid** [2] - 56:7, 152:20
**mid-afternoon** [1] - 152:20
**middle** [1] - 151:20
**might** [10] - 7:5, 21:3, 32:25, 33:19, 34:5, 79:12, 132:13, 162:23, 172:5, 172:8
**mile** [1] - 104:20
**Miley** [187] - 5:19, 5:23, 13:8, 14:25, 15:3, 15:12, 16:2,

16:7, 16:10, 19:15, 21:20, 22:9, 22:24, 23:10, 23:19, 23:20, 24:10, 24:13, 24:20, 24:21, 24:23, 25:15, 25:20, 26:10, 26:15, 26:17, 27:10, 27:12, 27:16, 27:24, 31:14, 31:15, 31:16, 31:17, 32:11, 33:6, 33:12, 34:10, 34:11, 34:16, 34:25, 35:7, 36:18, 37:14, 37:20, 38:5, 38:16, 38:19, 39:5, 39:8, 39:20, 41:17, 41:22, 41:25, 42:5, 42:7, 42:17, 42:20, 42:21, 44:18, 44:19, 44:24, 47:9, 47:18, 48:25, 51:18, 51:24, 52:1, 52:7, 52:18, 53:5, 54:25, 55:3, 55:5, 55:14, 55:23, 56:2, 62:14, 62:18, 62:23, 63:2, 64:23, 65:7, 65:11, 65:15, 65:21, 65:25, 66:3, 69:1, 69:4, 69:8, 71:1, 71:3, 71:9, 71:12, 71:15, 71:18, 71:22, 72:8, 80:19, 81:1, 81:6, 81:11, 82:6, 85:9, 85:16, 85:20, 86:12, 86:20, 87:21, 88:1, 88:23, 89:7, 89:13, 89:22, 90:5, 90:10, 97:14, 97:18, 97:25, 98:3, 100:7, 100:15, 105:18, 105:21, 107:13, 108:15, 108:24, 113:6, 118:4, 118:19, 118:23, 119:24, 120:9, 120:14, 122:6, 123:5, 124:10, 124:14, 128:12, 128:18, 129:22, 132:24, 133:3, 133:10, 135:6, 135:12, 137:21, 138:2, 140:10, 140:12, 141:8, 141:10, 142:21, 143:2, 144:24, 145:7, 145:24, 148:18, 149:3, 149:10, 149:12, 149:18, 149:24, 150:2, 150:13, 154:16,

155:5, 155:7,
155:10, 155:22,
156:21, 157:10,
157:14, 157:15,
159:4, 159:5, 161:6,
163:1, 163:20,
164:5, 167:23,
168:7, 169:1, 171:13
**Miley's** [26] - 16:3,
25:3, 25:13, 25:18,
26:13, 26:25, 34:9,
34:23, 37:8, 37:17,
37:19, 39:13, 53:3,
55:10, 63:9, 82:4,
98:7, 144:4, 145:11,
149:1, 154:12,
155:15, 155:22,
157:11, 157:18,
159:13
**million** [2] - 22:8,
27:14
**mind** [6] - 10:13,
10:20, 12:19, 17:13,
168:3, 170:15
**mine** [14] - 53:3,
57:10, 61:8, 68:15,
84:1, 99:13, 100:22,
102:17, 125:14,
128:3, 136:22,
137:11, 142:16,
151:25
**minute** [1] - 152:5
**minutes** [3] - 56:10,
93:10, 152:21
**missed** [2] - 95:9,
100:10
**missing** [3] - 8:2,
79:10, 147:24
**mistake** [1] - 134:24
**mistakenly** [2] -
104:21, 105:4
**modality** [1] - 16:25
**moment** [12] - 12:23,
18:19, 36:13, 38:10,
42:14, 103:8, 117:6,
138:7, 149:16,
151:4, 153:6, 165:16
**Monday** [2] - 44:7,
97:9
**money** [3] - 24:7,
31:24, 165:15
**month** [1] - 30:6
**mooted** [1] - 156:24
**morning** [43] - 5:3,
5:4, 5:6, 5:10, 8:11,
8:13, 20:19, 22:14,
29:16, 56:7, 62:4,
62:25, 63:1, 63:3,
63:4, 64:9, 65:2,
65:19, 70:15, 76:3,

76:15, 76:19, 77:19,
80:2, 80:3, 80:16,
80:18, 81:8, 81:10,
85:17, 89:21, 97:9,
104:12, 104:14,
104:24, 129:18,
167:11, 168:17,
168:20, 169:14,
170:19, 170:20,
171:19
**morning's** [1] - 6:19
**most** [2] - 26:21,
53:18
**motion** [9] - 153:7,
153:19, 154:5,
154:7, 157:3,
158:15, 158:17,
158:20, 161:23
**mouth** [1] - 36:5
**move** [33] - 40:18,
43:10, 46:1, 46:8,
46:11, 48:6, 49:16,
50:12, 53:11, 57:22,
61:9, 63:23, 66:19,
69:25, 73:12, 74:2,
75:18, 82:22, 84:2,
87:4, 88:12, 90:22,
92:7, 94:14, 98:19,
101:7, 104:4, 106:8,
106:22, 108:6,
109:16, 147:2, 155:9
**moved** [1] - 30:6
**MR** [301] - 2:5, 2:6,
2:9, 2:10, 2:12, 2:14,
2:15, 5:9, 5:25, 6:2,
6:4, 6:5, 6:8, 6:10,
6:14, 6:22, 7:16,
7:24, 20:12, 20:13,
20:18, 27:25, 28:12,
29:3, 29:11, 29:14,
29:15, 35:25, 36:3,
36:8, 36:9, 36:19,
37:1, 40:18, 40:21,
40:25, 41:2, 41:3,
43:10, 43:12, 43:16,
43:18, 43:22, 43:23,
46:1, 46:4, 46:10,
46:13, 46:17, 46:18,
48:6, 48:8, 48:11,
48:13, 49:16, 49:18,
49:21, 50:12, 50:14,
50:18, 53:11, 53:13,
53:17, 56:8, 56:16,
56:21, 57:2, 57:3,
57:22, 57:25, 58:4,
59:13, 59:16, 59:19,
61:9, 61:11, 61:14,
63:23, 63:25, 64:4,
66:19, 66:21, 66:24,
69:25, 70:2, 70:5,

72:21, 72:23, 72:25,
73:4, 73:6, 73:12,
73:15, 73:20, 74:2,
74:4, 74:7, 75:18,
75:20, 75:24, 76:24,
77:3, 77:14, 78:8,
78:22, 79:2, 79:14,
79:23, 79:24, 81:17,
81:20, 81:22, 81:24,
82:1, 82:22, 82:23,
83:2, 84:2, 84:4,
84:7, 84:11, 84:12,
84:15, 87:4, 87:6,
87:9, 88:12, 88:15,
88:19, 89:1, 89:6,
89:15, 89:19, 90:22,
90:24, 91:1, 91:5,
91:8, 91:10, 92:7,
92:9, 92:13, 92:23,
93:8, 93:14, 93:18,
93:25, 94:1, 94:14,
94:16, 94:20, 98:19,
98:21, 98:24, 99:4,
99:9, 101:7, 101:12,
101:15, 101:22,
102:1, 102:3, 104:4,
104:6, 104:10,
105:9, 105:11,
105:13, 106:8,
106:10, 106:14,
106:22, 106:25,
107:4, 108:6, 108:8,
108:12, 109:16,
109:20, 109:23,
110:3, 110:5,
110:19, 110:23,
111:11, 111:16,
111:17, 111:20,
112:11, 112:14,
112:18, 112:21,
113:3, 113:13,
113:17, 113:18,
117:1, 117:4, 117:8,
117:11, 117:12,
118:3, 119:9,
119:11, 121:13,
121:16, 121:18,
123:13, 123:14,
123:16, 128:22,
129:7, 129:9,
135:20, 135:21,
135:24, 136:1,
136:9, 137:11,
137:12, 137:14,
137:18, 138:7,
138:10, 138:13,
138:14, 139:15,
139:17, 141:16,
141:19, 141:21,
143:7, 143:8,
143:13, 143:15,

144:7, 144:10,
144:11, 145:8,
145:12, 146:12,
146:18, 147:5,
147:7, 147:10,
147:15, 148:2,
148:5, 148:10,
148:11, 149:6,
149:8, 150:4, 150:9,
150:17, 150:19,
152:1, 152:2,
152:11, 152:14,
152:18, 152:19,
153:4, 153:11,
153:12, 153:14,
153:22, 154:6,
154:9, 155:12,
158:17, 158:20,
159:20, 159:23,
159:25, 160:7,
160:17, 161:7,
161:9, 163:3,
164:15, 165:8,
165:15, 165:21,
166:10, 167:5,
167:12, 167:16,
167:20, 167:25,
168:22, 169:7,
169:12, 169:16,
169:23, 169:25,
170:8, 171:5,
171:10, 171:15,
172:14
**must** [23] - 8:21, 9:5,
9:18, 10:4, 12:15,
15:10, 15:23, 16:7,
17:17, 19:24, 86:3,
89:23, 104:14,
127:18, 127:25,
128:1, 130:13,
132:16, 160:17,
163:5, 163:6

**N**

**name** [13] - 18:3,
20:19, 22:25, 28:21,
28:22, 31:15, 33:8,
34:5, 42:11, 86:3,
110:13, 115:19
**named** [1] - 23:14
**namely** [2] - 13:8,
14:16
**names** [1] - 108:3
**nature** [5] - 5:12, 6:25,
23:16, 36:1, 36:20
**nearly** [1] - 156:23
**necessarily** [2] -
111:23
**necessary** [1] - 29:5

**need** [16] - 20:7,
24:17, 25:10, 28:21,
28:22, 37:10, 47:20,
102:25, 121:14,
129:3, 164:16,
165:13, 167:3,
167:9, 169:1, 171:24
**needed** [8] - 51:13,
54:3, 58:6, 62:16,
96:22, 115:16,
118:12, 131:22
**needing** [2] - 148:16,
154:14
**needs** [2] - 79:7,
171:22
**negate** [4] - 155:21,
156:2, 156:7, 168:10
**negated** [1] - 155:18
**negative** [1] - 30:12
**negligent** [1] - 162:8
**negotiated** [1] - 126:5
**never** [4] - 39:4,
146:25, 158:2,
166:14
**NEW** [2] - 1:1, 1:9
**new** [3] - 62:1, 70:10,
115:8
**New** [18] - 70:19,
83:16, 104:18,
104:22, 105:4,
105:16, 135:3,
143:19, 144:5,
159:22, 160:8,
160:13, 160:16,
161:14, 161:16,
163:2, 163:24, 165:6
**next** [9] - 19:13, 58:22,
70:12, 71:13, 76:7,
81:4, 81:5, 83:13,
85:10
**nice** [1] - 155:14
**night** [2] - 151:21,
172:15
**nine** [2] - 30:1, 30:7
**nine-and-a-half** [1] -
30:1
**nine-plus** [1] - 30:7
**NO** [1] - 1:4
**nobody** [1] - 77:10
**none** [4] - 6:4, 6:10,
154:14, 160:25
**nonexistent** [1] -
154:1
**normal** [3] - 145:21,
145:23, 151:8
**normally** [2] - 11:15,
19:1
**Northern** [1] - 163:9
**note** [10] - 46:25, 63:5,
64:9, 76:14, 86:3,

89:20, 103:1,
127:22, 131:7,
168:22
**notebooks** [1] - 17:25
**noted** [3] - 22:14,
48:19, 48:24
**notes** [4] - 17:21,
17:23, 17:24, 112:3
**nothing** [7] - 8:22,
20:4, 113:14,
126:23, 150:17,
159:11, 162:6
**notice** [4] - 7:25, 28:9,
132:6, 160:5
**notices** [2] - 67:7,
107:24
**notified** [1] - 148:19
**notify** [7] - 70:13,
76:5, 81:2, 133:22,
142:14, 142:17,
148:16
**notion** [1] - 166:15
**number** [22] - 21:17,
25:24, 38:13, 39:25,
48:17, 48:23, 54:5,
54:6, 54:13, 54:15,
54:20, 58:14, 58:20,
61:19, 68:14, 70:9,
108:19, 108:20,
108:22, 126:8,
141:23, 142:19
**NUMBER** [1] - 3:4
**numbers** [36] - 52:5,
67:7, 67:14, 67:18,
68:1, 68:24, 83:15,
86:1, 86:4, 86:5,
89:24, 89:25, 90:1,
104:16, 108:4,
108:14, 124:16,
125:14, 125:15,
125:16, 126:14,
126:25, 127:19,
127:20, 130:16,
130:17, 130:20,
131:9, 131:15,
131:22, 132:23,
137:15, 142:9,
143:1, 157:21
**numerous** [1] - 129:15

---

### O

**o'clock** [1] - 168:18
**oath** [2] - 11:24, 16:23
**object** [5] - 36:19,
77:3, 128:22,
135:24, 150:4
**objected** [2] - 110:23,
146:1

**objection** [69] - 9:11,
9:13, 9:14, 9:16,
35:25, 40:20, 43:12,
46:3, 46:12, 48:8,
49:18, 50:14, 53:13,
57:24, 57:25, 59:14,
59:15, 61:11, 63:25,
66:21, 70:2, 72:23,
73:14, 74:4, 75:20,
76:24, 77:24, 78:16,
81:17, 81:22, 82:23,
84:4, 84:11, 87:6,
88:14, 89:1, 89:15,
91:4, 92:9, 94:16,
99:2, 99:4, 101:11,
104:6, 105:9,
106:10, 106:24,
108:8, 109:19,
110:25, 111:3,
111:4, 111:7,
111:10, 112:6,
112:7, 112:13,
112:22, 136:8,
143:7, 143:8, 144:7,
145:8, 145:12,
148:7, 151:2, 151:3,
168:1
**objectionable** [1] -
151:2
**objections** [7] - 6:3,
9:9, 40:21, 101:23,
110:24, 112:15,
147:11
**obligated** [1] - 98:4
**obligation** [2] - 9:10,
98:5
**obtain** [3] - 11:21,
11:24, 56:2
**obvious** [1] - 147:11
**obviously** [3] - 67:8,
127:3, 168:1
**occasion** [2] - 133:5,
135:7
**occasions** [1] -
126:13
**occurred** [3] - 30:2,
32:14, 121:2
**OF** [17] - 1:1, 2:5, 2:6,
2:8, 2:10, 2:12, 2:14,
2:15, 29:15, 101:15,
102:2, 109:23,
112:20, 113:18,
138:14, 148:6, 149:8
**offer** [1] - 24:14
**offered** [4] - 9:11,
19:12, 33:24, 52:8
**offering** [1] - 119:20
**offers** [1] - 25:7
**office** [9] - 23:16,
31:7, 31:10, 82:3,

96:2, 116:5, 146:6,
147:3, 157:8
**officer** [5] - 15:23,
21:22, 22:10, 22:16,
113:5
**officers** [2] - 15:14,
15:15
**officially** [1] - 43:21
**OK'** [1] - 54:6
**okayed** [5] - 59:7,
59:10, 59:12, 59:22,
60:11
**old** [3] - 78:24, 113:25,
114:3
**once** [2] - 167:23,
170:14
**ONE** [1] - 1:8
**one** [62] - 10:1, 13:15,
14:2, 14:6, 17:9,
19:5, 21:7, 21:15,
22:12, 23:17, 38:8,
47:25, 50:5, 52:10,
53:20, 60:19, 60:20,
64:10, 65:22, 66:11,
70:10, 76:8, 76:21,
77:16, 85:2, 85:7,
86:22, 100:25,
101:4, 108:18,
109:20, 112:23,
117:20, 120:16,
120:19, 122:10,
131:3, 131:7, 133:9,
134:15, 134:16,
134:19, 136:25,
137:1, 137:3, 137:9,
139:22, 141:14,
143:16, 143:23,
147:7, 149:16,
150:20, 159:18,
159:19, 159:21,
160:3, 163:16,
168:9, 168:22,
171:15
**ones** [5] - 76:7, 81:3,
86:15, 86:16, 112:15
**open** [7] - 17:13,
56:18, 77:22,
167:22, 167:23,
168:20, 170:14
**OPEN** [3] - 5:2, 93:16,
153:1
**open-ended** [1] -
77:22
**opening** [11] - 6:23,
6:25, 7:17, 19:9,
26:19, 28:1, 28:5,
28:6, 28:7, 166:13
**openings** [1] - 171:13
**operated** [1] - 21:13
**operating** [4] - 144:21,

145:2, 145:21,
148:12
**opinion** [1] - 17:12
**opportunity** [12] -
5:24, 18:14, 19:4,
30:22, 35:5, 148:3,
161:20, 164:10,
164:13, 164:14,
166:9, 169:10
**opposite** [1] - 12:12
**order** [7] - 6:15, 15:8,
22:24, 26:11, 62:16,
83:4, 83:5
**ordered** [3] - 61:23,
125:21, 135:2
**ordering** [2] - 65:2,
66:12
**ordinary** [1] - 150:14
**organized** [1] - 115:4
**orient** [2] - 7:7, 7:20
**original** [18] - 61:4,
66:16, 78:16, 85:3,
85:8, 87:2, 88:10,
94:12, 97:2, 97:16,
98:17, 102:11,
104:19, 106:4,
106:5, 116:16,
169:22
**originally** [2] - 60:3,
95:2
**originals** [6] - 43:7,
48:4, 50:9, 53:9,
63:21, 169:17
**originate** [2] - 142:20
**originated** [1] - 142:24
**otherwise** [2] - 91:4,
120:11
**outcome** [1] - 144:6
**outgoing** [10] - 53:19,
96:14, 144:24,
145:23, 145:24,
149:18, 149:19,
150:2, 150:15
**outline** [1] - 19:11
**outside** [3] - 10:3,
14:5, 153:15
**overall** [1] - 157:17
**overheard** [1] - 17:10
**overnight** [2] - 5:5,
5:11
**overrule** [1] - 9:15
**overruled** [1] - 36:24
**oversight** [1] - 15:24
**overwhelmingly** [1] -
162:22
**own** [20] - 16:21, 18:1,
20:22, 30:10, 34:23,
37:17, 69:7, 77:7,
78:23, 79:7, 105:15,
121:2, 127:9, 141:6,

148:17, 148:25,
154:23, 156:17,
159:2, 170:17
**owner** [6] - 20:22,
20:23, 21:21, 22:10,
22:16, 27:12
**owners** [1] - 68:17
**ownership** [1] - 27:14

---

### P

**P-1** [2] - 3:6, 40:24
**P-10** [5] - 3:16, 4:1,
61:12, 61:13, 91:9
**P-11** [5] - 3:17, 64:1,
64:3, 66:12
**P-12** [5] - 3:18, 66:11,
66:13, 66:22, 66:23
**P-13** [6] - 3:19, 70:3,
70:4, 74:14, 74:21,
75:2
**P-14** [5] - 3:20, 74:5,
74:6, 74:17, 74:24,
75:5
**P-15** [3] - 3:21, 75:21,
75:23
**P-16** [3] - 3:22, 82:24,
83:1
**P-17** [3] - 3:23, 84:5,
84:6
**P-18** [3] - 3:24, 87:7,
87:8
**P-19** [3] - 3:25, 88:16,
88:18
**P-2** [2] - 3:7, 43:15
**P-21** [3] - 4:2, 92:10,
92:12
**P-22** [4] - 4:3, 94:17,
94:19, 99:10
**P-23** [3] - 4:4, 99:7,
99:8
**P-24** [3] - 4:6, 104:7,
104:9
**P-25** [3] - 4:7, 106:11,
106:13
**P-26** [3] - 4:8, 107:1,
107:3
**P-27** [3] - 4:9, 108:9,
108:11
**P-28** [3] - 4:10,
112:24, 113:2
**P-3** [3] - 3:9, 46:14,
46:16
**P-34** [3] - 3:13, 53:14,
53:16
**P-4** [3] - 3:8, 46:7
**P-40** [4] - 4:5, 101:11,
101:24, 101:25
**P-5** [3] - 3:10, 48:12

**P-6** [3] - 3:11, 49:19, 49:20
**P-7** [4] - 3:12, 50:15, 50:17, 160:4
**P-8** [3] - 3:14, 58:1, 58:3
**P-9** [3] - 3:14, 58:1, 58:3
**P.C** [1] - 1:16
**p.m** [13] - 67:4, 93:2, 93:6, 93:16, 93:21, 151:17, 151:19, 152:23, 152:24, 153:1, 170:2, 171:1, 172:16
**PA** [3] - 95:8, 95:10, 95:14
**package** [3] - 110:6, 110:18, 111:15
**packet** [1] - 111:23
**Page** [17] - 41:4, 42:8, 42:21, 44:4, 44:25, 45:3, 45:15, 46:19, 108:18, 109:7, 117:13, 119:12, 121:19, 125:7, 139:18, 140:8
**page** [65] - 17:1, 40:10, 42:18, 42:25, 43:6, 44:25, 45:10, 45:12, 47:10, 48:3, 48:14, 49:1, 50:8, 51:7, 51:9, 51:16, 53:8, 54:11, 54:13, 54:17, 63:19, 64:15, 67:16, 68:3, 68:24, 68:25, 69:3, 69:22, 72:2, 73:8, 73:9, 73:10, 73:17, 73:24, 75:12, 81:12, 87:15, 90:14, 95:1, 99:15, 99:24, 100:1, 100:8, 102:21, 103:22, 104:1, 104:2, 110:25, 112:2, 112:3, 123:13, 124:2, 130:23, 136:23, 139:14, 140:7, 151:12
**PAGE** [2] - 2:3, 3:4
**pages** [12] - 40:14, 63:18, 66:15, 98:23, 99:21, 99:23, 103:25, 109:8, 112:13, 112:25, 136:18, 171:11
**Pages** [5] - 44:3, 44:5, 44:11, 45:4, 109:17
**paid** [3] - 26:3, 126:7, 126:11

**painful** [2] - 78:3, 78:5
**painfully** [1] - 77:25
**paper** [3] - 18:19, 68:18, 147:2
**papers** [1] - 110:8
**paperwork** [2] - 32:20, 34:7
**paragraph** [8] - 8:2, 48:20, 58:12, 62:6, 62:24, 70:23, 71:16, 105:3
**parse** [1] - 37:10
**part** [18] - 9:23, 26:21, 27:3, 44:3, 46:25, 61:3, 62:3, 79:20, 83:4, 84:20, 91:16, 91:17, 98:17, 108:23, 110:6, 110:17, 115:12, 115:20
**partial** [1] - 6:16
**participated** [2] - 15:3, 22:18
**participation** [12] - 8:16, 15:20, 17:3, 23:3, 23:6, 23:11, 24:1, 27:11, 155:16, 159:14, 168:8, 168:13
**particular** [8] - 24:17, 26:15, 28:9, 36:24, 77:16, 78:9, 154:11, 156:16
**particulars** [1] - 42:15
**parties** [2] - 11:13, 172:2
**parts** [1] - 59:18
**party** [12] - 11:17, 11:18, 11:20, 11:21, 11:22, 11:24, 11:25, 19:11, 28:5, 117:7, 162:10, 162:17
**party's** [1] - 28:8
**pass** [4] - 37:13, 115:17, 115:20, 132:21
**passed** [3] - 80:11, 118:4, 120:1
**past** [1] - 92:21
**pattern** [1] - 145:20
**pay** [8] - 24:7, 31:24, 58:12, 81:14, 83:4, 83:5, 98:5, 157:24
**payable** [3] - 26:7, 64:17, 102:25
**paying** [1] - 170:18
**payment** [17] - 58:7, 58:8, 64:11, 65:23, 76:9, 90:9, 90:10, 92:19, 92:20, 97:19,

100:9, 100:14, 100:23, 101:4, 101:18, 103:5, 125:23
**payments** [3] - 38:20, 103:6, 125:21
**Pellegrini** [1] - 20:21
**penalty** [1] - 11:19
**Pennsylvania** [19] - 70:20, 85:4, 95:15, 104:18, 104:21, 105:17, 135:4, 143:19, 143:20, 144:5, 159:22, 159:23, 160:5, 160:11, 160:16, 161:11, 161:16, 163:1, 163:23
**people** [16] - 17:6, 20:24, 68:23, 68:25, 69:4, 86:7, 86:13, 90:4, 98:6, 104:15, 108:14, 132:25, 143:6, 155:6, 161:14, 164:7
**per** [12] - 22:6, 58:14, 59:7, 60:11, 61:20, 64:6, 76:3, 76:19, 77:18, 80:2, 80:16, 88:21
**perfect** [1] - 92:23
**perfectly** [1] - 150:10
**performance** [1] - 162:8
**performing** [1] - 148:13
**perhaps** [2] - 18:24, 161:23
**period** [4] - 13:16, 80:11, 96:9, 145:3
**perjury** [1] - 11:19
**permission** [1] - 40:25
**permit** [10] - 16:13, 17:20, 36:25, 78:11, 89:16, 91:3, 154:20, 157:3, 158:15, 170:16
**permitted** [3] - 11:12, 17:22, 136:4
**permitting** [1] - 148:8
**person** [12] - 13:22, 14:11, 32:9, 34:2, 35:4, 44:12, 66:1, 71:11, 85:7, 103:17, 125:25, 132:22
**personal** [15] - 5:23, 14:13, 15:1, 15:2, 15:12, 15:20, 15:22, 18:2, 23:2, 27:10, 27:17, 154:15,

154:19, 168:8, 168:12
**personally** [11] - 13:8, 15:3, 15:15, 15:18, 15:21, 22:16, 22:18, 23:4, 25:20, 27:11, 65:11
**persons** [4] - 13:13, 90:2, 98:6, 107:25
**persuade** [1] - 7:1
**pertain** [1] - 100:23
**pertaining** [2] - 92:4, 106:20
**phase** [1] - 11:10
**phone** [11] - 16:25, 31:10, 76:22, 80:15, 86:1, 107:11, 107:12, 108:14, 122:14, 129:19, 139:3
**phones** [1] - 116:2
**phrase** [2] - 48:18, 48:23
**phrasing** [1] - 150:5
**physically** [1] - 39:4
**pick** [1] - 169:13
**picture** [2] - 46:24, 154:25
**piece** [2] - 18:19, 116:20
**pieces** [1] - 147:2
**place** [2] - 11:15, 28:17
**placed** [1] - 27:18
**placing** [1] - 51:6
**Plaintiff** [2] - 1:3, 1:15
**plaintiff** [34] - 5:25, 6:4, 12:3, 12:4, 12:6, 12:8, 12:11, 12:12, 12:14, 13:5, 13:7, 15:2, 15:10, 16:6, 16:8, 19:13, 19:16, 20:17, 20:23, 153:3, 153:18, 153:24, 154:1, 154:4, 158:3, 159:2, 165:13, 166:11, 166:12, 169:11, 170:7, 170:8, 170:11
**PLAINTIFF** [58] - 3:6, 3:7, 3:8, 3:9, 3:10, 3:11, 3:12, 3:13, 3:14, 3:16, 3:17, 3:18, 3:19, 3:20, 3:21, 3:22, 3:23, 3:24, 3:25, 4:1, 4:2, 4:3, 4:4, 4:5, 4:6, 4:7, 4:8, 4:9, 4:10, 40:24, 43:15, 46:7, 46:16, 48:12, 49:20,

50:17, 53:16, 58:3, 61:13, 64:3, 66:23, 70:4, 74:6, 75:23, 83:1, 84:6, 87:8, 88:18, 91:9, 92:12, 94:19, 99:8, 101:25, 104:9, 106:13, 107:3, 108:11, 113:2
**Plaintiff's** [69] - 40:8, 40:10, 40:19, 40:22, 41:4, 42:25, 43:11, 43:13, 45:7, 45:18, 46:2, 46:5, 46:8, 46:11, 46:20, 47:19, 48:7, 48:15, 49:4, 49:5, 49:6, 49:8, 49:12, 49:16, 50:2, 50:12, 52:21, 52:25, 53:12, 54:22, 57:4, 57:5, 57:6, 57:17, 57:19, 57:23, 60:22, 61:10, 63:12, 63:24, 66:4, 66:8, 66:20, 69:12, 69:22, 70:1, 73:13, 73:21, 74:3, 74:9, 75:8, 75:19, 82:9, 83:3, 83:18, 84:3, 87:5, 88:13, 92:8, 94:3, 94:15, 100:16, 101:8, 104:5, 106:15, 106:23, 107:15, 108:7, 109:17
**plaintiff's** [12] - 5:8, 12:13, 48:9, 114:11, 138:18, 138:19, 153:7, 154:13, 155:1, 158:10, 158:22, 170:12
**plaintiffs** [4] - 5:7, 13:10, 138:23, 154:10
**plan** [3] - 93:12, 118:15, 118:19
**play** [4] - 8:6, 46:24, 147:4, 165:17
**PLAZA** [1] - 1:8
**plenty** [1] - 162:20
**plus** [15] - 30:7, 50:23, 50:24, 52:3, 52:10, 52:11, 64:8, 70:16, 71:25, 85:3, 85:8, 85:11, 99:2
**point** [27] - 7:17, 8:1, 28:1, 30:4, 32:24, 36:10, 37:23, 37:25, 38:1, 81:8, 92:22, 132:2, 132:10, 142:4, 142:9, 145:17, 145:19,

155:14, 155:17, 155:19, 155:21, 156:4, 166:7, 166:10, 168:2

**point-by-point** [2] - 155:14, 155:21

**points** [2] - 7:22, 18:4

**pontificate** [1] - 7:16

**population** [1] - 162:3

**portion** [2] - 125:13, 156:5

**portray** [1] - 17:2

**position** [2] - 31:6, 31:19

**positive** [1] - 159:24

**possibility** [1] - 33:13

**possible** [5] - 11:22, 12:1, 105:15, 109:14, 167:11

**possibly** [5] - 33:5, 50:24, 62:4, 152:13, 154:10

**post** [1] - 17:1

**potential** [1] - 91:1

**pow** [1] - 139:4

**pow-wowed** [1] - 139:4

**practice** [6] - 8:8, 145:2, 145:21, 156:15, 157:9, 164:17

**practices** [1] - 144:21

**predicate** [3] - 78:16, 79:18, 146:19

**predict** [1] - 35:7

**prediction** [2] - 7:3, 172:11

**predictions** [1] - 171:5

**preface** [1] - 78:6

**prefer** [2] - 46:23, 47:6

**preferred** [1] - 47:7

**preliminary** [2] - 8:15, 20:9

**premise** [5] - 73:2, 77:5, 77:8, 155:17, 162:20

**prepare** [2] - 64:19, 120:17

**prepared** [8] - 12:1, 81:16, 81:19, 81:21, 82:2, 114:7, 153:3, 168:20

**preparing** [1] - 11:13

**preponderance** [4] - 12:5, 12:21, 15:11, 154:21

**prepped** [1] - 79:5

**presence** [2] - 153:9, 153:15

**present** [3] - 19:13,

19:16, 148:8

**presented** [4] - 10:5, 16:5, 111:18, 154:10

**presenting** [2] - 26:23, 27:19

**presents** [2] - 155:1, 166:13

**president** [1] - 13:7

**pretrial** [2] - 11:8, 11:10

**previous** [1] - 62:19

**previously** [2] - 10:25, 20:1

**price** [8] - 24:17, 41:14, 42:2, 42:4, 59:10, 61:18, 64:7, 126:7

**prices** [2] - 126:3, 126:5

**pricing** [3] - 61:21, 85:11, 118:11

**principal** [6] - 162:7, 162:9, 162:11, 162:14, 162:17, 168:5

**Priority** [10] - 60:10, 61:15, 61:21, 61:22, 62:12, 64:7, 70:17, 85:11, 97:4

**priority** [1] - 58:24

**probative** [5] - 27:8, 77:16, 155:19, 156:8, 156:11

**problem** [4] - 25:6, 105:7, 113:23, 166:25

**problems** [2] - 155:12, 163:16

**procedural** [2] - 28:3, 154:1

**procedure** [12] - 19:7, 79:9, 96:20, 145:23, 146:3, 146:5, 146:7, 146:8, 146:9, 146:10, 146:13, 148:12

**procedures** [4] - 11:16, 144:19, 145:21, 146:4

**proceed** [5] - 24:18, 29:12, 56:20, 79:13, 166:20

**proceeding** [1] - 51:2

**process** [7] - 8:6, 17:22, 23:3, 23:12, 25:15, 27:1, 118:13

**processing** [1] - 62:2

**produce** [1] - 12:6

**production** [2] - 11:20, 111:21

**professional** [1] - 13:18

**program** [1] - 58:16

**prohibits** [1] - 7:18

**promised** [1] - 5:5

**promoted** [1] - 14:10

**prompt** [1] - 47:2

**promptly** [2] - 16:19, 62:3

**pronged** [1] - 168:7

**proof** [8] - 10:8, 10:10, 12:2, 12:17, 13:25, 96:16, 154:11, 164:21

**proper** [5] - 9:24, 131:25, 146:7, 147:14, 148:9

**properly** [1] - 7:3

**proposal** [2] - 37:21, 37:22

**propose** [2] - 37:23, 153:22

**proposed** [2] - 169:2, 172:3

**prospect** [1] - 34:15

**protect** [1] - 162:10

**Protection** [3] - 13:6, 13:21, 21:25

**prove** [7] - 7:5, 7:6, 15:11, 16:6, 19:12, 23:2, 27:10, 164:21

**proved** [2] - 14:16, 91:7, 164:20

**proven** [1] - 165:18

**provide** [1] - 108:21

**provided** [6] - 42:16, 121:23, 124:1, 125:17, 138:24, 145:5

**provides** [1] - 22:15

**proving** [1] - 12:4

**public** [1] - 17:16

**publish** [3] - 40:25, 43:16, 43:19

**pull** [2] - 141:5, 167:9

**pulled** [1] - 137:12

**purchases** [1] - 126:7

**purpose** [3] - 6:25, 9:18, 19:4

**purposes** [3] - 14:7, 30:23, 74:9

**pursue** [2] - 33:20, 34:21

**pursuing** [1] - 34:18

**pushed** [1] - 146:24

**put** [25] - 7:12, 12:10, 12:19, 20:2, 20:8, 21:5, 21:7, 29:4, 36:4, 41:21, 46:22, 48:16, 48:17, 53:5,

59:20, 81:12, 103:1, 103:8, 111:25, 128:1, 143:23, 167:23, 172:8

**puts** [1] - 131:9

**putting** [1] - 59:11

## Q

**qualifies** [1] - 14:7

**qualms** [1] - 146:10

**quantities** [2] - 52:5, 64:25

**quantity** [1] - 16:9

**questioning** [5] - 77:4, 104:16, 138:17, 145:18, 146:22

**questions** [29] - 6:21, 7:15, 9:7, 9:9, 11:18, 18:13, 18:14, 18:17, 18:18, 18:24, 19:6, 22:13, 29:19, 36:7, 62:15, 77:6, 78:21, 120:22, 143:5, 144:12, 145:14, 146:9, 147:16, 150:24, 151:24, 151:25, 152:5, 170:22

**quick** [2] - 87:10, 143:5

**quickly** [1] - 118:12

**quite** [2] - 96:10, 163:11

**quote** [8] - 7:9, 7:11, 13:12, 13:19, 24:21, 126:8, 140:24, 154:16

**quoted** [1] - 97:4

## R

**radius** [2] - 35:18, 104:20

**raining** [1] - 35:13

**rainy** [8] - 25:4, 25:12, 35:4, 35:7, 39:17, 39:20, 70:12, 71:13

**raise** [4] - 28:18, 151:3, 152:4, 166:2

**raised** [1] - 151:25

**RANDALL** [1] - 1:5

**Randall** [84] - 5:18, 13:1, 13:8, 13:13, 13:19, 14:22, 14:25, 16:2, 21:1, 21:19, 21:22, 22:4, 22:7, 22:10, 23:13, 24:5, 24:9, 24:12, 24:24,

25:22, 27:12, 29:21, 30:3, 30:9, 31:5, 31:20, 32:1, 32:14, 34:20, 35:5, 35:18, 36:11, 38:12, 38:20, 39:11, 42:16, 44:12, 47:8, 52:5, 52:12, 53:21, 57:12, 64:16, 65:14, 65:16, 67:21, 68:5, 68:8, 68:21, 69:19, 72:11, 81:13, 82:5, 82:16, 82:18, 83:8, 89:11, 92:3, 92:15, 95:16, 98:4, 102:5, 106:17, 113:4, 114:17, 114:21, 117:19, 118:17, 122:10, 129:13, 135:13, 139:21, 141:1, 142:8, 142:18, 142:25, 144:18, 145:2, 148:13, 149:10, 151:9, 156:16, 166:1

**Randall-created** [1] - 47:8

**Randy** [8] - 31:14, 31:16, 44:17, 54:24, 54:25, 124:10, 155:7, 159:4

**rather** [3] - 15:25, 117:6, 153:16

**Raymond** [6] - 13:8, 27:24, 31:15, 137:20, 155:10, 159:4

**re** [3] - 44:4, 44:10, 84:23

**re-fax** [2] - 44:4, 44:10

**read** [28] - 16:17, 18:2, 44:8, 48:20, 51:3, 54:9, 54:23, 58:17, 67:10, 70:21, 76:16, 83:16, 85:4, 85:12, 86:10, 102:22, 114:7, 117:7, 117:9, 121:19, 121:21, 123:10, 139:14, 139:18, 140:3, 140:5, 140:7, 140:13

**reading** [1] - 58:23

**Reading** [1] - 86:2

**Reading/Allentown** [1] - 85:4

**reads** [6] - 58:24, 67:17, 76:3, 85:2, 85:10, 88:21

**ready** [8] - 8:5, 25:11, 28:10, 56:20, 93:3,

93:17, 93:24, 139:4
**real** [1] - 143:4
**really** [5] - 7:8, 77:8, 112:4, 127:4, 137:6, 165:18
**reason** [4] - 79:6, 121:9, 135:22, 165:14
**reasonable** [3] - 12:17, 18:24, 158:1
**reasonably** [1] - 78:21
**recalled** [1] - 127:13
**receipt** [6] - 64:12, 76:10, 102:13, 118:21, 132:25, 133:10
**receive** [3] - 19:23, 37:13, 127:4
**received** [69] - 5:9, 9:2, 9:18, 11:9, 19:22, 20:25, 40:22, 43:13, 43:21, 44:2, 44:3, 45:4, 46:5, 46:14, 48:9, 49:19, 50:15, 53:4, 53:14, 57:12, 58:2, 61:12, 64:1, 66:22, 67:9, 67:21, 68:8, 68:9, 68:20, 69:19, 70:3, 71:3, 74:5, 75:21, 82:15, 82:16, 82:24, 84:5, 87:7, 88:16, 92:3, 92:10, 92:14, 94:17, 99:7, 101:24, 104:7, 106:11, 106:17, 107:1, 107:24, 108:9, 108:13, 112:25, 116:5, 118:14, 129:15, 131:12, 133:12, 139:25, 140:9, 140:10, 140:11, 142:7, 142:8, 142:17, 142:18, 143:1, 150:14
**Received** [1] - 110:15
**RECEIVED** [58] - 3:6, 3:7, 3:8, 3:9, 3:10, 3:11, 3:12, 3:13, 3:14, 3:16, 3:17, 3:18, 3:19, 3:20, 3:21, 3:22, 3:23, 3:24, 3:25, 4:1, 4:2, 4:3, 4:4, 4:5, 4:6, 4:7, 4:8, 4:9, 4:10, 40:24, 43:15, 46:7, 46:16, 48:12, 49:20, 50:17, 53:16, 58:3, 61:13, 64:3, 66:23, 70:4, 74:6, 75:23,

80:3
**reference** [2] - 31:16, 70:9
**referenced** [1] - 136:10
**references** [1] - 58:8
**referencing** [2] - 121:13, 123:23
**referring** [10] - 31:16, 45:1, 48:22, 49:2, 59:2, 59:20, 80:2, 95:12, 129:12, 134:15
**reflect** [2] - 27:1, 153:18
**reflects** [1] - 154:4
**refrain** [1] - 78:7
**reframe** [1] - 81:18
**reframed** [1] - 79:21
**refresh** [3] - 27:4, 30:23, 117:1
**refreshed** [2] - 32:21, 79:8
**refreshes** [1] - 117:10
**regard** [4] - 35:10, 96:21, 148:21, 158:21
**regarded** [1] - 14:16
**regarding** [10] - 41:14, 42:2, 46:21, 51:2, 76:1, 84:24, 88:20, 90:17, 149:15, 149:23
**register** [1] - 17:17
**regular** [1] - 20:6
**reject** [1] - 10:17
**relates** [1] - 85:25
**relating** [3] - 82:20, 88:7, 98:14
**relation** [1] - 33:13
**relationship** [1] - 13:14
**relative** [2] - 16:3, 156:19
**released** [1] - 152:11
**relevance** [1] - 77:16
**relevant** [6] - 11:11, 11:21, 16:22, 27:8, 77:17, 163:7
**relies** [1] - 27:3
**rely** [2] - 19:24, 79:6
**remember** [30] - 17:23, 18:1, 18:5, 19:3, 33:11, 60:17, 64:24, 96:11, 96:23, 115:19, 116:13, 116:19, 116:20, 116:21, 116:23, 117:5, 117:24, 119:5, 119:6,

119:25, 120:11, 123:20, 124:16, 124:18, 128:7, 136:16, 137:22, 140:24, 149:20, 149:22
**remembered** [1] - 32:19
**remind** [3] - 6:24, 49:8, 74:9
**removal** [2] - 126:8, 126:21
**Remove** [1] - 108:19
**remove** [2] - 58:14, 58:15, 58:20, 61:19, 61:20, 67:6, 67:17, 67:25, 69:4, 86:3, 89:23, 108:3, 126:14, 126:25, 127:19, 127:24, 127:25, 128:1, 130:13, 130:20, 131:8, 131:15, 131:22, 132:7, 132:17, 132:23, 142:14, 142:19
**removed** [18] - 68:14, 86:8, 86:17, 90:3, 104:16, 107:25, 108:14, 109:6, 109:24, 110:1, 110:4, 112:23, 131:25, 132:1, 133:1, 142:9, 142:19, 143:1
**removing** [1] - 137:13
**rendered** [3] - 64:12, 76:9, 76:10
**renewed** [1] - 160:24
**repairing** [1] - 24:25
**repairs** [6] - 13:17, 13:18, 24:22, 24:23, 25:2, 48:23
**repeated** [1] - 145:13
**rephrase** [8] - 59:18, 73:4, 73:5, 84:12, 89:4, 97:20, 105:11, 143:13
**rephrased** [1] - 148:8
**report** [4] - 31:13, 34:11, 93:1, 170:19
**reported** [1] - 24:20
**REPORTER** [1] - 118:1
**represent** [2] - 20:20, 40:4
**representation** [1] - 111:24
**representative** [1] - 13:12

**representing** [1] - 138:23
**request** [18] - 20:8, 24:19, 25:13, 26:14, 27:6, 28:2, 34:10, 39:13, 40:25, 80:23, 82:4, 104:18, 106:5, 135:3, 135:5, 136:11, 161:2, 167:21
**requested** [3] - 41:12, 41:20, 159:9
**requests** [5] - 31:11, 62:15, 106:3, 129:15, 142:19
**require** [2] - 52:20, 87:10
**required** [7] - 1:23, 19:5, 28:5, 58:13, 58:19, 103:1, 154:11
**requirement** [1] - 12:18
**requirements** [2] - 16:4, 154:10
**requires** [2] - 13:25, 15:2
**requiring** [1] - 30:16
**research** [2] - 16:20, 170:17
**resend** [2] - 104:22, 105:4
**resent** [3] - 135:15, 159:9, 159:11
**reserve** [3] - 28:1, 164:13, 167:17
**resolution** [2] - 11:13, 161:23
**resolve** [2] - 78:2, 161:24
**respectful** [1] - 8:6
**respond** [2] - 133:21, 161:7
**responded** [1] - 24:21
**responding** [2] - 42:15, 152:16
**RESPONSE** [2] - 5:3, 8:13
**response** [7] - 104:24, 109:14, 133:18, 149:14, 164:24, 167:24
**responsibilities** [2] - 31:8, 148:14
**responsibility** [6] - 5:23, 27:17, 32:9, 34:20, 115:4, 168:5
**responsible** [5] - 13:9, 32:4, 32:5, 32:8, 164:3
**rest** [5] - 153:3, 153:6,

153:12, 153:17, 172:2
**rested** [3] - 154:4, 169:20, 170:11
**resting** [1] - 153:18
**restriction** [3] - 35:19, 35:22, 36:16
**restrictions** [4] - 35:17, 36:22, 162:13, 162:16
**rests** [4] - 153:24, 154:2, 169:11, 170:9
**result** [1] - 168:23
**resulted** [1] - 118:21
**resume** [3] - 56:11, 56:15, 152:21
**rethink** [1] - 5:12
**retire** [2] - 16:14, 19:20
**return** [2] - 168:17, 170:13
**returns** [1] - 165:6
**reversed** [1] - 146:4
**review** [8] - 5:24, 18:21, 30:22, 44:5, 44:11, 114:11, 114:14, 155:2
**reviewed** [7] - 5:8, 25:20, 32:22, 37:20, 37:24, 53:5, 150:15
**reviewing** [1] - 138:18
**revise** [1] - 5:13
**revised** [1] - 54:2
**revision** [2] - 5:21, 48:17
**rights** [1] - 164:7
**ring** [2] - 34:6, 39:25
**rise** [13] - 5:1, 8:9, 56:13, 56:19, 56:23, 93:5, 93:15, 93:20, 152:22, 152:25, 169:10, 170:1, 170:25
**risk** [2] - 113:9, 113:10
**RMR** [2] - 1:24, 1:25
**Robert** [1] - 1:25
**rolling** [1] - 139:13
**Roof** [1] - 42:19
**roof** [6] - 13:16, 24:25, 25:5, 35:4, 68:17
**roofing** [7] - 13:1, 24:24, 25:2, 25:7, 35:1, 47:15, 65:14
**roofs** [1] - 31:12
**room** [2] - 16:14, 93:2
**route** [1] - 147:19
**routed** [1] - 115:24
**routine** [10] - 145:1, 146:15, 146:23, 147:19, 147:22,

148:1, 148:12, 148:24, 156:15
**routines** [3] - 144:19, 147:1, 147:2
**routing** [1] - 26:9
**rubber** [1] - 141:14
**rubber-stamped** [1] - 141:14
**Rule** [3] - 153:19, 157:3, 158:14
**ruled** [1] - 6:12
**rules** [5] - 9:12, 11:12, 17:18, 18:23, 150:23
**Rules** [1] - 146:16
**ruling** [5] - 9:13, 145:19, 163:9, 165:25, 167:24
**rulings** [1] - 172:1
**run** [1] - 83:14
**rush** [1] - 172:10

## S

**safe** [2] - 169:19, 170:23
**SALES** [1] - 1:2
**Sales** [4] - 12:3, 13:5, 13:11, 20:21
**sat** [3] - 12:16, 138:22, 138:24
**satisfy** [4] - 5:20, 5:21, 168:12, 168:13
**saved** [1] - 86:16
**saw** [3] - 57:19, 144:24, 147:3
**scale** [1] - 12:12
**scales** [1] - 12:13
**schedule** [1] - 170:22
**scope** [5] - 26:2, 82:17, 141:6, 141:23, 149:7
**screen** [3] - 7:12, 51:6, 81:12
**screw** [1] - 105:16
**screw-up** [1] - 105:16
**seated** [8] - 5:4, 8:11, 29:2, 56:25, 93:23, 153:2, 170:3, 171:2
**second** [29] - 9:9, 14:2, 15:21, 16:17, 42:1, 44:10, 45:12, 47:1, 47:10, 47:14, 48:19, 49:1, 58:12, 62:6, 63:19, 67:16, 68:24, 69:22, 71:7, 76:1, 76:4, 80:22, 81:14, 86:14, 100:1, 104:1, 105:3, 112:2, 147:18

**seconds** [1] - 168:2
**secretarial** [1] - 31:9
**secretary** [1] - 23:16
**section** [2] - 48:19, 58:22
**Section** [1] - 1:23
**see** [54] - 10:3, 19:21, 20:2, 20:4, 25:10, 31:2, 33:23, 34:5, 35:11, 43:24, 44:4, 45:4, 45:12, 47:1, 49:22, 52:25, 55:20, 56:1, 59:25, 60:17, 60:23, 67:1, 67:7, 67:19, 68:18, 70:6, 73:8, 76:25, 78:19, 83:3, 84:8, 91:16, 102:10, 103:5, 103:9, 104:18, 106:3, 116:15, 116:16, 116:18, 117:9, 145:15, 145:24, 146:14, 151:11, 151:14, 153:20, 164:14, 170:24, 171:10, 171:22, 171:23, 172:5, 172:7
**seeing** [2] - 5:12, 7:8
**seeking** [3] - 55:5, 156:17, 171:6
**seeks** [1] - 13:7
**seem** [1] - 156:6
**sees** [1] - 145:23
**Select** [5] - 12:3, 13:4, 13:11, 15:10, 20:21
**SELECT** [1] - 1:2
**selecting** [1] - 22:13
**selection** [1] - 17:22, 28:3
**send** [18] - 13:3, 13:22, 14:2, 22:1, 26:14, 35:13, 39:1, 39:19, 42:22, 61:25, 64:12, 70:11, 71:13, 76:9, 97:1, 97:12, 105:18, 163:1
**sender** [9] - 5:6, 5:13, 5:19, 5:20, 6:18, 14:7, 14:22, 162:4, 162:5
**sending** [17] - 7:18, 26:4, 26:10, 58:9, 58:13, 63:6, 70:13, 70:16, 71:16, 88:24, 89:7, 105:16, 107:8, 107:9, 107:10, 155:8
**sense** [1] - 10:22
**sent** [79] - 13:15, 14:4, 14:9, 14:20, 25:25,

30:25, 36:11, 38:14, 39:4, 44:3, 47:12, 58:14, 62:4, 62:7, 62:20, 62:25, 63:1, 63:4, 64:7, 64:9, 65:19, 68:4, 68:20, 70:15, 75:16, 76:11, 76:15, 76:16, 81:7, 83:14, 85:11, 85:14, 89:10, 89:21, 96:17, 97:4, 99:24, 104:17, 104:19, 104:21, 105:1, 105:4, 105:20, 123:17, 123:22, 123:24, 125:21, 125:22, 125:23, 125:25, 131:5, 131:12, 132:6, 135:14, 137:20, 137:23, 139:1, 139:2, 145:5, 148:22, 155:5, 158:23, 159:8, 159:13, 160:13, 160:16, 160:21, 160:22, 161:5, 163:2, 163:10, 163:18, 164:21, 165:1, 165:4, 165:6, 165:25, 166:6
**sentence** [9] - 42:1, 48:20, 51:5, 63:4, 70:23, 78:17, 80:1, 85:10
**separate** [2] - 21:14, 21:16
**September** [2] - 30:8, 95:19
**served** [1] - 30:15
**service** [8] - 13:18, 24:22, 24:23, 25:2, 31:11, 31:12, 115:7, 115:10
**services** [14] - 14:9, 21:1, 21:19, 24:15, 25:7, 25:22, 32:14, 35:2, 38:12, 39:12, 47:16, 64:12, 76:9, 76:10
**servicing** [3] - 31:12, 35:23, 115:16
**serving** [1] - 13:11
**set** [8] - 25:11, 35:12, 44:6, 44:21, 44:23, 157:20
**setting** [2] - 101:2, 106:6
**seven** [4] - 50:22, 51:20, 97:6, 122:22
**several** [5] - 104:15,

126:13, 131:5, 147:15, 155:12
**shall** [2] - 43:18, 112:12
**share** [4] - 16:11, 20:10, 26:21, 78:18
**shared** [2] - 26:19, 34:17
**sheet** [9] - 74:17, 75:5, 75:12, 94:6, 99:2, 99:23, 107:19, 169:2, 169:4
**ship** [1] - 156:6
**short** [3] - 11:5, 17:2, 21:3
**show** [6] - 50:19, 111:13, 117:7, 130:23, 136:15, 153:23
**showed** [3] - 112:1, 143:18, 158:10
**showing** [5] - 15:10, 91:11, 95:11, 96:1, 102:5
**shown** [4] - 91:21, 103:1, 133:12, 164:18
**side** [7] - 6:12, 14:19, 19:8, 23:8, 70:21, 102:10, 102:21
**sidebar** [8] - 18:22, 76:25, 77:1, 77:2, 79:16, 110:20, 145:15, 151:3
**SIDEBAR** [4] - 110:21, 112:20, 145:16, 148:6
**sides** [6] - 6:24, 12:12, 145:20, 153:10, 169:20, 172:3
**sign** [2] - 24:8, 32:1
**signature** [2] - 103:1, 103:2
**signed** [2] - 6:16, 6:20
**significance** [2] - 84:20, 85:24
**significant** [2] - 23:9, 23:11
**SIMANDLE** [1] - 1:11
**similar** [3] - 83:9, 87:13, 167:2
**similarities** [1] - 90:19
**similarity** [1] - 87:12
**similarly** [2] - 17:10, 20:24
**simple** [2] - 7:17, 58:16
**simplicity** [3] - 46:23, 47:6, 47:7
**simply** [4] - 16:15,

21:9, 158:8, 164:10
**single** [3] - 77:7, 155:4, 156:2
**sit** [3] - 60:1, 60:17, 120:13
**sitting** [1] - 134:1
**situated** [1] - 20:24
**situation** [1] - 155:20
**situations** [1] - 130:2
**six** [2] - 61:24, 69:20
**slightly** [1] - 6:18
**slip** [2] - 102:13, 103:14
**slipped** [1] - 168:3
**small** [1] - 17:5
**smooth** [1] - 144:22
**so..** [1] - 171:12
**social** [1] - 17:2
**solely** [2] - 10:5, 15:15
**solicitation** [2] - 116:9, 139:25
**solicited** [5] - 50:21, 51:20, 70:18, 71:19, 85:3
**Solutions** [10] - 13:3, 21:13, 24:11, 33:8, 39:2, 64:17, 83:5, 92:4, 92:16, 101:5
**someone** [5] - 115:15, 121:22, 124:19, 128:5, 140:10
**sometimes** [7] - 9:22, 37:10, 76:22, 93:9, 150:25
**somewhat** [1] - 12:13
**somewhere** [1] - 169:17
**soon** [3] - 70:11, 71:10, 93:3
**sorry** [17] - 52:23, 84:24, 96:11, 106:25, 118:2, 119:8, 123:9, 123:14, 123:15, 134:9, 137:1, 137:7, 142:22, 143:7, 149:17, 155:10, 170:4
**sort** [3] - 17:2, 157:8, 158:3
**sounded** [3] - 24:21, 34:14, 119:20
**speaking** [2] - 44:15, 105:7
**special** [1] - 17:18
**specific** [17] - 15:10, 35:13, 39:20, 70:20, 124:15, 128:23, 129:4, 135:8, 142:5, 143:12, 155:23,

155:24, 157:15, 162:13, 163:15, 169:3
**specifically** [16] - 15:4, 96:23, 116:6, 116:8, 116:13, 124:16, 124:18, 134:16, 134:21, 140:24, 142:10, 142:22, 145:7, 155:25, 156:14, 157:13
**specification** [1] - 141:17
**specifics** [1] - 139:5
**specified** [1] - 139:18
**speculate** [1] - 165:11
**speculation** [1] - 134:1
**speech** [1] - 77:8
**spell** [1] - 28:22
**spent** [1] - 147:15
**staff** [1] - 23:14
**stamp** [19] - 49:10, 49:13, 49:24, 74:14, 74:18, 84:8, 84:9, 84:18, 91:12, 91:19, 95:3, 95:24, 95:25, 96:2, 96:8, 96:13, 99:11, 99:17, 151:12
**stamped** [2] - 113:1, 141:14
**stamps** [1] - 96:18
**stand** [7] - 10:24, 21:6, 21:8, 28:15, 28:16, 95:14, 164:24
**standard** [4] - 144:21, 145:2, 148:12, 168:7
**standing** [2] - 136:10, 153:24
**stands** [3] - 131:18, 166:11, 166:12
**start** [10] - 8:5, 17:13, 58:6, 76:18, 80:10, 123:15, 140:23, 160:8, 160:9, 170:13
**started** [8] - 93:3, 95:20, 96:7, 114:5, 118:13, 139:12, 155:17, 170:20
**starting** [5] - 58:23, 59:5, 139:18, 140:7, 156:4
**state** [5] - 28:21, 59:13, 74:11, 80:1, 153:25
**statement** [7] - 6:25, 19:9, 26:19, 28:5, 28:7, 166:13
**statements** [2] - 6:24,

9:7
**STATES** [3] - 1:1, 1:8, 1:11
**states** [5] - 44:2, 61:15, 71:20, 127:18, 166:12
**stating** [1] - 13:16
**status** [1] - 15:15
**statute** [4] - 5:13, 7:21, 13:25, 15:14
**statutory** [1] - 14:6
**step** [2] - 56:12, 152:8
**steps** [1] - 157:9
**still** [13] - 27:13, 54:3, 60:7, 60:10, 77:21, 124:6, 141:17, 146:10, 146:19, 146:21, 155:20, 162:23, 166:20
**stipulate** [1] - 9:3
**stop** [2] - 68:18, 92:22
**stopped** [1] - 94:2
**strategies** [1] - 139:5
**strategy** [1] - 139:5
**STREETS** [1] - 1:9
**strike** [3] - 89:2, 96:12, 157:6
**striking** [1] - 79:18
**structured** [1] - 147:13
**stuff** [7] - 29:19, 47:15, 53:18, 72:11, 74:25, 77:15, 96:1
**subject** [8] - 14:18, 14:20, 26:22, 27:14, 77:11, 91:6, 114:16, 126:23
**submissibility** [1] - 156:25
**submit** [3] - 161:21, 164:10
**submitted** [3] - 110:24, 159:3
**submitting** [1] - 154:24
**subpoena** [3] - 30:15, 152:12, 152:16
**subsequent** [4] - 39:22, 55:25, 161:1, 164:25
**substance** [1] - 105:25
**substantial** [1] - 156:23
**successful** [1] - 39:16
**successfully** [4] - 13:15, 14:17, 165:25, 166:6
**sufficient** [7] - 146:13, 146:19, 155:8,

157:5, 158:2, 166:15, 167:18
**suggest** [2] - 79:9, 136:1
**suggesting** [3] - 78:14, 135:24, 143:12
**suggestion** [1] - 118:15
**summarize** [1] - 19:18
**summary** [8] - 5:14, 5:16, 5:22, 6:16, 7:22, 12:23, 15:9, 165:25
**supplemental** [2] - 5:7, 167:3
**supplied** [2] - 32:20, 41:22
**supplies** [1] - 31:10
**supply** [3] - 79:10, 165:1, 167:9
**support** [1] - 27:10
**supported** [1] - 12:20
**suppose** [3] - 119:25, 124:15, 130:2
**supposed** [2] - 33:23, 159:19
**supposition** [1] - 161:13
**suppositions** [1] - 154:16
**Supreme** [1] - 162:21
**surmised** [1] - 160:25
**suspect** [1] - 154:23
**sustain** [2] - 78:16, 136:8
**sustained** [7] - 9:14, 81:23, 89:2, 105:10, 144:8, 145:9, 148:7
**sworn** [2] - 8:14, 28:19
**symmetry** [1] - 40:7
**system** [1] - 6:20

---

**T**

**tab** [1] - 40:2
**tabs** [1] - 39:25
**TAKEN** [1] - 152:24
**tangential** [2] - 15:25, 23:8
**target** [8] - 41:15, 42:3, 42:6, 76:7, 81:4, 81:5, 104:19, 106:4
**targeted** [3] - 97:2, 97:5, 97:16
**targets** [2] - 143:25, 161:12

**task** [1] - 155:23
**Tate** [1] - 1:25
**TCPA** [23] - 7:18, 13:21, 13:25, 14:7, 14:19, 14:23, 15:16, 15:19, 15:21, 15:22, 15:25, 21:25, 22:1, 144:3, 162:2, 162:6, 162:7, 163:6, 163:17, 163:18, 163:22, 164:4, 164:16
**technically** [2] - 31:15, 77:24
**technicians** [1] - 13:18
**telephone** [3] - 14:2, 14:17, 80:18
**Telephone** [3] - 13:6, 13:21, 21:25
**template** [2] - 42:10, 42:12
**ten** [5] - 104:20, 114:3, 134:3, 144:13, 152:21
**ten-mile** [1] - 104:20
**tenants** [1] - 68:17
**term** [6] - 120:22, 120:23, 128:17, 129:12, 149:18
**terms** [9] - 33:10, 34:14, 38:24, 44:15, 129:24, 140:23, 154:21, 165:18, 171:5
**test** [1] - 154:22
**testified** [25] - 28:19, 111:18, 122:6, 124:10, 124:23, 125:20, 125:23, 126:2, 127:13, 128:4, 128:16, 128:17, 131:8, 132:24, 136:3, 136:16, 137:19, 137:25, 140:19, 154:14, 157:8, 157:11, 157:23, 158:6, 158:12
**testifies** [1] - 24:4
**testify** [6] - 23:15, 30:16, 36:20, 124:17, 125:5, 156:15
**testifying** [11] - 11:1, 18:4, 30:23, 73:3, 114:5, 114:10, 116:23, 121:1, 123:7, 128:7, 149:9
**testimony** [38] - 9:1,

9:20, 10:9, 10:17,
11:24, 17:24, 18:5,
19:4, 19:23, 19:25,
27:9, 30:22, 32:22,
93:24, 113:11,
114:12, 120:21,
121:14, 128:16,
134:4, 135:19,
139:4, 139:11,
144:16, 150:10,
150:13, 155:2,
155:15, 155:19,
155:21, 156:5,
156:8, 156:11,
157:1, 157:6, 157:7,
158:4, 158:7

**text** [6] - 74:19, 74:24,
91:16, 97:1, 99:15,
106:1

**Tharp** [2] - 163:8,
163:13

**Tharp's** [1] - 163:14

**THE** [217] - 1:1, 1:11,
5:1, 5:4, 5:11, 6:1,
6:3, 6:6, 6:9, 6:13,
6:15, 6:23, 7:20,
7:25, 8:9, 8:11, 8:14,
20:14, 27:21, 28:4,
28:14, 28:17, 28:21,
28:24, 29:1, 29:10,
29:13, 36:2, 36:6,
36:24, 40:20, 40:22,
41:1, 43:13, 43:17,
43:20, 46:3, 46:5,
46:8, 46:12, 46:14,
48:9, 49:19, 50:15,
53:14, 56:6, 56:9,
56:13, 56:15, 56:19,
56:20, 56:22, 56:23,
56:25, 57:24, 58:1,
59:15, 59:17, 61:12,
64:1, 66:22, 70:3,
72:22, 72:24, 73:5,
73:14, 73:17, 73:18,
74:5, 75:21, 77:1,
77:13, 78:5, 78:9,
78:25, 79:6, 79:15,
79:17, 81:18, 81:23,
82:24, 84:5, 84:14,
87:7, 88:14, 88:16,
89:2, 89:16, 89:18,
91:3, 91:6, 92:10,
92:21, 92:25, 93:5,
93:7, 93:13, 93:15,
93:17, 93:19, 93:20,
93:22, 94:17, 99:1,
99:6, 101:11,
101:14, 101:24,
104:7, 105:10,
105:12, 106:11,
106:24, 107:1,

108:9, 109:19,
109:22, 110:20,
110:22, 111:8,
112:10, 112:12,
112:17, 112:19,
112:24, 113:15,
117:3, 117:6, 117:9,
118:1, 118:2,
119:10, 121:17,
123:15, 129:2,
129:5, 136:3,
137:17, 138:9,
138:12, 139:16,
141:20, 143:14,
144:8, 145:9,
145:15, 145:17,
146:17, 146:21,
147:6, 147:9,
147:24, 148:3,
148:7, 149:7, 150:7,
150:18, 150:20,
151:7, 151:8,
151:10, 151:11,
151:13, 151:14,
151:16, 151:18,
151:19, 151:20,
151:22, 151:23,
152:3, 152:9,
152:10, 152:15,
152:20, 152:22,
152:25, 153:2,
153:5, 153:13,
153:16, 154:3,
154:8, 155:11,
157:2, 158:19,
159:18, 159:21,
160:2, 160:8, 161:4,
161:8, 162:23,
164:12, 165:3,
165:13, 165:16,
166:8, 167:1,
167:10, 167:14,
167:17, 168:16,
169:4, 169:9,
169:13, 169:19,
169:24, 170:1,
170:3, 170:10,
170:25, 171:2,
171:9, 171:13,
171:17, 172:15

**themselves** [1] -
122:12

**therefore** [2] - 12:19,
155:9

**they've** [1] - 43:20

**thinking** [1] - 169:8

**thinks** [1] - 156:24

**third** [29] - 9:20, 11:22,
11:23, 14:4, 16:20,
42:1, 42:18, 58:7,

68:3, 68:25, 71:16,
85:15, 87:19, 87:22,
87:24, 88:7, 88:20,
88:22, 90:17, 92:5,
92:18, 100:8, 112:3,
134:19, 136:23,
143:9, 158:24,
162:10, 162:17

**thousands** [5] - 21:17,
21:24, 22:5, 98:6

**threatened** [1] - 113:8

**three** [15] - 11:15,
39:25, 40:14, 45:3,
67:14, 89:23, 99:25,
103:6, 112:13,
112:25, 126:25,
130:8, 135:8,
165:17, 168:21

**three-ring** [1] - 39:25

**threshold** [1] - 154:22

**thrilled** [1] - 77:21

**throughout** [3] -
25:15, 120:21,
154:16

**Thursday** [2] - 70:12,
172:8

**timing** [2] - 35:1,
38:17

**tip** [1] - 12:13

**Title** [1] - 1:23

**Tod** [1] - 20:20

**TOD** [1] - 1:14

**today** [34] - 13:19,
21:6, 24:4, 29:19,
30:23, 32:24, 60:1,
60:18, 62:3, 88:22,
104:23, 114:5,
114:8, 114:10,
116:10, 116:15,
120:4, 120:13,
120:21, 122:6,
122:16, 124:11,
124:17, 124:23,
129:25, 134:1,
136:10, 137:20,
138:1, 140:20,
150:10, 158:12,
168:18, 170:18

**together** [7] - 20:20,
27:9, 41:21, 111:24,
111:25, 120:18

**toll** [6] - 48:17, 48:22,
58:14, 58:19, 61:19,
126:8

**toll-free** [1] - 126:8

**tomorrow** [18] - 21:3,
21:5, 21:10, 62:5,
104:24, 167:11,
167:22, 168:17,
168:20, 169:5,

169:14, 170:13,
170:19, 170:24,
171:8, 171:19,
172:7, 172:12

**tonight** [7] - 167:4,
167:10, 167:21,
169:24, 171:18,
172:6, 172:14

**took** [8] - 108:13,
111:5, 112:9,
115:15, 116:5,
136:25, 155:23,
156:4

**top** [20] - 42:8, 46:23,
48:18, 49:9, 49:14,
49:24, 67:1, 74:14,
83:3, 84:8, 91:21,
91:22, 94:21, 95:7,
99:11, 102:5, 113:5,
124:2, 140:8, 151:12

**total** [6] - 21:16,
50:24, 52:4, 58:15,
61:25, 156:5

**totaling** [1] - 50:25

**touch** [1] - 25:9

**touching** [2] - 16:17,
170:17

**towards** [2] - 62:24,
105:3

**tranche** [8] - 159:12,
160:24, 164:20,
164:25, 165:12,
165:14, 169:1, 169:3

**transactions** [1] - 11:6

**transcript** [2] - 12:1,
18:9

**transcripts** [2] - 18:8,
19:23

**transmission** [17] -
14:3, 14:5, 22:6,
40:16, 49:14, 50:4,
63:15, 66:8, 69:23,
73:21, 98:17,
104:25, 162:24,
162:25, 166:20,
166:22, 167:19

**transmissions** [15] -
13:9, 14:14, 14:18,
14:20, 15:2, 21:18,
21:24, 22:5, 38:13,
65:3, 157:21, 159:6,
159:7, 165:17,
168:21

**transmit** [1] - 14:18

**transmittals** [1] -
157:22

**treat** [1] - 9:16

**trial** [26] - 5:7, 5:15,
5:22, 8:16, 8:22,
11:9, 11:10, 11:13,

11:22, 12:1, 16:5,
16:12, 17:16, 19:8,
19:22, 19:23, 19:24,
21:3, 22:22, 23:23,
26:22, 27:15, 78:12,
112:7, 164:17

**tried** [1] - 77:9

**trip** [1] - 170:23

**trouble** [1] - 132:20

**true** [17] - 1:23, 12:9,
33:2, 40:15, 43:7,
48:4, 50:9, 53:8,
57:11, 61:3, 63:21,
68:16, 73:25, 87:1,
88:9, 94:12, 156:9

**try** [10] - 7:21, 8:7, 8:8,
16:18, 16:20, 35:9,
62:2, 72:5, 125:16,
156:1

**trying** [10] - 7:1, 16:22,
18:6, 78:3, 132:21,
136:1, 146:15,
165:1, 171:6, 172:10

**Tuesday** [5] - 76:15,
81:7, 81:10, 83:11,
83:13

**turn** [14] - 21:4, 42:24,
45:7, 45:18, 47:19,
66:4, 69:12, 82:9,
83:18, 98:9, 102:20,
103:20, 105:23,
107:15

**turned** [1] - 102:21

**tweaked** [1] - 6:18

**twice** [1] - 120:24

**two** [28] - 10:7, 43:25,
52:11, 60:19, 63:18,
66:15, 67:18, 68:1,
69:17, 69:19, 71:2,
83:13, 85:8, 85:24,
90:25, 98:16, 99:2,
99:21, 103:25,
104:12, 129:18,
131:9, 137:15,
143:4, 150:21,
155:6, 167:6, 168:7

**two-pronged** [1] -
168:7

**type** [3] - 89:10,
130:11, 139:25

**typed** [8] - 60:3, 61:3,
74:24, 85:25, 91:16,
91:17, 102:11,
105:25

**types** [1] - 11:15

**typewritten** [1] - 99:15

# U

**U.S** [1] - 162:21
**U.S.C** [1] - 1:23
**ultimate** [2] - 25:23, 38:3
**ultimately** [1] - 38:4
**unable** [3] - 111:12, 143:9, 158:1
**unauthorized** [1] - 165:8
**under** [33] - 9:12, 11:12, 11:18, 11:24, 14:22, 15:16, 15:17, 18:23, 21:13, 22:1, 22:15, 27:13, 27:18, 33:8, 41:11, 44:2, 46:22, 48:16, 50:20, 51:5, 51:13, 51:16, 55:8, 67:6, 124:13, 146:15, 150:23, 157:3, 158:14, 161:24, 162:6, 163:20, 167:20
**undercut** [1] - 155:14
**underlined** [5] - 127:7, 130:14, 131:3, 132:17, 132:18
**underlining** [1] - 142:13
**understood** [3] - 7:24, 135:7, 149:14
**undisputed** [1] - 21:11
**unequivocally** [1] - 159:10
**unfolds** [1] - 172:5
**uniformity** [1] - 144:22
**unilaterally** [2] - 148:16, 156:20
**UNITED** [3] - 1:1, 1:8, 1:11
**universe** [1] - 78:13
**unlawful** [9] - 13:22, 14:13, 15:5, 16:3, 16:9, 22:1, 22:17, 22:18, 162:23
**unless** [3] - 13:23, 29:6, 152:12
**unnecessary** [1] - 77:9
**unquote** [2] - 126:8, 154:16
**unsolicited** [7] - 7:18, 13:15, 13:22, 14:8, 14:10, 22:1, 86:9
**up** [70] - 7:2, 7:12, 10:15, 11:15, 18:9, 18:24, 20:2, 20:8, 22:22, 24:15, 25:11, 25:21, 26:20, 27:1, 33:21, 35:8, 35:12, 37:21, 41:12, 41:13, 41:21, 41:23, 41:24, 42:20, 42:22, 44:6, 44:21, 44:23, 49:9, 51:21, 51:23, 52:16, 59:3, 62:20, 62:22, 72:4, 74:14, 76:18, 77:9, 81:12, 91:7, 99:11, 101:13, 102:5, 103:9, 105:16, 118:6, 118:19, 119:4, 119:14, 120:2, 121:23, 122:3, 143:23, 147:11, 151:25, 153:24, 157:20, 158:8, 162:10, 162:16, 162:22, 162:24, 164:19, 166:11, 166:12, 166:14, 169:5, 169:13, 172:6
**uses** [1] - 129:12
**utilized** [2] - 14:1

# V

**value** [3] - 60:4, 155:19, 156:8
**variation** [1] - 57:20
**verbatim** [2] - 7:11, 157:16
**verdict** [8] - 8:24, 12:14, 16:7, 16:15, 19:21, 154:7, 155:9, 169:2
**verification** [1] - 62:7
**verifying** [1] - 76:10
**version** [4] - 6:17, 6:19, 7:14
**versus** [1] - 34:15
**vertical** [1] - 102:21
**via** [3] - 20:25, 38:22, 125:23
**view** [2] - 157:4, 160:18
**violate** [1] - 16:23
**violated** [7] - 13:6, 15:14, 15:20, 15:22, 15:24, 21:25, 163:6
**violates** [1] - 168:6
**violation** [6] - 13:24, 15:19, 132:4, 132:8, 132:11, 162:18
**violations** [5] - 22:11, 144:3, 163:19, 163:22, 164:4

**visitor** [3] - 17:17, 17:19, 17:20
**voice** [1] - 151:2
**void** [2] - 26:6, 103:1
**VOIR** [4] - 2:6, 2:10, 101:15, 109:23
**voir** [2] - 101:14, 109:20
**volume** [1] - 85:14
**volumes** [3] - 52:5, 64:24, 141:10
**voluntarily** [1] - 166:24
**voluntary** [3] - 30:10
**volunteer** [2] - 9:22, 136:5
**vs** [1] - 1:4

# W

**wait** [5] - 25:4, 41:13, 51:1, 62:8, 104:24
**waived** [2] - 58:21, 60:7
**walk** [2] - 27:6, 29:8
**walked** [1] - 23:25
**WALTON** [1] - 1:16
**wants** [3] - 68:14, 77:23, 156:6
**warning** [1] - 65:24
**WAS** [56] - 3:6, 3:7, 3:8, 3:9, 3:10, 3:11, 3:12, 3:13, 3:16, 3:17, 3:18, 3:19, 3:20, 3:21, 3:22, 3:23, 3:24, 3:25, 4:1, 4:2, 4:3, 4:4, 4:5, 4:6, 4:7, 4:8, 4:9, 4:10, 40:24, 43:15, 46:7, 46:16, 48:12, 49:20, 50:17, 53:16, 61:13, 64:3, 66:23, 70:4, 74:6, 75:23, 83:1, 84:6, 87:8, 88:18, 91:9, 92:12, 94:19, 99:8, 101:25, 104:9, 106:13, 107:3, 108:11, 113:2
**waste** [1] - 68:18
**water** [2] - 47:20
**weaker** [1] - 156:10
**Wednesday** [4] - 62:5, 64:9, 65:19, 70:12
**week** [2] - 70:12, 71:13
**weigh** [1] - 11:3
**weighing** [2] - 10:20, 10:22
**weight** [1] - 10:21

**welcome** [4] - 8:12, 58:6, 93:22, 94:2
**WERE** [2] - 3:14, 58:3
**whited** [3] - 47:15, 60:1, 60:15
**whole** [5] - 23:12, 33:4, 77:5, 139:13, 156:6
**Wilson** [77] - 34:6, 34:9, 37:9, 43:4, 43:24, 45:21, 46:20, 47:25, 48:15, 50:4, 50:19, 53:22, 54:12, 54:14, 55:18, 57:12, 57:18, 58:5, 59:7, 59:11, 59:12, 59:23, 59:24, 60:11, 60:25, 62:9, 63:8, 63:15, 64:5, 64:13, 65:1, 66:9, 66:25, 67:25, 69:4, 69:14, 70:6, 73:22, 74:10, 75:13, 75:25, 76:12, 76:21, 79:1, 79:25, 80:10, 80:18, 83:11, 83:21, 86:24, 88:6, 88:20, 90:14, 94:7, 96:25, 98:13, 103:23, 104:11, 105:1, 106:18, 107:11, 107:20, 108:3, 108:24, 122:19, 126:3, 126:14, 127:16, 130:5, 130:19, 130:25, 131:13, 131:21, 132:6, 132:16, 134:10, 134:23
**wish** [3] - 17:24, 18:5, 99:3
**withdraw** [1] - 84:12
**withdrawal** [3] - 26:12, 39:3, 58:10
**withdrawn** [1] - 110:22
**withholding** [1] - 111:6
**witness** [55] - 9:22, 9:23, 9:25, 10:1, 10:23, 10:24, 10:25, 11:3, 11:5, 11:25, 18:4, 18:7, 18:15, 18:17, 18:18, 18:25, 20:2, 21:5, 21:8, 28:11, 28:15, 28:16, 28:19, 36:3, 36:20, 73:1, 77:12, 77:25, 78:1, 78:14, 91:2, 99:5, 101:12, 111:5, 111:13, 128:22,

**witness's** [7] - 10:16, 18:5, 79:7, 101:8, 154:23, 155:1, 158:4
**witnesses** [11] - 9:1, 10:15, 10:16, 10:18, 17:7, 18:15, 19:14, 19:16, 136:4, 170:6, 172:7
**woman** [1] - 23:14
**wondering** [2] - 40:1, 96:6
**word** [11] - 6:23, 8:4, 11:8, 17:21, 18:13, 44:15, 55:8, 81:23, 99:19, 131:3, 153:24
**wording** [1] - 126:9
**words** [8] - 16:11, 36:4, 36:21, 78:17, 78:23, 100:10, 153:17, 157:15
**wowed** [1] - 139:4
**write** [4] - 18:19, 42:9, 54:6, 152:5
**writing** [3] - 11:18, 18:15, 128:5
**written** [4] - 11:17, 11:25, 54:2, 87:14
**wrote** [4] - 54:15, 68:21, 125:18, 151:15

# Y

**year** [2] - 61:17, 95:18
**years** [19] - 30:1, 30:7, 30:20, 64:25, 72:10, 77:14, 78:24, 79:4, 113:19, 113:25, 114:3, 120:11, 121:11, 123:7, 134:3, 139:11, 140:15, 144:13, 158:10
**yesterday** [8] - 6:11, 6:17, 8:2, 8:15, 20:6,

**128:24, 135:24, 139:15, 143:8, 146:21, 147:13, 147:16, 150:7, 154:13, 157:4, 157:5, 158:5, 158:22, 164:22, 165:4, 171:13, 172:7
WITNESS** [14] - 2:3, 28:24, 73:17, 89:18, 118:2, 123:15, 129:5, 151:7, 151:10, 151:13, 151:16, 151:19, 151:22, 152:9

22:14, 48:19, 48:24

**yourself** [9] - 29:16,
103:3, 103:6, 105:6,
105:14, 105:17,
128:11, 141:5,
148:15

# Z

**ZIP** [46] - 35:19, 35:22,
36:13, 36:16, 37:2,
50:21, 50:22, 51:1,
51:19, 51:21, 51:23,
51:25, 52:9, 52:16,
54:12, 61:24, 61:25,
62:19, 62:20, 72:2,
72:4, 72:14, 76:6,
81:2, 97:6, 97:7,
106:6, 122:23,
122:25, 124:1,
125:9, 125:12,
125:16, 140:22,
140:23, 141:2,
141:5, 141:8,
141:10, 141:18,
160:4, 160:5, 160:8,
160:10