IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

CITY SELECT AUTO SALES, INC.,
a New Jersey corporation,
individually and as the
representative of a class of
similarly situated persons,

           Plaintiff,

    v.

DAVID RANDALL ASSOCIATES,
INC., et al.,

           Defendants.

Civil Action
No. 11-2658 (JBS/KMW)

**OPINION**

APPEARANCES:

Alan C. Milstein, Esq.
SHEARMAN, SILVERSTEIN, KOHL, ROSE & PODOLSKY, PC
Eastgate Corporate Center
308 Harper Drive, Suite 200
Moorestown, NJ 08057
     -and-
Daniel J. Cohen (pro hac vice)
Tod A. Lewis (pro hac vice)
BOCK & HATCH, LLC
134 N. LaSalle St., Suite 1000
Chicago, IL 60602
    Attorneys for Plaintiff

F. Emmett Fitzpatrick, III, Esq.
FLAMM BOROFF & BACINE PC
794 Penllyn Pike
Blue Bell, PA 19422
    Attorney for Defendants

**SIMANDLE, Chief Judge:**

## I.   INTRODUCTION

This matter comes before the Court upon Plaintiff City Select Auto Sales, Inc.'s (hereinafter, "City Select" or the "Plaintiff") motion for entry of judgment as final under Fed. R. Civ. P. 54(b) [Docket Number 242], and Plaintiff's motion for a new trial pursuant to Fed. R. Civ. P. 59(a) [Docket Number 247].

## II.   FACTUAL AND PROCEDURAL BACKGROUND

The Court has summarized the detailed factual and procedural background of this case in its previous Opinions regarding this litigation, see City Select Auto Sales, Inc. v. David Randall Associates, Inc., No. 11-2658, 2014 WL 4755487 (D.N.J. Sept. 24, 2014); City Select Auto Sales, Inc. v. David/Randall Assocs., Inc., 96 F. Supp. 3d 403 (D.N.J. 2015); and City Select Auto Sales, Inc. v. David/ Randall Associates, Inc., 151 F. Supp. 3d 508 (D.N.J. 2015), so a recount of only those facts relevant to the resolution of the instant motions will be provided.

### A. Pretrial Opinions In This Litigation

In its September 24, 2014 Opinion, the Court denied Defendants' motion for summary judgment with respect to Raymond Miley, III's (hereinafter "Mr. Miley") individual liability, holding that the record was "replete with factual disputes concerning Miley's personal involvement in the junk faxes that form the predicate of this litigation," as it specifically noted

2

the conflicting deposition testimony of Mr. Miley and Ms. April
Clemmer, his office manager. City Select, 2014 WL 4755487 at *9.
In its March 27, 2015 Opinion, the Court granted in part
Plaintiff's motion for classwide summary judgment, and entered
Judgment in favor of Plaintiff and against Defendant
David/Randall Associates, Inc. (hereinafter, "David/Randall"),
in the amount of $22,405,000 for violations of the Telephone
Consumer Protection Act, 47 U.S.C. § 227 (hereinafter, the
"TCPA"). City Select, 96 F. Supp. 3d at 403.  The Court denied
Plaintiff's motion for classwide summary judgment as to Mr.
Miley's individual liability.  In the ensuing Order and
Judgment, the Court ordered that Judgment "shall be entered in
favor of the Plaintiff Class and against David/Randall
Associates, Inc. in the amount of $22,405,000. [Docket Item
152.]  The Court did not make the Judgment final and appealable
under Fed. R. Civ. P. 54(b); instead, the Court entered a stay
of providing notice to the Class and for motions related to
attorneys' fees until further order of the Court, and ordered
trial to commence to determine whether Mr. Miley was
individually liable for the faxes at issue.

Then, in its October 26, 2015 Opinion, the Court denied
Plaintiff's motion to certify the March 27, 2015 Judgment as
final. City Select, 151 F. Supp. 3d at 510.  The Court also

3

stayed class notice and briefing on any application for
attorneys' fees until further Order of the Court, and referred
the matter to Magistrate Judge Karen Williams for a final
pretrial/settlement conference relative to the individual
liability claim against Mr. Miley.

### B. May 2016 Miley Jury Trial

A jury trial on Mr. Miley's individual liability commenced
on May 23, 2016, and on May 26, 2016, the jury returned a
verdict in favor of Miley, finding that (1) he did not have
direct, personal participation in any of the four unsolicited
fax campaigns, and (2) he did not personally authorize any of
the four unsolicited fax campaigns. [Docket Item 240.]  The
Court then entered judgment on the verdict. [Docket Item 241.]

### C. Post-Trial Matters

After trial, the Court asked counsel whether there were any
matters precluding entry of final judgment against David/Randall
in the amount of $22,405,000, and Plaintiff subsequently filed a
motion for entry of judgment as final under Fed. R. Civ. P.
54(b). [Docket Item 242].  Additionally, on June 24, 2016, given
its disagreement on two of the Court's jury instructions
described infra, Plaintiff filed a motion for a new trial on
Miley's individual liability pursuant to Fed. R. Civ. P. 59(b).
[Docket Item 247].

4

### III.   MOTION FOR CERTIFICATION OF JUDGMENT AGAINST DAVID/RANDALL AS FINAL

First, Plaintiff seeks certification of the Judgment against David/Randall as final under Fed. R. Civ. P. 54(b) in the amount of $22,405,000, which is based on 44,810 successful unsolicited transmissions multiplied by the amount of statutory damages, or $500 each. (Pl.'s Br. at 5.)

#### A. STANDARD OF REVIEW

Federal Rule of Civil Procedure 54(b) provides that when an action involves more than a single claim for relief, as here, "the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if" the Court finds "no just reason for delay." Fed. R. Civ. P. 54(b); see also City Select, 151 F. Supp. 3d at 510-512 (summarizing caselaw regarding 54(b)).  Importantly, a district court must ensure that an immediate appeal actually advances the purposes of Rule 54(b), by evaluating (1) the relationship between the adjudicated and unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the district court; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim which could result in a setoff against the judgment

5

to be made final; and (5) other factors, such as delay, economic
and solvency considerations, shortening the time of trial,
frivolity of competing claims, expense.  See Berckeley Inv.
Grp., Ltd. v. Colkitt, 455 F.3d 195, 203 (3d Cir. 1996)).
(hereinafter, the "Berckeley factors").

### B. DISCUSSION

#### 1. Berckeley Factors

In its October 26, 2015 Opinion denying Plaintiff's motion to
certify the March 27, 2015 judgment against David/Randall, the
Court began its analysis by noting that the judgment
"unquestionably constitutes a final determination of all claims
against David/Randall other than for costs and attorney's fees."
City Select, 151 F. Supp. 3d at 511-12.  However, after
reviewing Berckeley factors, the Court found the entry of final
judgment to be premature because "the TCPA claim against Mr.
Miley relies, in essence, upon the same facts and legal theories
underpinning the now adjudicated TCPA claim against
David/Randall." Id. at 512.  The Court was therefore concerned
about the possibility of piecemeal and duplicative appeals if
the David/Randall judgment was appealed first, and then the
Miley verdict months later, since both matters involved so many
common issues.

Since the October 2015 Opinion, as described supra, the Court conducted the Miley trial between May 23-26, 2016, and entered judgment on the verdict in favor of Mr. Miley on May 27, 2016. [Docket Item 241].  Now that both the David/Randall matter and the Miley trial have been fully adjudicated, there is no longer a concern about piecemeal appeals, so the Berckeley factors now call for entering judgment as final.

David/Randall opposes the motion to certify the $22,405,000 judgment as final because it is "inappropriate, unjust, and would not provide any actual benefit to any class member." (Ex. A. to Def. Br. at 7.)  Furthermore, they argue that certifying the judgment as final "would unquestionably put the Defendants out of business and into bankruptcy." (Id.)  As a result, they propose a procedure that "would calculate the final Judgment by taking the actual number of Class members who respond and are approved, multiplying it by the statutory $500 damages, and use that figure as the amount of the final Judgment, up to the $300,000 limit of the Class Fund." (Id. at 10.)

As Plaintiff notes, the Court has already rejected this argument, and Defendant has offered no new evidence justifying reconsideration.[1] See City Select, 151 F. Supp. 3d at 512 n. 6

---

[1] Defendant David/Randall filed an untimely supplemental memorandum to its opposition papers where it argued that First

("Moreover, even in the event the Court certified the March 27, 2015 Judgment, the Court finds no support for David/Randall's position that the Judgment against David/Randall should, at this time, be confined to an amount less than $22,405,000.  Nor has David/Randall provided any convincing authority in support of its position.")  The Court will therefore certify the March 27, 2015 judgment against David/Randall as final under Rule 54(b).

### 2. Stay Deferring Notice to the Class and Resolution of Attorneys' Fees

Plaintiff also requests a stay of Class notice under Fed. R. Civ. P. 23(d)(1)(B) and a deferral of briefing and ruling on attorneys' fees until after the Third Circuit has resolved all likely appeals and monies are collected from David/Randall (and/or Mr. Miley) to benefit the Class. (Pl.'s Br. at 7.) Plaintiff offers a host of reasons for this request, including that (1) David/Randall must post an appeal bond, (2) David/Randall's likely appeal must be briefed and argued before

---

Mercury Ins. Co. v. Nationwide Sec. Servs., Inc., 2016 WL 2927799 (Ill. App. May 18, 2016) supports the denial of Plaintiff's motion. See L. Civ. R. 7.1(d)(2)(requiring opposition papers to be filed "at least 14 days prior to the original motion day, unless the Court otherwise orders, or an automatic extension is obtained"). The Court will exercise its discretion and consider this untimely submission under L. Civ. R. 7.1(d)(7).  This unpublished decision of a foreign tribunal is unpersuasive; there is no basis in law for capping the class recovery ab initio in the absence of a settlement.

the Third Circuit and a decision rendered before any money might
be available for distribution to the Class or to Plaintiff's
attorneys, (3) the total amount of any recovery against
David/Randall is not yet ascertainable, (4) notice to the class
would cause considerable confusion if a determination on fees
and costs is made but circumstances surrounding the judgment
collected change, (5) it is impossible to determine an
appropriate attorney fee until monies are collected for the
benefit of the Class, and (6) additional attorney time and
expense will be incurred throughout the appeals process. (Pl.'s
Br. at 5-6).

David/Randall opposes Plaintiff's request of a stay because
it is "entirely based on a presumption for which there is no
factual foundation – that the Defendant can afford to, and will
decide to, take an appeal." (Def. Br. at 2.)  David/Randall
therefore propose that "notice of Judgment should be provided to
the class members at the present time." (Id. at 11.)

David/Randall has overlooked this Court's language in the
Court's October 2015 Opinion in this matter – "[a]bsent a change
in circumstances, the Court will require notice [to the Class]
when funds become available for distribution and when Class
Counsel makes its application for reasonable attorneys' fees and
costs." City Select, 151 F. Supp. 3d at 513.  The total amount

of the funds are not yet available for distribution to the
Class, and Class Counsel has not applied for reasonable
attorneys' fees and costs.  The Court also agrees with
Plaintiff's argument that "it is simply more efficient and less
likely to confuse the class members if notice and applications
for attorneys' fees are provided to the Class after a sum
certain is collected from David/Randall (or both Defendants) for
the benefit of the Class." (Reply Br. at 3.)  Plaintiff may
appeal this Court's denial of its motion for new trial when
final judgment is entered, see infra, and David/Randall may
appeal the entry of final Judgment as well.  As a result,
continuing the stay for notice and attorneys' fees is
appropriate until further order from this Court.

**IV.   MOTION FOR NEW TRIAL**

   Plaintiff has also requested that the Court set aside the
jury verdict and judgment in favor of Mr. Miley under Fed. R.
Civ. P. 59(a).  Plaintiff claims that the Court's jury
instructions were erroneous because they allegedly (1)
improperly added a knowledge and/or state of mind requirement
and (2) added an extra element of "significance" to Mr. Miley's
involvement in the fax campaign that is not required by law.
The Court has reviewed both the jury instructions and the

10

verdict form and finds that it committed no error.  For the reasons that follow, Plaintiffs' motion will be denied.

### A. STANDARD OF REVIEW

Federal Rule of Civil Procedure 59 permits a court to order a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A).  Whether to grant a new trial is a decision that is within the sole discretion of the district court. United States v. Skelton, 893 F.2d 40, 44 (3d Cir. 1990); see also Douglas v. Owens, 50 F.3d 1226, 1233 (3d Cir. 1995) (noting that the trial court has broad discretion to compose jury instructions that accurately reflect the law and that are appropriate for the facts of a given case).  Courts have granted new trials when there have been prejudicial errors of law or when the verdict is against the weight of the evidence. See Maylie v. Nat'l R.R. Passenger Corp., 791 F. Supp. 477, 480 (E.D. Pa. 1992), aff'd, 983 F.2d 1051 (3d Cir. 1992) (citations omitted).

In considering claims of error with regard to jury instructions, the Court considers "whether the charge, taken as a whole and viewed in the light of the evidence, fairly and adequately submits the issues in the case to the jury." United States v. Tiller, 302 F.3d 98, 104 n.3 (3d Cir. 2002) (citation

11

omitted); see also Savarese v. Agriss, 883 F.2d 1194, 1202 (3d Cir. 1989) ("Jury instructions are considered as a whole to determine whether they are misleading or inadequate."). There is no error if "the challenged instructions accurately state the law relating to the particular issue under scrutiny." Drames v. Sun River Inv., S.A., 820 F. Supp. 209, 215 (E.D. Pa. 1993), aff'd, 17 F.3d 1429 (3d Cir. 1994). Thus, "[n]o litigant has a right to a jury instruction of its choice, or precisely in the manner and words of its own preference." Douglas, 40 F.3d at 1233.

When a jury instruction is erroneous, a new trial is warranted unless such error is harmless. See Advanced Med. v. Arden Med. Sys., Inc, 955 F.2d 188, 199 (3d Cir. 1992). An error is harmless if it is "highly probable" that the error did not contribute to the judgment. Id. An erroneous jury instruction may also be considered non-fundamental when, taking the instructions as a whole, the erroneous instruction is a "solitary misstatement of law" buried in an otherwise correct legal explanation. Ryder v. Westinghouse Elec. Corp., 128 F.3d 128, 137 (3d Cir. 1997). "If there was an error, the court must then determine 'whether that error was so prejudicial that refusal to grant a new trial would be inconsistent with

substantial justice.'" Id. (quoting <u>Bhaya v. Westinghouse Elec.</u>
<u>Corp.</u>, 709 F. Supp. 600, 601 (E.D. Pa. 1989)).

**B. DISCUSSION**

The Court will address both challenges to the jury
instructions in turn.

### 1. Significant Level of Involvement

The Court and counsel crafted the Jury Verdict Form on
which Question No. 1 asked for the jury's determination of the
following question:

> 1. Did Raymond Miley III ("Miley") have direct,
> personal participation in the first unsolicited fax
> campaign?

[Docket Item 240.]   Regarding this requirement for a
finding of liability, the Court gave Instruction No. 17, which
stated, in relevant part, as follows:

> As I instructed you at the beginning of this trial, a TCPA
> claim for sending an unsolicited fax generally requires
> proof that: (1) the defendant utilized or caused to be
> utilized a telephone facsimile machine to send one or more
> faxes; (2) that the transmissions constituted
> advertisements; (3) that the defendant sent the
> transmissions without the recipient's consent and outside
> of any one of the statutory exceptions; (4) that the
> defendant qualifies as a "sender" for purposes of the TCPA,
> that is, the entity on whose behalf an unsolicited
> facsimile advertisement is sent or whose goods or services
> are advertised or promoted in the unsolicited
> advertisement, or a person acting on behalf of that entity;
> and, in the case of an individual, (5) **that the individual**
> **defendant had a significant level of personal involvement**
> **in the unlawful fax transmissions, as explained below.**

(emphasis added)[Docket Item 235 at 26.]  After explaining
that the first four elements were not in dispute, the Court
stated:

> On the other hand, it is disputed whether Defendant Miley
> acted on behalf of David/Randall Associates, and whether he
> had a significant level of personal involvement in the
> unlawful fax transmissions.  These issues will be for you
> to decide in accordance with these Instructions.

> [Id. at 27.]

The Court further instructed regarding the requisite level
of involvement that must be proved for an individual corporate
director or officer, stating in Instruction 18, in relevant
part:

Direct Personal Participation in or Personal Authorization  of
the Unlawful Conduct

> As a general matter, if a corporation is found to have
> violated a federal statute, its officers will not be
> personally liable solely because of their status as
> officers.  Under the TCPA, however, an individual acting on
> behalf of a corporation may, under certain limited
> circumstances, be held personally or individually liable
> for the corporation's violation of the TCPA if the
> individual: (1) had direct, personal participation in the
> conduct found to have violated the TCPA, or (2) personally
> authorized the conduct found to have violated the TCPA.
> This requirement is phrased in the alternative; it is
> sufficient if Plaintiff proves either that Mr. Miley had
> direct, personal participation in the conduct found to have
> violated the TCPA, or that Mr. Miley personally authorized
> the conduct found to have violated the TCPA.

> Thus, the personal liability of a corporate director or
> officer must be founded upon his active oversight of, or
> control over, the conduct that violated the TCPA, rather
> than merely tangential involvement.  Involvement is
> "tangential" if it is routine, passive or ministerial.

14

[Docket Item 235 at 28.]  Plaintiff first takes issue with the Court's initial and supplemental jury instruction regarding the degree of defendant Miley's personal participation in the unsolicited fax campaign found in Instruction Number 17.  First, in the jury instruction conference, Plaintiff's counsel expressed to the Court that describing Mr. Miley's conduct as a "high" level of personal involvement improperly added to their burden beyond the TCPA and the caselaw. 5/25/16 Tr. at 103:15-17.  After the Court suggested replacing the word "high" with "significant," Plaintiff's counsel responded: "[i]f the Court substituted 'significant' for 'high,' and added at the end of the sentence, 'as more specifically defined hereinafter,' it would be tying whatever significant level means to the objective criteria that are truly the standard for liability, and then I would not have an objection to it." Id. at 103:21-25 to 104:1. Instead of adding "as more specifically defined hereinafter," the Court added "as explained below," thereby "tying" the word "significant" to the criteria for liability expressed in the rest of the instructions. [Docket Item 235.]  Plaintiff's counsel did not object to the finalized jury instructions as discussed in the conference. 5/26/16 Tr. 44:8-10.

The jury then received the verdict form asking if Miley had "direct, personal participation" in the unsolicited fax

campaigns [Docket Item 240], and the Jury Instructions,

specifically Instruction No. 17, discuss whether Miley had "a

significant level of personal involvement" in the campaigns.

[Docket Item 235.]

The jury asked the following question to the Court:

Please provide clarification for the degree of personal
participation for question #1, for the first unsolicited
fax campaign. Our instructions indicate we have to
determine if Miley had a "significant level" of personal
involvement in the unlawful fax transmission, or active
oversite (sic), not routine or passive. This is not the
wording of question #1, where it only state personal
participation.

[Docket Item 237.]  The Court answered in a supplemental jury

instruction:

The requirement of a "significant level of personal
involvement in the unlawful fax transmissions" applies to
determining both whether he (1) had direct, personal
participation in the conduct found to have violated the
TCPA, or (2) personally authorized the conduct found to
have violated the TCPA.

As explained in Instruction No. 18, such significant level
of personal involvement requires the officer's active
oversight of, or control over, the conduct that violated
the TCPA, rather than merely tangential, routine, passive
or ministerial involvement. He must, at a minimum, have
knowledge that he is directly participating in or
authorizing the fax advertising, or his involvement will
not be significant.

Thus, for example, if you find, in considering Question 1
[of the Jury Verdict Form], that Mr. Miley had direct,
personal participation at a level of involvement that was
"significant," then your answer will be Yes. Otherwise,
your answer will be No.

16

[Id.]  Plaintiff objected to this supplemental instruction at
the conference because it "improperly increased" Plaintiff's
burden of proof in that it required Plaintiff to prove "some
additional 'significance' to Miley's involvement." (Pl.'s Br. at
9.)  Plaintiff, relying on federal common law principles,
believes that the jury only needed to find that Miley "directly,
personally participated in or personally authorized the conduct
at issue." (Pl.'s Br. at 15.)  Plaintiff argues that "the
standard for determining Miley's individual liability under the
TCPA was the same standard that has existed for decades in the
federal common law for determining the individual liability of
corporate officers under a number of federal statutes." (Pl.'s
Br. at 14.)  As a result, Plaintiff argues, there is "no legal
basis for inserting that additional ["significant"] element and
evidentiary requirement into Plaintiff's burden of proof. (Id.
at 15.)

     Plaintiff's argument that the Court was incorrect in
assessing the standard for determining Miley's individual
liability to be a TCPA-specific issue versus a federal common
law issue is unavailing.  The use of the word "significant" was
appropriate explanatory commentary in the same fashion as
explaining what the instruction means.  In the discussion

17

between counsel and the Court over how to respond to the

question from the jury, the Court explained that:

> The words 'direct personal participation" are not self-
> defining. The concept of significant level of personal
> involvement was added to these instructions to make clear
> that it's not enough to have simply personally
> participated. A lot of people may participate in this, but
> the ones that are going to be liable are the ones that had
> a significant level of personal involvement when they did
> participate. And I believe that there's a requirement of
> due process. I don't believe that a person who is a mere
> participant is to be found liable if they didn't engage in
> significant participation. I think fundamental fairness
> requires it and if this is the first case to say so, so be
> it. But otherwise, I believe there would be almost
> unlimited liability for a person who merely had personal
> participation in drafting the ad or paying for it.

Tr. 5/26/16 48:16-25 to 49: 1-7. The Court later added:

> What I am attempting to do through this instruction as I
> did in the original instructions, is no more and no less
> than to help the jury to determine what's meant by the
> words "direct personal participation" in the conduct and
> the words "personally authorized the conduct." Those words
> are of such generality that unless any jury is given more
> substance to apply, that they would be at a loss because of
> the ambiguity of such terms.  In a case of this sort, as
> I've explained several times, individual liability for
> potentially tens of millions of dollars should require that
> the jury finds that there is a level of direct personal
> participation that is not insignificant, that is not
> passive, that it's not ignorant of the fact that faxes were
> being authorized. This doesn't erect some high barrier, it
> simply assures that on the spectrum of personal
> participation, from one percent participation to a hundred
> percent participation, that the jury is informed of the
> proper point on that spectrum where liability begins to
> attach. This doesn't say, for instance, that he has to be
> the sole participant in the conduct. It doesn't say that he
> has to be the decisionmaker. It simply says that he – for
> purposes of question 1, has to have a significant level of
> direct and personal participation.

18

Id. at 51:22-25 to 52:1-16.

The Court is not convinced that it inserted an additional element and evidentiary requirement into Plaintiff's burden of proof by using the word "significant" in its initial and supplemental jury instructions.  It used the word "significant" to clarify that the Defendant could not merely be tangentially involved in the operation.  Instructing the jury that a "significant level of personal involvement requires the officer's active oversight of, or control over, the conduct that violated the TCPA, rather than merely tangential, routine, passive or ministerial involvement" falls in line with the relevant TCPA caselaw on individual liability and does not add any extra elements or additional requirements that Plaintiff had to prove. It essentially reminds the jury of the guidance from Instruction 18, supra.  It is unclear how one could either (1) directly and personally participate in a campaign or (2) personally authorize a campaign without a "significant level of involvement" in it.  Instead, Plaintiff's counsel cites to a host of cases explaining the federal common law understanding of individual liability of corporate officers, without explaining how clarifying in a supplemental instruction that Mr. Miley's involvement needed to be "significant" was actually an added element for Plaintiff to prove.

Plaintiff's motion also ignores that there was a significant discrepancy in the evidence about Mr. Miley's involvement that the jury had to resolve at trial. If the jury had believed the testimony of witness April Clemmer, Mr. Miley's office manager, they easily could have found that Mr. Miley was "significantly" involved in the fax advertising at issue.  In this Court's March 27, 2015 Opinion denying summary judgment on Mr. Miley's individual liability, the Court credited the fact that Ms. Clemmer testified at her deposition that Mr. Miley approved the ads, selected the ads, determined the distribution lists, etc. See City Select, 96 F. Supp. 3d at 431 (explaining that Ms. Clemmer testified that Mr. Miley acted as "the ultimate decisionmaker in approving the" ads' forms, "determined the number of faxes" to be disseminated, and the time within which to transmit such faxes).  Unfortunately for Plaintiff, by the time Ms. Clemmer finished her trial testimony, there was little or no credible evidence that Mr. Miley approved the ads, selected the ads, or determined the distribution lists, and Mr. Miley further specifically denied such participation.

Furthermore, on cross examination at trial, in direct conflict with her direct testimony, Ms. Clemmer testified that she had essentially made the decisions related to the ads, and could not recall the ways in which Mr. Miley took part in any

20

part of the fax advertising.  She confirmed that nobody from David/Randall ever communicated with any person from any third parties except for her, see 5/24/16 Tr. at 122:10-13, that she could not remember Mr. Miley specifically giving her a list of ZIP codes to send faxes to, id. at 124:13-16, that she sent payment to B2B for the ads, id. at 125:23-24, that she negotiated prices with B2B, id. at 126:2-6, that she communicated to B2B about removing fax numbers from broadcast lists, id. at 126:13-16, and that Mr. Miley was never copied on any of her outgoing faxes sent to B2B, id. at 137:19-25 to 138:1-6.

On the other hand, Mr. Miley gave largely consistent and exculpatory testimony, and his version of having only incidental involvement and no realization of the details of the advertising plan was directly at odds with Ms. Clemmer's original testimony. He testified at trial that he never corresponded with anyone from B2B or Maxi-Leads, see 5/25/16 Tr. at 69:21-25, that he had no communications, involvement, participation or oversight of any of the relevant fax broadcast activities, id. at 69:1-5, that he never assigned Ms. Clemmer the task of finding an advertising or marketing company, id. at 62:5-7, that he never discussed anything about fax advertising with Ms. Clemmer, id. at 70:1-3, and that he never saw any emails or faxes between Ms.

Clemmer and Kevin Wilson of B2B, id. at 69:10-18.  In sum, Mr.
Miley testified that he "authorized no fax" and that he "spent
no time [and] no energy at all in this project." Id. at 70:14,
75:20-22.

The jury quite apparently credited Mr. Miley's testimony
over Ms. Clemmer's, as defense counsel effectively impeached
her.  If Ms. Clemmer had not recanted her prior testimony on
cross examination, the jury without question could have found
that Mr. Miley had a significant level of personal involvement
in the unlawful fax transmissions, thereby finding him
individually liable.  It is apparent that the jury did not
credit Ms. Clemmer's initial testimony about Mr. Miley's
involvement in the fax campaign, probably due to her recanting
on cross examination and Mr. Miley's consistent denials of
direct personal involvement.  If the jury believed Ms. Clemmer's
initial version, it would have had no doubt that Mr. Miley had
active oversight of, or control over, the fax campaigns, and
thus had a significant level of personal involvement.  The jury
was free to accept Mr. Miley's testimony of passive and
inadvertent participation, for which no standard would impose
personal liability.

Finally, as the Court has already addressed in its prior
Opinions, see, e.g., City Select, 2014 WL 4755487 at *9,

22

numerous district courts that have addressed the personal-liability issue in the TCPA context have concluded that individuals acting on behalf of a corporation may be held personally liable for violations of the TCPA where they "had direct, personal participation in or personally authorized the conduct found to have violated the statute, and was not merely tangentially involved." Texas v. Am. Blastfax, Inc., 164 F. Supp. 2d 892, 898 (W.D. Tex. 2001); see also Sandusky Wellness Ctr., LLC v. Wagner Wellness, Inc., No. 12-2257, 2014 WL 1333472, at *3 (N.D. Ohio Mar. 28, 2014)(holding that an individual defendant who "purchased and directed the distribution of fascimilies" can be held personally liable for TCPA violations); McGee v. Halsted Financial Services, LLC, No. 13-1555, 2014 WL 1203138, at *1 (D. Del. Mar. 19, 2014) ("[T]he TCPA may hold individuals personally liable if they developed or authorized the policies and procedures that led to violations of the TCPA."); Baltimore-Washington Tel. Co. v. Hot Leads Co., 584 F. Supp. 2d 736, 745 (D. Md. 2008) (observing that if the individual defendants "actually committed the conduct that violated the TCPA, and/or ... actively oversaw and directed the conduct," they could be held individually liable for the statutory violations); Covington & Burling v. Int'l Mktg. & Research, Inc., No. CIV. A. 01-0004360, 2003 WL 21384825, at *6

(D.C. Super. Apr. 17, 2003) (holding that corporate executives were personally liable because they "set company policies and [oversaw] day-to-day operations" and were "clearly involved in the business practices" that violated the TCPA).   The Court's jury instructions were perfectly consistent with the law emanating from these cases.

### 2. State of Mind Instruction

Plaintiff next contests the portion of jury instruction Number 18 explaining that "[t]he officer must have knowledge that he is directly participating in or authorizing the fax advertising[.]" [Pl.'s Br. at 6.][2]   The full text of Instruction 18 appears in the margin.[3]   Plaintiff had argued for a more

---

[2] Plaintiff curiously omits the rest of the sentence in its briefing, that the officer "need not know that the conduct violates the TCPA." [Docket Item 235, No. 18.]   The Court emphasized the importance of this language in the jury instruction conference, noting that Mr. Miley "could be unaware that it violates the TCPA and still be liable, but he can't be unaware that what he's doing is authorizing fax advertising and still be held liable." 5/25/16 Tr. 107:17-20.   Thus, the Court made it clear to the jury that while Plaintiff must demonstrate, by a preponderance of the evidence, that Mr. Miley knew he was directly participating in or authorizing the fax advertising, it was not necessary to show that Mr. Miley knew what he was doing was wrongful or illegal.   Not only does Plaintiff fail to consider the Court's instructions as a whole, but Plaintiff seizes upon an incomplete clause of the contested instruction by omitting the important qualifying language.

[3] Instruction No. 18, titled "Direct Personal Participation in or Personal Authorization of the Unlawful Conduct," states:

relaxed instruction that Mr. Miley could be held individually

liable for David/Randall's TCPA violations "even if he did not

_____

As a general matter, if a corporation is found to have
violated a federal statute, its officers will not be
personally liable solely because of their status as
officers.  Under the TCPA, however, an individual acting on
behalf of a corporation may, under certain limited
circumstances, be held personally or individually liable
for the corporation's violation of the TCPA if the
individual: (1) had direct, personal participation in the
conduct found to have violated the TCPA, or (2) personally
authorized the conduct found to have violated the TCPA.
This requirement is phrased in the alternative; it is
sufficient if Plaintiff proves either that Mr. Miley had
direct, personal participation in the conduct found to have
violated the TCPA, <u>or</u> that Mr. Miley personally authorized
the conduct found to have violated the TCPA.

Thus, the personal liability of a corporate director or
officer must be founded upon his active oversight of, or
control over, the conduct that violated the TCPA, rather
than merely tangential involvement.  Involvement is
"tangential" if it is routine, passive or ministerial.

The officer must have knowledge that he is directly
participating in or authorizing the fax advertising, but he
need not know that the conduct violates the TCPA.  Whether
the corporate officer knows that the conduct violates the
TCPA is not relevant to your consideration.

Your job as the jury will be to determine whether Plaintiff
has proved that Mr. Miley acted on behalf of David/Randall,
and whether Mr. Miley's activities relative to the unlawful
facsimile advertisements meet these requirements, based
upon the evidence presented to you during this trial.
If the Plaintiff Class fails to prove any of these
elements, your verdict must be for Defendant Miley.  If,
however, you find that the Plaintiff Class has met these
elements, you must then determine the facsimile campaigns
for which Mr. Miley is liable.

know that he was participating in or authorizing fax advertising." (Pl.'s Br. at 6.)  In other words, Plaintiff preferred that if Mr. Miley had inadvertently authorized the fax advertising, he could be found liable.  The fact that the Court allegedly created an additional "actual knowledge" element, Plaintiff argues, improperly increased its burden of proof at trial. (Pl.'s Br. at 18.)

This jury instruction was correct. As the Court explained in the jury instruction conference:

> The reason I believe the individual liability of a corporate officer requires that the person have knowledge, that what they're doing is authorizing fax advertising, is because of the enormous liability that that can trigger for the person. If it was somehow tangential, that is, routine or passive or ministerial, then it simply wouldn't be fair to impose liability on someone who happens to be a corporate officer that signed off on fax advertising. But where there's discussions, for instance, of the type that Ms. Clemmer described and it went back and forth, where there was personal involvement, some degree of reflection, then it rises to the level that the act requires, and that level is active oversight and control over the – over the conduct.

5/25/16 Tr: 106:19-25 to 107:1-8.  It is unclear how one could have direct and personal participation in a campaign if one did not have any knowledge of his or her actions.  As Plaintiff's counsel acknowledged at the jury instruction conference, "the Court inferred from the use of the words 'direct personal participation and personal authorization' corollary of knowledge of what one is doing." Id. at 105:20-22.

26

Again, if the jury believed Ms. Clemmer's direct testimony, it would have had no problem finding the requisite modest level of knowledge, _i.e._, that he knew he was directly participating in or authorizing the fax advertisements at issue.  It is evident that the jury did not accept Ms. Clemmer's direct testimony and instead was persuaded by her cross-examination and by Mr. Miley's direct testimony that he lacked such knowledge.

The cases that Plaintiff cites are inapposite.  Plaintiff conflates knowledge and specific intent.  Plaintiff cites Lopresti v. Terwilliger, 126 F.3d 34, 42 (2d Cir. 1997) for the proposition that "[w]rongful intent simply is not an element of an otherwise valid conversion claim." Here, the jury instruction does not ask the jury to find wrongful intent; instead, Plaintiff was required to merely demonstrate that Mr. Miley knew he was directly participating in or authorizing the fax advertising campaigns at issue. Plaintiff cites Aeroglive Corp. v. Zeh, 301 F.2d 420 (2d Cir. 1962) for the proposition that "[t]he tort of conversion requires no intent or fault," but again, the jury instruction does not ask the jury to find that Mr. Miley intended to commit a wrongful act, just that he knew that he was authorizing a particular activity, whether legal or illegal. Finally, Plaintiff cites Tillman v. Wheaton-Haven Recreation Ass'n, Inc., 517 F.2d 1141, 1144 (4th Cir. 1975) for

27

the proposition that a corporate officer's state of mind is irrelevant to his individual liability unless a particular state of mind is an element to the tort itself, but Plaintiff fails to explain why the Court should borrow the framework utilized in tort law to individual liability under the TCPA analysis. Accordingly, Plaintiff's motion for a new trial will be denied.

**C. Final Judgment as to Defendant Miley**

No issues remain to be determined as to Defendant Miley, who has prevailed upon the verdict of the jury.  Meanwhile it is possible that this verdict in favor of Mr. Miley might not be viewed as final and appealable under 28 U.S.C. § 1291 because claims for attorneys' fees and against co-defendant David Randall Associates, Inc., remain to be determined, as well as the scope and content of notice to the class and the determination of the recovery upon the verdict against David Randall Associates.  The Court finds no just reason for delay, pursuant to Rule 54(b), Fed. R. Civ. P.  Evaluating the Berckeley factors (see Part III.A, supra), it is even more clear that the Miley trial verdict is ripe for appeal now, at the same time as the Judgment for Plaintiff against Defendant David Randall Associates.  All that remains is the determination of costs and attorney's fees, which is necessarily stayed (see Part III.B.2, supra).  It bears repeating that Class Counsel is not

in a position to apply for counsel fees and costs as prevailing
party against David/Randall because the amount of recovery –
against which the reasonableness of any attorney's fee award
must be measured[4] – is presently unknown.  An immediate appeal by
Plaintiff will ascertain whether the Plaintiff Class has one
judgment debtor or two to look toward for payment. Given
David/Randall's status approaching insolvency (according to
Defendant's counsel), the presence or absence of Mr. Miley as a
target defendant may be dispositive, as a practical matter,
whether the class recovers.  The Court will therefore certify
the May 26, 2016 judgment in favor of Raymond Miley, III [Docket
Item 241] as final under Rule 54(b).

---

[4] The Third Circuit has outlined nine factors to consider when
determining the fairness of a proposed class action settlement:
(1) the complexity, expense and likely duration of the
litigation; (2) the reaction of the class to the settlement; (3)
the stage of the proceedings and the amount of discovery
completed; (4) the risks of establishing liability; (5) the
risks of establishing damages; (6) the risks of maintaining the
class action through the trial; (7) the ability of the
defendants to withstand a greater judgment; (8) the range of
reasonableness of the settlement fund in light of the best
possible recovery; and (9) the range of reasonableness of the
settlement fund to a possible recovery in light of all the
attendant risks of litigation. Girsh v. Jepson, 521 F.2d 153,
157 (3d Cir. 1975)(internal quotation marks and ellipses
omitted).

## V.   CONCLUSION

In sum, the Court concludes that the Judgment against David/Randall should be certified as final under Fed. R. Civ. P. 54(b), and that Plaintiff has failed to demonstrate that it is entitled to a new trial regarding the individual liability of Mr. Miley.  The judgment in favor of Raymond Miley, III, will likewise be certified as final under Fed. R. Civ. P. 54(b). Finally, the continued stay of the filing of any motion by Class Counsel for attorney's fees and costs as prevailing party against David/Randall Associates will be granted, pending these appeals.  An accompanying Order will be entered.


 **March 28, 2017**                        **s/ Jerome B. Simandle**
Date                                     JEROME B. SIMANDLE
                                         Chief U.S. District Judge

30